# EXHIBIT C

## AGREEMENT TO AMEND CONTRACTS

This Agreement is entered into among Glasswall, LLC ("Glasswall"), Ugo Colombo and Sara Jayne Colombo Kennedy (the collectively hereinafter referred to as the "Indemnitors"), Westchester Fire Insurance Company ("WFIC"), Monadnock Construction, Inc. ("Monadnock"), HPS 50th Avenue Associates LLC and HPS Borden Avenue Associates LLC (the HPS entities are collectively hereinafter referred to as "HPS") on this 4th day of April, 2014.

## RECITALS

**WHEREAS**, on or about January 3, 2013, Glasswall, a Florida Limited Liability Company located at 3550 NW 49th Street, Miami FL 33142, as Manufacturer, entered into two (2) contracts (the "Contracts") with Monadnock calling for Glasswall to furnish certain windows, doors and other materials (collectively, the "Windows"): (a) for $8,412,502 to a project known as "HPS Parcel A" located at 1-50 50th Avenue, Long Island City, New York 11101; and, (b) for $4,587,498 to a project known as "HPS Parcel B" located 1-55 Borden Avenue, Long Island City, NY 11101 (collectively, the "Projects"), owned by the HPS entities;

**WHEREAS**, on or about February 1, 2013, Glasswall, Ugo Colombo and Sara Jayne Kennedy Colombo (collectively, the "Indemnitors") executed an Indemnity Agreement;

**WHEREAS**, in accordance with the Contracts, WFIC issued at the request of Glasswall: (a) on February 12, 2013 Performance Bond No. K08840295 and Payment Bond No. K08840295, each in the amount of $8,412,502, and (b) on February 11, 2013 Performance Bond No. K08840258 and Payment Bond No. K08840258, each in the amount of $4,587,498 (collectively, the "Bonds");

**WHEREAS**, a Rider to the Bonds listed HPS and other entities as dual obligees under the Bonds;

**WHEREAS**, by letter dated January 13, 2014, Monadnock notified Glasswall and WFIC that the Contracts were terminated;

**WHEREAS**, Glasswall disputes the validity of the Contract terminations;

**WHEREAS**, Glasswall has issued "Production Schedules" dated April 4, 2014 (Exhibit "A") that provide for the production of the Windows in various "Releases", which for purposes of this Agreement, are considered "Milestone" dates. The Production Schedules show final Window production (including Storefront Windows) completed by October 28, 2014;

**WHEREAS**, Glasswall represents that it has manufactured 3,700 Windows ("Initial Completed Window Units") to date and these Windows are in storage at their facilities in Miami, Florida;

**WHEREAS**, on or about January 24, 2014, Sara Jayne Colombo Kennedy commenced an action in the Circuit Court of the Eleventh Judicial Circuit, Miami-Dade County, Florida, bearing case number 14-02090-CA-24 entitled *Sara Jayne Colombo Kennedy v. Glasswall, et. al.*, (the "Florida I Action") against Glasswall, WFIC, Monadnock and HPS asserting various claims and Glasswall has cross-claimed against WFIC, Monadnock and HPS therein and asserted various claims;

1

**WHEREAS,** on or about February 24, 2014, WFIC commenced an action in the United States District Court for the Southern District of New York bearing docket number 14-CV-01159 entitled *Westchester Fire Insurance Company v. Ugo Colombo and Sara Jayne Colombo Kennedy* (the "New York Action") against the Indemnitors for the posting of collateral to secure the Indemnitor's indemnitee obligations;

**WHEREAS,** on or about March 3, 2014, Ugo Colombo commenced an action in the Circuit Court of the Eleventh Judicial Circuit, Miami-Dade County, Florida, bearing case number 14-5447-CA-08 entitled *Ugo Colombo v. The Related Companies, Inc., et. al.,* (the "Florida II Action") against The Related Companies, Inc., Bruce Beal, Jr., Glasswall, WFIC, Monadnock and HPS asserting various claims. The claims asserted in the Florida I and II Actions are hereinafter referred to as the "Glasswall/Indemnitor Claims";

**WHEREAS,** Glasswall is willing to perform the Contact work pursuant to the terms of the Contracts except as modified below, subject to a full reservation of its rights to assert and prosecute the Glasswall/Indemnitor Claims but with a waiver of whatever rights it may have to terminate the Contracts based upon events occurring prior hereto;

**WHEREAS,** Monadnock is willing to consent to permit Glasswall to complete the Contract work pursuant to the terms of the Contracts except as modified below, subject to a full reservation of its rights to assert and prosecute claims against Glasswall and others for breach of contract and other claims (collectively, the "Monadnock Claims") but with a waiver of whatever rights it may have to terminate the Contracts based upon events occurring prior hereto;

**WHEREAS,** WFIC is willing to undertake to pay Glasswall pursuant to the terms of this Agreement for (a) Windows manufactured by Glasswall for the Project but not yet delivered and (b) Windows to be manufactured and delivered by Glasswall to the Project;

**NOW, THEREFORE,** in consideration of the mutual promises and agreements contained herein, the parties covenant and agree as follows:

1.      Glasswall will proceed to perform the Contracts for HPS Parcels A and B under their original terms, including price and payment, except as modified by this Agreement, in accordance with the Production Schedules attached hereto as Exhibit "A".

2.      Upon execution of this Agreement, WFIC commits, immediately after receipt of written approval from the Indemnitors, to wire $3,893,943, for the amounts attached hereto as Exhibit "B" to the trust account of Jason Giller, as attorney for Glasswall, in order to induce Glasswall to deliver all Windows fabricated to date. Funds will be paid from the escrow account of Jason Giller to material vendors of Glasswall for the Projects who have valid claims and to Glasswall for Windows delivered to the appropriate HPS Project site. Subject to the terms of a separate Escrow Agreement, attached hereto as Exhibit "C", WFIC will approve such payments based upon: (1) invoices from such material vendors as listed in Exhibit "D", for materials sold to Glasswall for performance of the Contracts and are due and payable; and (2) for up to $1,000,000 of the funds in above-referenced account based on the number of Initial Completed Window Units confirmed by Monadnock that have been delivered to the Project site calculated at $1,000 per unit. Glasswall shall provide all necessary documents to WFIC (G702, G703, lien waivers, bills of sale, and insurance certificates) in accordance with the original Contract terms.

2

3.      Monadnock shall pay WFIC for the Initial Completed Window Units based on the corresponding value of same extrapolated from the Schedule of Values for the corresponding Windows in that Release within 35 days of the delivery of those Windows to the Project site, or by such earlier date as the parties otherwise agree.

4.      Upon execution of this Agreement, Glasswall will submit the March 2014 Application for Payment to WFIC, in accordance with the Contract documents and to Monadnock for payment. Thereafter, commencing with the April 2014 Application for Payment, on the 20th day of each month, Glasswall will submit its monthly Application for Payment to WFIC. Monadnock will promptly review all requisitions and shall approve and pay to WFIC the approved amount, subject to the terms of the original Contracts, for Windows delivered to the Project, but without reduction for alleged damages, including but not limited to alleged delays, occurring prior to the execution of this Agreement. WFIC shall pay to Glasswall the amounts of the Application for Payment approved by Monadnock on or before the 20th day of the following month. Monadnock shall review Glasswall's October, November, December, January and February Payment Applications with respect to Windows that are the subject of those Payment Applications and confirm that such Windows were produced, and shall approve or adjust those Payment Applications as they would have been reviewed, approved and/or adjusted had the Contracts been performed in the ordinary course. Westchester shall reduce or increase its payments in respect of later Glasswall payment applications based on the foregoing Monadnock approvals and adjustments based upon whether said Windows were produced by Glasswall and delivered to the Project site.

5.      Glasswall will mobilize and commence delivery of the Initial Completed Window Units during the week beginning March 24th, 2014 and complete delivery by no later than June 7, 2014, subject to adjustment for any delays in delivery not caused by Glasswall, including by not limited to delays caused by Monadnock, HPS or any reason not caused by Glasswall.

6.      Glasswall shall immediately commit the necessary resources to the production required to meet the Production Schedules, will not commence production of any new work for any other customer for 90 days and will permit complete and continuous right of inspection by a Monadnock designee provided it does not delay or interfere with Glasswall's ongoing production. After Glasswall completes delivery of the Initial Completed Units, Glasswall will deliver Completed Window Units on a continuous basis to the Project as expeditiously as possible consistent with the Production Schedules.

Glasswall and Monadnock shall follow the quality control procedures set forth in Exhibit "E".

7.      The terminations and Bond claims are hereby withdrawn. Such withdrawal is without prejudice to the claims of any party nor shall it be deemed a waiver of any rights. The Bonds, at their full limits, remain in place. Glasswall agrees that it waives any right it may have to terminate the Contracts based on events occurring to date. Monadnock agrees that it waives any right it may have to terminate the Contracts based on events occurring to date.

3

8.      WFIC will pay Glasswall in accordance with this Agreement.  To the extent Glasswall delivers Windows to the Projects, WFIC payments to Glasswall less payments received from Monadnock will be credited against the Bond limit.

9.      All claims by and/or among Glasswall, the Indemnitors, Monadnock, HPS and WFIC relating to the Contracts, Bonds, Indemnity Agreements or actions of the parties thereto, including but not limited to the Glasswall/Indemnitor Claims and the Monadnock Claims and those asserted or that could have been asserted in the Florida Actions and the New York Action will be deferred until completion of the Contracts or a termination thereof in accordance with the terms of the Contracts (as modified herein), whichever shall occur sooner. All proceedings in the Florida Actions and the New York Action shall be stayed without prejudice to all parties' procedural and substantive rights and all periods of time relating to any procedural or substantive, right, defense, claim or procedure are tolled as of the date of the Agreement among the parties.

10.     Before the last month's production is shipped, and conditioned upon Glasswall's provision of final lien waivers from it and its vendors, bills of sale and other customary contract close-out documents, WFIC will advance payment to Glasswall for the last full month's production, adjusted for any approved add or deduct change orders.

11.     In accordance with the terms of the Contracts, as amended hereby, Glasswall shall deliver with the execution hereof and upon receiving written confirmation of WFIC's wiring of the funds pursuant to Paragraph 2 of this Agreement, whichever occurs later, documents required by the Contracts and shall continue to do so to the extent required by the Contracts.  Glasswall shall also deliver within ten (10) days of the date hereof and upon receiving written confirmation of WFIC's wiring of the funds pursuant to Paragraph 2 of this Agreement, whichever occurs later, and shall thereafter continue to deliver during the remaining term of the Contract, any and all fabrication and assembly drawings to an escrow account of Jason Giller, PA ("HPS-Plan Escrow Agent").  The HPS-Plan Escrow Agent shall deliver to Monadnock the contents of the escrow account only if: (a) Glasswall is properly terminated pursuant to the terms of the Contracts, or (b) Glasswall becomes party to any insolvency proceeding in a capacity as a debtor, including but not limited to reorganization, liquidation, bankruptcy or dissolution, not dismissed within 30 days of commencement (HPS-Escrow Agreement attached hereto as Exhibit "F").

