UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

MONADNOCK CONSTRUCTION, INC.,

                Plaintiff,

-against-    Case No.: 16 CIV 00420 (JBW)
                ECF Case

WESTCHESTER FIRE INSURANCE
COMPANY,
                Defendant.
----------------------------------------------------------------X


# MEMORANDUM OF LAW IN OPPOSITION TO

# DEFENDANT'S MOTION TO DISMISS


WACHTEL MISSRY LLP
885 Second Avenue
New York, NY 10017
(212) 909-9500

047842-002/00029250-3

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................(ii)

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND ................................................................................................3

ARGUMENT .........................................................................................................................5

    STANDARD ...............................................................................................................5

    POINT I
    THE CONTRACTUAL 2-YEAR LIMITATIONS PERIOD STARTED
    TO RUN FROM MARCH 2015 AND THIS CASE IS TIMELY FILED ..........................6

    POINT II
    THE AMENDMENT AGREEMETN VALIDLY
    TOLLED MONADNOCK'S CLAIMS ................................................................................6

    POINT III
    WFIC IS ESTOPPED FROM ASSERTING
    A CONTRACTUAL LIMITATIONS PERIOD DEFENSE ................................................9

CONCLUSION ....................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*509 Sixth Ave. Corp. v. New York City Transit Auth.*,
   24 A.D.2d 975 (1965)……………………...……………………………………………..…….11

*Allenby, LLC v. Credit Suisse, AG*,
   47 Misc. 3d 1203(A) (N.Y. Sup. Ct.)
   *aff'd* 134 A.D.3d 577 (N.Y. App. Div. 2015)……………....………………………….…….9

*Bayridge Air Rights, Inc. v. Blitman Const. Corp.*,
   80 N.Y.2d 777 (1992)…………………....………………………………………………… 8,9

*Bernstein v. Seeman*,
   601 F. Supp. 2d 555 (S.D.N.Y. 2009) ………..……...…………………………………….5

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) …………..………...……………..…………………………... 5

*City of New York v. Black & Veatch*,
   1997 WL 624985 (S.D.N.Y. Oct. 6, 1997) ……………….…..……………………………9

*Doe v. Blue Cross & Blue Shield United of Wisconsin*,
   112 F.3d 869 (7th Cir. 1997) ……………….……………………………………………...*passim*

*Gotlin v. Lederman*,
   2006 WL 1154817 (E.D.N.Y. Apr. 28, 2006) ……….………….…..….…..…………....11

*Int'l Fid. Ins. Co. v. Cty. of Rockland*,
   98 F. Supp. 2d 400 (S.D.N.Y. 2000) ……….……...…..……………………………….7

*LaMantia v. Voluntary Plan Administrators, Inc.*,
   401 F.3d 1114 (9th Cir. 2005) ……………….……..………………………………..………10

*Mathis v. United Homes, LLC*,
   607 F. Supp. 2d 411 (E.D.N.Y. 2009) …………………………..…………………….... 5

*Ortiz v. City of New York*,
   28 A.D.2d 1098 (1967) …………..…...…………………………………………….….. 11

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) ………..…..……..………..…….............................. 1,6

*T & N PLC v. Fred S. James & Co. of New York*,
   29 F.3d 57 (2d Cir. 1994) …………………..……………………….………..…………….9

*Villager Pond, Inc. v. Town of Darien*,
  56 F.3d 375(2d Cir. 1995) ………..…………………………………………………………….5

**Statutes**

New York Civil Practice Laws and Rules § 213 ..……….……………………….............…7,8

New York General Obligations Law § 17-103 ...……….…………………….......……*passim*

Plaintiff Monadnock Construction, Inc. ("Monadnock"), respectfully submits this opposition to the motion to dismiss filed on April 4, 2016, by defendant Westchester Fire Insurance Company ("WFIC").

## PRELIMINARY STATEMENT

In 2013, Monadnock hired Glasswall LLC to provide over 8,000 windows for two 30-plus story mixed use, affordable housing buildings in Long Island City. WFIC issued performance bonds for the job. Glasswall failed to deliver the windows on time which led to default letters in September 2013 and a termination in January 2014. Once Glasswall was terminated, WFIC was called on to perform under the bonds. It refused.

