UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MONADNOCK CONSTRUCTION, INC.,           Case No.: 16 CIV. 00420 (JBW)
                                                  ECF Case
                Plaintiff,

      -against-

WESTCHESTER FIRE INSURANCE
COMPANY,

               Defendant.
-------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM**

<u>PRELIMINARY STATEMENT</u>

In this action to recover on two performance bonds ("Bonds"), plaintiff ("Monadnock") served notices of default on defendant ("Westchester") on September 16, 2013. Under the terms of section 11 of the bonds, Monadnock had until September 16, 2015, or two years later, to bring an action on the Bonds. Monadnock did not do that. Instead, Monadnock waited until December 22, 2015, or two years, plus ninety-seven days after the notice of default. Although Monadnock did not comply with the requirements of § 11, it nevertheless claims that this action was timely commenced.

The purpose of this reply memo is to show that Monadnock has not timely commenced this action and that the reasons it advances for not initiating this action within two years have no legal or factual merit. The failure to timely commence this lawsuit was the fault of no one other than Monadnock. Therefore, the motion by Westchester to dismiss the complaint should be granted.

## **REPLY ARGUMENT**

While Monadnock claims to rely upon an Amendment Agreement ("Agreement") dated April 4, 2014,[1] it has taken multiple, often contradictory, positions regarding that Agreement. Furthermore, its arguments are permeated with *ipse dixit* statements that have no basis in law or fact.

### A. **THE CONTRADICTIONS**

While Monadnock seeks to create the impression that the Agreement brought a temporary end to the hostilities, it contradicts itself by alleging in paragraph 42 of the complaint that "[Westchester's] default under the Bonds continued" in spite of the Agreement.[2] Logically, therefore, the time to cure the defaults continued to run, unless Monadnock can point to language in the Agreement tolling the running of the cure period, something it has failed to do. While Westchester pointed out in its moving memorandum that the Agreement contained no language tolling the running of the cure period, Monadnock has failed to identify such language in its opposing memorandum.

In an effort to give a reason why the two-year period was tolled, Monadnock argues in its memorandum of law that "the prior defaults, terminations and 'Bond claims'" were withdrawn without prejudice. However, the language of § 7 of the Agreement applied to the "terminations" and "Bond claims," and did not mention prior defaults. Further, paragraph 43 of the complaint alleges that "the Amendment Agreement explicitly preserved and reserved Monadnock's Bond claims that had accrued to the date of the Amendment Agreement." If the September 16, 2013 default notice was not actually "withdrawn" as the memorandum of law argues, but was

---

[1] Kleinhendler Declaration, Exhibit C.
[2] Paragraph 42 of the Complaint, in its entirety, states: "Neither the Amendment Agreement nor the Side Agreement were permitted Section 5 choices under the Bonds and did not satisfy WFIC's obligations to undertake a Section 5 choice; thus WFIC's default under the bonds continued." (Complaint, ¶42).

2

"preserved" as the complaint alleges, then Monadnock still has not given a reason for contending that the running of the two-year period was tolled.

Monadnock attempts to find that reason by claiming in its memorandum that "[t]he deferral of all claims between Monadnock and WFIC under the Amendment Agreement for its 11-month duration tolled any contractual suit limitation for that time."[3] However, the Agreement did not say that. There is no reference in the Agreement to tolling the time to cure. While that may be the spin Monadnock wishes to place on the Agreement, that is not what the Agreement said nor what Monadnock's own Complaint alleges. If a tolling is what was intended, the parties could easily have said that in the Agreement, something they did not do. In its memorandum, Monadnock has virtually conceded that there are no express tolling provisions by contending that the Agreement "**effectively** tolled" the running of the two-year period.[4]

By notice dated March 16, 2015, Monadnock again terminated the underlying contracts. In Westchester's moving memorandum of law, it noted that as of March 16, 2015, Monadnock still had until September 16, 2015, or six full months, to bring a lawsuit pursuant to the September 16, 2013 default notice.  Had this action been brought during the available six-month period, there would have been no need for this motion. Why did Monadnock wait until after the expiration of the six-month period?  Monadnock's Complaint alleges no reason why it waited, nor does Monadnock answer that question in its opposing memorandum.  Its only response is that the need to do so was "effectively tolled," which is not supported by the clear language of the Agreement. In the end, we can only guess as to the reason for Monadnock's inaction.

---

[3] *Id.* p. 2
[4] *Id,* p. 7. (Emphasis added).

### B. MONADNOCK'S ERRONEOUS LEGAL ARGUMENTS

**1. The Indefinite Extension of the Cure Period Violated NY General Obligations Law § 17-103**

It is only because Monadnock did not take advantage of the remaining six-months within which to bring its lawsuit that it now finds itself having to argue that the April 2014 Amendment Agreement did not indefinitely toll the running of the original 2-year period. Indeed, realizing that the statute does not allow indefinite extensions, it now argues that the imaginary tolling it claims existed had a finite limitation. In its opposing memorandum, Monadnock contends:

> To begin with, the deferral of claims is linked to objectively delineated events which could not go on indefinitely. Glasswall was either going to perform in a timely manner or be terminated. The fact of the matter is that the Amendment Agreement was only in force for eleven months; hardly an indefinite period.

