UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONADNOCK CONSTRUCTION, INC., <br><br> Plaintiff, <br> – against – <br><br> WESTCHESTER FIRE INSURANCE COMPANY, <br><br> Defendant. | **MEMORANDUM AND ORDER** <br> 16-CV-0420 |

| PARTIES | APPEARANCES |
|---|---|
| Monadnock Construction, Inc. | Howard Kleinhendler <br> Jocelyn Meredith Weinstein <br> Wachtel & Masyr, LLP |
| Westchester Fire Insurance Company | John Joseph Sullivan <br> Robert McLaurin Boote <br> Cozen & O'Connor |

**JACK B. WEINSTEIN**, Senior United States District Judge:

### Table of Contents

I. Introduction ................................................................................................................... 2

II. Facts ............................................................................................................................... 3

III. Complaint and Motion to Dismiss .................................................................................. 7

IV. Law ................................................................................................................................ 8

    A. Motion to Dismiss .................................................................................................. 8

    B. New York General Obligations Law Section 17-103 ............................................ 9

V. Application of Law to Facts .......................................................................................... 10

VI. Conclusion .................................................................................................................... 14

## I. Introduction

This breach of contract action arises out of defendant Westchester Fire Insurance Company's ("WFIC") refusal to pay on performance bonds it issued in favor of plaintiff Monadnock Construction, Inc. ("Monadnock"). The legislative limitations period on a breach of contract claim on the bonds would be six years. The parties contracted for a two-year limitations period. They have a sharp disagreement with respect to the validity of a contractual tolling provision and its application to the contractual two-year limitations period.

WFIC insists that, pursuant to General Obligations Law section 17-103, the contractual tolling provision must be strictly construed in the same way that a provision tolling a statutory limitation period is. It contends that the tolling provision is invalid, and the two-year contractual limitation period bars Monadnock's claim. It moves to dismiss the complaint.

WFIC's motion is denied.

Because the complaint was filed within two years of the notice of default upon which the complaint is partially based, it is within the contractual limitations period without the need for any tolling.

With respect to the portion of the complaint that is based on an earlier notice of default, plaintiff may benefit from either the contractual tolling provision or from equitable estoppel as a result of WFIC's activities. Either theory has sufficient color to warrant denial of WFIC's motion.

While the court has found no cases from this circuit that have discussed the distinction between a provision that tolls a contractual limitations period and one that tolls a statutory limitations period, and the parties have not presented any, it is concluded that the application of normal contractual interpretive rules designed to reveal the parties' intentions is appropriate in this situation. The strict construction of General Obligations Law section 17-103 typically given

by New York courts is not essential in this case, where the toll was of a shortened contractual limitations period, rather than the standard statutory period, and is tied to definitive events. The public policy the New York Court of Appeals sought to protect in adopting a strict interpretation of the statute is not offended by this result. Applying standard rules of contract interpretation, it is found that the contractual tolling provision is enforceable and Monadnock's claims are timely.

The implication of WFIC's position would be to force parties to commence an action before their claims have fully ripened. Public policy is best served by permitting parties to wait. Often, delay will avoid the necessity of a suit with full discovery and trial.

## II. Facts

Monadnock was the contractor for two mixed use projects in the Hunters Point South section of Long Island City. On January 3, 2013, Monadnock entered into two contracts with Glasswall for the design and supply of a curtainwall system including windows, doors, storefronts and other materials for the two projects. Complaint, Mar. 1, 2016, ECF No. 9 ("Compl."), at ¶ 8. The first contract was for $8,412,502 and required the production and delivery of 5,836 windows. The second contract was for $4,587,498 and required the production and delivery of 3,120 widows. *Id.* at ¶ 11. Both contracts required Glasswall to obtain payment and performance bonds, which it did from WFIC. *Id.* at ¶ 12. The performance bonds required any legal action to be taken within two years of a notice of default. *Id.* at Ex. A at § 11.

The contracts required Glasswall to ship completed windows to one of the projects starting on July 1, 2013, and to the second project starting on September 1, 2013. *Id.* at ¶ 13. On March 15, 2013, the project schedule was changed to require delivery of windows to begin on August 7, 2013, and August 29, 2013, for the first and second projects, respectively. *Id.* at ¶ 14. On August 16, 2013, after the delivery of windows was to have begun, Glasswall's attorney sent Monadnock a letter stating that "completed window assemblies" would be ready to ship by

3

September 1, 2013. Monadnock alleges that no windows were delivered by September 1, 2013. *Id.* at ¶ 15.

