UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MONADNOCK CONSTRUCTION, INC.,

       Plaintiff,

  -against-

WESTCHESTER FIRE INSURANCE
COMPANY,

       Defendant.
-------------------------------------------------------------X
WESTCHESTER FIRE INSURANCE
COMPANY,

       Third-Party Plaintiff,

  -against-

GLASSWALL, LLC, UGO COLOMBO, and
SARA JAYNE KENNEDY COLOMBO

       Third-Party Defendants.
-------------------------------------------------------------X

Case No.: 16 CIV. 00420 (JBW)
ECF Case

**MEMORANDUM OF LAW IN SUPPORT OF WESTCHESTER FIRE INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT FOR SPECIFIC PERFORMANCE OF THIRD PARTY DEFENDANTS' COLLATERAL SECURITY OBLIGATIONS OR, IN THE ALTERNATIVE, FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ......................................................................................................... 1

    I.      The Indemnity Agreement ................................................................................................1

    II.     The Monadnock-Glasswall Contracts and the Bonds ..............................................2

    III.    Westchester's Demand for Collateral .....................................................................4

LEGAL STANDARD .................................................................................................................. 4

    POINT I:  WESTCHESTER IS CONTRACTUALLY ENTITLED TO
                  COLLATERAL SECURITY FROM THE INDEMNITORS ..........................5

    POINT II: WESTCHESTER IS ENTITLED TO A PRELIMINARY INJUNCTION .......8

CONCLUSION ............................................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Motorists Co. v. Pennsylvania Beads Corp.*,
   983 F. Supp. 437 (S.D.N.Y. 1997) ..................................................................................4, 7

*American Motorists Ins. Co. v. United Furnace Co.*,
   876 F.2d 293 (2d Cir. 1989)..............................................................................................5, 6

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................................................4

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................................................4

*Colonial Sur. Co. v. Eastland Constr., Inc.*,
   2009 N.Y. Misc. LEXIS 4167 (N.Y. Sup. Ct. Aug. 3, 2009) .......................................7

*Hartford Fire Ins. Co. v. Saunders Concrete Co., et al*,
   2012 U.S. Dist. LEXIS 125116 (N.D.N.Y. Sept. 1, 2012) ......................................8, 9

*Huminski v. Corsones*,
   386 F.3d 116 (2d Cir. 2004)..................................................................................................4

*Liberty Mut. Ins. Co. v. Conmas, Inc.*,
   2011 U.S. Dist. LEXIS 121326 (N.D.N.Y. Oct. 20, 2011) ..........................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)................................................................................................................4

*Prestige Decorating and Wallcovering, Inc. v. U.S. Fire Ins. Co.*,
   858 N.Y.S.2d 1 (1st Dep't 2008) ..........................................................................................6

*U.S. Fid. & Guar. Co. v. J. United Elec. Contr. Corp.*,
   62 F. Supp. 2d 915 (E.D.N.Y. 1999) ...................................................................................8

**Other Authorities**

Fed. R. Civ. P. 56(a) .........................................................................................................................4

Rule 56.1 ........................................................................................................................................1, 2

**PRELIMINARY STATEMENT**

Third-Party Plaintiff, Westchester Fire Insurance Company ("Westchester"), moves for partial summary judgment against Third-Party Defendants, Glasswall, LLC ("Glasswall"), Ugo Colombo, and Sara Colombo (collectively, the "Indemnitors"), to enforce their contractual obligation under the Agreement of Indemnity with Westchester (the "Indemnity Agreement"), upon "[a]ny demand upon [Westchester] by the Obligee[,] . . . [to] then place [Westchester] with sufficient funds in a form and amount deemed acceptable in [Westchester]'s sole discretion, as collateral security to cover the liability."

On August 29, 2017, in an arbitration between Westchester's surety bond obligee, Plaintiff, Monadnock Construction, Inc. ("Monadnock"), and Westchester's bond principal, Glasswall, the arbitrators awarded Monadnock $1,499,255.18. In this litigation, Monadnock is suing Westchester to recover that award. Therefore, pursuant to the unambiguous contractual terms of the Indemnity Agreement and in accordance with Westchester's demand, Westchester is entitled to the Indemnitors' immediate specific performance of their obligation to deposit collateral security with Westchester in the amount of the arbitration award.

