UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MONADNOCK CONSTRUCTION, INC.,

        Plaintiff,

-against-

WESTCHESTER FIRE INSURANCE
COMPANY,

        Defendant.
------------------------------------------------------------X
WESTCHESTER FIRE INSURANCE
COMPANY,

        Third-Party Plaintiff,

-against-

GLASSWALL, LLC, UGO COLOMBO, and
SARA JAYNE KENNEDY COLOMBO

        Third-Party Defendants.
------------------------------------------------------------X

Case No.: 16 CIV. 00420 (JBW)
ECF Case

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF WESTCHESTER FIRE INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT FOR SPECIFIC PERFORMANCE OF THIRD PARTY DEFENDANTS' COLLATERAL SECURITY OBLIGATIONS OR, IN THE ALTERNATIVE, FOR A PRELIMINARY INJUNCTION**

# **TABLE OF CONTENTS**

                                                                       **Page**

PRELIMINARY STATEMENT ............................................................................................... 1

    POINT I.     WESTCHESTER IS CONTRACTUALLY ENTITLED TO ADDITIONAL COLLATERAL SECURITY FROM THE INDEMNITORS ................................................................................. 1

    POINT II.    WESTCHESTER IS ENTITLED TO COLLATERAL SECURITY FOR ALL ATTORNEYS' FEES AND EXPENSES INCURRED BY REASON OF ITS EXECUTION OF THE BONDS ........................................ 6

    POINT III.   WESTCHESTER'S DEMAND DOES NOT LIMIT THE AMOUNT OF COLLATERAL SECURITY .................................................................... 7

    POINT IV.   WESTCHESTER'S FAILURE TO PROVIDE BACK-UP DOCUMENTATION FOR ITS ATTORNEYS' FEES AND EXPENSES DOES NOT PREVENT AN AWARD OF COLLATERAL SECURITY ................................................................................................ 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Motorists Ins. Co. v. Pennsylvania Beads Corp.*,
   983 F. Supp. 437 (S.D.N.Y. 1997) .......................................................................................7

*BIB Const. Co. v. Fireman's Ins. Co. of Newark, New Jersey*,
   214 A.D.2d 521, 625 N.Y.S.2d 550 (1995) ..................................................................2, 5, 8

*Colonial Surety Co. v. A&R Capital Associates*,
   2017 WL 1229732 (E.D.N.Y. Mar. 31, 2017) ....................................................................4, 5

*Hooper Associates, Ltd. v. AGS Computers, Inc.*,
   74 N.Y.2d 487, 549 N.Y.S.2d 365 (N.Y. 1989) ...................................................................7

*Lumbermens Mut. Cas. Ins. Co. v. Darel Grp. U.S.A. Inc.*,
   253 F. Supp. 2d 578 (S.D.N.Y. 2003) ..................................................................................9

*Prestige Decorating & Wallcovering, Inc. v. U.S. Fire Ins. Co.*,
   49 A.D.3d 406, 858 N.Y.S.2d 1 (1st Dept. 2008) .................................................................5

*Safeco Ins. Co. of Am. v. M.E.S., Inc.*,
   2010 WL 4828103 (E.D.N.Y. Nov. 22, 2010) ......................................................................8

*Safeco Ins. Co. of America v. Oakland Excavating Co.*,
   2009 WL 1658404 (E.D. Mich. June 12, 2009) ................................................................4, 8

*Travelers Cas. & Sur. Co. v. Dale*,
   542 F. Supp. 2d 260 (S.D.N.Y. 2008) ..................................................................................9

*United States Fi. & Guar. Co. v. J. United Elec. Contr. Corp.*,
   62 F.Supp. 2d 915 (E.D.N.Y. 1999) .....................................................................................5