12.     The parties hereby acknowledge that the Indemnitors are signing this Agreement solely for the purposes of confirming their consent to the execution by WFIC of this Agreement, and to consent to stay the Florida I and II Actions. Such consent is subject to a full reservation of Indemnitors rights to assert and prosecute the Florida I and II Actions, or any other claims related to the Project and/or Bonds.

13.     Notwithstanding any of the foregoing provisions of this Agreement, and superseding all such provisions, Monadnock shall pay to WFIC, in accordance with the Contracts, a sum equal to the gross dollar value of all Windows delivered to the project site determined from the Schedule of Values.  If Monadnock asserts that any payment to WFIC should be reduced based on a backcharge, change order or similar reduction permitted

4

under the terms of the Contracts and arising after the date hereof, Monadnock shall make payment to WFIC by payment of the amount of the asserted backcharge, change order or other reduction to the escrow account of Duane Morris, pursuant to the attached escrow agreement (Exhibit "G"), and the amounts so deposited shall thereafter be paid from the escrow account based on the agreement of the parties or as determined in arbitration pursuant to the Contracts.  The payment of such sums to escrow shall be without prejudice to, and subject to, the claims reserved by the parties pursuant to paragraph 9 hereof as well as to all parties' backcharges, change orders or claims arising after the date of this Agreement, the resolution of all of which shall be deferred until the completion or termination of the contracts as set forth in paragraph 9.  Required payments to be made to WFIC will be regarded as payments to Glasswall under the Contracts.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Glasswall, LLC      Monadnock Construction, Inc.      HPS 50th Avenue Associates LLC

By:_____     By: _____     By:_____
John Anderson, President     Greg Bauso, Executive VP     Frank Monterisi, VP

Indemnitor         Indemnitor         HPS Borden Avenue Associates LLC

By:_____     By:_____     By: _____
Ugo Colombo        Sara Jayne Colombo Kennedy     Frank Monterisi, VP

Westchester Fire Insurance Company

By: _____
Henry Minissale, VP Claims

6

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Glasswall, LLC                    Monadnock Construction, Inc.     HPS 50th Avenue
                                                                    Associates LLC

By: _____            By: _____            By: _____
John Anderson, President          Greg Bauso, Executive VP          Frank Monterisi, VP

Indemnitor                        Indemnitor                        HPS Borden Avenue
                                                                    Associates LLC

By: _____            By: _____            By: _____
Ugo Colombo                       Sara Jayne Colombo Kennedy        Frank Monterisi, VP

                                  Westchester Fire Insurance Company

                                  By: _____
                                  Henry Minissale, VP Claims

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Glasswall, LLC                    Monadnock Construction, Inc.    HPS 50th Avenue
                                                                  Associates LLC

By:_____              By:_____              By:_____
John Anderson, President        Greg Bauso, Executive VP         Frank Monterisi, VP

Indemnitor                      Indemnitor                       HPS Borden Avenue
                                                                 Associates LLC

By:_____              By:_____              By:_____
Ugo Colombo                     Sara Jayne Colombo Kennedy       Frank Monterisi, VP

                                Westchester Fire Insurance Company

                                By:_____
                                Henry Minissale, VP Claims

6

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Glasswall, LLC             Monadnock Construction, Inc.   HPS 50th Avenue
                                                          Associates LLC

By:_____       By: _____          By:_____
John Anderson, President    Greg Bauso, Executive VP       Frank Monterisi, VP

Indemnitor                 Indemnitor                      HPS Borden Avenue
                                                           Associates LLC

By:_____       By: _____          By:_____
Ugo Colombo                Sara Jayne Colombo Kennedy      Frank Monterisi, VP

                           Westchester Fire Insurance Company

                           By_____
                           Henry Minissale, VP Claims

6

**Agreement to Amend Contracts**

**Exhibits – April 4, 2014**

Exhibit "A" – Production Schedules (April 4, 2014)

Exhibit "B" – WFIC to Glasswall Wire Amount ($3,893,943)

Exhibit "C" – Jason Giller Escrow Agreement (Funds)

Exhibit "D" – Glasswall's Material Vendors

Exhibit "E" – Quality Control Procedures

Exhibit "F" – HPS-Escrow Agreement (Jason Giller – drawings/documents)

Exhibit "G" – Duane Morris Escrow Agreement

# EXHIBIT A

**GLASSWALL**  |  HPS COMPLETION SCHEDULE-PARCEL A  |  4-4-14

| ID | Task Name | Duration | Start | Finish |
|----|-----------|----------|-------|--------|
| 1 | Parcel A | | | |
| 2 | Parcel A Release 1 Floors 2-6 (1253 Units) | 106 days | Fri 9/13/13 | Fri 2/7/14 |
| 3 | Engineering | 42 days | Fri 9/13/13 | Sat 11/9/13 |
| 4 | HPA-A.1 Type A Typ. Units (209) | 1 day | Fri 9/13/13 | Fri 9/13/13 |
| 5 | HPA-B.1 Type B Typ. Casement (362) | 1 day | Fri 9/13/13 | Fri 9/13/13 |
| 6 | HPA-C.1 Type C Typ. Louver Unit (166) | 1 day | Fri 9/13/13 | Fri 9/13/13 |
| 7 | HPA-B.2 Type B End Casement (4) | 1 day | Tue 10/8/13 | Tue 10/8/13 |
| 8 | HPA-C.2Type C Louver/Tree Unit (172) | 1 day | Tue 10/8/13 | Tue 10/8/13 |
| 9 | HPA-F.1 Type A, B, C Fin Unit (15) | 1 day | Fri 10/11/13 | Fri 10/11/13 |
| 10 | HPA-D.1 Type D Door Frame Unit (32) | 1 day | Sat 10/12/13 | Sat 10/12/13 |
| 11 | HPA-A.4 Type End Unit (5) | 1 day | Mon 10/14/13 | Mon 10/14/13 |
| 12 | HPA -C4 Type C End Unit (12) | 1 day | Mon 10/14/13 | Mon 10/14/13 |
| 13 | HPA-A.2 Type A Typ. Tree Unit (176) | 1 day | Fri 10/18/13 | Fri 10/18/13 |
| 14 | HPA-A.3 Type A Typ. Corner Unit (13) | 1 day | Wed 10/30/13 | Wed 10/30/13 |
| 15 | HPA-C.3 Type C Typ. Corner Unit (5) | 1 day | Wed 10/30/13 | Wed 10/30/13 |
| 16 | HPA-H.1 Type A, B, C, E Hoist Bay Units | 1 day | Wed 10/30/13 | Wed 10/30/13 |
| 17 | HPA-A.5 Type A Corner Tree Unit (42) | 1 day | Sat 11/9/13 | Sat 11/9/13 |
| 18 | HPA-S.1 Type S Transition Unit (10) | 8 days | Sat 11/9/13 | Tue 11/19/13 |
| 19 | Fabrication | 47 days | Mon 9/16/13 | Tue 11/19/13 |
| 20 | HPA-A.1 Type A Typ. Units (209) | 5 days | Mon 9/16/13 | Fri 9/20/13 |
| 21 | HPA-B.1 Type B Typ. Casement (362) | 5 days | Mon 9/16/13 | Fri 9/20/13 |
| 22 | HPA-C.1 Type C Typ. Louver Unit (166) | 5 days | Mon 9/16/13 | Fri 9/20/13 |
| 23 | HPA-B.2 Type B End Casement (4) | 6 days | Wed 10/9/13 | Wed 10/16/13 |
| 24 | HPA-C.2Type C Louver/Tree Unit (172) | 6 days | Wed 10/9/13 | Wed 10/16/13 |
| 25 | HPA-F.1 Type A, B, C Fin Unit (15) | 5 days | Mon 10/14/13 | Fri 10/18/13 |
| 26 | HPA-D.1 Type D Door Frame Unit (32) | 5 days | Mon 10/14/13 | Fri 10/18/13 |
| 27 | HPA-A.4 Type End Unit (5) | 6 days | Tue 10/15/13 | Tue 10/22/13 |
| 28 | HPA -C4 Type C End Unit (12) | 4 days | Tue 10/15/13 | Fri 10/18/13 |
| 29 | HPA-A.2 Type A Typ. Tree Unit (176) | 5 days | Mon 10/21/13 | Fri 10/25/13 |
| 30 | HPA-A.3 Type A Typ. Corner Unit (13) | 6 days | Fri 11/1/13 | Fri 11/8/13 |
| 31 | HPA-C.3 Type C Typ. Corner Unit (5) | 6 days | Fri 11/1/13 | Fri 11/8/13 |
| 32 | HPA-H.1 Type a, B, C, E Hoist Bay Units | 2 days | Mon 11/18/13 | Tue 11/19/13 |