In April 2014, Monadnock, Glasswall and WFIC, entered into an "Agreement to Amend Contracts" (the "Amendment Agreement") under which the parties agreed to allow Glasswall to perform and deliver the windows the projects required. As part of the Amendment Agreement, which WFIC signed, Monandock and WFIC agreed that the prior defaults, terminations and "Bond claims" were withdrawn without prejudice. (See Kleinhendler Decl., Ex. C, p.3, ¶7).[1] The parties further agreed that all claims between or among them would be deferred until the completion of the Glasswall contracts or Glasswall's termination. (*Id.*, p.4, ¶9). Glasswall continued to fail to perform and in March 2015, Monadnock defaulted and then terminated Glasswall and called on WFIC to perform under the bonds. WFIC refused.

WFIC seeks to avoid liability for its refusal to honor its commitment under the performance bonds by arguing that this case, brought on December 22, 2015, is untimely

---

[1] "Kleinhendler Decl." refers to the Declaration of Howard Kleinhendler, dated April 18, 2016, in opposition to motion to dismiss. It is well settled that documents referred to in the complaint may be considered on a motion to dismiss. *Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000).

because it is more than two years after the initial September 2013 default notice from Monadnock to Glasswall. This argument is baseless.

The September 2013 default notice, the subsequent Glasswall termination and all Bond claims derived from them, **were withdrawn** per the written consent of WFIC under the April 2014 Amendment Agreement. During the 11-month duration of that agreement, from April 2014 until March 2015, the parties deferred all claims against each other. It was only after Glasswall continued to refuse to deliver the windows on time and in the proper condition that, in March 2015, Monadnock defaulted Glasswall and called on WFIC to perform under the bonds. In short, the relevant default, termination and claim against WFIC derive from the March 2015, post Amendment Agreement, default and termination. Thus, this case is timely filed.

Remarkably, in its moving papers, WFIC does not disclose or discuss that the Amendment Agreement provided for the withdrawal of the prior Bond claims. Its motion is utterly without merit.

Separately, WFIC's arguments are simply wrong. The deferral of all claims between Monadnock and WFIC under the Amendment Agreement for its 11-month duration tolled any contractual suit limitation for that time. Thus, even under the September 2013 default, this case is timely filed. NY GOL 17-103, which calls into question tolling agreements of indefinite duration, applies only when seeking to enlarge the statutory statute of limitations, i.e. here, the six-year statue for contract actions, not a shorter two-year contractual limitations period. Indeed, under well-established law, by executing the Amendment Agreement which required Monadnock to defer all claims, WFIC is estopped from asserting that the two-year limitations period ended in September 2015, after it agreed to a deferral of claims for an intervening 11 months.

Accordingly, the motion should be denied.

## FACTUAL BACKGROUND

Monadnock, a general contractor, was tasked with the construction of two mixed-use commercial and affordable housing projects in the Hunters Point Section of Long Island City, New York, known as HPS "Parcel A" and HPS "Parcel B" (the "Projects"). (Complaint ¶ 8-10.) On January 3, 2013, Monadnock entered into modified form AIA subcontractor agreements with Glasswall, LLC ("Glasswall") (collectively, the "Contracts") to produce and deliver window assemblies and other materials for the Projects. (Complaint ¶8.) Glasswall was to start delivering these window assemblies and other materials on September 1, 2013 for Parcel A and July 1, 2013 for Parcel B. (Complaint ¶13.)

As per the Contracts, Glasswall obtained performance bonds from WFIC; Performance Bond No. K08840295 dated February 12, 2013 for HPS Parcel A, and Performance Bond No. K08840258 dated February 11, 2013 for HPS Parcel B in the amounts of the Contracts (collectively, the "Bonds"). (Complaint ¶12, Kleinhendler Decl. Ex. A.)

Glasswall failed to timely produce and deliver window assemblies and other materials, thus prompting Monadnock to declare a default on September 13, 2013 (the "September 2013 Default Notice") and notices of continuing defaults on October 23, 2013 and December 31, 2003 (collectively, the "2013 Defaults"). (Complaint ¶30, Kleinhendler Decl. Ex. B.) On January 13, 2014, Monadnock terminated Glasswall's Contracts and made a demand on WFIC under the Bonds to take over the work. (Complaint ¶¶32-33.) WFIC denied coverage under the Bonds. (Complaint ¶34.)