However, this was precisely the sort of argument that was rejected in *Allenby, LLC v. Credit Suisse, AG*, 47 Misc. 3d 1203(A), 15 N.Y.S.3d 710, 2015 N.Y. Misc. LEXIS 928 (Supreme Court, New York County 2015); *see also T&N PLC v. Fred S. James & Co. of New York, Inc.* 29 F.3d 57 (2nd Cir. 1994). In *T&N PLC*, a standstill agreement, like the one Monadnock relies on, did not provide a specific period during which the statute of limitations would be tolled. Rather, it provided only that the parties "agreed to toll the applicable statute of limitations from the date of this letter until 30 days after receipt of notice of termination of this agreement by either party." 29 F.3d at 61. The Second Circuit held that this indefinite tolling agreement was invalid and unenforceable. *Id.*

Based on the foregoing, it is clear that the deferral provision in this case is indefinite, thereby making it invalid and unenforceable.

**2. The Two-Year Limitations Period Found in Section 11 of the Bonds Was A Statute of Limitations.**

The Bonds were prepared using the 2010 versions of AIA form A312. Section 11 of that form provided for the two-year period within which to bring suit after a notice of default. In its opposing memorandum, Monadnock treats that two-year period as not being a statute of limitation, ignoring that NY CPLR § 201 provides:

> An action, including one brought in the name or for the benefit of the state, must be commenced within the time specified in this article **unless a different time is prescribed by law or a shorter time is prescribed by written agreement.** No court shall extend the time limited by law for the commencement of an action.

(Emphasis added). In this case, the action on the September 16, 2013 alleged default had to be brought within two years because that is the shorter period to which the parties had agreed. In this case, two-years *was* the statute of limitations. Under New York law, parties to a contract are permitted to designate a limitations period shorter than the statutory period for filing actions based upon a contractual obligation. *See, e.g.*, *International Fidelity Insurance Company v. County of Rockland*, 98 F. Supp. 2d 400 (S.D.N.Y. 2000).

Based upon its confused understanding of contractual statutes of limitation, Monadnock appears to argue that NY GOL § 17-103 does not apply to such limitations periods, but only applies to statutorily fixed limitations periods. That argument does not work, however, because the 2-year limitations period *is* a statutory period under NY CPLR § 201.

Monadnock, without any legal support whatsoever, states on pages 8 and 9 of its opposing memorandum:

> In New York, the statute of limitation applicable to an action arising out of a contract action is established by CPLR Section 213(2) as six years. Section 17-103 therefore applies only when one party seeks to enforce another party's promise to waive, to extend, or not to plead the six year statute of limitations applicable to contract claims, not a contractual limitations period.

5

Monadnock's entire argument is pure *ipse dixit*. It has no authority for its conclusions.

This is a simple case. After the termination on March 16, 2015, Monadnock still had six months within which to bring its lawsuit. Monadnock didn't need any additional time.

### 3. Westchester Has Done Nothing to Equitably Estop It From Asserting the Two-Year Limitations Period.

Monadnock claims that "notwithstanding the validity of the Amendment Agreement's deferral provision, [Westchester's] act of entering into the Amendment Agreement equitably estopped its ability to assert a contractual limitations defense."[5] Bearing in mind that it was Monadnock that declared a termination pursuant to the Amendment Agreement on March 16, 2015, and that it was Monadnock that commenced this lawsuit on December 22, 2015, Westchester could not have inequitably induced Monadnock to rely on anything it did. Indeed, Monadnock could have timely commenced this action *any* time before September 16, 2015.

The cases cited by Monadnock, namely *John Doe v. Blue Cross and Blue Shield United of Wisconsin*, 112 F.3d 869 (7th Cir. 1997) and *LaMantia v. Voluntary Plan Administrators, Inc.*, 401 F.3d 1114 (9th Cir. 2005), do not support the claim that Westchester inequitably induced Monadnock to rely upon anything. Monadnock was free to interpret the Amendment Agreement as it saw fit, and Westchester cannot be blamed if that interpretation was faulty.

After the default notice of March 16, 2015, Monadnock still had six months within which to bring its lawsuit. Monadnock didn't need any additional time. Monadnock cannot blame anyone other than itself for failing to act within that six months.

---

[5] *Id.* p. 10

**CONCLUSION**

For the reasons set forth above, Defendant Westchester Fire Insurance Company respectfully requests that this Court grant this motion to dismiss the complaint upon the ground that the claims asserted are barred by the contractual limitations period.

Dated: New York, New York
April 25, 2016

                                  COZEN O'CONNOR

                        By: /s/ John J. Sullivan
                            John J. Sullivan
                            45 Broadway Atrium, Suite 1600
                            New York, NY 10006
                            P: 212-453-3729
                            F: 646-461-2073
                            JSullivan@cozen.com

                            Robert McL. Boote*
                            *Admitted Pro Hac Vice*
                            Suite 400, 200 Four Falls Corporate Center
                            P.O. Box 800
                            West Conshohocken, PA 19428
                            P: 215-665-4630
                            F: 215-701-2424
                            RBoote@cozen.com

                            *Attorneys for Defendant*
                            *Westchester Fire Insurance Company*