On November 20, 2013, Glasswall issued another production schedule representing that part of the order for the first project would be complete by December 6, 2013, and part of the order for the second project would be complete by December 12, 2013. According to Monadnock, Glasswall did not meet these deadlines. *Id.* at ¶ 16.

In addition to the delays in delivery, Monadnock alleges that the product that Glasswall supplied was defective. *Id.* at ¶¶ 25-26.

On September 16, 2013, Monadnock sent Glasswall and WFIC a notice of default under the contracts; notices of continuing default were sent on October 23, 2013, and December 31, 2013. *Id.* at ¶ 30.

On January 13, 2014, Monadnock terminated Glasswall's contracts and provided WFIC with the required notice under the performance bonds. Monadnock demanded that WFIC take action pursuant to Section 5 of the bonds, which required WFIC to arrange for Glasswall to complete the contracts, complete the contract itself or through another contractor, pay Monadnock an amount in damages, or disclaim liability under the bonds. *Id.* at ¶¶ 32-33, Ex. A at § 5. Monadnock alleges that WFIC refused to act in response to the demand. *Id.* at ¶ 34.

On March 6, 2014, as required by Section 6 of the bonds, Monadnock sent WFIC a notice demanding WFIC act within seven days or be in default. *Id.* at ¶ 35, Ex. A at § 6. Monadnock alleges that WFIC again failed to act in response to the notice. *Id.* at ¶ 36.

On April 4, 2014, the parties entered into an agreement to amend the contracts ("Amendment Agreement"). *Id.* at ¶ 37. The drafting of the Amendment Agreement was careful, with WFIC participating fully. Hr'g Tr., May 11, 2016, at 6:5-9 ("It's a very carefully

4

negotiated agreement. Westchester took a lead in putting that agreement together when it looked like the parties were, the deal, the contract, was coming apart. The notice of default had already been issued. Every word in that agreement was sweat over.").

The Amendment Agreement permitted Glasswall to complete the contracts, requiring delivery of windows to begin the week of March 24, 2014, and to be complete by June 7, 2014. Decl. of Howard Kleinhendler in Opp'n to Def.'s Mot. to Dismiss, Apr. 18, 2016, ECF No. 25 ("Kleinhendler Decl."), at Ex. C at § 5.

There are two clauses in the Amendment Agreement that are relevant to the instant motion. The first clause withdraws Monadnock's first termination of the contracts and claims on the bonds:

> 7. The terminations and Bond claims are hereby withdrawn. Such withdrawal is without prejudice to the claims of any party nor shall it be deemed a waiver of any rights. The Bonds, at their full limits, remain in place. . . . Monadnock agrees that it waives any right it may have to terminate the Contracts based on events occurring to date.

*Id.* at Ex. C at § 7.

The second relevant section purports to toll the statute of limitations on contractual claims until either the completion or termination of the contracts:

> 9. All claims by and/or among Glasswall, the Indemnitors, Monadnock, HPS and WFIC relating to the Contracts, Bonds, Indemnity Agreements or actions of the parties thereto, including but not limited to the Glasswall/Indemnitor Claims and the Monadnock Claims and those asserted or that could have been asserted in the Florida Actions and the New York Action *will be deferred until completion of the Contracts or a termination thereof in accordance with the terms of the Contracts* (as modified herein), whichever shall occur sooner. All proceedings in the Florida Actions and the New York Action shall be stayed without prejudice to all parties' procedural and substantive rights and all periods of time relating to any procedural or substantive, right,

5

> defense, claim or procedure are tolled as of the date of the
> Agreement among the parties.

*Id.* at Ex. C at § 9 (emphasis added).

Monadnock alleges that by the end of October 2014, four months after the Amendment Agreement required production of windows, Glasswall had neither completed production of the windows nor delivered the ones it had produced. Instead, according to Monadnock, Glasswall slowed down its shipment of windows and then stopped the deliveries completely, demanding payment in advance by WFIC and Monadnock. Compl. at ¶¶ 44-46. Although this demand was contrary to the requirements of the Amendment Agreement, Monadnock sent WFIC checks totaling $1,979,309, representing the entire contracts balance for undelivered windows. *Id.* at ¶ 49. Delivery restarted. Monadnock claims the product was damaged as well as late. Monadnock alleges that Glasswall ultimately failed to complete its promised work under the Amendment Agreement. *Id.* at ¶¶ 50-51.