**STATEMENT OF FACTS**

The material facts on this motion are set forth in Westchester's Rule 56.1 Statement and the Declarations of Robert McL Boote (hereinafter "Boote Declr."), attorney for Westchester, and Douglas J. Wills (hereinafter "Wills Declr."), Assistant Vice-President and Surety Claims Manager for the Chubb Group of Companies, including Westchester.

I. **The Indemnity Agreement**

On February 1, 2013, to induce Westchester, as surety, to execute bonds on behalf of Glasswall, as principal, the Indemnitors executed and delivered the Indemnity Agreement in favor of Westchester, as indemnitee, together with a $1,587,500 letter of credit, as partial collateral for

1

bonds to be executed by Westchester. Wills Declr., at ¶¶ 2-3; Boote Declr., at ¶ 2; *see also* Indemnity Agreement, annexed to the Boote Declr. as Exhibit A.  In the Indemnity Agreement, the Indemnitors agreed, among other things, to indemnify Westchester for "all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses . . . which [Westchester] shall at any time incur by reason of its execution of any Bond." Boote Declr., Ex. A., ¶ 2.  The Agreement further required the Indemnitors to deposit with Westchester, upon its demand, collateral security to cover Westchester's potential liability once the bond obligee (Monadnock) made a claim upon Westchester, as it has done in this litigation.  Boote Declr. at ¶ 3-4; Boote Declr., Ex. A., ¶ 1-2.

## II.     The Monadnock-Glasswall Contracts and the Bonds

On January 3, 2013 Glasswall entered into two contracts (the "Contracts") with Monadnock to design and supply windows, doors, storefronts, and other materials for two mixed use projects in Long Island City, New York.  *See* the Court's Memorandum and Order, dated May 17, 2016, Dkt. No. 30, at page 3.  The contract prices totaled $13 million and required Glasswall to obtain payment and performance bonds.  *Id.*  Accordingly, on February 12, 2013, Westchester, as surety for Glasswall, executed two performance bonds and payment bonds (Nos. K08840295 and K08840258) (the "Bonds") in favor of Monadnock, as obligee.  Boote Declr., at ¶ 5.

Later in 2013, Monadnock claimed breaches of contract by Glasswall, and Glasswall responded in kind.  On January 13, 2014, Monadnock purported to terminate Glasswall's Contracts and made claims against the Bonds based on Glasswall's alleged breaches of contract.  *See* Dkt. No. 30, at page 4.  The parties then engaged in extensive negotiations leading to an Amendment Agreement that enabled Glasswall to perform and complete the Contracts.  *Id.* at 4-5.

Nevertheless, on December 22, 2015, Monadnock commenced an action against Westchester, as Glasswall's surety, in the Supreme Court of the State of New York, County of

Kings, Index. No. 515499/2015 (the "State Court Action"). Boote Declr., at ¶ 6. On January 26, 2016, Westchester removed State Court Action to this court. Boote Declr., at ¶ 7. On March 4, 2015, Monadnock filed a demand for Arbitration with the American Arbitration Association ("AAA") in New York (Case No. 02-15-0002-8160) against Glasswall, seeking damages for Glasswall's alleged breaches of the bonded Contracts.

On August 29, 2017, the AAA transmitted to the parties an Award of Arbitrator (the "Award") awarding damages to Monadnock, and against Glasswall, in the amount of $1,499,255.18, to be paid "within 30 days of the date the Award is transmitted to counsel for the parties." *See* the Award, annexed to the Boote Declr. as Exhibit B. On September 22, 2017, Glasswall filed a Petition to Confirm Arbitration Award in the Supreme Court of New York for New York County. *See* the Petition, annexed to the Boote Declr. as Exhibit D. In the Petition, Glasswall concedes that the Award is valid and enforceable. Boote Declr., at ¶¶ 11, 15.