## PRELIMINARY STATEMENT

Third-Party Defendant Glasswall, LLC ("Glasswall") has submitted an Opposition Memorandum ("Opp. Br.") that rests on a misleadingly selective reading of the Agreement of Indemnity ("Indemnity Agreement") and case law having no application to this dispute. In fact, Glasswall concedes that it has a contractual obligation to provide collateral security to Defendant/Third-Party Plaintiff Westchester Fire Insurance Company ("Westchester") pursuant to the terms of the Indemnity Agreement. *See* Opp. Br. at 5. Glasswall's only objection is to the amount that Westchester demands. As set forth below, Westchester is entitled to the Third Party Defendants/Indemnitors' – Glasswall, Ugo Colombo, and Sara Jayne Kennedy Colombo – immediate specific performance of their obligation to deposit collateral security with Westchester in the amount of the arbitration award.[1]

## POINT I.  WESTCHESTER IS CONTRACTUALLY ENTITLED TO ADDITIONAL COLLATERAL SECURITY FROM THE INDEMNITORS

Glasswall argues that it must only provide collateral security in an amount sufficient to discharge Monadnock's claim against Westchester, which has now been quantified in the arbitration award. *See* Opp. Br. at 5. Glasswall argues that since the letter of credit it provided to Westchester when Glasswall obtained the bond exceeds the amount of the award, Glasswall has entirely fulfilled its obligation to provide collateral security under the Indemnity Agreement. *Id.* at 2.

To the contrary, as set forth in Westchester's opening brief, the Indemnity Agreement explicitly obligates the Indemnitors to provide Westchester with collateral security upon Westchester's written request at any time:

> The INDEMNITORS shall pay or cause to be paid to the SURETY both the agreed premium and, upon written request by the SURETY at any time, collateral security for its suretyship . . .

---

[1] Third-Party Defendants Ugo Colombo and Sara Jayne Kennedy Colombo have not opposed Westchester's motion.

*See* Indemnity Agreement, Boote Declr., Ex. A., at ¶ 1.

Glasswall ignores this paragraph in its opposition, but it is clear that it imposes a contractual obligation on Glasswall to provide collateral security to Westchester upon written request *for its suretyship*. Ordinary commercial "suretyship" comprehends not only an obligation to the bond obligee, but also obligations to its bond principal and its own right to investigate a bond claim, seek a proper resolution and litigate a claim where appropriate. These incidents of suretyship, as stated in the Indemnity Agreement, include "all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses… incur[red] by reason of its execution of any Bond." *Id.* at ¶ 2.

Here, in addition to Westchester's exposure to the arbitration award, Westchester has paid or incurred fees and expenses of approximately $800,000 in connection with Monadnock's claims, including the investigation of two Monadnock claims, the negotiation of the Agreement to Amend Contracts, the defense of this case and the defense of related litigation in Florida filed by the Indemnitors. Wills Declr., at ¶ 5.[2] Westchester continues to incur such fees and expenses. Boote Declr., at ¶ 17.[3] Accordingly, the letter of credit in the amount of $1,587,500 is clearly insufficient to provide Westchester with collateral security for its suretyship, *i.e.*, the arbitration award and Westchester's expenses.

Ignoring paragraph 1, Glasswall instead bases its arguments entirely on paragraph 2 of the Indemnity Agreement, which provides as follows:

> The INDEMNITOR shall indemnify and save harmless the SURETY from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by the SURETY in any action or proceeding between the INDEMNITOR and the SURETY, or between the SURETY and any third party, which SURETY shall at any time incur by reason of its execution of any Bond . . . and to place the SURETY in funds to meet all of its liability under any Bond, promptly upon request

---

[2] Whether such payments are owed to Westchester is not to be determined here but the later determination of the amount of Westchester's indemnity entitlement. *See BIB Const. Co. v. Fireman's Ins. Co. of Newark, New Jersey*, 214 A.D.2d 521, 523, 625 N.Y.S.2d 550, 552 (1995).

[3] The Court's May 17, 2016 Memorandum and Order summarizes the four year history of this matter. [Dkt. 30].