GLASSWALL                                    HPS COMPLETION SCHEDULE-PARCEL A                                    4-4-14

| ID | Task Name | Duration | Start | Finish | Timeline |
|----|-----------|----------|-------|--------|----------|
| 33 | HPA-A.5 Type A Corner Tree Unit (42) | 1 day | Mon 11/11/13 | Mon 11/11/13 | HPA-A.5 Type A Corner Tree Unit (42) |
| 34 | HPA-S.1 Type S Transition Unit (10) | 2 days | Mon 11/11/13 | Tue 11/12/13 | HPA-S.1 Type S Transition Unit (10) |
| 35 | Assembly/Glazing/Crating | 1 day | Fri 2/7/14 | Fri 2/7/14 | |
| 36 | HPA-A.1 Type A Typ. Units (209) | 1 day | Fri 2/7/14 | Fri 2/7/14 | HPA-A.1 Type A Typ. Units (209) |
| 37 | HPA-B.1 Type B Typ. Casement (362) | 1 day | Fri 2/7/14 | Fri 2/7/14 | HPA-B.1 Type B Typ. Casement (362) |
| 38 | HPA-C.1 Type C Typ. Louver Unit (166) | 1 day | Fri 2/7/14 | Fri 2/7/14 | HPA-C.1 Type C Typ. Louver Unit (166) |
| 39 | HPA-B.2 Type B End Casement (4) | 1 day | Fri 2/7/14 | Fri 2/7/14 | HPA-B.2 Type B End Casement (4) |
| 40 | HPA-C.2Type C Louver/Tree Unit (172) | 1 day | Fri 2/7/14 | Fri 2/7/14 | HPA-C.2 Type C Louver/Tree Unit (172) |
| 41 | HPA-F.1 Type A, B, C Fin Unit (15) | 1 day | Fri 2/7/14 | Fri 2/7/14 | HPA-F.1 Type A, B, C Fin Unit (15) |
| 42 | HPA-D.1 Type D Door Frame Unit (32) | 1 day | Fri 2/7/14 | Fri 2/7/14 | HPA-D.1 Type D Door Frame Unit (32) |
| 43 | HPA-A.4 Type End Unit (5) | 1 day | Fri 2/7/14 | Fri 2/7/14 | HPA-A.4 Type End Unit (5) |
| 44 | HPA -C4 Type C End Unit (12) | 1 day | Fri 2/7/14 | Fri 2/7/14 | HPA -C4 Type C End Unit (12) |
| 45 | HPA-A.2 Type A Typ. Tree Unit (176) | 1 day | Fri 2/7/14 | Fri 2/7/14 | HPA-A.2 Type A Typ. Tree Unit (176) |
| 46 | HPA-A.3 Type A Typ. Corner Unit (13) | 1 day | Fri 2/7/14 | Fri 2/7/14 | HPA-A.3 Type A Typ. Corner Unit (13) |
| 47 | HPA-C.3 Type C Typ. Corner Unit (5) | 1 day | Fri 2/7/14 | Fri 2/7/14 | HPA-C.3 Type C Typ. Corner Unit (5) |
| 48 | HPA-H.1 Type A, B, C, E Hoist Bay Unit | 1 day | Fri 2/7/14 | Fri 2/7/14 | HPA-H.1 Type a, B, C, E Hoist Bay Unit |
| 49 | HPA-A.5 Type A Corner Tree Unit (42) | 1 day | Fri 2/7/14 | Fri 2/7/14 | HPA-A.5 Type A Corner Tree Unit (42) |
| 50 | HPA-S.1 Type S Transition Unit (10) | 1 day | Fri 2/7/14 | Fri 2/7/14 | HPA-S.1 Type S Transition Unit (10) |
| 51 | Parcel A Release 2 Floors 7-12 (1609 Units) | 145 days | Mon 11/4/13 | Fri 5/23/14 | |
| 52 | Engineering | 35 days | Mon 11/4/13 | Fri 12/20/13 | |
| 53 | HPA-A.6 Type A Typ. Unit (505) | 16 days | Mon 11/4/13 | Sat 11/23/13 | HPA-A.6 Type A Typ. Unit (505) |
| 54 | HPA-B.3 Type B Typ. Casement Unit (517) | 9 days | Tue 11/26/13 | Fri 12/6/13 | HPA-B.3 Type B Typ. Casement Unit (517) |
| 55 | HPA-C.5 Type C Typ. Louver Unit (452) | 5 days | Mon 12/2/13 | Fri 12/6/13 | HPA-C.5 Type C Typ. Louver Unit (452) |
| 56 | HPA-S.2 Type S Transition Unit (1) | 5 days | Mon 12/9/13 | Fri 12/13/13 | HPA-S.2 Type S Transition Unit (1) |
| 57 | HPA-A.7 Type a, B, C Corner Unit (96) | 5 days | Mon 12/16/13 | Fri 12/20/13 | HPA-A.7 Type a, B, C Corner Unit (96) |
| 58 | HPA-S.2 Type D Door/End Unit (38) | 5 days | Mon 12/16/13 | Fri 12/20/13 | HPA-S.2 Type D Door/End Unit (38) |
| 59 | Fabrication | 39 days | Tue 11/26/13 | Fri 1/17/14 | |
| 60 | HPA-A.6 Type A Typ. Unit (505) | 39 days | Tue 11/26/13 | Fri 1/17/14 | HPA-A.6 Type A Typ. Unit (505) |
| 61 | HPA-B.3 Type B Typ. Casement Unit (517) | 30 days | Mon 12/9/13 | Fri 1/17/14 | HPA-B.3 Type B Typ. Casement Unit (517) |
| 62 | HPA-C.5 Type C Typ. Louver Unit (452) | 23 days | Wed 12/18/13 | Fri 1/17/14 | HPA-C.5 Type C Typ. Louver Unit (452) |
| 63 | HPA-S.2 Type S Transition Unit (1) | 22 days | Thu 12/19/13 | Fri 1/17/14 | HPA-S.2 Type S Transition Unit (1) |
| 64 | HPA-A.7 Type a, B, C Corner Unit (96) | 20 days | Mon 12/23/13 | Fri 1/17/14 | HPA-A.7 Type a, B, C Corner Unit (96) |

**GLASSWALL** — HPS COMPLETION SCHEDULE-PARCEL A — 4-4-14

| ID | Task Name | Duration | Start | Finish |
|----|-----------|----------|-------|--------|
| 65 | HPA-S.2 Type D Door/End Units (38) | 20 days | Mon 12/23/13 | Fri 1/17/14 |
| 66 | Assembly/Glazing/Crating | 90 days | Mon 1/20/14 | Fri 5/23/14 |
| 67 | HPA-A.6 Type A Typ. Unit (505) | 90 days | Mon 1/20/14 | Fri 5/23/14 |
| 68 | HPA-B.3 Type B Typ. Casement Unit (517) | 70 days | Mon 2/17/14 | Fri 5/23/14 |
| 69 | HPA-C.5 Type C Typ. Louver Unit (452) | 50 days | Mon 3/17/14 | Fri 5/23/14 |
| 70 | HPA-S.2 Type S Transition Unit (1) | 30 days | Mon 4/14/14 | Fri 5/23/14 |
| 71 | HPA-A.7 Type A, B, C Corner Unit (96) | 30 days | Mon 4/14/14 | Fri 5/23/14 |
| 72 | HPA-S.2 Type D Door/End Unit (38) | 30 days | Mon 4/14/14 | Fri 5/23/14 |
| 73 | Parcel A Release 3 Floors 13-15 (363 Units) | 140 days | Mon 12/16/13 | Fri 6/27/14 |
| 74 | Engineering | 26 days | Mon 12/16/13 | Mon 1/20/14 |
| 75 | HPA-A.8 Type A Typ. Units (102) | 26 days | Mon 12/16/13 | Mon 1/20/14 |
| 76 | HPA-B.4 Type B Typ. Casement Unit (112) | 24 days | Wed 12/18/13 | Mon 1/20/14 |
| 77 | HPA C.6 Type C Typ. Louver Unit (101) | 21 days | Mon 12/23/13 | Mon 1/20/14 |
| 78 | HPA-A.9 Type A, B, C Corner Unit (34) | 10 days | Tue 1/7/14 | Mon 1/20/14 |
| 79 | HPA-D.3 Type D Door/End Unit (12) | 10 days | Tue 1/7/14 | Mon 1/20/14 |
| 80 | HPA-S.3 Type S Transition Unit (2) | 5 days | Tue 1/14/14 | Mon 1/20/14 |
| 81 | Fabrication | 10 days | Fri 1/17/14 | Thu 1/30/14 |
| 82 | HPA-A.8 Type A Typ. Units (102) | 10 days | Fri 1/17/14 | Thu 1/30/14 |
| 83 | HPA-B.4 Type B Typ. Casement Unit (112) | 10 days | Fri 1/17/14 | Thu 1/30/14 |
| 84 | HPA C.6 Type C Typ. Louver Unit (101) | 10 days | Fri 1/17/14 | Thu 1/30/14 |
| 85 | HPA-A.9 Type A, B, C Corner Unit (34) | 10 days | Fri 1/17/14 | Thu 1/30/14 |
| 86 | HPA-D.3 Type D Door/End Unit (12) | 10 days | Fri 1/17/14 | Thu 1/30/14 |
| 87 | HPA-S.3 Type S Transition Unit (2) | 8 days | Tue 1/21/14 | Thu 1/30/14 |
| 88 | Assembly/Glazing/Crating | 44 days | Tue 4/29/14 | Fri 6/27/14 |
| 89 | HPA-A.8 Type A Typ. Units (102) | 44 days | Tue 4/29/14 | Fri 6/27/14 |
| 90 | HPA-B.4 Type B Typ. Casement Unit (112) | 34 days | Tue 5/13/14 | Fri 6/27/14 |
| 91 | HPA C.6 Type C Typ. Louver Unit (101) | 34 days | Tue 5/13/14 | Fri 6/27/14 |
| 92 | HPA-A.9 Type A, B, C Corner Unit (34) | 31 days | Fri 5/16/14 | Fri 6/27/14 |
| 93 | HPA-D.3 Type D Door/End Unit (12) | 31 days | Fri 5/16/14 | Fri 6/27/14 |
| 94 | HPA-S.3 Type S Transition Unit (2) | 31 days | Fri 5/16/14 | Fri 6/27/14 |
| 95 | Parcel A Release 4 Floors 16-32 (2040) | 180 days | Mon 1/6/14 | Fri 9/12/14 |
| 96 | Engineering | 20 days | Mon 1/6/14 | Fri 1/31/14 |



**GLASSWALL**  |  **HPS COMPLETION SCHEDULE-PARCEL A**  |  4-4-14

| ID | Task Name | Duration | Start | Finish |
|---|---|---|---|---|
| 97 | HPA-C.7 Type C Typ. Louver Unit (561) | 20 days | Mon 1/6/14 | Fri 1/31/14 |
| 98 | HPA-B.5 Type B Typ. Casement Unit (646) | 20 days | Mon 1/6/14 | Fri 1/31/14 |
| 99 | HPA-A.9 Type A Typ. Unit (595) | 20 days | Mon 1/6/14 | Fri 1/31/14 |
| 100 | HPA-D.4 Type D Door/End Unit (34) | 15 days | Mon 1/13/14 | Fri 1/31/14 |
| 101 | HPA-A.10 Type A, B, C Corner Units (204) | 15 days | Mon 1/13/14 | Fri 1/31/14 |
| 102 | **Fabrication** | 1 day | Fri 6/20/14 | Fri 6/20/14 |
| 103 | HPA-C.7 Type C Typ. Louver Unit (561) | 80 days | Mon 3/10/14 | Fri 6/27/14 |
| 104 | HPA-B.5 Type B Typ. Casement Unit (646) | 45 days | Mon 4/28/14 | Fri 6/27/14 |
| 105 | HPA-A.9 Type A Typ. Unit (595) | 25 days | Mon 5/26/14 | Fri 6/27/14 |
| 106 | HPA-D.4 Type D Door/End Unit (34) | 15 days | Mon 6/9/14 | Fri 6/27/14 |
| 107 | HPA-A.10 Type A, B, C Corner Unit (204) | 6 days | Fri 6/20/14 | Fri 6/27/14 |
| 108 | **Assembly/Glazing/Crating** | 75 days | Mon 6/2/14 | Fri 9/12/14 |
| 109 | HPA-A.9 Type A Typ. Units (298) | 75 days | Mon 6/2/14 | Fri 9/12/14 |
| 110 | HPA -C.7 Type C Typ. Louver Unit (280) | 65 days | Mon 6/16/14 | Fri 9/12/14 |
| 111 | HPA-B.5 Type B Typ. Casement units (323) | 55 days | Mon 6/30/14 | Fri 9/12/14 |
| 112 | HPA-A.10 Type A, B, C Corner Units (102) | 45 days | Mon 7/14/14 | Fri 9/12/14 |
| 113 | HPA-D.4 Type D Door/End Units (17) | 40 days | Mon 7/21/14 | Fri 9/12/14 |
| 114 | HPA-A.9 Type A Typ. Units (297) | 38 days | Wed 7/23/14 | Fri 9/12/14 |
| 115 | HPA-C.7 Type C Typ. Louver Unit (281) | 28 days | Wed 8/6/14 | Fri 9/12/14 |
| 116 | HPA-B.5 Type B Typ. Casement Units (323) | 28 days | Wed 8/6/14 | Fri 9/12/14 |
| 117 | HPA-A.10 Type A, B, C Corner Units (102) | 28 days | Wed 8/6/14 | Fri 9/12/14 |
| 118 | HPA-D.4 Type D Door/End Units (17) | 28 days | Wed 8/6/14 | Fri 9/12/14 |
| 119 | **Parcel A Release 5 Floors 33-37 (514) Units** | 182 days | Mon 2/17/14 | Tue 10/28/14 |
| 120 | **Engineering** | 100 days | Mon 2/17/14 | Fri 7/4/14 |
| 121 | HPA-C.8 Type C Typ. Louver Unit (133) | 10 days | Mon 6/23/14 | Fri 7/4/14 |
| 122 | HPA-A.12 Type A Typ. Unit (170) | 10 days | Mon 2/17/14 | Fri 2/28/14 |
| 123 | HPA-B.6 Type B Typ. Casement Unit (158) | 10 days | Mon 2/17/14 | Fri 2/28/14 |
| 124 | HPA-D.5 Type D Door/End Unit (9) | 5 days | Mon 2/24/14 | Fri 2/28/14 |
| 125 | HPA-A.13 Type A, B, C Corner Unit (44) | 5 days | Mon 2/24/14 | Fri 2/28/14 |
| 126 | HPA-S.3 Type S Transition Unit (2) | 5 days | Mon 2/24/14 | Fri 2/28/14 |
| 127 | **Fabrication** | 20 days | Mon 6/16/14 | Fri 7/11/14 |
| 128 | HPA-C.8 Type C Typ. Louver Unit (133) | 20 days | Mon 6/16/14 | Fri 7/11/14 |