Over the next several months, in an effort to mitigate its damages, Monadnock negotiated and subsequently, on April 4, 2014, entered into the Amendment Agreement with, among others,

Glasswall and WFIC. (Complaint ¶37, Kleinhendler Decl. Ex. C.) At the outset, the Amendment Agreement identifies the Glasswall Contracts and the Bonds, as among those documents subject to amendment. (Kleinhendler Decl. Ex. C, p.1, Third Whereas Clause.)

An integral part of the Amendment Agreement was the parties' assent to withdraw all prior claims asserted through the 2013 Defaults and the subsequent termination, without prejudice to any later reinstatement:

> 7. **The terminations and Bond claims are hereby withdrawn**. Such withdrawal is without prejudice to the claims of any party nor shall it be deemed a waiver of any rights. The Bonds, at their full limits, remain in place.

(*Id.* ¶7, emphasis added.)

Additionally, the Amendment Agreement significantly changed the Contracts' and Bonds' claims procedures and deferred all claims that had arisen prior to April 4, 2014, as well as those thereafter occurring, until the earlier of the completion of the work or the termination of the Contracts:

> 9. **All claims by and/or among Glasswall, the Indemnitors, Monadnock, HPS and WFIC relating to the Contracts, Bonds,** Indemnity Agreements **or actions of the parties thereto**, including but not limited to the Glasswall/Indemnitor Claims and the Monadnock Claims and those asserted or that could have been asserted in the Florida Actions and the New York Action **will be deferred until completion of the Contracts or a termination thereof in accordance with the terms of the Contracts (as modified herein), whichever shall occur sooner.**

(*Id.* ¶ 9, emphasis added.)

Notwithstanding the withdrawals of prior claims and Monadnock's willingness to give Glasswall a second chance under the Amendment Agreement, Glasswall continued to fail to meet its obligations under the Contracts. (Complaint ¶53.) Thus, on March 4, 2015, Monadnock served a Notice of Default on Glasswall (the "March 2015 Default"). (Complaint ¶¶53-55.)

047842-002/00029250-3                                4

(Kleinhendler Decl., Ex. D.)  The March 2015 Default detailed 30 points of default and was far more extensive than the original September 2013 Default Notice, which had been withdrawn under the Amendment Agreement.  (*Compare* September 2013 Default Notice *with* March 2015 Default Notice, Kleinhendler Decl., Exs. B, D.)

Subsequently on March 16, 2015, Monadnock terminated the Contracts and made a demand on WFIC under the Bonds. (Kleinhendler Decl., Ex. E.)  On April 25, 2015, WFIC denied coverage and refused to perform.  (Complaint ¶¶55-58.)

The instant action was commenced on December 22, 2015, by summons with notice and was subsequently removed to this Court.  Monadnock's Complaint was filed on March 1, 2016, and is based on the March 2015 Default Notice, the termination of the Contracts and its demand for performance made against WFIC in March 2015.

## ARGUMENT

## STANDARD

In reviewing a motion to dismiss, courts construe the complaint liberally, accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). "[T]he issue is not whether a . . . plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Mathis v. United Homes, LLC*, 607 F. Supp. 2d 411, 418 (E.D.N.Y. 2009) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[C]laims for breach of contract . . . are not subject to a heightened pleading standard, and a motion to dismiss is not the proper stage at which to resolve factual disputes."  *Bernstein v. Seeman*, 601 F. Supp. 2d 555, 556 (S.D.N.Y. 2009).

Moreover, in adjudicating a motion to dismiss, the Second Circuit "has deemed a complaint to include any written instrument attached to it as an exhibit or any statements or

documents incorporated in it by reference, as well as... documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit". *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

## POINT I

### THE CONTRACTUAL 2-YEAR LIMITATIONS PERIOD STARTED TO RUN FROM MARCH 2015 AND THIS CASE IS TIMELY FILED

The Amendment Agreement, signed by WFIC and which incorporates by reference the Bonds, specifically provides that the "terminations and Bond claims are hereby withdrawn" without prejudice or waiver of rights. (Kleinhendler Decl., Ex.C, ¶7.) The Amendment Agreement further required all parties, including Monadnock and WFIC, to defer all claims between them until the Contracts were terminated. (*Id*.) Plainly, for the eleven months that the Amendment Agreement was in place, there were no claims pending, nor could any be asserted, by Monadnock against either Glasswall or WFIC. It was only after the termination of the Contracts in March 2015, that Monadnock was able to default Glasswall, terminate the Contracts and then assert a claim against WFIC.