On March 4, 2015, Monadnock served a notice of default on Glasswall, enumerating the ways in which Glasswall had breached the Amendment Agreement. *Id.* at ¶ 53. A copy of the notice of default was served on WFIC. *Id.* Monadnock gave notice of its termination of the Amendment Agreement on March 16, 2015. *Id.* at ¶ 56.

On the same day, Monadnock demanded WFIC take action under Section 5 of the bonds. *Id.* On April 20, 2015, Monadnock sent WFIC a notice under Section 6 of the bonds, demanding that WFIC "perform its obligations." *Id.* at ¶ 57.

WFIC denied Monadnock's Bond claim on three grounds: (i) Monadnock's payment in full of the entire contract price to WFIC constituted a waiver of its right to assert claims; (ii) Monadnock's termination of Glasswall was based, in part, on events occurring prior to the Amendment Agreement and the parties had agreed that those claims could not constitute the

basis of a later termination; and (iii) Glasswall had substantially completed the contracts and could not be terminated. *Id.* at ¶ 58.

### III. Complaint and Motion to Dismiss

Monadnock commenced this action on March 1, 2016. Its complaint pleads two causes of action, one for defendant's failure to pay after the initial notice of default on September 16, 2013, and one for defendant's failure to pay after the second notice of default on March 4, 2015. *Id.* at ¶¶ 62-71.

WFIC moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the single ground that Monadnock's claims are barred by the contractual limitations period of two years. *See* Mem. of Law in Supp. of Mot. to Dismiss Pl.'s Compl. for Failure to State a Claim, Apr. 4, 2016, ECF No. 20-4. It argues that the deferral provision in the Amendment Agreement is unenforceable under New York General Obligations Law section 17-103 because it is not tied to a definite date. As a result, defendant contends, any claim brought more than two years after the initial notice of default is untimely. *Id.* at 3-7.

Monadnock makes four points in opposition. First, it argues that the two-year contractual period did not begin to run until March 2015, when it served a notice of default of the Amendment Agreement. Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, Apr. 18, 2016, ECF No. 26, at 6-7. Second, Monadnock contends that the deferral in the Amendment Agreement is tied to the specific events of contract completion or termination, rendering the provision enforceable. *Id.* at 7-8. Third, it argues that section 17-103 "only applies to statutory limitations periods which are guided by legislative intent to avoid stale claims . . . [not] to contractually shortened limitations periods." *Id.* at 8-9. Finally, Monadnock argues that WFIC should be equitably estopped from asserting a limitations period defense. *Id.* at 9-11.

In addition to the instant action, both Monadnock and WFIC are parties to several lawsuits in Florida state and federal court arising out of the same events at issue here. These actions have all been dismissed and are either final or are on appeal. *See* Hr'g Tr., May 11, 2016, at 28:7-14.

Monadnock and Glasswall are currently parties to an arbitration that is pending in New York covering aspects of the current suit. Hearings are scheduled for November and December 2016. *See id.* at 16:7-9. The parties agree that the arbitration may moot all claims in the instant suit. *See id.* at 16:10-18, 26:10-27:15 (acknowledging possibility that arbitration may moot the instant case).

## IV. Law

### A. Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Whether a complaint states a plausible claim to relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 180 (2d Cir. 2013) (citations omitted). "[A] court must accept the plaintiff's factual allegations as true, drawing all reasonable inferences in plaintiff's favor." *Friedman v. Maspeth Fed. Loan & Sav. Ass'n,* 30 F. Supp. 3d 183, 188-89 (E.D.N.Y. 2014).