To date, Glasswall has not paid the Award. Although Westchester possesses defenses under the Bonds to Monadnock's claims, it remains exposed to potential liability for the Award. In addition, Westchester has paid or incurred fees and expenses of approximately $800,000 in connection with Monadnock's claims, including the negotiation of the Agreement to Amend Contracts, the defense of this case and the defense of related litigation in Florida filed by the Indemnitors. Wills Declr., at ¶ 5. Westchester continues to incur such fees and expenses. Boote Declr., at ¶ 17.

### III. Westchester's Demand for Collateral

By letter dated September 7, 2017, Westchester demanded that the Indemnitors pay the amount of the Award to Monadnock and obtain a complete release of Westchester and its Bonds, or, alternatively, deposit with Westchester additional collateral security in the amount of the Award (the "Demand Letter"). *See* Demand Letter, annexed to the Boote Declr. as Exhibit C.

### LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The moving party bears the burden of showing that he or she is entitled to summary judgment." *Huminski v. Corsones*, 386 F.3d 116, 132 (2d Cir. 2004). After such a showing is made, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of . . . element[s] essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat the motion, the non-moving party must produce "more than 'some metaphysical doubt as to the material facts.'" *Matsushita Elec. Indus. Co.*, 476 U.S. at 586; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (noting that there must be evidence on which the jury could reasonably find for the non-moving party).

In addition, it has been held that the specific enforcement of collateral security obligations in an agreement such as the Indemnity Agreement is a proper subject for summary judgment. *See, e.g., American Motorists Co. v. Pennsylvania Beads Corp.*, 983 F. Supp. 437 (S.D.N.Y. 1997).

4

## POINT I: WESTCHESTER IS CONTRACTUALLY ENTITLED TO COLLATERAL SECURITY FROM THE INDEMNITORS

The Indemnity Agreement explicitly obligates the Indemnitors to provide Westchester with collateral security upon Westchester's written request:

> The INDEMNITORS shall pay or cause to be paid to the SURETY both the agreed premium and, upon written request by the SURETY at any time, collateral security for its suretyship . . .

*See* Indemnity Agreement, Boote Declr., Ex. A., ¶ at ¶ 1.

Paragraph 2 of the Indemnity Agreement goes on to further require the Indemnitors to indemnify Westchester and post collateral promptly upon Westchester's request, even before Westchester is required to pay any liability under the surety bond:

> The INDEMNITOR shall indemnify and save harmless the SURETY from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses . . . and to place the SURETY in funds to meet all of its liability under any Bond, promptly upon request and before the SURETY may be required to make any payment thereunder . . . Any demand upon the SURETY by the Obligee shall be sufficient to conclude that a liability exists and the INDEMNITOR shall then place the SURETY with sufficient funds in a form and amount deemed acceptable in the SURETY'S sole discretion, as collateral security to cover the liability.

*See* Indemnity Agreement, Boote Declr., Ex. A., ¶ at ¶ 2.

New York law enforces the specific performance of an indemnitor's obligation to deposit collateral security with a surety. For example, in *BIB Constr. Co., Inc. v. Fireman's Ins. Co. of Newark, NJ*, the Appellate Division, First Department, held that "the obligation to make the deposit is subject to specific performance . . . so long as the sum demanded is reasonable." 625 N.Y.S.2d 550, 552 (1st Dep't 1995); *see also American Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 302 (2d Cir. 1989). Here, the sum demanded is reasonable since it is in the amount of the Award for which Westchester is potentially liable.

5

Under these circumstances, New York courts routinely enforce collateral security deposit agreements similar to the Indemnity Agreement. For example, in *Colonial Surety Co. v. A&R Capital Associates, et al.*, this Court enforced an indemnity agreement with a similar collateral security requirement: "[u]pon demand from [Plaintiff], [Defendants] shall immediately deposit with [Plaintiff] cash or other property acceptable to [Plaintiff], as collateral security". 2017 WL 1229732 at *6 (E.D.N.Y. March 31, 2017). In that case, the plaintiff surety had incurred losses, costs and expenses in connection with the bonds that were the subject of the indemnification agreement. The surety's indemnitors refused the surety's demand for collateral security in the amount of the lien against the bond. This Court found the indemnity agreement, like the one here, to be "clear as to Defendant's obligation to provide collateral security to Plaintiff," and that, based on the collateral demand in the amount of the lien, there was no evidence that the amount of collateral security being demanded was unreasonable.