2

>and before the SURETY may be required to make any payment thereunder; and copy of the claim, demand ... or other evidence of the payment by the SURETY of any liability, ... expense, costs and attorney's fees, shall be prime facie evidence of the fact and amount of INDEMNITOR'S liability to the SURETY under this Agreement. Any demand upon the SURETY by the Obligee shall be sufficient to conclude that a liability exists and the INDEMNITOR shall then place the SURETY with sufficient funds in a form and amount deemed acceptable in the SURETY'S sole discretion, as collateral security to cover the liability.

*See* Indemnity Agreement, Boote Declr., Ex. A., ¶ at ¶ 2.

Glasswall argues that paragraph 2 of the Indemnity Agreement limits the required amount of collateral security to an amount sufficient "to cover the liability," which Glasswall contends does not include attorneys' fees and expenses. *See* Opp. Br. at 3, 6. Accordingly, Glasswall concludes that the letter of credit is sufficient collateral security to cover Westchester's remaining liability, if any, for the arbitration award. *Id.* at 4.

Contrary to Glasswall's reasoning, in a fair reading of paragraph 2, the term "liability" comprehends liability for "expense, costs and attorney's fees." Thus, the letter of credit Westchester holds may be properly viewed, in part, as collateral for Westchester's paid and future expenses. The arbitration award remains unpaid and, despite Westchester's defenses, Westchester is exposed to a decision that it must pay the award. Westchester's present collateral is inadequate to pay the award. It is therefore entitled to collateral to cover that exposure.

Further, the language of paragraph 2 of the Indemnity Agreement also expressly requires the deposit of collateral security for attorneys' fees and expenses incurred by Westchester. Paragraph 2 of the Indemnity Agreement sets forth the Third-Party Defendants/Indemnitors' obligation to *indemnify* Westchester for attorneys' fees and expenses. However, the Indemnity Agreement continues by stating that the Third-Party Defendants/Indemnitors will "place the SURETY in funds to meet all of its liability under any Bond, *promptly upon request and before the SURETY may be required to make any payment thereunder*; and copy of the claim, demand ... or other evidence of the payment by the SURETY of any ... expense, costs and attorney's fees, shall

3

be prima facie evidence of the fact and amount of INDEMNITOR'S liability to the SURETY under this Agreement." (Emphasis added).

Thus, under the Indemnity Agreement, evidence of the payment by Westchester of any expense, cost and/or attorneys' fees is considered *prima facie* evidence of the fact and amount of the Third-Party Defendants/Indemnitors' liability to Westchester, and that paid or future liability is encompassed in the Third-Party Defendants/Indemnitors' obligation to place Westchester in funds to meet such liability.

Despite the language of the Indemnity Agreement, Glasswall relies on a Michigan case, *Safeco Ins. Co. of America v. Oakland Excavating Co.*, 2009 WL 1658404 (E.D. Mich. June 12, 2009), for the proposition that "collateral security" means only liability under a bond to the obligee and does not encompass attorneys' fees and costs. However, the collateral security provision at issue in *Oakland Excavating* was substantially narrower than paragraphs 1 and 2 of Westchester's Indemnity Agreement. In that case, the court noted that the indemnification agreement only provided for collateral security in "an amount sufficient to discharge any claim made against Surety on any Bond … [which] may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond." *Id.* at *4. Here, by contrast, paragraphs 1 and 2 of the Indemnity Agreement both contemplate a deposit of collateral security with Westchester in an amount sufficient to meet all attorneys' fees and expenses incurred by reason of having executed the bonds.

Straining its argument beyond logic, Glasswall cites to *Colonial Surety Co. v. A&R Capital Associates,* 2017 WL 1229732 (E.D.N.Y. Mar. 31, 2017), for the proposition that a surety is entitled to no more collateral than the amount of the bonded obligation, there, a lien. However, the *Colonial Surety* Court only limited the amount of collateral security to the amount equal to the lien because *that was the amount demanded by the surety.* The Court did not, as Glasswall

4

suggests, state that the surety was limited in the amount it could seek as collateral security. In fact, to the contrary, the *Colonial Surety* Court recognized the surety's right to demand reasonable collateral security, the amount of which was in the surety's "sole discretion". *Id.* at *6.