Page 4

**GLASSWALL**                    HPS COMPLETION SCHEDULE-PARCEL A                    4-4-14



| ID | Task Name | Duration | Start | Finish |
|----|-----------|----------|-------|--------|
| 129 | HPA-A.12 Type A Typ. Unit (170) | 20 days | Mon 6/16/14 | Fri 7/11/14 |
| 130 | HPA-B.6 Type B Typ. Casement Unit (158) | 20 days | Mon 6/16/14 | Fri 7/11/14 |
| 131 | HPA-D.5 Type D Door/End Unit (9) | 20 days | Mon 6/16/14 | Fri 7/11/14 |
| 132 | HPA-A.13 Type A, B, C Corner Unit (44) | 20 days | Mon 6/16/14 | Fri 7/11/14 |
| 133 | HPA-S.3 Type S Transition Unit (2) | 20 days | Mon 6/16/14 | Fri 7/11/14 |
| 134 | Assembly/Glazing/Crating | 52 days | Mon 8/18/14 | Tue 10/28/14 |
| 135 | HPA-C.8 Type C Typ. Louver Unit (133) | 52 days | Mon 8/18/14 | Tue 10/28/14 |
| 136 | HPA-A.12 Type A Typ. Unit (170) | 52 days | Mon 8/18/14 | Tue 10/28/14 |
| 137 | HPA-B.6 Type B Typ. Casement Unit (158) | 52 days | Mon 8/18/14 | Tue 10/28/14 |
| 138 | HPA-D.5 Type D Door/End Unit (9) | 52 days | Mon 8/18/14 | Tue 10/28/14 |
| 139 | HPA-A.13 Type A, B, C Corner Unit (44) | 52 days | Mon 8/18/14 | Tue 10/28/14 |
| 140 | HPA-S.3 Type S Transition Unit (2) | 52 days | Mon 8/18/14 | Tue 10/28/14 |
| 141 | Lobby | 148 days | Fri 4/4/14 | Tue 10/28/14 |
| 142 | Shop Drawing "Approval" | 16 days | Fri 4/4/14 | Fri 4/25/14 |
| 143 | Procure Materials | 70 days | Mon 4/7/14 | Fri 7/11/14 |
| 144 | Fabricate | 45 days | Mon 6/16/14 | Fri 8/15/14 |
| 145 | Assemble/Glaze/Crate | 72 days | Mon 7/21/14 | Tue 10/28/14 |

| | GLASSWALL | | | HPS COMPLETION SCHEDULE-PARCEL B | 4-4-14 |
|---|---|---|---|---|---|

| ID | Task Name | Duration | Start | Finish |
|---|---|---|---|---|
| 1 | Parcel B | | | |
| 2 | Parcel B Rel. 1 Floors 2-9 (687 Units) | 142 days | Thu 10/24/13 | Fri 5/9/14 |
| 3 | Engineering | 48 days | Thu 10/24/13 | Mon 12/30/13 |
| 4 | HPB-B1a Type A Typ. Unit (201) | 3 days | Thu 10/24/13 | Mon 10/28/13 |
| 5 | HPB-B1a Type B Typ. Unit (194) | 3 days | Tue 10/29/13 | Thu 10/31/13 |
| 6 | HPB -B1a Type C Typ. Unit (197) | 3 days | Fri 11/1/13 | Tue 11/5/13 |
| 7 | HPB-B1a Type L Typ. Louver (1) | 3 days | Wed 11/6/13 | Fri 11/8/13 |
| 8 | HPB-B1b Type A Outside Corner (23) | 3 days | Mon 11/11/13 | Wed 11/13/13 |
| 9 | HPB-B1b Type C Outside Corner (6) | 3 days | Thu 11/14/13 | Mon 11/18/13 |
| 10 | HPB-B1b Inside Corner (13) | 3 days | Tue 11/19/13 | Thu 11/21/13 |
| 11 | HPB-B1c Type A Outside Corner (1) | 3 days | Fri 11/22/13 | Tue 11/26/13 |
| 12 | HPB-B1c Type B Typical Unit (1) | 3 days | Wed 11/27/13 | Fri 11/29/13 |
| 13 | HPB-B1c Type B Typ.Unit (2) | 3 days | Mon 12/2/13 | Wed 12/4/13 |
| 14 | HPB- B1c Type C Outside Corner (6) | 3 days | Thu 12/5/13 | Mon 12/9/13 |
| 15 | HPB-B1c Type C Typ. Unit (35) | 3 days | Tue 12/10/13 | Thu 12/12/13 |
| 16 | HPB -B1c Type D Door Unit (4) | 3 days | Fri 12/13/13 | Tue 12/17/13 |
| 17 | HPB-B1c Type A Transition (1) | 3 days | Wed 12/18/13 | Fri 12/20/13 |
| 18 | HPB-B1c Type B Transition (1) | 3 days | Mon 12/23/13 | Wed 12/25/13 |
| 19 | HPB-B1c TypeC Transition (1) | 3 days | Thu 12/26/13 | Mon 12/30/13 |
| 20 | Fabrication | 21 days | Fri 10/25/13 | Fri 11/22/13 |
| 21 | HPB-B1a Type A Typ. Unit (201) | 4 days | Fri 10/25/13 | Wed 10/30/13 |
| 22 | HPB-B1a Type B Typ. Unit (194) | 4 days | Fri 10/25/13 | Wed 10/30/13 |
| 23 | HPB -B1a Type C Typ. Unit (197) | 4 days | Fri 10/25/13 | Wed 10/30/13 |
| 24 | HPB-B1a Type L Typ. Louver (1) | 1 day | Fri 10/25/13 | Fri 10/25/13 |
| 25 | HPB-B1b Type A Outside Corner (23) | 1 day | Mon 11/18/13 | Mon 11/18/13 |
| 26 | HPB-B1b Type C Outside Corner (6) | 1 day | Mon 11/18/13 | Mon 11/18/13 |
| 27 | HPB-B1b Inside Corner (13) | 1 day | Mon 11/18/13 | Mon 11/18/13 |
| 28 | HPB-B1c Type A Outside Corner (1) | 1 day | Tue 11/19/13 | Tue 11/19/13 |
| 29 | HPB-B1c Type B Typical Unit (1) | 1 day | Tue 11/19/13 | Tue 11/19/13 |
| 30 | HPB-B1c Type B Typ.Unit (2) | 1 day | Tue 11/19/13 | Tue 11/19/13 |

**GLASSWALL**  HPS COMPLETION SCHEDULE-PARCEL B  4-4-14

| ID | Task Name | Duration | Start | Finish |
|----|-----------|----------|-------|--------|
| 31 | HPB- B1c Type C Outside Corner (6) | 1 day | Tue 11/19/13 | Tue 11/19/13 |
| 32 | HPB-B1c Type C Typ. Unit (35) | 1 day | Tue 11/19/13 | Tue 11/19/13 |
| 33 | HPB -B1c Type D Door Unit (4) | 1 day | Tue 11/19/13 | Tue 11/19/13 |
| 34 | HPB-B1c Type A Transition (1) | 1 day | Fri 11/22/13 | Fri 11/22/13 |
| 35 | HPB-B1c Type B Transition (1) | 1 day | Fri 11/22/13 | Fri 11/22/13 |
| 36 | HPB-B1c TypeC Transition (1) | 1 day | Fri 11/22/13 | Fri 11/22/13 |
| 37 | Assembly/Glazing/Crating | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 38 | HPB-B1a Type A Typ. Unit (201) | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 39 | HPB-B1a Type B Typ. Unit (194) | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 40 | HPB -B1a Type C Typ. Unit (197) | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 41 | HPB-B1a Type L Louver (1) | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 42 | HPB-B1b Type A Outside Corner (23) | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 43 | HPB-B1b Type C Outside Corner (6) | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 44 | HPB-B1b Inside Corner (13) | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 45 | HPB-B1c Type A Outside Corner (1) | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 46 | HPB-B1c Type B Typical Unit (1) | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 47 | HPB-B1c Type B Typ.Unit (2) | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 48 | HPB- B1c Type C Outside Corner (6) | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 49 | HPB-B1c Type C Typ. Unit (35) | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 50 | HPB -B1c Type D Door Unit (4) | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 51 | HPB-B1c Type A Transition (1) | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 52 | HPB-B1c Type B Transition (1) | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 53 | HPB-B1c TypeC Transition (1) | 21 days | Fri 4/11/14 | Fri 5/9/14 |
| 54 | Parcel B Rel. 2 Floors 10-18 (1084) (Units) | 151 days | Fri 11/22/13 | Fri 6/20/14 |
| 55 | Engineering | 12 days | Fri 11/22/13 | Mon 12/9/13 |
| 56 | HPB-B2a Type A Typ. Unit (306) | 4 days | Fri 11/22/13 | Wed 11/27/13 |
| 57 | HPB-B2a Type B Typical Unit (339) | 4 days | Fri 11/22/13 | Wed 11/27/13 |
| 58 | HPB -2a Type C Typ. Unit (282) | 4 days | Fri 11/22/13 | Wed 11/27/13 |
| 59 | HPB-B2b Type A Outside Corner (124) | 11 days | Mon 11/25/13 | Mon 12/9/13 |
| 60 | HPB-B2b Inside Corner (26) | 11 days | Mon 11/25/13 | Mon 12/9/13 |