Remarkably, in its moving papers, WFIC says nothing about the withdrawal of claims provision in the Amendment Agreement. Instead, it argues that the September 2013 Default Notice triggered the two-year contractual limitations period under Section 11 of the Bonds. However, that default notice, the other 2013 Defaults, Glasswall's subsequent termination in January 2014, and all "Bond claims" were withdrawn, with the written consent of WFIC, under Section 7 of the Amendment Agreement.

It is well settled that contractual limitations periods that are shorter than the statutory period[2] "are construed strictly against the party invoking the shorter period." *Int'l Fid. Ins. Co. v. Cty. of Rockland*, 98 F. Supp. 2d 400, 409 (S.D.N.Y. 2000) (collecting cases). WFIC's contract interpretation is not consistent with this principle. There is no plausible basis upon which to conclude that when the parties agreed in April 2014 in the Amendment Agreement to withdraw their claims and defer all actions, that any subsequent default notice would be subject to the limitations period commencing from the original, withdrawn, September 2013 Default Notice. Had the parties contemplated that, they could have specifically provided for it in the Amendment Agreement; but they did not. Thus, construing the shortened limitations period against WFIC, this Court must conclude that the two-year limitations period runs from the March 2015 Default, which renders this case timely filed.

## POINT II

**THE AMENDMENT AGREEMENT VALIDLY TOLLED MONADNOCK'S CLAIMS**

Assuming *arguendo* that the contractual limitations period was, as WFIC argues, triggered in September 2013, the Amendment Agreement effectively tolled Monadnock's claims for 11 months. Thus, Monadnock's claims, filed on December 22, 2015, are timely. WFIC argues that the parties' agreement to defer claims until the Glasswall Contracts are either completed or terminated is indefinite and unenforceable under NY GOL 17-103. (Kleinhendler Decl., Ex.C, ¶9.) Clearly, that is not the case.

To begin with, the deferral of claims is linked to objectively delineated events which could not go on indefinitely. Glasswall was either going to perform in a timely manner or be

---

[2] There is no dispute that, under New York law, the statutory limitations applicable in this breach of contract case is six years. New York C. P. L. R. 213.

terminated. The fact of the matter is that the Amendment Agreement was only in force for eleven months; hardly an indefinite period.

Moreover, Section 17-103 only applies to statutory limitations periods which are guided by legislative intent to avoid stale claims. It does not apply to contractually shortened limitations periods. By its express terms, Section 17-103 applies only to "[a] promise to waive, to extend, or not to plead the *statute of limitation*" and dictates that such a promise "has no effect to extend the time limited by *statute* for commencement of an action…" (emphasis added.) In *Bayridge Air Rights, Inc. v. Blitman Const. Corp.*, the New York Court of Appeals cited the legislative intent of Section 17-103 which "noted that extensions [of statutory limitations periods] 'should not be indefinite. . . and that the parties should not be permitted to create periods between themselves *in excess of the periods set by the Legislature*.'" 80 N.Y.2d 777, 780 (1992) (emphasis added). Thus, the application of Section 17-103 is directly linked "periods set by the Legislature," not contractually set limitations.

Distinguishing between contractual and statutory limitations period, the Seventh Circuit in *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 877 (7th Cir. 1997) explained:

> [statutes of limitations] protect the courts and the public against the expense and errors of adjudicating stale claims. But where parties by contract shorten the period of limitations that the government had deemed the appropriate outer bounds for suit, and then one of the parties does something that makes it inequitable to hold the other party to the shortened period, there is no social interest in preventing the period from being enlarged, especially when the enlarged period still falls far short of the statutory period.

In New York, the statute of limitation applicable to an action arising out of a contract action is established by CPLR Section 213(2) as six years. Section 17-103 therefore applies only

when one party seeks to enforce another party's promise to waive, to extend, or not to plead the six year *statute of limitations* applicable to contract claims, not a *contractual limitations period*.