In considering a motion pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *N.Y. State Catholic Health Plan, Inc. v. Acad. O & P Assocs.*, 312 F.R.D. 278, 294 (E.D.N.Y. 2015). Where a document is not incorporated by

reference, the court may consider it where the complaint "relies heavily upon its terms and effect," thereby rendering the document "integral" to the complaint. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

### B. New York General Obligations Law Section 17-103

Under New York law, parties to a contract may by agreement shorten the statutory limitations period for a breach of contract action. *See* N.Y. C.P.L.R. 201. They may agree to toll the limitations period, but agreements must conform to General Obligations Law section 17-103. That statute provides, in relevant part:

> 1. A promise to waive, to extend, or not to plead the statute of limitation applicable to an action arising out of a contract express or implied in fact or in law, if made after the accrual of the cause of action and made, either with or without consideration, in a writing signed by the promisor or his agent is effective, according to its terms, to prevent interposition of the defense of the statute of limitation in an action or proceeding commenced within the time that would be applicable if the cause of action had arisen at the date of the promise, or within such shorter time as may be provided in the promise.
>
> . . .
>
> 3. *A promise to waive, to extend*, or not to plead *the statute of limitation has no effect to extend the time* limited by statute for commencement of an action or proceeding for any greater time or in any other manner than that provided in this section, or *unless made as provided in this section*.

N.Y. Gen. Oblig. Law § 17-103 (emphasis added).

The New York Court of Appeals and the Court of Appeals for the Second Circuit have interpreted this statute strictly, holding that parties can only extend the period where there is a distinct time ending the tolling. *See Bayridge Air Rights, Inc. v. Blitman Constr. Corp.*, 80 N.Y.2d 777, 780 (1992) ("Given the intent behind General Obligations Law § 17–103 as well as the public policy concerns related to the Statute of Limitations and agreements to extend it, an

9

agreement that cannot be enforced 'according to its terms' is ineffective to extend the limitations period."); *T & N PLC v. Fred S. James & Co. of N.Y.*, 29 F.3d 57, 62 (2d Cir. 1994) ("We find, however, that the broad pronouncement above in *Bayridge* makes clear that New York courts will not infer a six-year limitations period into a standstill agreement that by its terms extends the statute of limitations indefinitely."). "An agreement to waive the statute of limitations must, *by its own terms,* toll the statute for no longer than the period of time for which the statute itself runs. If an agreement, by its own terms, fails to set an acceptable time period expressly, then it must be held invalid." *City of N.Y. v. Black & Veatch*, No. 95-CV-1299, 1997 WL 624985, at *14 (S.D.N.Y. Oct. 6, 1997).

In addition to setting the requirements for tolling agreements, the statute also explicitly permits equitable tolling. It states that it "does not affect the power of the court to find that by reason of conduct of the party to be charged it is inequitable to permit him to interpose the defense of the statute of limitation." N.Y. Gen. Oblig. Law § 17-103(4)(b).

## V. Application of Law to Facts

As a matter of law and equity, WFIC's motion must be denied.

Monadnock's second cause of action is premised on WFIC's alleged actions and failure to act following the second notice of default, which was sent on March 4, 2015. *See* Compl. at ¶¶ 67-71; Hr'g Tr., May 11, 2015, at 22:3-23:11. Because the complaint was filed within two years of this date, a timely second claim exists without the need for any kind of tolling. It is possible that the damages available through this cause of action will be limited to those arising due to post-Amendment Agreement conduct, but that determination need not be, and is not, made on this motion.

Monadnock's first cause of action, which might be partially duplicative of the second cause of action, is arguably timely through the application of equitable estoppel as well as through the tolling provision in the Amendment Agreement.

The tolling provision in the Amendment Agreement is not unenforceable for vagueness. It has a date which can be fixed through simple calculation based on the date of completion of the job of supplying windows. The provision tolls the limitations period until either the contract work is complete or until the contract is terminated – and sets June 7, 2014, as the date by which one of these two events would occur. Kleinhendler Decl., at Ex. C at § 5. This is not a situation where a relationship between the parties was to continue in perpetuity, or would dribble on for a significant length of time. *Cf. T & N PLC*, 29 F.3d at 61-62.

The strict application of the statute typically given by New York courts is not essential in this case, where the toll was of a shortened contractual limitations period of two years, rather than the standard statutory period of six years. The purpose of the legislative limitations period is to keep stale claims out of the courts and to ensure that parties can have some sense of finality. Strictly construing section 17-103 prevents parties from undermining this important public policy by placing claims in an indefinite contractual stasis. However, where the limitations period in question is one that has been shortened through contract, and the proposed toll of the shortened period is tied to definitive events, the concerns underlying the legislative limitations period are not as significant. Construing such tolling provisions in accordance with standard contractual interpretive rules designed to give effect to the intentions of the parties will not open the court to stale claims or subject parties to litigation long after the claim should be in repose.