Similarly, in *Colonial Surety Co. v. Genesee Valley Nurseries, Inc.*, the Appellate Division, Fourth Department, granted specific performance of Colonial's contractual right to collateral security upon demand. 773 N.Y.S.2d 719, 720 (4th Dep't 2004). Notably, the Court stated that, as here, specific performance was appropriate because the surety demanded collateral from the indemnitors after the surety was subject to claims under the surety bond:

> [p]ursuant to the [Indemnity] Agreement, [the indemnitors] are required to furnish collateral security upon [Colonial's] demand if a claim is asserted against [Colonial]. [Colonial] submitted proof in admissible form that it received claims under the bonds it issued on behalf of [the principal], and it is thus entitled to specific performance of that part of the [Indemnity] Agreement requiring [the indemnitors] to furnish collateral security.

*Id.* (citing *BIB Constr. Co.*, 625 N.Y.S.2d at 550); *see also Prestige Decorating and Wallcovering, Inc. v. U.S. Fire Ins. Co.*, 858 N.Y.S.2d 1 (1st Dep't 2008) (affirming grant of summary judgment for specific performance of collateral security provision in indemnity agreement).

6

Moreover, in *Pennsylvania Beads Corp.*, the United States District Court for the Southern District of New York determined that similar language in an indemnity agreement—stating that "any demand upon [surety] by the [the bond obligee] shall be sufficient to conclude that liability exists and [bond principal and indemnitor] shall then place [surety] with sufficient funds as collateral security to cover the liability"—was "clear and precise." 983 F. Supp. at 440. In that case, as in other cases, the Court concluded that unambiguous terms, like the terms here, gave rise to a cause of action for collateral security because, in agreeing to the provision, the parties were agreeing that the indemnitor would be required to provide the surety with collateral security to protect the surety from liability. *Id.* at 440 (*citing United Furnace Co., Inc.*, 876 F.2d at 299).

Accordingly, New York law is clear that, under circumstances such as those present here, courts should order specific performance of indemnitors' contractual obligation to post collateral security. *BIB Constr. Co.*, 625 N.Y.S.2d at 552; *see also Liberty Mut. Ins. Co. v. Conmas, Inc.*, 2011 U.S. Dist. LEXIS 121326 (N.D.N.Y. Oct. 20, 2011) (*citing American Motorists Ins. Co. v. United Furnace Co., Inc.*, 876 F.2d 293, 299 (2d Cir. 1989)). In fact, "[w]ithout specific performance of a collateral security agreement, a surety that bargained for 'special' security is effectively relegated to the same status as any other unsecured creditor with respect to the assets of the principal." *Colonial Sur. Co. v. Eastland Constr., Inc.*, 2009 N.Y. Misc. LEXIS 4167 at *12 (N.Y. Sup. Ct. Aug. 3, 2009) (*citing Penn. Beads Corp.*, 983 F. Supp. at 440-41).

Here, Westchester remains exposed to potential liability in this action and the Florida Litigation and from the Award. Wills Declr., at ¶ 6. Westchester made its written request upon the Indemnitors for additional collateral in the amount of the Award on September 7, 2017. Boote Declr., at ¶ 10. Glasswall then conceded the validity of the Award by filing a Petition to Confirm the Award in New York State Supreme Court. Boote Declr., at ¶ 11. Westchester remains exposed

7

to potential liability from the Award and continues to incur legal fees and other expenses. Boote Declr., at ¶ 17. Accordingly, Westchester's written request triggered the Indemnitors' contractual obligation to post the requested collateral, and this Court may enter an order specifically enforcing the Indemnitors' obligations to do so.

Based on the foregoing, Westchester is entitled to an order compelling the Indemnitors to deposit with Westchester collateral security in the amount of $1,499,255.18.