Indeed, it is clear that Glasswall "confuses the requirement to furnish collateral security with an award for indemnification," but "[i]t is merely collateral security held in trust by the [surety] that must be repaid to the extent that damages are reduced or not awarded." *BIB Const. Co. v. Fireman's Ins. Co. of Newark, New Jersey*, 214 A.D.2d 521, 523, 625 N.Y.S.2d 550, 552 (1995). Thus, courts have not hesitated to permit additional collateral security in an amount beyond a liquidated liability exposure. *See, e.g., Prestige Decorating & Wallcovering, Inc. v. U.S. Fire Ins. Co.*, 49 A.D.3d 406, 407, 858 N.Y.S.2d 1, 2 (1st Dept. 2008) ("USFIC's $2 million reserve was clearly reasonable in light of the claim demands made on it (in excess of $500,000), the unresolved complaint of A.D. Winston (in excess of $290,000), and the amount sought in the Beekman International action (in excess of $1 million), all of which were referenced in USFIC's initial moving papers."); *United States Fi. & Guar. Co. v. J. United Elec. Contr. Corp.*, 62 F.Supp. 2d 915, 922 (E.D.N.Y. 1999) (holding that it was reasonable for the surety to demand a collateral security deposit to cover losses already paid, expenses incurred to investigate the claims, and future costs in meeting their obligations on the bonds).

Westchester's demand for collateral security in the amount of the arbitration award represents a proper contractual exercise of discretion. Under the Indemnity Agreement, the *form* and *amount* of the Third-Party Defendants/Indemnitors' collateral security obligations is subject to Westchester's "sole discretion". *See, e.g., BIB Const. Co.*, 214 A.D.2d at 523 ("The deposit demanded by the insurer is not based on the maturity or liquidation of any claims, but represents security, in an amount ***within the sole discretion of defendant***, in anticipation of possible losses.") (Emphasis added). Accordingly, because Westchester has deemed the letter of credit insufficient

to meet its potential liability in this matter, it has properly demanded additional, reasonable collateral security in the amount of the arbitration award.

### POINT II.  WESTCHESTER IS ENTITLED TO COLLATERAL SECURITY FOR ALL ATTORNEYS' FEES AND EXPENSES INCURRED BY REASON OF ITS EXECUTION OF THE BONDS

In Section I(C) of its opposition, Glasswall argues that, even if this Court determines that Westchester is entitled to collateral security for its legal fees, any such award is limited to legal fees incurred in connection with the defense of litigation relating to the Bonds.  However, in support of such a limitation, Glasswall quotes only a portion of paragraph 2 of the Indemnity Agreement, providing indemnity, *inter alia*, for legal fees and costs incurred "in any action or proceeding … between [Westchester] and any third party." *See* Opp. Br. at 6.  The Indemnity Agreement is not so limited.

The relevant part of paragraph 2 of the Indemnity Agreement, in full, specifically contemplates an award of attorneys' fees and expenses, "***including without limitation***, fees and disbursements of counsel incurred by [Westchester] in any action or proceeding between the [Indemnitors] and [Westchester], or between [Westchester] and any third party, which [Westchester] shall at any time incur by reason of its execution of any Bond[.]" *See* Indemnity Agreement, Boote Declr., Ex. A., ¶ at ¶ 2 (emphasis added). Glasswall omits in its quotation the words "including without limitation," which undeniably show that the enumeration of indemnity and collateral security obligations *includes, rather than excludes, litigation fees and expenses*.

Accordingly, paragraph 2 of the Indemnity Agreement, read without omission, specifically provides indemnity and/or collateral security for *all* attorneys' fees and expenses incurred by reason of having executed the Bonds, whether or not incurred in connection with litigation. Glasswall's attempt to limit the scope of its Indemnity Agreement to "litigation defense fees" must be rejected.