| | GLASSWALL | | | HPS COMPLETION SCHEDULE-PARCEL B | | | | | | | | | 4-4-14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|



| ID | Task Name | Duration | Start | Finish |
|---|---|---|---|---|
| 61 | HPB-B2c Type B Typ. Unit (2) | 8 days | Mon 11/25/13 | Wed 12/4/13 |
| 62 | HPB-B2c Type C Typ. Unit (3) | 8 days | Mon 11/25/13 | Wed 12/4/13 |
| 63 | HPB-B2c Type D Door Unit (2) | 8 days | Mon 11/25/13 | Wed 12/4/13 |
| 64 | **Fabrication** | **89 days** | **Thu 12/19/13** | **Tue 4/22/14** |
| 65 | HPB-B2a Type A Typ. Unit (306) | 89 days | Thu 12/19/13 | Tue 4/22/14 |
| 66 | HPB-B2a Type B Typ. Unit (339) | 89 days | Thu 12/19/13 | Tue 4/22/14 |
| 67 | HPB -2a Type C Typ. Unit (282) | 89 days | Thu 12/19/13 | Tue 4/22/14 |
| 68 | HPB-B2b Type A Outside Corner (124) | 89 days | Thu 12/19/13 | Tue 4/22/14 |
| 69 | HPB-B2b Inside Corner (26) | 89 days | Thu 12/19/13 | Tue 4/22/14 |
| 70 | HPB-B2c Type B Typ. Unit (2) | 89 days | Thu 12/19/13 | Tue 4/22/14 |
| 71 | HPB-B2c Type C Typ. Unit (3) | 89 days | Thu 12/19/13 | Tue 4/22/14 |
| 72 | HPB-B2c Type D Door Unit (2) | 89 days | Thu 12/19/13 | Tue 4/22/14 |
| 73 | **Assembly/Glazing/Crating** | **43 days** | **Wed 4/23/14** | **Fri 6/20/14** |
| 74 | HPB-B2a Type A Typ. Unit (306) | 43 days | Wed 4/23/14 | Fri 6/20/14 |
| 75 | HPB-B2a Type B Typ. Unit (339) | 33 days | Wed 5/7/14 | Fri 6/20/14 |
| 76 | HPB -2a Type C Typ. Unit (282) | 31 days | Fri 5/9/14 | Fri 6/20/14 |
| 77 | HPB-B2b Type A Outside Corner (124) | 33 days | Wed 5/7/14 | Fri 6/20/14 |
| 78 | HPB-B2b Inside Corner (26) | 22 days | Thu 5/22/14 | Fri 6/20/14 |
| 79 | HPB-B2c Type B Typ. Unit (2) | 21 days | Fri 5/23/14 | Fri 6/20/14 |
| 80 | HPB-B2c Type C Typ. Unit (3) | 21 days | Fri 5/23/14 | Fri 6/20/14 |
| 81 | HPB-B2c Type D Door Unit (2) | 21 days | Fri 5/23/14 | Fri 6/20/14 |
| 82 | **Parcel B Rel. 3 Floors 19-27 (920 Units)** | **207 days** | **Thu 11/28/13** | **Fri 9/12/14** |
| 83 | **Engineering** | **8 days** | **Thu 11/28/13** | **Mon 12/9/13** |
| 84 | HPB-B3a Type A Typ. Unit (257) | 8 days | Thu 11/28/13 | Mon 12/9/13 |
| 85 | HPB-B3a Type B Typ. Unit (304) | 8 days | Thu 11/28/13 | Mon 12/9/13 |
| 86 | HPB-B3a Type C Typ. Unit (247) | 8 days | Thu 11/28/13 | Mon 12/9/13 |
| 87 | HPB-B3b Type A Outside Corner (96) | 2 days | Fri 12/6/13 | Mon 12/9/13 |
| 88 | HPB-B2b Inside Corner (16) | 2 days | Fri 12/6/13 | Mon 12/9/13 |
| 89 | **Fabrication** | **110 days** | **Mon 1/27/14** | **Fri 6/27/14** |
| 90 | HPB-B3a Type A Typ. Unit (257) | 110 days | Mon 1/27/14 | Fri 6/27/14 |



| ID | Task Name | Duration | Start | Finish |
|---|---|---|---|---|
| 91 | HPB-B3a Type B Typ. Unit (304) | 110 days | Mon 1/27/14 | Fri 6/27/14 |
| 92 | HPB-B3a Type C Typ. Unit (247) | 110 days | Mon 1/27/14 | Fri 6/27/14 |
| 93 | HPB-B3b Type A Outside Corner (96) | 105 days | Mon 2/3/14 | Fri 6/27/14 |
| 94 | HPB-B2b Inside Corner (16) | 105 days | Mon 2/3/14 | Fri 6/27/14 |
| 95 | Assembly/Glazing/Crating | 80 days | Mon 5/26/14 | Fri 9/12/14 |
| 96 | HPB-B3a Type A Typ. Unit (257) | 80 days | Mon 5/26/14 | Fri 9/12/14 |
| 97 | HPB-B3a Type B Typ. Unit (304) | 70 days | Mon 6/9/14 | Fri 9/12/14 |
| 98 | HPB-B3a Type C Typ. Unit (247) | 58 days | Wed 6/25/14 | Fri 9/12/14 |
| 99 | HPB-B3b Type A Outside Corner (96) | 42 days | Thu 7/17/14 | Fri 9/12/14 |
| 100 | HPB-B2b Inside Corner (16) | 30 days | Mon 8/4/14 | Fri 9/12/14 |
| 101 | Parcel B Rel. 4 Floors 28-32 (623 Units) | 232 days | Mon 12/9/13 | Tue 10/28/14 |
| 102 | Engineering | 32 days | Mon 12/9/13 | Tue 1/21/14 |
| 103 | HPB-B4a Type A Typ. Unit (168) | 22 days | Mon 12/9/13 | Tue 1/7/14 |
| 104 | HPB-B4a Type B Typ. Unit (207) | 22 days | Mon 12/9/13 | Tue 1/7/14 |
| 105 | HPB-B4a Type C Typ. (167) | 22 days | Mon 12/9/13 | Tue 1/7/14 |
| 106 | HPB-B4b Type A Outside Corner (64) | 10 days | Wed 1/8/14 | Tue 1/21/14 |
| 107 | HPB-B4b Inside Corner(8) | 10 days | Wed 1/8/14 | Tue 1/21/14 |
| 108 | HPB-B4c Type A Transition (1) | 10 days | Wed 1/8/14 | Tue 1/21/14 |
| 109 | HPB-B4c Transition Unit (1) | 10 days | Wed 1/8/14 | Tue 1/21/14 |
| 110 | HPB-B4c Type D Door Unit (7) | 10 days | Wed 1/8/14 | Tue 1/21/14 |
| 111 | Fabrication | 90 days | Mon 3/17/14 | Fri 7/18/14 |
| 112 | HPB-B4a Type A Typ. Unit (168) | 90 days | Mon 3/17/14 | Fri 7/18/14 |
| 113 | HPB-B4a Type B Typ. Unit (207) | 90 days | Mon 3/17/14 | Fri 7/18/14 |
| 114 | HPB-B4a Type C Typ. (167) | 90 days | Mon 3/17/14 | Fri 7/18/14 |
| 115 | HPB-B4b Type A Outside Corner (64) | 81 days | Fri 3/28/14 | Fri 7/18/14 |
| 116 | HPB-B4b Inside Corner(8) | 81 days | Fri 3/28/14 | Fri 7/18/14 |
| 117 | HPB-B4c Type A Transition (1) | 81 days | Fri 3/28/14 | Fri 7/18/14 |
| 118 | HPB-B4c Transition Unit (1) | 81 days | Fri 3/28/14 | Fri 7/18/14 |
| 119 | HPB-B4c Type D Door Unit (7) | 81 days | Fri 3/28/14 | Fri 7/18/14 |
| 120 | Assembly/Glazing/Crating | 52 days | Mon 8/18/14 | Tue 10/28/14 |

GLASSWALL

HPS COMPLETION SCHEDULE-PARCEL B

4-4-14

| GLASSWALL | | HPS COMPLETION SCHEDULE-PARCEL B | | | 4-4-14 |
|---|---|---|---|---|---|

| ID | Task Name | Duration | Start | Finish | |
|---|---|---|---|---|---|
| 121 | HPB-B4a Type A Typ. Unit (168) | 52 days | Mon 8/18/14 | Tue 10/28/14 | HPB-B4a Type A Typ. Unit |
| 122 | HPB-B4a Type B Typ. Unit (207) | 47 days | Mon 8/25/14 | Tue 10/28/14 | HPB-B4a Type B Typ. Unit |
| 123 | HPB-B4a Type C Typ. (167) | 38 days | Fri 9/5/14 | Tue 10/28/14 | HPB-B4a Type C Typ. (167) |
| 124 | HPB-B4b Type A Outside Corner (64) | 32 days | Mon 9/15/14 | Tue 10/28/14 | HPB-B4b Type A Outside C |
| 125 | HPB-B4b Inside Corner(8) | 32 days | Mon 9/15/14 | Tue 10/28/14 | HPB-B4b Inside Corner(8) |
| 126 | HPB-B4c Type A Transition (1) | 32 days | Mon 9/15/14 | Tue 10/28/14 | HPB-B4c Type A Transition |
| 127 | HPB-B4c Transition Unit (1) | 32 days | Mon 9/15/14 | Tue 10/28/14 | HPB-B4c Transition Unit (1 |
| 128 | HPB-B4c Type D Door Unit (7) | 32 days | Mon 9/15/14 | Tue 10/28/14 | HPB-B4c Type D Door Unit |
| 129 | Lobby | 147 days | Mon 4/7/14 | Tue 10/28/14 | |
| 130 | Shop Drawing "Approval" | 10 days | Mon 4/14/14 | Fri 4/25/14 | |
| 131 | Procure Materials | 71 days | Mon 4/7/14 | Mon 7/14/14 | |
| 132 | Fabricate | 45 days | Mon 6/16/14 | Fri 8/15/14 | |
| 133 | Assemble/Glaze/Crate | 72 days | Mon 7/21/14 | Tue 10/28/14 | |

# EXHIBIT B

## Agreement to Amend Contracts
## Exhibit B

| Pay App Dates | HPS Bldg A | HPS  Bldg B |
|---|---|---|
| Mar-13 | ($18.34) | ($0.21) |
| Sep-13 | 6,019.32 | |
| Oct-13 | 809,097.38 | 0.50 |
| Nov-13 | 397,627.19 | 216,710.01 |
| Dec-13 | 577,444.71 | 430,185.55 |
| Jan-13 | 310,249.25 | 398,197.89 |
| Feb-14 | 713,513.72 | 34,916.03 |
| | $ 2,813,933.23 | $    1,080,009.77 |
| | Total-HPS A/B | $   3,893,943.00 |

# EXHIBIT C

Escrow Agreement

This Agreement is entered into among Glasswall, LLC ("Glasswall"), Westchester Fire Insurance Company ("WFIC") and Jason B. Giller, P.A. ("Escrow Agent") on this 4th day of April, 2014.