WFIC does not cite a single case applying Section 17-103 to a contractual limitations period. Instead, every case WFIC cites in support of its argument invalidates agreements to indefinitely toll statutory limitations periods, not contractually shortened periods. *See T & N PLC v. Fred S. James & Co. of New York*, 29 F.3d 57, 62 (2d Cir. 1994) (invalidating a standstill agreement which indefinitely extended the six-year statute of limitations for contract actions); *City of New York v. Black & Veatch*, 1997 WL 624985, at *14 (S.D.N.Y. Oct. 6, 1997) (invalidating an agreement tolling of the statute of limitations because "the law strictly limits the ability of parties to circumvent the statute of limitations"); *Bayridge Air Rights, Inc.*, 80 N.Y.2d at 779 (invalidating an agreement to extend the six-year statute of limitations on contract actions); *Allenby, LLC v. Credit Suisse, AG*, 47 Misc. 3d 1203(A) (N.Y. Sup. Ct.), *aff'd*, 134 A.D.3d 577 (N.Y. App. Div. 2015) (invalidating "an indefinite tolling of the statute of limitations").

Accordingly, the motion should be denied.

## POINT III

### WFIC IS ESTOPPED FROM ASSERTING A CONTRACUAL LIMITATIONS PERIOD DEFENSE

Separately, regardless of the validity of the Amendment Agreement's tolling provision, WFIC is equitably estopped from asserting a limitations defense. *Doe v. Blue Cross & Blue Shield United of Wisconsin* is instructive. 112 F.3d 869 (7th Cir. 1997). Doe was an employee enrolled in an employee welfare benefit plan funded by his employer and administered by an insurer. *Id.* at 872. The plan contained a contractual three-year suit limitation provision, as well as a requirement that Doe complete an ERISA claim appeal process. *Id.* at 873. Doe sought

psychiatric treatment which was initially covered by the plan, but eventually, the plan formally denied coverage. *Id.* Doe exhausted the ERISA claim-appeal process with seventeen months remaining to file suit, however he did not file suit because he was in settlement discussions with the insurer. *Id.* In the course of those discussions, an insurance company lawyer wrote a letter to Doe's lawyer asking him to forbear from filing suit until another insurance company lawyer could respond to a settlement proposal. *Id.* at 876. The second insurance company lawyer did not respond until one month after the expiration of the three-year period, and about seven months after that, the parties' settlement discussions broke down and Doe filed suit: well-beyond the three-year contractual limitations period. *Id.* at 877. The Seventh Circuit found that the insurance company's letter equitably tolled the statute of limitations from the date of the first insurance company letter until the date the negotiations broke down. *Id.* The court further reasoned that because the insurance company's representations caused Doe to refrain from suing, the proper measure of a reasonable time within which Doe should file suit was the entire period during which he refrained from filing suit. *Id.* at 876-77. Accordingly, the court added the entire period on to the contractual limitations period. *Id. See also LaMantia v. Voluntary Plan Administrators, Inc.*, 401 F.3d 1114, 1119 (9th Cir. 2005).

In a far stronger action here, WFIC entered into an agreement to defer all claims until the completion or termination of the Contracts. Accordingly, notwithstanding the validity of the Amendment Agreement's deferral provision, WFIC's act of entering into the Amendment Agreement equitably estopped its ability to assert a contractual limitations defense. Further, as

in *Doe*, a reasonable tolling period would be the remaining six-month contractual period plus the eleven month period during which Monadnock refrained from filing suit[3].

## CONCLUSION

For the reasons set forth above, Monadnock respectfully requests that this Court deny WFIC's motion to dismiss.

Dated: New York, New York
       April 18, 2016                              /s/ Howard Kleinhendler
                                                    Howard Kleinhendler
                                                    Jocelyn Weinstein
                                                    WACHTEL MISSRY LLP
                                                    885 Second Avenue
                                                    New York, NY 10017
                                                    (212) 909-9500
                                                    (212) 909-9430 (fax)
                                                    kleinhendler@wmllp.com
                                                    jweinstein@wmllp.com
                                                    *Counsel for Claimant*
                                                    *Monadnock Construction, Inc.*

---

[3] None of the cases WFIC cites in support of its argument that Monadnock was bound to file the instant action within the six months remaining on the contractual limitations period in the Bonds involve equitable tolling. Indeed, they all involve tolling statutory limitations periods, and are thus inapposite. *See 509 Sixth Ave. Corp. v. New York City Transit Auth.*, 24 A.D.2d 975 (1965) (declining to extend a legislatively-prescribed statutory period); *Ortiz v. City of New York*, 28 A.D.2d 1098, 1098 (1967) (declining to extend a statutory period contained in the New York General Municipal Law); *Gotlin v. Lederman*, 2006 WL 1154817, at *10 (E.D.N.Y. Apr. 28, 2006) (declining to extend a statutory period contained in the New York General Business Law).