The instant case exemplifies this conclusion. The legislature concluded that a breach of contract action should be commenced within six years of the breach. N.Y. C.P.L.R. § 213.

Monadnock's first notice of default – triggering the running of the legislative limitations period on the first alleged breach of the bonds – was sent on September 16, 2013. Kleinhendler Decl. at Ex. B. The complaint was filed on March 1, 2016, well within the six-year statutory period. Applying the legislature's conclusion about the appropriate life of a breach of contract claim, Monadnock's claims are appropriate.

Moreover, it is evident that the parties' intention in executing the Amendment Agreement was to permit Glasswall to complete its work while eliminating the need for Monadnock to rush to court to beat the contractual two-year limitations period. The toll would not last indefinitely, though; it would only last until the contract was complete or had been terminated, something that would be known by a date certain. WFIC, therefore, was fully on notice not only that it might still face a breach of contract claim, but also when such a claim might come. WFIC cannot now claim surprise at Monadnock's action. The public policy the New York Court of Appeals sought to protect in adopting a strict interpretation of section 17-103 is not offended by finding the clause in the Amendment Agreement to be enforceable. *Cf. Bayridge Air Rights*, 80 N.Y.2d at 780.

Although no cases from the Second Circuit Court of Appeals or the district courts in the circuit have directly addressed this issue, at least one court outside the circuit has concluded that, where shorter contractual limitations periods are at issue, principles of equity should be prioritized over concerns about stale claims:

> where parties by contract shorten the period of limitations that the government had deemed the appropriate outer bounds for suit, and then one of the parties does something that makes it inequitable to hold the other party to the shortened period, there is no social interest in preventing the period from being enlarged, especially when the enlarged period still falls far short of the statutory period.

*Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 877 (7th Cir. 1997).

> Under New York law, the doctrine of equitable estoppel will preclude a defendant from using the statute of limitations as a defense where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding. Specifically, *equitable estoppel is appropriate* where the plaintiff is prevented from filing an action within the applicable statute of limitations *due to his or her reasonable reliance on* deception, fraud or *misrepresentations by the defendant*.

*Bulgartabac Holding AD v. Republic of Iraq*, 451 F. App'x 9, 11 (2d Cir. 2011) (citations omitted) (emphasis added).

It is reasonable to infer from the face of the complaint that Monadnock relied upon WFIC's actions in deciding not to commence its action earlier. WFIC conceded that it was instrumental in drafting the Amendment Agreement, and agreed to its provisions. *See* Hr'g Tr., May 11, 2016, at 6:6-8. WFIC's actions arguably made it reasonable for Monadnock to believe that it could refrain from commencing an action without fear of the contractual limitations period. Additionally, the complaint specifically alleges that in November 2014, within two years of the initial notice of default, WFIC "urged" Monadnock to pay the contract balance for the undelivered windows. Compl. at ¶ 49. After acting in a way that would make a reasonable person conclude the limitations period would not be raised, WFIC could possibly be prevented on equitable grounds from relying on a limitations defense. It may be inequitable in the instant case to permit WFIC, after taking a leading role in the drafting of the Amendment Agreement and pushing Monadnock to refrain from commencing an action, to avoid the plain intent of the parties in executing the Amendment Agreement.

This conclusion on tolling by consent is consistent with good public policy. The implication of WFIC's position is that in order to avoid a limitations problem a party must

commence its action before its claims are ripe. Such a result would promote inefficiencies by requiring the commencement of actions before there is a demonstrated need for them.

## VI. Conclusion

WFIC's motion to dismiss is wholly denied.

The case is stayed for all purposes pending the outcome of the arbitration between Monadnock and Glasswall. The arbitrators are respectfully requested to expedite the arbitration since their decision may moot the present case.

If a party seeks discovery in aid of the arbitration or for any other reason, it shall make a request to the magistrate judge, who is authorized to lift the stay for this purpose.

The case is respectfully referred to the magistrate judge for settlement or referral to the court-annexed mediation program.

SO ORDERED.

      /s/Jack B. Weinstein
Jack B. Weinstein
Senior United States District Judge

May 16, 2016
Brooklyn, New York