### POINT II: WESTCHESTER IS ENTITLED TO A PRELIMINARY INJUNCTION

In the alternative, an available remedy is the entry of a mandatory preliminary injunction directing the Indemnitors to deposit collateral security in the amount of $1,499,255.18 with Westchester. A party seeking such a preliminary injunction must show "(1) irreparable harm and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fair ground for litigation, and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *U.S. Fid. & Guar. Co. v. J. United Elec. Contr. Corp.*, 62 F. Supp. 2d 915, 921 (E.D.N.Y. 1999). A party requesting a "mandatory injunction"—which involves a positive act—"must also show either 'clear' entitlement to relief or that 'extreme or very serious damage' will result from a denial." *Id.*

As discussed above, New York courts have repeatedly recognized that a collateral security provision in an indemnification agreement entitles a surety to specific performance of its indemnitor's collateral deposit obligations, including by way of a preliminary injunction. *See, e.g., Hartford Fire Ins. Co. v. Saunders Concrete Co., et al*, 2012 U.S. Dist. LEXIS 125116 (N.D.N.Y. Sept. 1, 2012) (holding that the surety was entitled to a collateral security deposit pursuant to the indemnification agreement and granting a preliminary injunction ordering the collateral to be deposited.); *see also United States Fid. & Guar. Co.* 62 F. Supp. 2d at 923 (holding

8

that the breach of the collateral security clause would result in immediate harm and granting a preliminary injunction for the deposit of collateral).

For example, in *Safeco Ins. Co. of Am. v. Hirani/MES, JV*, the non-movant argued that the movant failed to show irreparable harm, but the Second Circuit found the argument to be "without merit," stating "[w]here a surety 'bargained for collateral security and . . . failed to receive it, [the surety]'s injury is real and immediate.'" 480 Fed. Appx. 606, 609 (2d Cir. 2012) (quoting *United Furnace Co., Inc.*, 876 F.2d at 302).

Further, like the Indemnity Agreement here, the indemnification agreement at issue in *Saunders Concrete* also provided that the indemnitor was to deposit collateral with the surety immediately upon the surety's demand. *Id.* at 4-5. Thus, Westchester has demonstrated both a "likelihood of success on the merits" and a "clear entitlement to relief."

Accordingly, Westchester respectfully requests, in the alternative, that the Court order the entry of a mandatory preliminary injunction directing the Indemnitors to make the $1,499,255.18 collateral security deposit with Westchester.

## **CONCLUSION**

For the foregoing reasons, Third-Party Plaintiff Westchester Fire Insurance Company respectfully requests that the Court grant this motion for partial summary judgment against the Indemnitors/Third Party Defendants, Glasswall, LLC, Ugo Colombo, and Sara Jayne Kennedy Colombo, and order specific performance requiring the Indemnitors/Third Party Defendants to deposit with Westchester collateral security in the amount of $1,499,255.18, or, in the alternative, that the Court issue a preliminary injunction enforcing the Indemnity Agreement and ordering the Indemnitors to immediately deposit collateral with Westchester in the amount of 1,499,255.18.

Dated:   New York, New York
            October 16, 2017

            COZEN O'CONNOR

          By:   /s/ John J. Sullivan
            John J. Sullivan
            45 Broadway Atrium, Suite 1600
            New York, NY 10006
            P: 212-453-3729
            F: 646-461-2073
            JSullivan@cozen.com

            Robert McL. Boote*
            *Admitted Pro Hac Vice*
            Suite 400, 200 Four Falls Corporate Center
            P.O. Box 800
            West Conshohocken, PA 19428
            P: 215-665-4630
            F: 215-701-2424
            RBoote@cozen.com

            *Attorneys for Defendant*
            *Westchester Fire Insurance Company*

TO:

Ugo Colombo
5020 North Bay Road
Miami, Florida 33140

Sara Jayne Kennedy Colombo
5020 North Bay Road
Miami, Florida 33140

James P. Cinque
CINQUE & CINQUE, P.C.
845 Third Avenue, Suite 1400
New York, NY 10022
P: 212-759-5515
F: 212-759-7737
Cinque845@aol.com
*Attorneys for Third-Party Defendant Glasswall LLC*

Howard Kleinhendler
Jocelyn Weinstein

WACHTEL MISSRY LLP
885 Second Avenue
New York, NY 10017
P: 212-909-9500
F: 212-909-9430
kleinhendler@wmllp.com
jweinstein@wmllp.com
*Attorneys for Plaintiff*
*Monadnock Construction, Inc.*

11