6

Glasswall's citation of *Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 549 N.Y.S.2d 365 (N.Y. 1989), for the proposition that indemnification agreements are to be strictly construed does not alter this conclusion. The indemnification agreement in *Hooper*, unlike the Indemnity Agreement, provided for indemnification of attorneys' fees only in disputes between the surety and third parties, whereas the surety in that case was seeking fees in a contract action against the indemnitor. Since indemnification for such an action was not explicitly addressed in the indemnification agreement at issue, the *Hooper* court was not willing to expand the plain language of the agreement.

Unlike *Hooper*, the Indemnity Agreement here, whether or not strictly construed, expressly provides for indemnification and collateral security for attorney's fees and expenses beyond litigation. *See, e.g., Am. Motorists Ins. Co. v. Pennsylvania Beads Corp.*, 983 F. Supp. 437, 442 (S.D.N.Y. 1997) (granting award of attorneys' fees and expenses incurred by reason of the surety's execution of a bond, including those incurred in connection with the prosecution of the surety's claims).

### POINT III.  WESTCHESTER'S DEMAND DOES NOT LIMIT THE AMOUNT OF COLLATERAL SECURITY

In Section I(B) of its opposition, Glasswall contends that because Westchester's demand for collateral security in the amount of the arbitration award did not include a demand for legal fees or costs, Westchester is entitled to hold no more collateral security than the amount demanded. The Indemnity Agreement contains no such limitation.

As set forth above, Westchester is entitled to collateral security for its attorneys' fees and expenses. Since Westchester already holds some collateral for such fees and expenses, it appropriately limited its demand for additional collateral security to the amount of the additional liquidated exposure created by the arbitration award, or $1,499,255. This additional demand for collateral security was necessary and reasonable because the value of the letter of credit as

7

collateral security – initially in the amount of $1,587,000 – has been eroded by the approximately $800,000 in attorneys' fees and expenses that Westchester has incurred by reason of having executed the Bonds to date. Wills Declr., at ¶ 5.

Accordingly, because the remaining value of the letter of credit is only approximately $700,000 and the arbitration award is in the amount of $1,499,255, Westchester remains exposed to substantial losses, including future attorneys' fees, that it might incur in connection with the Bonds. As such, Westchester has rightfully demanded additional collateral security in the amount of the arbitration award. *See, e.g.*, *BIB Const. Co.*, 214 A.D.2d at 523.

The sole case cited by Glasswall in support of its asserted limitation to the demand – *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 2010 WL 4828103 (E.D.N.Y. Nov. 22, 2010) – does not support such a limitation. Glasswall cites only a limited excerpt of the *Safeco* Court's opinion in which the court stated that the surety could not collect fees from the Hirani defendants because the surety had not previously demanded those fees. *See* Opp. Br. at 6. However, Glasswall omits the key distinction that the *Safeco* court held to justify a limitation beyond the scope of the surety's initial demand. In that case, the court held that the surety could not seek fees from the Hirani defendants that were outside the scope of the surety's initial demand *because it violated the Court's order to do so*, not because of a legal proposition that sureties are never entitled to recover additional amounts beyond those demanded. The Court concluded that a limitation to an earlier demand was necessary because it was concerned that "[u]nless the calculation of collateral security is limited to amounts demanded and payments made as of a fixed date, the ongoing nature of the contracts and payments will render it impossible for the court to finally resolve" the collateral security issue. *Safeco Ins. Co. of Am. v. M.E.S. Inc.*, WL 3928606, at *6 (E.D.N.Y. Oct. 4, 2010).

In contrast, the instant case involves entirely different facts. Here, Westchester merely seeks additional collateral security in the amount of the arbitration award. This is a fixed number

8

and, despite the ongoing nature of this dispute, this Court can appropriately require additional collateral security equal to the liquidated exposure created by the arbitration award. Given the obvious substantial additional expense Westchester has incurred during the past four years, it is also entirely appropriate for Westchester to continue to hold the now-eroding collateral that it required when Glasswall obtained the bonds.