Whereas, Glasswall, Ugo Colombo, Sara Jane Colombo Kennedy, WFIC, Monadnock Construction, Inc. ("Monadnock"), HPS 50th Avenue Associates LLC and HPS Borden Avenue Associates LLC have entered into an Agreement dated April 4th, 2014 ("Agreement to Amend Contracts") that provides in part that WFIC will make certain payments to Glasswall that WFIC will pay into an escrow account ("Escrow Account 1");

Whereas, Glasswall and WFIC have entered into a separate agreement dated April 4th, 2014, ("Westchester Agreement") also providing, in part, that certain other payments will be made to Glasswall that WFIC will also pay into an escrow account ("Escrow Account 2");

Whereas the two agreements referred to above, to wit, the Agreement to Amend Contracts and the Westchester Agreement provide that WFIC will direct disbursements from the escrow accounts (Escrow Account 1 and Escrow Account 2 shall collectively be referred to as the "Escrow Accounts") to Glasswall and for payments by Glasswall to suppliers of materials for the performance of Glasswall's contracts with Monadnock.

Whereas Glasswall and WFIC wish to designate Jason B. Giller, P.A. as Escrow Agent to hold and disburse the funds to be paid into the Escrow Accounts and to provide the manner for the

authorization of the disbursement of the funds held in the Escrow Accounts in accordance with the applicable operative provisions in the Agreement to Amend Contracts and the Westchester Agreement.

Now, therefore, Glasswall, WFIC and Escrow Agent agree as follows:

1. The Escrow Agent shall establish the Escrow Accounts to hold the funds paid by WFIC to Glasswall that are to be paid into the Escrow Accounts pursuant to the terms of the Agreement to Amend Contracts and the Westchester Agreement.

2. Promptly upon receipt of written instruction by WFIC in the manner set forth in paragraph 4, the Escrow Agent shall issue checks from  Escrow Account 1 on behalf of Glasswall to such payees and in such amounts as Westchester may direct and shall cause those checks to be delivered to such payees at the addresses designated by Westchester.

3. Promptly upon the receipt of written instruction by WFIC in the manner set forth in paragraph 4, the Escrow Agent shall issue checks from Escrow Account 2 payable to Glasswall in such amounts as Westchester may direct and to deliver those checks to Glasswall.

4. The Escrow Agent shall disburse funds from the respective Escrow Accounts only upon receipt of written instruction by WFIC signed by Henry R. Minissale or by John J. Mangan.  Such written instructions may be given by transmission of an image of the written instruction by email or by facsimile transmission.

5. The Escrow Agent shall  provide to both Glasswall and WFIC, as each may from time to time reasonably request, copies of checks, bank account statements, correspondence and any and  and all other documents relating in any way to the Escrow Acccounts.

2

6. ESCROW AGENT.

    a.   Escrow Agent undertakes to perform only such duties as are expressly set forth in this Agreement. Escrow Agent shall not be deemed to have any implied duties or obligations under or related to this Agreement.

    b.   Escrow Agent may (a) act in reliance upon any writing or instrument or signature which it, in good faith, believes to be genuine; (b) assume the validity and accuracy of any statement or assertion contained in such a writing or instrument; and (c) assume that any person purporting to give any writing, notice, advice or instructions in connection with the provisions of this Agreement has been duly authorized to do so. Escrow Agent shall not be liable in any manner for the sufficiency or correctness as to form, manner of execution, or validity of any instrument deposited in escrow, nor as to the identity, authority, or right of any person executing any instrument; Escrow Agent's duties under this Agreement are and shall be limited to those duties specifically provided in this Agreement.

    c.   Escrow Agent may resign upon seven (7) days' written notice to WFIC and Glasswall. If a successor escrow agent is not appointed jointly by WFIC and Glasswall within the seven (7) day period, Escrow Agent may petition a court of competent jurisdiction to name a successor.

7. INDEMNIFICATION OF ESCROW AGENT.

    a.   The parties to this Agreement do and shall indemnify Escrow Agent and hold it harmless from any and all claims, liabilities, losses, actions, suits or proceedings at law or in equity, or other expenses, fees, or charges of any character or nature, including attorneys' fees and costs, which it may incur or with which it may be threatened by reason of its action as Escrow Agent under this Agreement, except

3

for such matters which are the result of Escrow Agent's gross negligence or willful malfeasance.

b.  If the parties (including Escrow Agent) shall be in disagreement about the interpretation of this Agreement, or about their respective rights and obligations, or about the propriety of any action contemplated by Escrow Agent, Escrow Agent may, but shall not be required to, file an action in interpleader to resolve the disagreement; upon filing such action, Escrow Agent shall be released from all obligations under this Agreement, except for providing such information, testimony, books and records as pertain to the administration of the Escrow Accounts as either party may reasonably request.  In addition, should any such disagreement arise, upon seven (7) days prior written notice, either party may direct the Escrow agent to file an action in interpleader.  Escrow Agent shall be indemnified for all costs and reasonable attorneys' fees, including those for appellate and post judgment matters and for paralegals and similar persons, incurred in its capacity as Escrow Agent in connection with any such interpleader action; Escrow Agent may represent itself in any such interpleader action and charge its usual and customary legal fees for such representation, and the court shall award such attorneys' fees, including those for appellate and post judgment matters and for paralegals and similar persons, to Escrow Agent from the losing party.  Escrow Agent shall be fully protected in suspending all or part of its activities under this Agreement until a final judgment in the interpleader action is received.

c.  Escrow Agent may consult with counsel of its own choice, including counsel within its own firm, and shall have full and complete authorization and protection

accordance with the opinion of such counsel.  Escrow Agent shall otherwise not be liable for any mistakes of fact or errors of judgment, or for any acts or omissions of any kind unless caused by its gross negligence or willful misconduct.


Jason B. Giller, PA

By: _____

Glasswall, LLC

By: _____


Westchester Fire Insurance Company

By: _____

LEGAL\18460033\1
LEGAL\18550528\2

in accordance with the opinion of such counsel.  Escrow Agent shall otherwise not be liable for any mistakes of fact or errors of judgment, or for any acts or omissions of any kind unless caused by its gross negligence or willful misconduct.


Jason B. Giller, PA                              Westchester Fire Insurance Company


By: _____               By: _____


Glasswall, LLC


By: _____

# EXHIBIT D

Glasswall, LLC

Hunter's Point Accounts Payable

as of:

3/17/2014

| | Due |
|---|---|
| Aemrican Express CPC | 342.73 |
| Aerotek | 451,707.44 |
| AGC Glass Company No. America | 1,534,399.05 |
| Air Performance, Inc | 360,353.11 |
| Alcoa Architectural Products | 6,511.49 |
| American Fasteners Corp | 4,669.01 |
| Bullet Construction | 116.89 |
| CAD Technical, Inc | 24,920.00 |
| Caldwell Mfg Co. NA, LLC | 87,036.24 |
| CMC Construction, Inc. | 92,693.36 |
| Coastal Construction | 11,836.21 |
| D LaMontana Transport | 6,600.00 |
| Dade County Aluminum | 13,095.19 |
| DP Express | 1,489.97 |
| Eastern Metal Supply | 654.84 |
| Eric's Industrial Supplies, Inc | 2,670.72 |
| Fastenal Company | 13.11 |
| Frank Lowe Rubber & Gaskets | 8,847.94 |
| GTI Industries, Inc. | 11,512.00 |
| Halfen USA, Inc. | 5,786.66 |
| Home Depot Credit Card | 11.74 |
| Interstate Screw | 5,877.74 |
| JLB Architectural Engineering | 7,690.00 |
| Keymark Corporation | 1,454,268.06 |
| Leon B. Murray | 8,375.00 |
| M&M Plastics | 2,254.51 |
| Markwell Florida | 1,652.08 |
| MCY Engineering | 21,420.00 |
| Meltpoint Plastics | 28,847.36 |
| Metalic Products, LLC. | 71,341.55 |
| Momentive Performance Material | 48,316.50 |
| Monticelli | 12,704.50 |
| MSC Industrial | 239.02 |
| MWL Engineering | 51,639.52 |
| Precision Metal | 19,353.94 |
| Prical | 1,035.00 |
| Service Partners of FL, LLC | 1,164.00 |
| SG Steel Service Co. | 205.69 |
| Sky Tool & Fasteners Corp. | 449.40 |
| Southeastern Freight Lines | 3,197.14 |
| State Line Products | 36,425.65 |
| Super Brite Screw Corp. | 4,245.00 |
| TB Philly Inc | 14,418.27 |
| TMB Machinery Corp | 84,341.00 |
| Trelleborg Sealing Profiles | 17,861.45 |
| Tremco Inc. | 23,972.01 |
| Uline, Inc | 282.48 |
| Wightman Lumber Co. | 21,848.60 |
| **Total Accounts Payable** | 4,568,693.17 |

# EXHIBIT E

**Quality Control Procedures**

1. **Quality Control**

   a. <u>Fabricated Panels – Tree Brackets</u>

IBA inspectors and/or Steve Barber to shadow Glasswall inspectors during Glasswall's current procedure for inspecting tree bracket positioning at Glasswall's factory.  Glasswall will draft a step by step description of its inspection procedure for use by IBA inspectors for review and approval of IBA and Monadnock.

   b. <u>IBA Site Monitoring</u>

Going forward, if IBA inspectors identify a deficiency, they must immediately bring the deficiency to the attention of Glasswall's Floor Manager.  The Floor Manager will address the issue and have it remedied in the presence of an IBA inspector.  IBA will then note in its report that the deficiency was satisfactorily resolved, and that item will be closed.  If the Floor Manager is not available, the IBA inspector must report to the Plant Manager and follow the same steps to remedy the deficiency.  If neither is available, the IBA inspector must report to the Project Manager.

   c. <u>Monadnock Field Checklists</u>

Glasswall will coordinate with the window installer, Ecker, regarding Monadnock's field checklists ("attached as "Attachment B")  to determine which items Glasswall will address in the factory or in the field, and which items Ecker will address during installation.  For items that Ecker will address, there will be an agreed to cap for corrective work per panel to limit Glasswall's exposure.