### POINT IV.  WESTCHESTER'S FAILURE TO PROVIDE BACK-UP DOCUMENTATION FOR ITS ATTORNEYS' FEES AND EXPENSES DOES NOT PREVENT AN AWARD OF COLLATERAL SECURITY

Lastly, Glasswall argues that because Westchester has failed to provide back-up documentation for its attorneys' fees and expenses, the Court should deny Westchester's motion. In this motion, Westchester seeks collateral security for the amount of the arbitration award, not a determination that Glasswall owes that amount. Westchester acknowledges that, if any fees and/or expenses it claims are disputed, it must ultimately provide reasonable detailed supporting documentation in order to recover indemnification for them.  In its present motion, however, Westchester seeks only collateral security, not an adjudication that it is now entitled to a judgment for indemnification.

Nevertheless, if this Court deems additional documentation of Westchester's fees and expenses necessary to grant the present motion, Westchester requests that the Court provide it with an opportunity to submit such documentation after deciding the merits of the instant motion. *See, e.g., Travelers Cas. & Sur. Co. v. Dale*, 542 F. Supp. 2d 260, 265 (S.D.N.Y. 2008) ("Consequently, the plaintiff's request for attorney's fees cannot be granted at this juncture in the proceedings. However, the Court will permit the plaintiff to cure the deficiencies noted above, by supplementing its request for attorney's fees promptly, with additional information."); *Lumbermens Mut. Cas. Ins. Co. v. Darel Grp. U.S.A. Inc.*, 253 F. Supp. 2d 578, 587 (S.D.N.Y. 2003) ("Plaintiff has ten days from the date of this decision to file an accounting of all attorneys' fees claimed. Defendants have

9

ten days thereafter to object to any fees claimed. The Court will enter judgment as soon as the amount of fees can be resolved.").

## CONCLUSION

For the foregoing reasons, Defendant/Third-Party Plaintiff Westchester Fire Insurance Company respectfully requests that the Court grant this motion for partial summary judgment against the Indemnitors/Third Party Defendants, Glasswall, LLC, Ugo Colombo, and Sara Jayne Kennedy Colombo, and order specific performance requiring the Indemnitors/Third Party Defendants to deposit with Westchester collateral security in the amount of $1,499,255.18, or, in the alternative, that the Court issue a preliminary injunction enforcing the Indemnity Agreement and ordering the Indemnitors to immediately deposit collateral with Westchester in the amount of $1,499,255.18.

Dated:   New York, New York
          November 6, 2017

                              COZEN O'CONNOR

                              By: ____/s/ John J. Sullivan_____
                                    John J. Sullivan
                                    45 Broadway Atrium, Suite 1600
                                    New York, NY 10006
                                    P: 212-453-3729
                                    F: 646-461-2073
                                    JSullivan@cozen.com

                                    Robert McL. Boote*
                                    *Admitted Pro Hac Vice*
                                    Suite 400, 200 Four Falls Corporate Center
                                    P.O. Box 800
                                    West Conshohocken, PA 19428
                                    P: 215-665-4630
                                    F: 215-701-2424
                                    RBoote@cozen.com
                                    *Attorneys for Defendant*
                                    *Westchester Fire Insurance Company*

TO:

Ugo Colombo
5020 North Bay Road
Miami, Florida 33140

Sara Jayne Kennedy Colombo
5020 North Bay Road
Miami, Florida 33140

James P. Cinque
CINQUE & CINQUE, P.C.
845 Third Avenue, Suite 1400
New York, NY 10022
P: 212-759-5515
F: 212-759-7737
Cinque845@aol.com
*Attorneys for Third-Party*
*Defendant Glasswall LLC*

Howard Kleinhendler
Jocelyn Weinstein
WACHTEL MISSRY LLP
885 Second Avenue
New York, NY 10017
P: 212-909-9500
F: 212-909-9430
kleinhendler@wmllp.com
jweinstein@wmllp.com
*Attorneys for Plaintiff*
*Monadnock Construction, Inc.*

11