For aesthetic items, Monadnock agrees that the owner and/or architect, and not IBA, will make the final determination as to which items must be remedied.

   d. <u>IBA Requested Paperwork</u>

Glasswall will submit paperwork requested in IBA deficiency reports as quickly as possible and inform Monadnock if Glasswall does not believe it will be able to obtain the paperwork in less than 30 days.

   e. <u>Weekly Review</u>

Monadnock will coordinate a weekly conference between Monadnock, IBA and Glasswall to review status.

1

# EXHIBIT F

Escrow Agreement

This Escrow Agreement is entered into among Glasswall, LLC ("Glasswall"), Monadnock Construction, Inc. ("Monadnock"), HPS 50th Avenue Associates LLC ("HPS 50th") and HPS Borden Avenue Associates, LLC ("HPS Borden") (the HPS entities are collectively hereinafter referred to as "HPS") and Jason B. Giller, P.A. ("Escrow Agent") on this 4th day of April, 2014.

WHEREAS, Glasswall and Monadnock entered into an agreement dated January 3, 2013 whereby Glasswall would produce glass panel window assemblies and other materials ("HPS Parcel A Contract"); and

WHEREAS, Glasswall and Monadnock entered into an agreement dated January 3, 2013 whereby Glasswall would produce glass panel window assemblies and other materials ("HPS Parcel B Contract")(collectively the HPS Parcel A Contract and HPS Parcel B Contract shall be referred to as the "HPS Contracts"); and

WHEREAS, Glasswall, Westchester Fire Insurance Company ("WFIC"), Monadnock, HPS 50th and HPS Borden have entered into an Agreement dated April 4, 2014 ("Agreement to Amend Contracts"); and

WHEREAS, pursuant to Section 11 of the Agreement to Amend Contracts, within 10 days of the execution of the Agreement to Amend Contracts and upon written confirmation of certain funds to be wired from WFIC in the initial amount of $4,872,598, Glasswall shall deliver to the Escrow Agent any and all fabrication and assembly drawings ("Escrow Documents"); and

WHEREAS, Glasswall, Monadnock and HPS wish to designate Jason B. Giller, P.A. as Escrow Agent to hold the Escrow Documents subject to the terms of the Agreement to Amend Contracts and this Escrow Agreement.

NOW, THEREFORE, Glasswall, Monadnock, HPS and Escrow Agent agree as follows:

1.  The Escrow Agent shall establish an escrow account to hold the Escrow Documents in accordance with Section 11 of the Agreement to Amend Contracts.

2.  Glasswall shall deliver within ten (10) days of the date hereof, or upon receiving written confirmation of WFIC's wiring of the funds pursuant to Paragraph 2 of the Agreement to Amend Contracts, whichever occurs later, and shall thereafter continue to deliver during the remaining term of the HPS Contract, any and all fabrication and assembly drawings to an escrow account of the Escrow Agent.

3.  The Escrow Agent shall deliver to Monadnock the contents of the escrow account only if: (a) Glasswall is properly terminated pursuant to the terms of the Contracts, or (b) Glasswall becomes a party to any insolvency proceeding in a capacity as a debtor, including but not limited to reorganization, liquidation, bankruptcy or dissolution, not dismissed within 30 days of commencement.

4.  <u>ESCROW AGENT</u>.

    a.  Escrow Agent undertakes to perform only such duties as are expressly set forth in this Escrow Agreement. Escrow Agent shall not be deemed to have any implied duties or obligations under or related to this Escrow Agreement.

    b.  Escrow Agent shall not be liable in any manner for the sufficiency or correctness as to form, manner of execution, or validity of any document deposited in escrow, nor as to the identity, authority, or right of any person delivering or causing such delivery to be made; Escrow Agent's duties under this Escrow Agreement are and shall be limited to those duties specifically provided in this Escrow Agreement.

    c.  Escrow Agent may resign upon seven (7) days' written notice to the parties. If a successor escrow agent is not appointed jointly by HPS, Monadnock and

2

Glasswall, then the Escrow Agent may petition a court of competent jurisdiction to name a successor.

5. <u>INDEMNIFICATION OF ESCROW AGENT.</u>

    a.   The parties to this Escrow Agreement do and shall indemnify Escrow Agent and hold it harmless from any and all claims, liabilities, losses, actions, suits or proceedings at law or in equity, or other expenses, fees, or charges of any character or nature, including attorneys' fees and costs, which it may incur or with which it may be threatened by reason of its action as Escrow Agent under this Escrow Agreement, except for such matters which are the result of Escrow Agent's gross negligence or willful malfeasance.

    b.  If the parties (including Escrow Agent) shall be in disagreement about the interpretation of this Escrow Agreement, or about their respective rights and obligations, or about the propriety of any action contemplated by Escrow Agent, Escrow Agent may, but shall not be required to, file an action in interpleader to resolve the disagreement; upon filing such action, Escrow Agent shall be released from all obligations under this Escrow Agreement, except for providing such information, testimony, books and records as pertain to the administration of the escrow account as either party may reasonably request. In addition, should any such disagreement arise, upon seven (7) days prior written notice, either party may direct the Escrow Agent to file an action in interpleader. Escrow Agent shall be indemnified for all costs and reasonable attorneys' fees, including those for appellate and post judgment matters and for paralegals and similar persons, incurred in its capacity as Escrow Agent in connection with any such interpleader action; Escrow Agent may represent itself in any such interpleader action and

3

charge its usual and customary legal fees for such representation, and the court shall award such attorneys' fees, including those for appellate and post judgment matters and for paralegals and similar persons, to Escrow Agent from the losing party. Escrow Agent shall be fully protected in suspending all or part of its activities under this Escrow Agreement until a final judgment in the interpleader action is received.

c. Escrow Agent may consult with counsel of its own choice, including counsel within its own firm, and shall have full and complete authorization and protection in accordance with the opinion of such counsel. Escrow Agent shall otherwise not be liable for any mistakes of fact or errors of judgment, or for any acts or omissions of any kind unless caused by its gross negligence or willful misconduct.

[Signature Page to Follow]

JASON B. GILLER, P.A.

By: _____


HPS 50th AVENUE ASSOCIATES, LLC

By: _____


GLASSWALL, LLC

By: _____


HPS BORDEN AVENUE ASSOCIATES, LLC

By: _____


MONADNOCK CONSTRUCTION, INC.

By: _____


5

JASON B. GILLER, P.A.

By: _____

GLASSWALL, LLC

By: _____

MONADNOCK CONSTRUCTION, INC.

By: _____


HPS 50th AVENUE ASSOCIATES, LLC

By: _____

HPS BORDEN AVENUE ASSOCIATES, LLC

By: _____

5

# EXHIBIT G

## ESCROW AGREEMENT

Agreement, dated as of April 4, 2014, by and among Glasswall, LLC ("Glasswall"), Ugo Colombo and Sara Jayne Colombo Kennedy (both hereinafter referred to as the "Indemnitors"), Westchester Fire Insurance Company ("WFIC"), Monadnock Construction, Inc. ("Monadnock"), HPS 50th Avenue Associates LLC and HPS Borden Avenue Associates LLC (the HPS entities are collectively hereinafter referred to as "HPS"), and Duane Morris LLP ("Escrow Agent") (collectively, the "Parties").

<u>WITNESSETH</u>

**WHEREAS**, the Parties have entered into an Agreement to Amend Contracts, dated April 4, 2014 ("Agreement to Amend Contracts") to resolve certain claims, which provides that if Monadnock asserts that any payment due to WFIC under the terms of the Contracts (as defined in the Agreement to Amend Contracts) should be reduced based on a backcharge, change order or similar reduction permitted under the terms of the Contracts and arising after the date of the Agreement to Amend Contracts, Monadnock shall make payment to WFIC by payment of the amount of the asserted backcharge, change order or other reduction to the escrow account of Duane Morris LLP ("Escrow Amount");

**WHEREAS**, Duane Morris LLP, 1540 Broadway, New York, NY 10036 ("Escrow Agent") is willing to serve as escrow agent and hold the Escrow Amount in accordance with the terms and conditions hereof;

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      In accordance with Paragraph 13 of the Agreement to Amend Contracts, Monadnock shall deposit certain funds into an escrow account of the Escrow Agent in the event that Monadnock asserts that any payment to WFIC should be reduced based on a backcharge, change order or similar reduction permitted under the terms of the Contracts, as amended.  This Escrow Agreement is annexed as Exhibit G to the Agreement to Amend Contracts.

2.      Escrow Agent shall hold the Escrow Amount pursuant to the terms of this Agreement.

3.      In accordance with Paragraph 13 of the Agreement to Amend Contracts, Escrow Agent shall release the Escrow Amount (or a portion or portions thereof) to WFIC or Monadnock or any other entity they jointly designate, provided: (a) all of the Parties agree and notify Escrow Agent in writing of such agreement that the Escrow Amount shall be delivered to Monadnock or WFIC or their designee, or (b) any or all of the Parties deliver to Escrow Agent a true and correct copy of a binding, final, non-appealable arbitration decision providing for the disposition of the Escrow Amount.

4.      The duties of Escrow Agent are only as herein specifically provided and are purely ministerial in nature.  Escrow Agent shall neither be responsible for or under, nor chargeable with knowledge of, the terms and conditions of any other agreement, instrument, or document in connection herewith, and shall be required to act in respect of the Escrow Amount only as

provided in this Escrow Agreement. This Escrow Agreement sets forth all the obligations of Escrow Agent with respect to any and all matters pertinent to the escrow contemplated hereunder and no additional obligations of Escrow Agent shall be implied from the terms of this Escrow Agreement or any other agreement. Escrow Agent shall incur no liability in connection with the discharge of its obligations under this Escrow Agreement or otherwise in connection therewith, except such liability as may arise from the gross negligence, bad faith, or willful misconduct of Escrow Agent or such liability as may arise from applicable laws or rules of professional conduct applicable to Escrow Agent.

5.      Escrow Agent may consult with counsel of its choice and shall not be liable for any action taken or omitted to be taken by Escrow Agent in accordance with the advice of such counsel.

6.      Escrow Agent shall not be bound by any modification, cancellation, or rescission of this Escrow Agreement unless in writing and signed by Escrow Agent.

7.      If for any reason Escrow Agent shall in good faith elect not to release the Escrow Amount, Escrow Agent shall continue to hold the Escrow Amount until otherwise directed by written notice from each of the Parties confirming that the Escrow Amount may be released, or a final non-appealable judgment, order, or decree of a Court. However, Escrow Agent shall have the right at any time to deposit the Escrow Amount with the Clerk of the Court in New York County, and shall give Notice of such deposit to the Parties. Upon such deposit or other disbursement in accordance with the terms of this Escrow Agreement, Escrow Agent shall be relieved and discharged of all further obligations and responsibilities hereunder.

8.      The Parties acknowledge that, although Escrow Agent is maintaining the Escrow Amount for Monadnock and WFIC, for all other purposes, Escrow Agent is acting solely as a stakeholder at the request of the Parties and for their convenience, and that Escrow Agent shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this Escrow Agreement or involving gross negligence on the part of Escrow Agent. The Parties to this Escrow Agreement jointly and severally agree to defend, indemnify and hold Escrow Agent harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) Escrow Agent incurs solely in connection with the performance of Escrow Agent's duties hereunder, except with respect to actions or omissions taken or suffered by Escrow Agent in bad faith or in willful disregard of this Escrow Agreement or involving gross negligence on the part of Escrow Agent.

9.      Escrow Agent may act or refrain from action in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by Escrow Agent (including any member of Escrow Agent's firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

10.     Escrow Agent or any member of its firm shall be permitted to act as counsel for HPS or Monadnock in any dispute as to the delivery of the Escrow Amount or any other dispute between the Parties whether or not Escrow Agent is in possession of the Escrow Amount and continues to act as Escrow Agent.

DM1\4518920.2

11.     The Escrow Agent may resign by giving notice in writing to the Parties of such resignation, specifying a date when such resignation shall take effect (which shall in no event be earlier than 30 days after giving of such notice).  Upon any such resignation or replacement, the Escrow Agent shall be discharged from its duties and obligations hereafter upon the delivery to such successor of the Escrow Amount.  Immediately upon receipt of such notice of resignation or delivery of such notice of replacement, the Parties shall mutually agree upon and appoint a successor escrow agent who shall be mutually acceptable to them.  Any such successor escrow agent shall deliver to the Parties and to the resigning or replaced Escrow Agent a written instrument accepting such appointment hereunder, and shall be entitled to receive the Escrow Amount.  In the event that a successor escrow agent shall not be so appointed by the date of resignation specified by the Escrow Agent or immediately following the date notice of replacement is received by the Escrow Agent, Escrow Agent shall have the right to petition a court of competent jurisdiction for appointment of a successor escrow agent, and the Parties hereto agree to accept any successor escrow agent appointed by such court.

12.     All notices and other communications hereunder shall be in writing to the Parties or the Escrow Agent by electronic mail and overnight delivery at the addresses following their signatures below.  Notices sent as aforesaid shall be deemed given and effective upon delivery of such electronic mail.

13.     This Escrow Agreement shall inure to the benefit of, and be binding upon, the Parties hereto and their respective successors and assigns.  Nothing in this Escrow Agreement, express or implied, shall give to anyone, other than the Parties hereto and their respective permitted successors and assigns, any benefit, or any legal or equitable right, remedy or claim, under or in respect of this Escrow Agreement or the escrow contemplated hereby.

14.     Escrow Agent, provided that Escrow Agent is acting in good faith, may conclusively presume the genuineness of all signatures on documents and instruments that Escrow Agent receives and the authority of any person purporting to act on behalf of a party that is not a natural person.   Except to the extent that applicable law or rules of professional conduct that are applicable to Escrow Agent acting as an escrow agent provide otherwise, Escrow Agent shall have no liability hereunder other than for acts or omissions of Escrow Agent that constitute gross negligence, bad faith, or willful misconduct.

15.     This Escrow Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York (without regard to principles of conflicts of law).  All actions against Escrow Agent arising under or relating to this Escrow Agreement shall be brought against Escrow Agent exclusively in New York Supreme Court, New York County, in the State of New York.

16.     This Escrow Agreement may be executed in counterparts, each of which shall be an original and all of which, together, shall constitute one agreement.  Counterparts delivered via facsimile shall be deemed originals for purposes of this Escrow Agreement.

17.     The rights of Escrow Agent contained in this Escrow Agreement, including without limitation the right to indemnification, shall survive the termination of the escrow contemplated hereunder.

18.     This Escrow Agreement sets forth the entire understanding of the Parties with respect to the subject matter hereof, supersedes all existing agreements between them concerning such subject matter, and may be modified only by a written instrument duly executed by each party.

[Signature Page to Follow]

**IN WITNESS WHEREOF,** the Parties hereto have caused this Escrow Agreement to be duly executed as of the day and year first written above.

Glasswall, LLC
3550 NW 49th Street
Miami, FL 33142


By:_____
John Anderson, President
Email address:_____

Monadnock Construction, Inc.
155 3rd Street
Brooklyn, NY 11231


By: _____
Greg Bauso, Executive VP
Email address:_____

HPS 50th Avenue
Associates LLC
c/o The Related Companies, LP
60 Columbus Circle
New York, NY 10023

By:_____
Frank Monterisi, VP
Email address:_____


Indemnitor
3550 NW 49th Street
Miami, FL 33142
Attn: Ugo Colombo


By: _~~Colombo~~_
Ugo Colombo
Email address: _ucolomboe_
_cmcrealestck_.com

Indemnitor
5020 North Bay Road
Miami Beach, FL. 33140
Attn: Sara Jayne Colombo
Kennedy


By:_____
Sara Jayne Colombo Kennedy
Email address:_____

HPS Borden Avenue
Associates LLC
c/o The Related Companies, LP
60 Columbus Circle
New York, NY 10023


By:_____
Frank Monterisi, VP
Email address:_____


Duane Morris LLP
1540 Broadway
New York, NY 10036


By: _____

Westchester Fire Insurance
Company
c/o Ace North American Claims
PO Box 5108
Scranton, PA 18505-0525


By: _____
Henry Minissale, VP
Email address:
henry.minissale@acegroup.com

DM1\4518920.2

**IN WITNESS WHEREOF**, the Parties hereto have caused this Escrow Agreement to be duly executed as of the day and year first written above.

Glasswall, LLC
3550 NW 49th Street
Miami, FL 33142

By: _____
John Anderson, President
Email address: _JANDERSON_@
_GLASSWALL.COM_

Monadnock Construction, Inc.
155 3rd Street
Brooklyn, NY 11231

By: _____
Greg Bauso, Executive VP
Email address:_____

HPS 50th Avenue
Associates LLC
c/o The Related Companies, LP
60 Columbus Circle
New York, NY 10023

By:_____
Frank Monterisi, VP
Email address:_____

Indemnitor
3550 NW 49th Street
Miami, FL 33142
Attn: Ugo Colombo

By:_____
Ugo Colombo
Email address:_____

Indemnitor
5020 North Bay Road
Miami Beach, FL. 33140
Attn: Sara Jayne Colombo
Kennedy

By:_____
Sara Jayne Colombo Kennedy
Email address:_____

HPS Borden Avenue
Associates LLC
c/o The Related Companies, LP
60 Columbus Circle
New York, NY 10023

By:_____
Frank Monterisi, VP
Email address:_____

Duane Morris LLP
1540 Broadway
New York, NY 10036

By: _____

Westchester Fire Insurance
Company
c/o Ace North American Claims
PO Box 5108
Scranton, PA 18505-0525

By: _____
Henry Minissale, VP
Email address:
henry.minissale@acegroup.com

DM1\4518920.2

**IN WITNESS WHEREOF**, the Parties hereto have caused this Escrow Agreement to be duly executed as of the day and year first written above.

Glasswall, LLC
3550 NW 49th Street
Miami, FL 33142

By:_____
John Anderson, President
Email address:_____

Monadnock Construction, Inc.
155 3rd Street
Brooklyn, NY 11231

By: _____
Greg Bauso, Executive VP
Email address:_____

HPS 50th Avenue
Associates LLC
c/o The Related Companies, LP
60 Columbus Circle
New York, NY 10023

By: _____
Frank Monterisi, VP
Email address: fmonterisi@related.com

Indemnitor
3550 NW 49th Street
Miami, FL 33142
Attn: Ugo Colombo

By:_____
Ugo Colombo
Email address:_____

Indemnitor
5020 North Bay Road
Miami Beach, FL. 33140
Attn: Sara Jayne Colombo
Kennedy

By:_____
Sara Jayne Colombo Kennedy
Email address:_____

HPS Borden Avenue
Associates LLC
c/o The Related Companies, LP
60 Columbus Circle
New York, NY 10023

By: _____
Frank Monterisi, VP
Email address: fmonterisi@related.com

Duane Morris LLP
1540 Broadway
New York, NY 10036

By: _____

Westchester Fire Insurance
Company
c/o Ace North American Claims
PO Box 5108
Scranton, PA 18505-0525

By: _____
Henry Minissale, VP
Email address:
henry.minissale@acegroup.com

DM1\4518920 2

**IN WITNESS WHEREOF**, the Parties hereto have caused this Escrow Agreement to be duly executed as of the day and year first written above.

Glasswall, LLC
3550 NW 49th Street
Miami, FL 33142

By:_____
John Anderson, President
Email address:_____

Monadnock Construction, Inc.
155 3rd Street
Brooklyn, NY 11231

By: _____
Greg Bauso, Executive VP
Email address:_____

HPS 50th Avenue
Associates LLC
c/o The Related Companies, LP
60 Columbus Circle
New York, NY 10023

By:_____
Frank Monterisi, VP
Email address:_____

Indemnitor
3550 NW 49th Street
Miami, FL 33142
Attn: Ugo Colombo

By:_____
Ugo Colombo
Email address:_____

Indemnitor
5020 North Bay Road
Miami Beach, FL. 33140
Attn: Sara Jayne Colombo
Kennedy

By:_____
Sara Jayne Colombo Kennedy
Email address:_____

HPS Borden Avenue
Associates LLC
c/o The Related Companies, LP
60 Columbus Circle
New York, NY 10023

By:_____
Frank Monterisi, VP
Email address:_____

Duane Morris LLP
1540 Broadway
New York, NY 10036

By: _____

Westchester Fire Insurance
Company
c/o Ace North American Claims
PO Box 5108
Scranton, PA 18505-0525

By: _____
Henry Minissale, VP
Email address:
henry.minissale@acegroup.com

IN WITNESS WHEREOF, the Parties hereto have caused this Escrow Agreement to be duly executed as of the day and year first written above.

Glasswall, LLC
3550 NW 49th Street
Miami, FL 33142

By:_____
John Anderson, President
Email
address:_____

Monadnock Construction, Inc.
155 3rd Street
Brooklyn, NY 11231

By: _____
Greg Bauso, Executive VP
Email
address:_____

HPS 50th Avenue
Associates LLC
c/o The Related Companies, LP
60 Columbus Circle
New York, NY 10023

By:_____
Frank Monterisi, VP
Email address:_____

Indemnitor
3550 NW 49th Street
Miami, FL 33142
Attn: Ugo Colombo

By:_____
Ugo Colombo
Email
address:_____

Duane Morris LLP
1540 Broadway
New York, NY 10036

By: _____
Name: _____
Email
address:_____

Indemnitor
5020 North Bay Road
Miami Beach, FL. 33140
Attn: Sara Jayne Colombo
Kennedy

By:_____
Sara Jayne Colombo Kennedy
Email
address: ladynest@gmail.com

HPS Borden Avenue
Associates LLC
c/o The Related Companies, LP
60 Columbus Circle
New York, NY 10023

By: _____
Frank Monterisi, VP
Email address:_____

4