EXHIBIT "A" TO DECLARATION OF JOEL S. MAGOLNICK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MONADNOCK CONSTRUCTION, INC.,                    Case No.: 16 CIV. 00420 (JBW)
                                                 ECF Case
                    Plaintiff,

        -against-

WESTCHESTER FIRE INSURANCE                       **THIRD-PARTY COMPLAINT**
COMPANY,

                    Defendant.
-------------------------------------------------------------X

WESTCHESTER FIRE INSURANCE
COMPANY,

                    Third-Party Plaintiff,

        -against-

GLASSWALL, LLC, UGO COLOMBO, and
SARA JAYNE KENNEDY COLOMBO,

                    Third-Party Defendants.
-------------------------------------------------------------X

Pursuant to Rule 14 of the Federal Rules of Civil Procedure, Defendant and Third-Party

Plaintiff, Westchester Fire Insurance Company ("Westchester"), by its attorneys, Cozen

O'Connor, as and for its Third-Party Complaint against the Third-Party Defendants Glasswall,

LLC ("Glasswall"), Ugo Colombo ("Colombo") and Sara Jayne Kennedy Colombo ("Kennedy")

(collectively, the "Third-Party Defendants") alleges as follows:

## JURISDICTION AND VENUE

1.      The Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1367(a),

granting supplemental jurisdiction over the claims against the Third-Party Defendants involving

the same case and controversy that is the subject of this case.

2.     Venue is proper in this district pursuant to an Agreement of Indemnity, dated February 1, 2013, between Westchester and Third-Party Defendants – who are named as Indemnitors in that Agreement – which provides in its paragraph 10 that each Indemnitor "agrees that all actions or proceedings arising directly or indirectly from this Agreement shall be litigated only in courts having status within the State of New York, and consents to the personal jurisdiction and venue of any local, state or Federal Court located therein." A copy of the Agreement of Indemnity is annexed hereto as Exhibit A.

## THE PARTIES

3.     Westchester is a corporation of the Commonwealth of Pennsylvania with its principal place of business at 436 Walnut Street, Philadelphia, Pennsylvania 19103.

4.     Glasswall is a limited liability company formed in the State of Florida with its principal place of business located at 1550 Biscayne Blvd, Suite 300, Miami, Florida 33132.

5.     Defendant, Ugo Colombo, is an individual and a citizen of the State of Florida residing at 5020 North Bay Road, Miami, Florida 33140.

6.     Defendant Sara Jayne Kennedy Colombo is an individual and a citizen of the State of Florida, residing at 5020 North Bay Road, Miami, Florida 33140.

## FACTUAL ALLEGATIONS

7.     On January 3, 2013, Plaintiff, Monadnock Construction, Inc. ("Monadnock"), as construction manager, and Glasswall, as manufacturer, entered into two contracts pursuant to which Glasswall agreed to produce and deliver windows, doors, and other materials to two high-rise affordable development projects in Long Island City, New York (the "Contracts").

8.     The Contracts required Glasswall to obtain payment and performance bonds for each of the Contracts. Pursuant thereto, Glasswall obtained from Westchester Payment and

Performance Bonds, No. K08840295, dated February 12, 2013, and No. K08840258, dated February 11, 2013, in the amounts of the Contracts, totaling $13,000,000 (collectively, the "Bonds").

9.      Prior to executing the Bonds, the Third Party Defendants entered into the Agreement of Indemnity, dated February 1, 2013, which obligated the Third Party Defendants to defend and to indemnify Westchester for all liability, losses, expenses of whatsoever kind or nature or other payments it may be required to incur or make by reason of having executed the Bonds. *See* Agreement of Indemnity, Ex. A.

10.      On January 13, 2014, Monadnock gave notice of termination of the Contracts and gave notice to Westchester that it regarded Glasswall to have defaulted on the Contracts.

11.      On March 4, 2015, Monadnock filed a Demand for Arbitration against Glasswall with the American Arbitration Association ("AAA") in New York, seeking damages for Glasswall's alleged breaches of the Contracts (the "Arbitration").

12.      On December 22, 2015, Monadnock filed a Summons with Notice captioned *Monadnock Construction, Inc. v. Westchester Fire Insurance Company*, in the Supreme Court of the State of New York, County of Kings, Index No. 515499/2015 (the "State Court Action").

13.      On January 26, 2016, Westchester removed the State Court Action to this Court.

14.      On March 1, 2016, Monadnock filed its Complaint in this action (the "Complaint"). A copy of the Complaint is annexed hereto as Exhibit B.

15.      The Complaint alleges in sum and substance that Westchester is liable to Monadnock for Glasswall's alleged beaches of the Contracts by, *inter alia*, failing to timely deliver and/or delivering defective window assemblies and other materials. The Complaint

asserts that Westchester, as surety, breached its obligations under the Bonds to timely take over Glasswall's responsibilities under the Contracts.

16.     On April 4, 2016, Westchester moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, upon the ground that the claims asserted in the Complaint are barred by the contractual limitations period in the Bonds (Doc. 20).

17.     On May 17, 2016, the Court entered an order denying Westchester's motion to dismiss and staying the case for all purposes pending the outcome of the Arbitration (Doc. 30).

18.     On August 29, 2017, the arbitrators issued an Award of Arbitrator against Glasswall in the Arbitration in the amount of $1,499.255.18 (the "Arbitration Award").

19.     On September 12, 2017, Westchester filed its Answer to the Complaint.  A copy of Westchester's Answer is annexed hereto as Exhibit C.

20.     Westchester anticipates that Monadnock will move to confirm the Arbitration Award, and, in any event, will assert that Westchester is liable to Monadnock for the Arbitration Award, and will move for judgment against Westchester on that basis.

21.     Third-Party Defendants are "Indemnitors" under the Agreement of Indemnity that provides in part as follows:

> 1.     Premiums & Collateral For Suretyship – The Indemnitors shall pay or cause to be paid to the Surety both the agreed premium and, upon written request by the Surety at any time, collateral security for its suretyship until the Indemnitor shall furnish to the Surety competent written evidence, satisfactory to the Surety, of the termination of any past, present and future liability under any Bond.  The Indemnitor expressly waives any right to interest which may be earned on the collateral security and further consents that the collateral security provided in consideration of suretyship may be held by the Surety in any investment or depository that the Surety in its sole discretion deems advisable and prudent.  The Surety's election not to demand collateral at the inception of the

4

suretyship obligation shall not operate as a waiver of the right to demand and receive such collateral at any time before liability has terminated under any Bond.

2.      Indemnity & Collateral For Claim – The Indemnitor shall indemnify and save harmless the Surety from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by the Surety in any action or proceeding between the Indemnitor and the Surety, or between the Surety and any third party, which Surety shall at any time incur by reason of its execution of any Bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against the Surety as a joint or several obligor and whether the Indemnitor is then liable to make such payment, and to place the Surety in funds to meet all of its liability under any Bond, promptly upon request and before the Surety may be required to make any payment thereunder; and copy of the claim, demand, voucher or other evidence of the payment by the Surety of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of Indemnitor's liability to the Surety under this Agreement. Any demand upon the Surety by the Obligee shall be sufficient to conclude that a liability exists and the Indemnitor shall then place the Surety with sufficient funds in a form and amount deemed acceptable in the Surety's sole discretion, as collateral security to cover the liability.

(Capitalized terms shown with initial capitalization).

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST
## THE THIRD-PARTY DEFENDANTS
## FOR DECLARATORY JUDGMENT OF INDEMNIFICATION

22.      Westchester realleges the allegations set forth in paragraphs 1 through 21 hereof.

23.      Under the Agreement of Indemnity, Third-Party Defendants are obligated to defend and to indemnify Westchester against, *inter alia,* all liability it may incur and all payments it may be required to make by reason of having executed the Bonds.

24.      Westchester is entitled to a declaratory judgment that Third-Party Defendants have the foregoing obligations.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST
**THE THIRD-PARTY DEFENDANTS FOR DEPOSIT OF COLLATERAL**

25.     Plaintiff Westchester repeats and realleges the allegations contained in paragraphs 1 through 24 hereof.

26.     Under the Agreement of Indemnity, Third-Party Defendants are obligated, *inter alia*, to defend Westchester, to indemnify it from all loss and expense and to immediately provide Westchester with the collateral it has demanded.

27.     By letter dated June 7, 2017, counsel for Westchester informed the Third-Party Defendants that Westchester exercised its right under the Agreement of Indemnity to require them to deposit collateral of $13,000,000 equal to the limits of the Bonds, or possibly a lesser appropriate amount in the event the Arbitration Award limited Westchester's liability to a lesser amount than the Bonds.

28.     As of the date of this filing, Third-Party Defendants have not provided Westchester with the required collateral.

29.     By reason of the foregoing, Westchester demands that Third-Party Defendants provide collateral and deposit with Westchester the sum of $1,499.255.18 representing Westchester's potential liability based on the Arbitration Award.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST
**THE THIRD-PARTY DEFENDANTS FOR A PRELIMINARY INJUNCTION**

30.     Westchester realleges the allegations set forth in paragraphs 1 through 29 hereof.

31.     The Agreement of Indemnity requires Third-Party Defendants to post collateral with Westchester promptly upon the request of Westchester.

32.     Westchester's right to collateral from Third-Party Defendants was specifically bargained for and agreed to by Third-Party Defendants. Westchester would not have executed the Bonds without the right to demand collateral.

33.     Westchester has no adequate remedy at law and will be irreparably harmed if Third-Party Defendants fail to deposit with Westchester collateral in the sum of $1,499.255.18.

34.     Westchester has a strong likelihood of success on the merits in this action.

35.     The issuance of a preliminary injunction will not create an undue hardship for Third-Party Defendants as the preliminary injunction will require that Third-Party Defendants do only what they contracted to do in the Agreement of Indemnity.

36.     Westchester will suffer irreparable injury if a preliminary injunction is not granted as Westchester would then be deprived of the security that the Third-Party Defendants guaranteed in their Agreement of Indemnity.

37.     For the foregoing reasons, Westchester respectfully requests that the Court issue a preliminary injunction requiring (1) that Third-Party Defendants immediately post collateral in the sum of $1,499.255.18, and (2) until Third-Party Defendants post such collateral, enjoining and restraining Third-Party Defendants from selling, transferring, disposing or encumbering its assets and property and granting Westchester a lien upon all the assets and property owned by Third-Party Defendants or in which Third-Party Defendants have an interest.

**WHEREFORE**, Defendant and Third-Party Plaintiff, Westchester Fire Insurance Company, respectfully requests judgment as follows:

a.    On the First Cause of Action a declaration that Third-Party Defendants are required to defend and to indemnify Westchester against *inter alia* all liability it may incur and all payments it may be required to make by reason of having executed the Bonds;

b.    On the Second Cause of Action against Third-Party Defendants for the deposit with Westchester of the sum of $1,499.255.18;

c.    On the Third Cause of Action issuing a preliminary injunction requiring (1) that Third-Party Defendants immediately post collateral in the sum of $1,499.255.18 and (2) until Third-Party Defendants post such collateral, enjoining and restraining Third-Party Defendants from selling, transferring, disposing or encumbering its assets and property and granting Westchester a lien upon all the assets and property owned by Third-Party Defendants or and in which they have an interest;

d.    And for such other relief as this Court deems just and proper.

Dated:   New York, New York
         September 12, 2017

COZEN O'CONNOR

By:   /s/ John J. Sullivan
      John J. Sullivan
      45 Broadway Atrium, Suite 1600
      New York, NY 10006
      P: 212-453-3729
      F: 646-461-2073
      JSullivan@cozen.com

      Robert McL. Boote*
      *Admitted Pro Hac Vice*

8

Suite 400, 200 Four Falls Corporate Center
P.O. Box 800
West Conshohocken, PA 19428
P: 215-665-4630
F: 215-701-2424
RBoote@cozen.com

*Attorneys for Defendant*
*Westchester Fire Insurance Company*

TO:

Glasswall, LLC
1550 Biscayne Blvd, Suite 300
Miami, Florida 33132

Ugo Colombo
5020 North Bay Road
Miami, Florida 33140

Sara Jayne Kennedy Colombo
5020 North Bay Road
Miami, Florida 33140

Howard Kleinhendler
Jocelyn Weinstein
WACHTEL MISSRY LLP
885 Second Avenue
New York, NY 10017
P: 212-909-9500
F: 212-909-9430
kleinhendler@wmllp.com
jweinstein@wmllp.com
*Attorneys for Plaintiff*
*Monadnock Construction, Inc.*

# EXHIBIT A



**Agreement of Indemnity**
ACE European Group Limited
ACE INA Insurance Company
Insurance Company of North America
Pacific Employers Insurance Company
Westchester Fire Insurance Company
Indemnity Insurance Company of North America
ACE American Insurance Company
ACE Property and Casualty Insurance Company

Whereas the undersigned (hereinafter individually and collectively called "INDEMNITOR") desires one or more of the companies named above, as the case may be, (hereinafter called "SURETY") to execute bonds including undertakings and other obligations, including any bond or bonds predating this Agreement, (hereinafter referred to as "Bonds") on its behalf and on behalf of any of its present or future, directly or indirectly owned or controlled subsidiaries or affiliates, whether alone or in joint venture with others whether or not named herein, and any corporation, partnership or person upon the written request of any of the undersigned (collectively hereinafter referred to as "Principals") or to renew or continue and to refrain from canceling the Bonds, as the case may be, and

NOW THEREFORE, in consideration of the SURETY executing the Bonds, the INDEMNITORS agree that:

1. **PREMIUMS & COLLATERAL FOR SURETYSHIP**-The INDEMNITORS shall pay or cause to be paid to the SURETY both the agreed premium and, upon written request by the SURETY at any time, collateral security for its suretyship until the INDEMNITOR shall furnish to the SURETY competent written evidence, satisfactory to the SURETY, of the termination of any past, present and future liability under any Bond. The INDEMNITOR expressly waives any right to interest which may be earned on the collateral security and further consents that the collateral security provided in consideration of suretyship may be held by the SURETY in any investment or depository that the SURETY in its sole discretion deems advisable and prudent. The Surety's election not to demand collateral at the inception of the suretyship obligation shall not operate as a waiver of the right to demand and receive such collateral at any time before liability has terminated under any Bond.

2. **INDEMNITY & COLLATERAL FOR CLAIM**- The INDEMNITOR shall indemnify and save harmless the SURETY from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by the SURETY in any action or proceeding between the INDEMNITOR and the SURETY, or between the SURETY and any third party, which SURETY shall at any time incur by reason of its execution of any Bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against the SURETY as a joint or several obligor and whether the INDEMNITOR is then liable to make such payment, and to place the SURETY in funds to meet all of its liability under any Bond, promptly upon request and before the SURETY may be required to make any payment thereunder; and copy of the claim, demand, voucher or other evidence of the payment by the SURETY of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of INDEMNITOR'S liability to the SURETY under this Agreement. Any demand upon the SURETY by the Obligee shall be sufficient to conclude that a liability exists and the INDEMNITOR shall then place the SURETY with sufficient funds in a form and amount deemed acceptable in the SURETY'S sole discretion, as collateral security to cover the liability.

3. **OTHER INDEMNITY**- The INDEMNITOR shall continue to remain bound under the terms of this Agreement even though the SURETY may have heretofore or hereafter, with or without notice to or knowledge of the Principals and the INDEMNITOR, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from the principals or INDEMNITOR or others. The rights, powers and remedies given the SURETY under this Agreement shall be and are in addition to and not in lieu of, any and all other rights, powers and remedies which the SURETY may have or acquire against the Principals and INDEMNITOR or others, whether by the terms of any agreement or by operation of law or otherwise.

4. **INVALIDITY**- In case any of the INDEMNITORS fail to execute this Agreement, or in case the execution hereof by any of the INDEMNITORS be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect

the validity of this Agreement or the liability hereunder of any of the INDEMNITORS executing the same, but each and every INDEMNITOR so executing shall be and remain full bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed.

5.  **SURETIES** - All of the terms, provisions and conditions of this Agreement shall be extended to and for the benefit not only of the SURETY, either as a direct writing company or as a co-surety or reinsurer, but also for the benefit of any surety or insurance company or companies with which the SURETY may participate as a co-surety or reinsurer and also for the benefit of any other company which may execute any bond or bonds at the request of the SURETY on behalf of any of the Principals.

6.  **DECLINE EXECUTION** - Unless otherwise specifically agreed in writing, the SURETY may decline to execute any bond and the Principals and INDEMNITOR shall make no claim to the contrary.

7.  **CHANGES, WAIVER OF NOTICE** - The SURETY is authorized and empowered, without notice to or knowledge of the INDEMNITOR, to assent to any change whatsoever in Bonds and/or the contracts or obligations covered by any said Bonds including but not limited to the time for performance and any continuations, extensions or renewals of the Bonds, the execution of any substitute or substitutes therefore, with the same or different conditions, provisions and obligees with the same or larger or smaller penalties; it being expressly understood and agreed that the INDEMNITOR shall remain bound under the terms of this Agreement even though any such assent by the SURETY does or might substantially increase the liability of the INDEMNITOR. The INDEMNITOR waives notice of the execution of Bonds, acceptance of this Agreement, default or other acts giving rise to a bond claim or liability of the SURETY under Bonds.

8.  **TERMINATION** - This Agreement may be terminated by the INDEMNITOR upon twenty days' written notice sent by registered mail to the SURETY at its home office at ACE Bond Services, WA10G, 436 Walnut Street, Philadelphia, Pennsylvania 19106-3703, but any such notice of termination shall not operate to modify, bar or discharge the INDEMNITOR as to the Bonds that may have been therefore executed.

9.  **SEVERABILITY** - If any provision or provisions of this Agreement be declared void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted.

10. **CHOICE OF LAW/FORUM** - It is mutually agreed that this Agreement is deemed made in the State of New York, regardless of the order in which the signatures of the parties shall have been affixed and shall be interpreted, and the rights and liabilities of the parties determined in accordance with the laws of the State of New York. INDEMNITOR agrees that all actions or proceedings arising directly or indirectly from this Agreement shall be litigated only in courts having status within the State of New York, and consents to the personal jurisdiction and venue of any local, state or Federal Court located therein.

11. **JOINT/SEVERAL** - Each undersigned Indemnitor, its successors and assigns, are jointly and severally bound by the foregoing conditions of this Agreement.

12. **FACSIMILE** – This Agreement bearing the signature of the Indemnitor(s) shall be valid, effective and enforceable whether received by the Surety as an original or as a facsimile transmission.

IN WITNESS WHEREOF, INDEMNITOR has signed this Agreement this _1_ day of _Feb_, 20_13_.

Glasswall, LLC
3550 N.W. 49th Street
Miami, FL 33142
Federal Tax ID:

By: _____
Name: Federico Balestrazzi
Title: President

(Seal)

ATTEST: _____
Name: Sasha Mendoza
Title: Admin

(Either attach copies of resolutions of Boards of Directors or execute notarial acknowledgment.)


Ugo Colombo
5020 North Bay Road
Miami Beach, FL 33141
Federal Tax ID:

By: _____
Name: Ugo Colombo
Title: Individually

(Seal)

ATTEST: _____
Name: _____
Title: _____

(Either attach copies of resolutions of Boards of Directors or execute notarial acknowledgment.)


Sara Jayne Kennedy Colombo
5020 North Bay Road
Miami Beach, FL 33141
Federal Tax ID:

By: _____
Name: Sara Jayne Kennedy Colombo
Title: Individually

(Seal)

ATTEST: _____
Name: Esther F Thurmond
Title: Secretary

(Either attach copies of resolutions of Boards of Directors or execute notarial acknowledgment.)

**FOR NOTARIAL ACKNOWLEDGMENT OF PRINCIPAL/INDEMNITOR'S**

**CORPORATE ACKNOWLEDGMENT**

State of Florida

County of Dade                                           ss:

On this _1_ day of _Feb_ , 20 _13_ , before me personally came Edena Balestrazzi to me known, who being by me duly sworn, deposed and says that s/he is the _President_ of Glasswall, LLC, the corporation described in and which executed the foregoing Agreement; that he knows the seal of the said corporation; that the seal affixed to the said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that s/he signed his name thereto by like order.

(Signature of Notary Public)

My commission expires _9 8 14_

**PERSONAL ACKNOWLEDGMENT**

State of _Florida_

County of _Dade_                                       ss:

On this _1_ day of _Feb_ , 20 _13_ , before me personally came Lee Colombo to me known, who, being by me duly sworn, did depose and say that he resides at 5020 North Bay Road, Miami Beach, FL 33140.

JEANA LEGRA
MY COMMISSION # EE 024729
EXPIRES: September 9, 2014
Bonded Thru Notary Public Underwriters

(Signature of Notary Public)

My commission expires _9 9 14_

**PERSONAL ACKNOWLEDGMENT**

State of _Florida_

County of _Dade_                                       ss:

On this _1_ day of _Feb_ , 20 _13_ , before me personally came Sara Jayne Kennedy Colombo to me known, who, being by me duly sworn, did depose and say that he resides at 5020 North Bay Road, Miami Beach, FL 33141.

JEANA LEGRA
MY COMMISSION # EE 024729
EXPIRES: September 9, 2014
Bonded Thru Notary Public Underwriters

(Signature of Notary Public)

My commission expires _9 9 14_

# EXHIBIT B

Judah D. Greenblatt
GREENBLATT LESSER LLP
The Chanin Building
122 East 42nd Street, 31st Floor
New York, NY 10168
(212) 682-9832
jgreenblatt@greenblattlesser.com

Howard Kleinhendler
Jocelyn M. Weinstein
WACHTEL MISSRY LLP
885 Second Avenue
New York, NY 10017
(212) 909-9500
hkleinhendler@wmllp.com

*Attorneys for Plaintiff*
*Monadnock Construction, Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONADNOCK CONSTRUCTION, INC., | Case No. 1:16-cv-420 (JW) |
| Plaintiff, | |
| v. | **COMPLAINT** |
| WESTCHESTER FIRE INSURANCE COMPANY, | |
| Defendant. | |

Plaintiff Monadnock Construction, Inc. ("Monadnock") by its attorneys, Wachtel Missry

LLP and Greenblatt Lesser LLP, in furtherance of its action against Westchester Fire Insurance

Company ("WFIC"), states as follows:

## NATURE OF THE CASE

1.     WFIC, as surety, refused to honor performance bonds it issued in favor of its obligee, Monadnock.  Glasswall, LLC ("Glasswall"), as principal on the bonds and manufacturer for Monadnock, breached its contractual obligations to Monadnock by repeatedly failing to timely deliver window assemblies ("Windows") and other materials (Materials") to the two large mixed use (commercial and affordable housing) buildings Monadnock constructed in Long Island City, New York. In addition, Glasswall failed to deliver certain Materials and ones it did deliver were defective. Glasswall also failed to pay suppliers for work in connection with the projects. These breaches delayed the projects' completions by close to a year, resulting in more than $9 million in damages.

2.     Glasswall's delays and other breaches were further exacerbated by WFIC's refusal to honor its policy commitments to timely step in and take over Glasswall's responsibilities under the construction contracts.

3.     Monadnock seeks damages against WFIC for breaches of contract.

## JURISDICTION AND VENUE

4.     Monadnock is a New York corporation, with its principal place of business located at 155 3rd Street, Brooklyn, New York.

5.     WFIC, upon information and belief, is a Pennsylvania corporation, with its principal place of business in Philadelphia, Pennsylvania.

6.     The Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1332(a), because the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7.      Venue lies in this district, pursuant to 28 U.S.C. § 1391(a)(2), because a
substantial part of the events or omissions giving rise to the claim occurred in this district.
The construction projects at the heart of this dispute are located in Queens County, New
York.

## FACTS

8.      On or about January 3, 2013, Monadnock, as Contractor,  entered into two (2)
AIA A401-2007 contracts (hereinafter collectively referred to as the "Contracts") with
Glasswall, as Manufacturer, located at 3550 NW 49th Street, Miami, Florida, for the design
and supply of a curtainwall system including Windows, doors, storefronts and other
Materials for each of  two (2) mixed use (commercial/affordable housing) projects in the
Hunters Point South section of Long Island City, New York.

9.      The Windows specified under the Contracts were long lead items that required
many months to design, engineer and produce.  The Windows were also unique and were to
be specifically manufactured for the projects.

10.     The first project, referred to as "HPS Parcel A", is a thirty-seven (37) story
building located at 1-50 50th Avenue, and is owned by HPS 50th Avenue Associates LLC.
The second project, referred to as "HPS Parcel B", is a thirty-two (32) story building located
at 1-55 Borden Avenue, is owned by HPS Borden Avenue Associates LLC. The two (2) HPS
entities are hereinafter collectively referred to as "HPS". The HPS Parcels A and B projects
are hereinafter collectively referred to as the "Projects".

11.     The Monadnock/Glasswall HPS Parcel A Contract was in the amount of Eight
Million, Four Hundred and Twelve Thousand, Five Hundred and Two Dollars ($8,412,502)
and required Glasswall to deliver Five Thousand, Eight Hundred and Thirty-Six (5,836)

Windows and other Materials to HPS Parcel A. The Monadnock/Glasswall HPS Parcel B Contract was in the amount of Four Million, Five Hundred and Eighty-Seven Thousand, Four Hundred and Ninety-Eight Dollars ($4,587,498) and required Glasswall to deliver Three Thousand, One Hundred and Twenty (3,120) Windows and other Materials to HPS Parcel B.

12. The Contracts required Glasswall to obtain payment and performance bonds for each Contract. Pursuant thereto, Glasswall obtained from WFIC Payment and Performance Bonds No. K08840295 dated February 12, 2013 for HPS Parcel A and Payment and Performance Bonds. No. K08840258 dated February 11, 2013 for HPS Parcel B in the amounts of the Contracts (collectively, the "Bonds") (attached hereto as Exhibit A).

13. The Contracts had a "time of the essence" clause (AIA A401-2007, section 9.4). They required Glasswall to ship completed Windows to HPS Parcel B starting on July 1, 2013 and to HPS Parcel A starting on September 1, 2013. Glasswall did not meet those dates.

14. On March 15, 2013, the project schedule was updated and reflected Window delivery start dates of August 7, 2013 for Parcel B and of August 29, 2013 for Parcel A. Glasswall did not meet those delivery start dates either.

15. On August 16, 2013, Glasswall's attorney at the time, Clinton D. Flagg, sent Monadnock a letter representing that "completed window assemblies" would be ready to ship by Glasswall to the Projects on September 1, 2013. That representation proved false.

16. On November 20, 2013, Glasswall issued a production schedule representing that Release 1 for Parcel A (i.e. Windows for floors 2-6) would be complete by December 6, 2013 and Release 1 for Parcel B (i.e. Windows for floors 2-9) would be complete by December 12, 2013. Those representations proved to be false as well.

17. The Contracts also required Glasswall to fabricate, and store off-site, Windows as necessary to allow for their timely and continuous installation (Rider 5, ¶17.d.2) at a rate of 2 floors per week (Rider 5, ¶37) while keeping pace 6 floors below the superstructure contractor (Rider 5, ¶4.3.b.).

18. On or about November 21, 2013, Monadnock's subcontractor completed the concrete superstructure on HPS Parcel B, and on or about January 15, 2014, it completed the concrete superstructure on HPS Parcel A.

19. Glasswall was also required to: "diligently perform the work, and maintain men in sufficient numbers and materials in sufficient quantities to accomplish the rapid completion of the job." (AIA A401-2007, section 9.3.)

20. Significant work by the other trades on the Projects was delayed due to the lack of Windows since the Windows were necessary to protect the interior of the buildings from the outside elements. Glasswall's furnishing of Windows to be installed by others was a necessary construction pre-condition to the various other interior construction trades progression of their work.

21. Although Monadnock asked Glasswall several times for a recovery schedule that would show how Glasswall intended to accelerate its production to make up for lost time, Glasswall refused to provide a recovery schedule. Instead, Glasswall issued production schedules on September 17, 25, 27, October 28, and November 20, 2013, none of which Glasswall followed and all of which failed to show the recovery of lost time.

22. On November 27, 2013, Glasswall emailed Monadnock that Parcel A Release 1 would be complete by December 6, 2013 and Parcel B Release 1 would be complete by December 12, 2013. Those Releases were not completed as represented.

23.     On January 7, 2014, Glasswall issued another production schedule, which failed to provide for critical storefront Windows, and once again failed to recover all of the lost time.  Moreover, it guaranteed that Glasswall would be late in its "time of the essence" deliveries.

24.     Given Glasswall's prior history of broken production and delivery promises and its continued problems with its suppliers, Monadnock had doubts that Glasswall would maintain the January 7, 2014 production schedule.

25.     Moreover, quality assurance/quality control ("QA/QC") issues pervaded Glasswall's production. Israel Berger & Associates, LLC ("IBA"), acting as HPS's representative, conducted limited inspections of Glasswall's production in its Miami facilities.  It issued weekly deficiency reports demonstrating Glasswall's QA/QC problems. Those deficiencies continued to plague Glasswall's production.

26.     In late December, 2013, Glasswall, at IBA's request, opened up 3-5 crates of "completed window assemblies" that Glasswall had represented were defect-free and ready for shipment to the HPS Projects. IBA discovered that numerous previously known defects in several of those "completed window assemblies" had not been remedied.

27.     Lastly, Glasswall anticipatorily breached the Contracts by demanding payment before it was due and declaring its refusal to ship Windows if ordered to do so by Monadnock. The Contracts did not require Monadnock to pay Glasswall for stored materials not delivered the Projects.  In addition, Glasswall's certified requisition amounts for its production were false and were never resubmitted with accurate quantities.

28.     In any event, delivery of those Windows was held up due to QA/QC concerns and, moreover, the respective Release 1's for Parcels A and B were not complete.

29.     Because Window delivery was critical to the progress of the Projects, delays in their delivery delayed the completion of the Projects and pushed out the temporary certificate of occupancy ("TCO") dates.  This exposed Monadnock to substantial damages including, but not limited to, extended general conditions, extended field costs, extended overhead costs, trade delay claims, extended financing costs, loss of rents and other damages.

30.     In consequence of all the foregoing, Monadnock sent Glasswall a Notice of Default on September 16, 2013, a Notice of Continuing Default on October 23, 2013 and a Notice of Continuing Default on December 31, 2013.  The aforesaid Notices were also sent to WFIC.

31.     Nevertheless, Glasswall remained in default of its production obligations, delivery obligations, scheduling obligations, and QA/QC obligations and it submitted falsified requisitions that it demanded to be paid for, despite having never delivered a single Window to the Projects.

32.     On January 13, 2014, upon certification of sufficient cause from the architect, Monadnock terminated Glasswall's Contracts.

33.     Also on January 13, 2014, Monadnock provided WFIC with the required Section 3.2 notice under the Bonds and demanded that WFIC take action pursuant to Section 5 of the Bonds which required WFIC to, inter alia, "promptly": takeover the Contracts (with Monadnock's consent) and arrange for Glasswall to complete them (Section 5.1); takeover the Contracts (without Monadnock's consent) and complete them itself or through other independent contractors (Section 5.2); arrange for a bonded completion contractor to contract with Monadnock to complete the work and pay for it, along with Section 7 damages (Section 5.3); or, pay Monadnock the amount owed under the Bonds or deny liability (Section 5.4).

34.    WFIC refused to take any Section 5 action whatsoever and thereby breached its contracts (i.e. the Bonds).

35.    On March 6, 2014, Monadnock sent WFIC a 7 day notice under Section 6 of the Bonds demanding that WFIC "perform its obligations" under the Bonds and chose a Section 5 course of action.

36.    Again, WFIC refused to take any Section 5 action whatsoever and thereby breached its contracts (i.e. the Bonds).

37.    Ultimately, on April 4, 2014, in an effort to mitigate damages, and without any waiver of its rights, Monadnock entered into an Agreement to Amend Contracts ("Amendment Agreement") with Glasswall, WFIC, HPS and the indemnitors on the Bonds, Ugo Colombo and his wife Sara Jayne Colombo Kennedy (the "Indemnitors") that provided for the completion of the Contracts by Glasswall. In addition, unbeknownst to Monadnock at the time, WFIC entered into a side agreement ("Side Agreement") with Glasswall to increase its Contracts price by 7.5%.

38.    The Amendment Agreement permitted Glasswall to complete the Contracts but preserved all parties' claims that had accrued to date, including Monadnock's claims against Glasswall and Monadnock's claims against WFIC, and deferred them until the earlier of the completion of the Contracts or termination thereof.

39.    The Amendment Agreement provided, inter alia, that Monadnock would withdraw Glasswall's termination without prejudice and without waiver of any rights and Glasswall would complete its Contracts work for the Projects according to an April 4, 2014 Production Schedule and "deliver Competed Windows Units on a continuous basis to the

Project as expeditiously as possible consistent with the Production Schedules". The Production Schedules required production to be completed by October 28, 2014.

40.     The original Contracts required Glasswall to complete its Work so that the Projects could be completed by "4th quarter of 2014 to 1st quarter of 2015" for Parcel A (Rider 5, ¶44c) and "3rd quarter of 2014" for Parcel B (Rider 5, ¶43c). The Amendment Agreement further required Glasswall to deliver completed windows "on a continuous basis to the Project as expeditiously as possible consistent with the Production Schedules" (Amendment Agreement, ¶6).

41.     The Amendment Agreement also provided that WFIC would pay Glasswall for all Materials it produced at its Miami facilities and Monadnock would pay WFIC for all Materials it received at the Projects. All claims among the parties that had accrued through the date of the Amendment Agreement were preserved and deferred pending the completion of the Contracts or the earlier termination thereof.

42.     Neither the Amendment Agreement nor the Side Agreement were permitted Section 5 choices under the Bonds and did not satisfy WFIC's obligations to undertake a Section 5 choice; thus WFIC's default under the Bonds continued.

43.     In any event, the Amendment Agreement explicitly preserved and reserved Monadnock's Bond claims that had accrued to the date of the Amendment Agreement.

44.     For the next few months, Glasswall continued to refuse to ship any Windows to the Project. Moreover, WFIC continued to refuse to take action under Section 5 of the Bonds.

45.     By October 28, 2014, Glasswall had neither completed production of the Materials nor delivered all the Materials it had produced. Instead, Glasswall first slowed

down its shipment of Materials to the Projects and then stopped the deliveries completely, even though it had many truckloads of Windows at its facilities ready for shipment. Glasswall explained that it would not continue shipment of completed Materials or production of new Materials until it was paid in advance by WFIC its entire contracts balance.

46.     Glasswall also demanded that Monadnock pay WFIC in advance for Glasswall's remaining Materials, even though the Materials had neither been produced nor delivered to the Projects.

47.     WFIC recognized that Glasswall's position that it would not ship completed Materials to the Projects unless Monadnock pre-paid WFIC for delivery was contrary to the Amendment Agreement. In fact, WFIC's attorneys prepared litigation papers[1] acknowledging and confirming that Glasswall's demand was contrary to the Amendment Agreement and created a potentially "disastrous condition".

48.     Nevertheless, on November 11, 2014, WFIC pre-paid Glasswall for its entire Contracts balance and an extra 7.5% pursuant to the Side Agreement.

49.     At WFIC's urging, on November 25, 2014, Monadnock sent WFIC checks totaling $1,979,309 representing the entire contracts balance for the undelivered Materials but  specifically reserved all of its rights to assert any "backcharge, change order or similar reduction" for a later date.

50.     Thereafter, Glasswall re-commenced delivery of Windows and other Materials to Parcels A and B but never completed its Work.  The reason became apparent to all concerned

---

[1] Ultimately, WFIC never filed the litigation papers because Monadnock, at WFIC's urging, paid WFIC in full for Glasswall's production. The payment was made with a complete reservation of rights.

when Monadnock discovered that Glasswall had sold its assets, including its Miami manufacturing facility, to one of its competitors, Tecnoglass, Inc.

51. In addition, Monadnock has discovered and is continuing to discover and uncover QA/QC issues on a continuous basis, including leaking window units. With the sale of Glasswall and its Miami manufacturing facility to Tecnoglass, Glasswall was unresponsive to any of Monadnock's requests to complete the Work or correct defects.

52. Monadnock also discovered that Glasswall had not paid several of its suppliers, one of which liened Parcel A.

53. Finally, on March 4, 2015, four months after Glasswall was required to complete its Work as per the Amendment, Monadnock served a Notice of Default on Glasswall detailing 30 different defaults and affording Glasswall a seven (7) day cure period. Monadnock also served a copy of the Notice on WFIC.

54. Glasswall failed to cure any of the listed defaults and continued to breach the Contracts for reasons including but not limited to the following:

> (a) Glasswall did not complete its Work;
> (b) Glasswall did not correct defective Work;
> (c) Glasswall did not provide documentation required under the Agreements including but not limited to warranties, LEED documentation, material certifications, and final lien waivers by Glasswall and its suppliers;
> (d) Glasswall delayed in performance of its Work thereby causing delays and increased costs to other contractors whom Monadnock has reimbursed;
> (e) Glasswall delayed in performance of its Work thereby causing delays and increased costs to Monadnock;
> (e) Glasswall failed to pay all its suppliers for materials used to fabricate the Work and for shipment of same to the Projects; and
> (f) Glasswall ceased operations and was not able to fulfill its warranty obligations.

55.    After the expiration of the cure period, and upon certification of sufficient cause from the architect, Monadnock terminated Glasswall on March 16, 2015.

56.    Also on March 16, 2015, Monadnock provided WFIC with the required Section 3.2 notice under the Bonds and demanded that WFIC take action pursuant to Section 5 of the Bonds.

57.    On April 20, 2015, Monadnock sent WFIC a 7-day notice under Section 6 of the Bonds demanding that WFIC "perform its obligations" under the Bonds and chose a Section 5 course of action.

58.    On April 25, 2015, WFIC, through its counsel, denied Monadnock's Bond claim stating, inter alia, that: (a) Monadnock's payment in full of the entire Contracts price to WFIC constituted a waiver of its right to assert claims; (b) Monadnock's termination of Glasswall was based, in part, on events occurring prior to the Amendment Agreement and the parties had agreed that those claims could not constitute the basis of a later termination; and (c) Glasswall had substantially completed the Contracts and thus could not be terminated.

59.    WFIC's denial of Monadnock's Bond claim constituted an act of bad faith. All of the reasons given by WFIC for denial of Monadnock's Bond claim were patently false and WFIC knew them to be false.

60.    Rather than conduct an independent investigation of Monadnock's Bond claim, as it was required to do under the terms of the Bonds, WFIC simply parroted the position of Glasswall's attorneys.

61.    Particularly egregious was WFIC's reliance on Glasswall's attorney's argument that Monadnock had waived its right to assert claims against Glasswall by virtue of Monadnock's full payment of the entire Contracts price to WFIC. In point of fact, in

November 2014, WFIC did not believe that Glasswall had the right to demand full payment from Monadnock to WFIC. Nevertheless, in order to mitigate damages WFIC urged Monadnock to make full payment with a reservation of rights. It was thus an act of bad faith for WFIC to deny Monadnock's Bond claims in reliance, in part, on a waiver argument.

### FIRST CLAIM FOR RELIEF
(Breach of Contract)

62.    Monadnock repeats and realleges each and every one of the prior paragraphs as if more fully stated at length herein.

63.    Under the terms of the Bonds, WFIC was required to take action pursuant to Section 5 of the Contracts after Glasswall's default and Monadnock's January 13, 2014 Section 3.2 notice thereof, and March 6, 2014 7-day notice.

64.    Monadnock fulfilled its obligations under the Bonds and all other conditions precedent, if any, to WFIC's liability under the Bonds have been met or waived.

65.    WFIC, however, has failed and refused to perform, and breached its obligations under the Bonds.

66.    As a result of Glasswall's default and WFIC's breach of the Bonds, Monadnock has suffered, and is entitled to recover from WFIC, damages in an amount to be determined at trial, but not less than $9 million, plus interest and attorneys' fees.

### SECOND CLAIM FOR RELIEF
(Breach of Contract)

67.    Monadnock repeats and realleges each and every one of the prior paragraphs as if more fully stated at length herein.

68.     Under the terms of the Bonds, WFIC was required to take action pursuant to Section 5 of the Contracts after Glasswall's default and Monadnock's March 16, 2015 Section 3.2 notice thereof, and April 20, 2014 7-day notice.

69.     Monadnock fulfilled its obligations under the Bonds and all other conditions precedent, if any, to WFIC's liability under the Bonds have been met or waived.

70.     WFIC's April 25, 2015 denial of Monadnock's claims was in bad faith, as all of the reasons WFIC provided for denying Monadnock's Bond claims were patently false and WFIC knew them to be false.

71.     As a result of Glasswall's default and WFIC's breach of the Bonds, Monadnock has suffered, and is entitled to recover from WFIC, damages in an amount to be determined at trial, but not less than $9 million, plus interest and attorneys' fees.

WHEREFORE, Monadnock demands judgment against WFIC:

a. On its FIRST CLAIM FOR RELIEF, awarding damages for WFIC's breach of contract in an amount to be determined at trial, but not less than $9,000,000, plus interest, costs and attorneys' fees;

b. On its SECOND CLAIM FOR RELIEF, awarding damages for WFIC's bad faith breach of contract in an amount to be determined at trial, but not less than $9,000,000, plus interest, costs and attorneys' fees; and

c. For such other and further relief that this court deems just, necessary and proper.

Dated: March 1, 2016

WACHTEL MISSRY LLP

By:

Howard Kleinhendler
885 Second Avenue
New York, NY 10017
(212) 909-9500
hkleinhendler@wmllp.com

-and-

GREENBLATT LESSER LLP
Judah D. Greenblatt
The Chanin Building
122 East 42nd Street, 31st Floor
New York, NY 10168
(212) 682-9832
jgreenblatt@greenblattlesser.com

# EXHIBIT A

Bond No.   K08840295

# Document A312™ – 2010

Conforms with The American Institute of Architects AIA Document 312

## *Performance Bond*

**CONTRACTOR:**
*(Name, legal status and address)*

Glasswall, LLC
3550 N.W. 49th Street
Miami          FL          33142

**OWNER:**
*(Name, legal status and address)*

Monadnock Construction, Inc.
155-3rd Street
Brooklyn   NY          11231

**SURETY:**
*(Name, legal status and principal place of business)*

Westchester Fire Insurance Company
436 Walnut Street, P. O. Box 1000
Philadelphia          PA          19106
**Mailing Address for Notices**

Same as above
Philadelphia          PA          19106

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**CONSTRUCTION CONTRACT**
Date:      January 3, 2013

Amount: $ 8,412,502.00                    Eight Million Four Hundred Twelve Thousand Five Hundred Two Dollars and 00/100

Description:
*(Name and location)*
HPS "Parcel A" 1-50 - 50th Avenue, Long Island City, New York  11101

**BOND**
Date:      February 12, 2013
*(Not earlier than Construction Contract Date)*

Amount: $8,412,502.00                    Eight Million Four Hundred Twelve Thousand Five Hundred Two Dollars and 00/100

Modifications to this Bond:       ☒ None          ☐ See Section 16

**CONTRACTOR AS PRINCIPAL**
Company:          *(Corporate Seal)*
Glasswall, LLC

Signature:
Name FEDERICO BALESTRAZZI
and Title: PRESIDENT

**SURETY**
Company:          *(Corporate Seal)*
Westchester Fire Insurance Company

Signature:
Name     Charles J. Nielson
and Title: Attorney-in-Fact

*(Any additional signatures appear on the last page of this Performance Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
Nielson, Hoover & Associates
8000 Governors Square Blvd. #101
Miami Lakes          FL          33016
305-722-2663

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*
Ismael Leyva Architects, P.C.
48 West 37 Street, #13
New York          NY          10018

S-1852/AS 8/10

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

§ 2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except when applicable to participate in a conference as provided in Section 3.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after

.1    the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

.2    the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

.3    the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

§ 4 Failure on the part of the Owner to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to the Surety's obligations, or release the Surety from its obligations, except to the extent the Surety demonstrates actual prejudice.

§ 5 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

§ 5.1 Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor Default; or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1    After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

.2    Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

§ 6 If the Surety does not proceed as provided in Section 5 with reasonable promptness, the Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 5.4, and the Owner refuses the payment or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

§ 7 If the Surety elects to act under Section 5.1, 5.2 or 5.3, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. Subject to the commitment by the Owner to pay the Balance of the Contract Price, the Surety is obligated, without duplication, for

    .1    the responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

    .2    additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 5; and

    .3    liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

§ 8 If the Surety elects to act under Section 5.1, 5.3 or 5.4, the Surety's liability is limited to the amount of this Bond.

§ 9 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators, successors and assigns.

§ 10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 11 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after a declaration of Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears.

§ 13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ 14 Definitions

§ 14.1 Balance of the Contract Price. The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

§ 14.2 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and changes made to the agreement and the Contract Documents.

§ 14.3 Contractor Default. Failure of the Contractor, which has not been remedied or waived, to perform or otherwise to comply with a material term of the Construction Contract.

§ 14.4 Owner Default. Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

§ 14.5 Contract Documents. All the documents that comprise the agreement between the Owner and Contractor.

§ 15 If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

§ 16 Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

**CONTRACTOR AS PRINCIPAL**                                           **SURETY**
Company:                              *(Corporate Seal)*              Company:                              *(Corporate Seal)*


Signature: _____                               Signature: _____
Name and Title:                                                      Name and Title:
Address                                                              Address

S-1852/AS 8/10

Bond No.  K08840295

# Document A312™ – 2010

Conforms with The American Institute of Architects AIA Document 312

## Payment Bond

**CONTRACTOR:**
*(Name, legal status and address)*

Glasswall, LLC
3550 N.W. 49th Street
Miami          FL          33142

**OWNER:**
*(Name, legal status and address)*

Monadnock Construction, Inc.
155-3rd Street
Brooklyn       NY          11231

**SURETY:**
*(Name, legal status and principal place of business)*

Westchester Fire Insurance Company
436 Walnut Street, P. O. Box 1000
Philadelphia          PA          19106
**Mailing Address for Notices**

Same as above
Philadelphia          PA          19106

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**CONSTRUCTION CONTRACT**
Date:     January 3, 2013
Amount: $ 8,412,502.00          Eight Million Four Hundred Twelve Thousand Five Hundred Two Dollars and 00/100

Description:
*(Name and location)*
HPS "Parcel A" 1-50 - 50th Avenue, Long Island City, New York  11101

**BOND**
Date:     February 12, 2013
*(Not earlier than Construction Contract Date)*

Amount: $ .00                          No Dollars and 00/100

Modifications to this Bond:     ☒ None          ☐ See Section 18

**CONTRACTOR AS PRINCIPAL**
Company:               *(Corporate Seal)*

Glasswall, LLC

Signature:
Name FEDERICO BALESTRAZZI
and Title:  PRESIDENT

**SURETY**
Company:               *(Corporate Seal)*

Westchester Fire Insurance Company

Signature:
Name      Charles J. Nielson
and Title:  Attorney-in-Fact

*(Any additional signatures appear on the last page of this Payment Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
Nielson, Hoover & Associates
8000 Governors Square Blvd. #101
Miami Lakes       FL          33016
305-722-2663
S-2149/AS 8/10

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*
Ismael Leyva Architects, P.C.
48 West 37 Street, #13
New York          NY          10018

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

§ 2 If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

§ 4 When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

§ 5 The Surety's obligations to a Claimant under this Bond shall arise after the following:

§ 5.1 Claimants, who do not have a direct contract with the Contractor,

    .1   have furnished a written notice of non-payment to the Contractor, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were, or equipment was, furnished or supplied or for whom the labor was done or performed, within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim; and

    .2   have sent a Claim to the Surety (at the address described in Section 13).

§ 5.2 Claimants, who are employed by or have a direct contract with the Contractor, have sent a Claim to the Surety (at the address described in Section 13).

§ 6 If a notice of non-payment required by Section 5.1.1 is given by the Owner to the Contractor, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Section 5.1.1.

§ 7 When a Claimant has satisfied the conditions of Sections 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

§ 7.1 Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

§ 7.2 Pay or arrange for payment of any undisputed amounts.

§ 7.3 The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

§ 8 The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

§ 9 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any construction performance bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

§ 10 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to, or give notice on behalf of, Claimants or otherwise have any obligations to Claimants under this Bond.

§ 11 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 12 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Section 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 13 Notice and Claims to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

§ 14 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ 15 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

§ 16 Definitions
§ 16.1 Claim. A written statement by the Claimant including at a minimum:
    .1   the name of the Claimant;
    .2   the name of the person for whom the labor was done, or materials or equipment furnished;
    .3   a copy of the agreement or purchase order pursuant to which labor, materials or equipment was furnished for use in the performance of the Construction Contract;
    .4   a brief description of the labor, materials or equipment furnished;
    .5   the date on which the Claimant last performed labor or last furnished materials or equipment for use in the performance of the Construction Contract;
    .6   the total amount earned by the Claimant for labor, materials or equipment furnished as of the date of the Claim;
    .7   the total amount of previous payments received by the Claimant; and
    .8   the total amount due and unpaid to the Claimant for labor, materials or equipment furnished as of the date of the Claim.

§ 16.2 Claimant. An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

§ 16.3 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

§ 16.4 Owner Default. Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

§ 16.5 Contract Documents. All the documents that comprise the agreement between the Owner and Contractor.

§ 17 If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

§ 18 Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

**CONTRACTOR AS PRINCIPAL**  
Company:                           *(Corporate Seal)*

**SURETY**  
Company:                           *(Corporate Seal)*

Signature: _____  
Name and Title:  
Address

Signature: _____  
Name and Title:  
Address

S-2149/AS 8/10

## DUAL OBLIGEE RIDER

To be attached to and form part of Bond No. __K08840295__ executed by

__Glasswall, LLC__ , as Principal, and

__Westchester Fire Insurance Company__ as Surety,

in favor of __Monadnock Construction, Inc.__ Obligee

in the penalty of __Eight Million Four Hundred Twelve Thousand Five__ Dollars ($ __8,412,502.00__ ),

on or about the __3rd__ day of __January__, __2013__ Hundred Two and 00/100 covering the Contract described as

__HPS "Parcel A" 1-50 – 50th Avenue, Long Island City, New York 11101__

SIGNED, SEALED AND DATED this __12th__ day of __February__ , __2013__ .

WHEREAS, the Obligee, as evidenced by their signed approval of this rider, have requested and are agreeable to the Surety and the Principal amending the attached bond by adding __HPS 50th Avenue Associates, LLC, Wells Fargo, N.A., Bank of America, N.A.,__ as Obligee(s). __New York City Department of Housing Preservation and Development, New York City Housing Development Corporation__

PROVIDED, HOWEVER, that the Surety and Principal shall not be liable under the attached bond and the attached bond as amended by this rider to the Obligees, nor any of them, unless the Obligees or each of them shall perform all obligations by them or any of them to be performed under the terms of said contract, including but not limited to making all payments to the Principal in accordance with the terms of said contract.

PROVIDED, FURTHER, that nothing herein contained shall otherwise amend, alter or modify any of the terms and conditions of the attached bonds except as herein expressly amended; and

PROVIDED, FURTHER, that the aggregate liability of the Surety under the attached bond and the attached bond as amended by this rider, shall not exceed the sum of __Eight Million Four Hundred Twelve Thousand Five Hundred Two__ Dollars ($ __8,412,502.00__ ). and 00/100

Accepted and Approved:
Monadnock Construction, Inc.

_____
(Principal Obligee)

Accepted and Approved:
HPS 50th Avenue Associates, LLC

_____
(Additional Obligee)

Wells Fargo, N.A.

_____

New York City Department of Housing
Preservation and Development

_____

Glasswall, LLC

_____
(Principal)

Westchester Fire Insurance Company

By: Charles J. Nielson Attorney in Fact

Bank of America, N.A.

_____

New York City Housing Development Corporation

_____

# Power of Attorney

## WESTCHESTER FIRE INSURANCE COMPANY

Know all men by these presents: That WESTCHESTER FIRE INSURANCE COMPANY, a corporation of the Commonwealth of Pennsylvania pursuant to the following Resolution, adopted by the Board of Directors of the said Company on December 11, 2006, to wit:

"RESOLVED, that the following authorizations relate to the execution, for and on behalf of the Company, of bonds, undertakings, recognizances, contracts and other written commitments of the Company entered into the ordinary course of business (each a "Written Commitment"):

(1) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise.

(2) Each duly appointed attorney-in-fact of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise, to the extent that such action is authorized by the grant of powers provided for in such person's written appointment as such attorney-in-fact.

(3) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to appoint in writing any person the attorney-in-fact of the Company with full power and authority to execute, for and on behalf of the Company, under the seal of the Company or otherwise, such Written Commitments of the Company as may be specified in such written appointment, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(4) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to delegate in writing any other officer of the Company the authority to execute, for and on behalf of the Company, under the Company's seal or otherwise, such Written Commitments of the Company as are specified in such written delegation, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(5) The signature of any officer or other person executing any Written Commitment or appointment or delegation pursuant to this Resolution, and the seal of the Company, may be affixed by facsimile on such Written Commitment or written appointment or delegation.

FURTHER RESOLVED, that the foregoing Resolution shall not be deemed to be an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and such Resolution shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested."

Does hereby nominate, constitute and appoint Brett Rosenhaus, Charles D Nielson, Charles J Nielson, David R Hoover, Edward M Clark, Ian A Nipper, Joseph P Nielson, Katherine S Grimsley, Kevin B Wojtowicz, Laura D Mosholder, all of the City of MIAMI LAKES, Florida, each individually if there be more than one named, its true and lawful attorney-in-fact, to make, execute, seal and deliver on its behalf, and as its act and deed any and all bonds, undertakings, recognizances, contracts and other writings in the nature thereof in penalties not exceeding Ten million dollars & zero cents ($10,000,000.00) and the execution of such writings in pursuance of these presents shall be as binding upon said Company, as fully and amply as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its principal office.

IN WITNESS WHEREOF, the said Stephen M. Haney, Vice-President, has hereunto subscribed his name and affixed the Corporate seal of the said WESTCHESTER FIRE INSURANCE COMPANY this 16 day of July 2012.

WESTCHESTER FIRE INSURANCE COMPANY



Stephen M. Haney , Vice President

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF PHILADELPHIA ss.

On this 16 day of July, AD, 2012 before me, a Notary Public of the Commonwealth of Pennsylvania in and for the County of Philadelphia came Stephen M. Haney , Vice-President of the WESTCHESTER FIRE INSURANCE COMPANY to me personally known to be the individual and officer who executed the preceding instrument, and he acknowledged that he executed the same, and that the seal affixed to the preceding instrument is the corporate seal of said Company; that the said corporate seal and his signature were duly affixed by the authority and direction of the said corporation, and that Resolution, adopted by the Board of Directors of said Company, referred to in the preceding instrument, is now in force.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at the City of Philadelphia the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KAREN E. BRANDT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 25, 2014

Notary Public

I, the undersigned Assistant Secretary of the WESTCHESTER FIRE INSURANCE COMPANY, do hereby certify that the original POWER OF ATTORNEY, of which the foregoing is a substantially true and correct copy, is in full force and effect.

In witness whereof, I have hereunto subscribed my name as Assistant Secretary, and affixed the corporate seal of the Corporation, this 12 day of February, 2013

William L. Kelly, Assistant Secretary

THIS POWER OF ATTORNEY MAY NOT BE USED TO EXECUTE ANY BOND WITH AN INCEPTION DATE AFTER July 16, 2014.

Super Safety® ANTI-FRAUD PROTECTION

FORM NO. 05005

THE BACK OF THIS DOCUMENT LISTS VARIOUS SECURITY FEATURES          THAT WILL PROTECT AGAINST COPY COUNTERFEIT AND ALTERATION.

Bond No.   K08840258

# Document A312™ – 2010

### Conforms with The American Institute of Architects AIA Document 312

## *Performance Bond*

**CONTRACTOR:**
*(Name, legal status and address)*

Glasswall, LLC
3550 N.W. 49th Street
Miami, FL 33142

**SURETY:**
*(Name, legal status and principal place of business)*
Westchester Fire Insurance Company
436 Walnut Street, P. O. Box 1000
Philadelphia, PA 19106
**Mailing Address for Notices**

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**OWNER:**
*(Name, legal status and address)*
Monadnock Construction, Inc.
155-3rd Street
Brooklyn, NY 11231

**CONSTRUCTION CONTRACT**
Date:      January 3, 2013
Amount: $ 4,587,498.00       Four Million Five Hundred Eighty Seven Thousand Four Hundred Ninety Eight Dollars and 00/100

Description:
*(Name and location)*
HPS "Parcel B" 1-55 Borden Avenue, Long Island City, New York  11101

**BOND**
Date:      February 11, 2013
*(Not earlier than Construction Contract Date)*

Amount: $4,587,498.00       Four Million Five Hundred Eighty Seven Thousand Four Hundred Ninety Eight Dollars and 00/100

Modifications to this Bond:      ☒ None      ☐ See Section 16

**CONTRACTOR AS PRINCIPAL**
Company:                    *(Corporate Seal)*
Glasswall, LLC

Signature:
Name   Federico Balestrazzi
and Title:   President

**SURETY**
Company:                    *(Corporate Seal)*
Westchester Fire Insurance Company

Signature:
Name   Charles J. Nielson
and Title:   Attorney-in-Fact

*(Any additional signatures appear on the last page of this Performance Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
Nielson, Hoover & Associates
8000 Governors Square Blvd. #101
Miami Lakes, FL 33016
305-722-2663

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*
Ismael Leyva Architects, P.C.
48 West 37th Street, #13
New York, NY 10018

S-1852/AS 8/10

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

§ 2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except when applicable to participate in a conference as provided in Section 3.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after

    .1    the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

    .2    the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

    .3    the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

§ 4 Failure on the part of the Owner to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to the Surety's obligations, or release the Surety from its obligations, except to the extent the Surety demonstrates actual prejudice.

§ 5 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

§ 5.1 Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor Default; or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

    .1    After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

    .2    Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

§ 6 If the Surety does not proceed as provided in Section 5 with reasonable promptness, the Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 5.4, and the Owner refuses the payment or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

§ 7 If the Surety elects to act under Section 5.1, 5.2 or 5.3, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. Subject to the commitment by the Owner to pay the Balance of the Contract Price, the Surety is obligated, without duplication, for

 .1 the responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

 .2 additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 5; and

 .3 liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

§ 8 If the Surety elects to act under Section 5.1, 5.3 or 5.4, the Surety's liability is limited to the amount of this Bond.

§ 9 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators, successors and assigns.

§ 10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 11 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after a declaration of Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears.

§ 13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

## § 14 Definitions

§ 14.1 Balance of the Contract Price. The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

§ 14.2 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and changes made to the agreement and the Contract Documents.

§ 14.3 Contractor Default. Failure of the Contractor, which has not been remedied or waived, to perform or otherwise to comply with a material term of the Construction Contract.

§ 14.4 Owner Default. Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

§ 14.5 Contract Documents. All the documents that comprise the agreement between the Owner and Contractor.

§ 15 If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

§ 16 Modifications to this bond are as follows:

*(Space is provided below*                                             *aring on the cover page.)*
**CONTRACTOR AS I**
Company:                                                                  *(Corporate Seal)*

Signature: _____
Name and Title:                                          le: _____
Address

S-1852/AS 8/10

Bond No.   K08840258

# Document A312™ – 2010

### Conforms with The American Institute of Architects AIA Document 312

## *Payment Bond*

**CONTRACTOR:**
*(Name, legal status and address)*

Glasswall, LLC
3550 N.W. 49th Street
Miami, FL 33142

**SURETY:**
*(Name, legal status and principal place of business)*

Westchester Fire Insurance Company
436 Walnut Street, P. O. Box 1000
Philadelphia, PA 19106
**Mailing Address for Notices**

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**OWNER:**
*(Name, legal status and address)*

Monadnock Construction, Inc.
155-3rd Street
Brooklyn, NY 11231

**CONSTRUCTION CONTRACT**
Date:    January 3, 2013
Amount: $4,587,498.00          Four Million Five Hundred Eighty Seven Thousand Four Hundred Ninety Eight Dollars and 00/100

Description:
*(Name and location)*
HPS "Parcel B" 1-55 Borden Avenue, Long Island City, New York 11101

**BOND**
Date:    February 11, 2013
*(Not earlier than Construction Contract Date)*

Amount: $4,587,498.00          Four Million Five Hundred Eighty Seven Thousand Four Hundred Ninety Eight Dollars and 00/100

Modifications to this Bond:    [X] None        [ ] See Section 18

**CONTRACTOR AS PRINCIPAL**
Company:                *(Corporate Seal)*
Glasswall, LLC

Signature:
Name   Federito Balestrazzi
and Title:  President

**SURETY**
Company:                *(Corporate Seal)*
Westchester Fire Insurance Company

Signature:
Name   Charles J. Nielson
and Title:  Attorney-in-Fact

*(Any additional signatures appear on the last page of this Payment Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
Nielson, Hoover & Associates
8000 Governors Square Blvd. #101
Miami Lakes, FL 33016
305-722-2663
S-2149/AS 8/10

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*
Ismael Leyva Architects, P.C.
48 West 37th Street, #13
New York, NY 10018

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

§ 2 If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

§ 4 When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

§ 5 The Surety's obligations to a Claimant under this Bond shall arise after the following:

§ 5.1 Claimants, who do not have a direct contract with the Contractor,

   .1  have furnished a written notice of non-payment to the Contractor, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were, or equipment was, furnished or supplied or for whom the labor was done or performed, within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim; and

   .2  have sent a Claim to the Surety (at the address described in Section 13).

§ 5.2 Claimants, who are employed by or have a direct contract with the Contractor, have sent a Claim to the Surety (at the address described in Section 13).

§ 6 If a notice of non-payment required by Section 5.1.1 is given by the Owner to the Contractor, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Section 5.1.1.

§ 7 When a Claimant has satisfied the conditions of Sections 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

§ 7.1 Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

§ 7.2 Pay or arrange for payment of any undisputed amounts.

§ 7.3 The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

§ 8 The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

§ 9 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any construction performance bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

§ 10 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to, or give notice on behalf of, Claimants or otherwise have any obligations to Claimants under this Bond.

§ 11 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 12 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Section 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 13 Notice and Claims to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

§ 14 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ 15 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

§ 16 Definitions
§ 16.1 Claim. A written statement by the Claimant including at a minimum:
 .1  the name of the Claimant;
 .2  the name of the person for whom the labor was done, or materials or equipment furnished;
 .3  a copy of the agreement or purchase order pursuant to which labor, materials or equipment was furnished for use in the performance of the Construction Contract;
 .4  a brief description of the labor, materials or equipment furnished;
 .5  the date on which the Claimant last performed labor or last furnished materials or equipment for use in the performance of the Construction Contract;
 .6  the total amount earned by the Claimant for labor, materials or equipment furnished as of the date of the Claim;
 .7  the total amount of previous payments received by the Claimant; and
 .8  the total amount due and unpaid to the Claimant for labor, materials or equipment furnished as of the date of the Claim.

§ 16.2 Claimant. An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

§ 16.3 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

§ 16.4 **Owner Default.** Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

§ 16.5 **Contract Documents.** All the documents that comprise the agreement between the Owner and Contractor.

§ 17 If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

§ 18 Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

| **CONTRACTOR AS PRINCIPAL** | | **SURETY** | |
|---|---|---|---|
| Company: | *(Corporate Seal)* | Company: | *(Corporate Seal)* |

Signature: _____   Signature: _____
Name and Title:                                Name and Title:
Address                                        Address

## DUAL OBLIGEE RIDER

To be attached to and form part of Bond No. __K08840258__ executed by
__Glasswall, LLC__, as Principal, and
__Westchester Fire Insurance Company__ as Surety,
in favor of __Monadnock Construction, Inc.__ Obligee
in the penalty of __Four Million Five Hundred Eighty-Seven__ Dollars ($ 4,587,498.00 )
on or about the __11__ day of __February__ covering the Contract described as
__HPS "Parcel B" 1-55 Borden Avenue, Long Island City, NY 11101__

SIGNED, SEALED AND DATED this __11__ day of __February__, __2013__.

WHEREAS, the Obligee, as evidenced by their signed approval of this rider, have requested and
are agreeable to the Surety and the Principal amending the attached bond by adding
__HPS Borden Avenue Associates, LLC, Citibank, N.A.__ as Obligee(s).
__New York City Department of Housing Preservation and Development and
New York City Housing Development Corporation__
PROVIDED, HOWEVER, that the Surety and Principal shall not be liable under the attached
bond and the attached bond as amended by this rider to the Obligees, nor any of them, unless the
Obligees or each of them shall perform all obligations by them or any of them to be performed
under the terms of said contract, including but not limited to making all payments to the
Principal in accordance with the terms of said contract.

PROVIDED, FURTHER, that nothing herein contained shall otherwise amend, alter or modify
any of the terms and conditions of the attached bonds except as herein expressly amended; and

PROVIDED, FURTHER, that the aggregate liability of the Surety under the attached bond and
the attached bond as amended by this rider, shall not exceed the sum of
__Four Million Five Hundred Eighty-Seven Thousand__ Dollars ($ 4,587,498.00 ).
__Four Hundred Ninety-Eight and 00/100__

Accepted and Approved:
Monadnock Construction, Inc.                      GLASSWALL, LLC

_____            _____
        (Principal Obligee)                              (Principal)

Accepted and Approved:                   WESTCHESTER FIRE INSURANCE COMPANY
HPS Borden Avenue Associates, LLC

_____            _____
        (Additional Obligee)                  By: Charles J. Nielson  Attorney in Fact

_____            _____
Citibank, N.A.                                   New York City Dept. of Housing Pres.
                                                                                & Dev.

_____
New York City Housing Dev. Corp.

# Power of Attorney

## WESTCHESTER FIRE INSURANCE COMPANY

**Know all men by these presents:** That WESTCHESTER FIRE INSURANCE COMPANY, a corporation of the Commonwealth of Pennsylvania pursuant to the following Resolution, adopted by the Board of Directors of the said Company on December 11, 2006, to wit:

"RESOLVED, that the following authorizations relate to the execution, for and on behalf of the Company, of bonds, undertakings, recognizances, contracts and other written commitments of the Company entered into in the ordinary course of business (each a "Written Commitment"):

(1) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise.

(2) Each duly appointed attorney-in-fact of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise, to the extent that such action is authorized by the grant of powers provided for in such person's written appointment as such attorney-in-fact.

(3) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to appoint in writing any person the attorney-in-fact of the Company with full power and authority to execute, for and on behalf of the Company, under the seal of the Company or otherwise, such Written Commitments of the Company as may be specified in such written appointment, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(4) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to delegate in writing any other officer of the Company the authority to execute, for and on behalf of the Company, under the Company's seal or otherwise, such Written Commitments of the Company as are specified in such written delegation, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(5) The signature of any officer or other person executing any Written Commitment or appointment or delegation pursuant to this Resolution, and the seal of the Company, may be affixed by facsimile on such Written Commitment or written appointment or delegation.

FURTHER RESOLVED, that the foregoing Resolution shall not be deemed to be an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and such Resolution shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested."

Does hereby nominate, constitute and appoint Brett Rosenhaus, Charles D Nielson, Charles J Nielson, David R Hoover, Edward M Clark, Ian A Nipper, Joseph P Nielson, Katherine S Grimsley, Kevin R Wojtowicz, Laura D Mosholder, all of the City of MIAMI LAKES, Florida, each individually if there be more than one named, its true and lawful attorney-in-fact, to make, execute, seal and deliver on its behalf, and as its act and deed any and all bonds, undertakings, recognizances, contracts and other writings in the nature thereof in penalties not exceeding Ten million dollars & zero cents ($10,000,000.00) and the execution of such writings in pursuance of these presents shall be as binding upon said Company, as fully and amply as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its principal office.

IN WITNESS WHEREOF, the said Stephen M. Haney, Vice-President, has hereunto subscribed his name and affixed the Corporate seal of the said WESTCHESTER FIRE INSURANCE COMPANY this 16 day of July 2012.

WESTCHESTER FIRE INSURANCE COMPANY

*Stephen M. Haney*
Stephen M. Haney, Vice President

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF PHILADELPHIA        ss.

On this 16 day of July, A.D. 2012 before me, a Notary Public of the Commonwealth of Pennsylvania in and for the County of Philadelphia came Stephen M. Haney, Vice-President of the WESTCHESTER FIRE INSURANCE COMPANY to me personally known to be the individual and officer who executed the preceding instrument, and he acknowledged that he executed the same, and that the seal affixed to the preceding instrument is the corporate seal of said Company; that the said corporate seal and his signature were duly affixed by the authority and direction of the said corporation, and that Resolution, adopted by the Board of Directors of said Company, referred to in the preceding instrument, is now in force.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at the City of Philadelphia the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KAREN E. BRANDT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 25, 2014

*Karen E. Brandt*
Notary Public

I, the undersigned, Assistant Secretary of the WESTCHESTER FIRE INSURANCE COMPANY, do hereby certify that the original POWER OF ATTORNEY, of which the foregoing is a substantially true and correct copy, is in full force and effect.

In witness whereof, I have hereunto subscribed my name as Assistant Secretary, and affixed the corporate seal of the Corporation, this 11 day of February, 2013.



*William L. Kelly*
William L. Kelly, Assistant Secretary

THIS POWER OF ATTORNEY MAY NOT BE USED TO EXECUTE ANY BOND WITH AN INCEPTION DATE AFTER July 16, 2014.

THE BACK OF THIS DOCUMENT LISTS VARIOUS SECURITY FEATURES        THAT WILL PROTECT AGAINST COPY COUNTERFEIT AND ALTERATION.

FORM NO. 08DSS

Super Safety® ANTI-FRAUD PROTECTION

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MONADNOCK CONSTRUCTION, INC.,                    Case No.: 16 CIV. 00420 (JBW)
                                                 ECF Case
                          Plaintiff,

        -against-

WESTCHESTER FIRE INSURANCE                       **ANSWER WITH**
COMPANY,                                         **AFFIRMATIVE DEFENSES**

                          Defendant.
------------------------------------------------------------X

        Defendant, Westchester Fire Insurance Company ("Westchester"), by and through its

attorneys, Cozen O'Connor, as and for its Answer to Plaintiff Monadnock Construction, Inc.'s

("Plaintiff" or "Monadnock") Complaint, dated March 1, 2016, states as follows:

## NATURE OF THE CASE

        1.      The allegations of paragraph 1 of the Complaint represent conclusions of law to

which no response is required. To the extent that a response is required, the allegations are

denied. The allegations of paragraph 1 of the Complaint further represent characterizations of

Bonds and Contracts, which are in writing and speak for themselves, and the characterization of

them is therefore denied. To the extent that paragraph 1 of the Complaint avers facts, they are

also denied.

        2.      Westchester denies the allegations contained in paragraph 2 of the Complaint.

        3.      Westchester admits that Monadnock seeks damages for breach of contract.

## JURISDICTION AND VENUE

        4.      Admitted.

        5.      Admitted.

        6.      Admitted.

7.     Admitted.

## **FACTS**

8.     Westchester admits only that on January 3, 2013, Monadnock entered into two contracts with Glasswall. The remainder of the allegations of paragraph 8 of the Complaint represent characterizations of the Contracts, which are in writing and speak for themselves, and the characterization of them is therefore denied.

9.     Westchester admits only that on January 3, 2013, Monadnock entered into two contracts with Glasswall. The remainder of the allegations of paragraph 9 of the Complaint represent characterizations of the Contracts, which are in writing and speak for themselves, and the characterization of them is therefore denied.

10.     Westchester admits only that on January 3, 2013, Monadnock entered into two contracts with Glasswall. The remainder of the allegations of paragraph 10 of the Complaint represent characterizations of the Contracts, which are in writing and speak for themselves, and the characterization of them is therefore denied.

11.     Westchester admits only that on January 3, 2013, Monadnock entered into two contracts with Glasswall. The remainder of the allegations of paragraph 11 of the Complaint represent characterizations of the Contracts, which are in writing and speak for themselves, and the characterization of them is therefore denied.

12.     Westchester admits only that Glasswall obtained from Westchester Payment and Performance Bonds, No. K08840295, dated February 12, 2013, and No. K08840258, dated February 11, 2013. Paragraph 12 of the Complaint otherwise purports to characterize portions of the Contracts and Bonds, which are in writing and speak for themselves, and the characterization of them is therefore denied.

2

13.     Westchester admits only that on January 3, 2013, Monadnock entered into two contracts with Glasswall. The remainder of the allegations of paragraph 13 of the Complaint represent characterizations of the Contracts, which are in writing and speak for themselves, and the characterization of them is therefore denied. To the extent that the allegations contained in Paragraph 13 of the Complaint represent conclusions of law, no response is required. To the extent that a response is required, the allegations are denied.

14.     Westchester admits only that Monadnock issued schedule updates, but otherwise denies that Glasswall failed to meet those delivery dates and lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remainder of the allegations of paragraph 14 of the Complaint.

15.     Westchester admits only that the letter referred to in paragraph 15 of the Complaint was sent, but otherwise denies Monadnock's characterization of the letter, which is in writing and speaks for itself. Westchester otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 15 of the Complaint.

16.     Westchester lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 16 of the Complaint.

17.     Paragraph 17 of the Complaint purports to summarize portions of the Contracts to which no response is required. To the extent a response is required, Westchester denies Plaintiff's characterization of the Contracts and refers the Court to the Contracts for a full and complete recitation of their terms.

18.     Westchester lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 18 of the Complaint.

19.     Paragraph 19 of the Complaint purports to summarize portions of the Contracts to which no response is required. To the extent a response is required, Westchester denies Plaintiff's characterization of the contracts and refers the Court to the Contracts for a full and complete recitation of their terms.

20.     Westchester lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 20 of the Complaint.

21.     Westchester lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 21 of the Complaint.

22.     Westchester lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 22 of the Complaint.

23.     Westchester lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 23 of the Complaint. In addition, the allegations contained in paragraph 23 of the Complaint represent conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

24.     Westchester lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 24 of the Complaint.

25.     Westchester admits only that Israel Berger & Associates conducted limited inspections of Glasswall's production. Westchester otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 25 of the Complaint.

26.     Westchester lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 26 of the Complaint.

4

27.. The allegations contained in paragraph 27 of the Complaint represent conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied. Westchester also denies Plaintiff's characterization of the contracts and refers the Court to the two contracts for a full and complete recitation of their terms.

28. Westchester lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 28 of the Complaint.

29. Westchester lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding delays in delivery in paragraph 29 of the Complaint. The allegations contained in paragraph 29 of the Complaint regarding damages represent conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

30. Westchester admits only that the alleged notices were sent and denies the remainder of the allegations of paragraph 30 of the Complaint.

31. The allegations contained in paragraph 31 of the Complaint represent conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied. To the extent that paragraph 31 of the Complaint avers facts, they are also denied.

32. Westchester admits only that on January 13, 2014, Plaintiff purported to give notice of termination of the Contracts with Glasswall. Westchester otherwise denies the allegations contained in paragraph 32 of the Complaint.

33. Westchester admits only that on January 13, 2014, Monadnock sent to Westchester a purported Section 3.2 notice under the Bonds. The remaining allegations in paragraph 33 of the Complaint characterize the purported Section 3.2 notice, which is in writing and speaks for itself, and the characterization of it is therefore denied.

34.  Westchester denies the allegations contained in paragraph 34 of the Complaint.

35.  Westchester admits only that on March 6, 2014, Monadnock sent Westchester a purported 7-day notice under Section 6 of the Bonds. The remaining allegations in paragraph 35 of the Complaint purport to summarize Monadnock's purported notice, which is in writing and speaks for itself, and the characterization of it is therefore denied.

36.  Westchester denies the allegations contained in paragraph 36 of the Complaint.

37.  Westchester admits only that the parties entered into an Agreement to Amend Contracts, which is in writing and speaks for itself, and the characterization of it is therefore denied. The remaining allegations of paragraph 37 of the Complaint are denied.

38.  Paragraph 38 of the Complaint purports to characterize portions of the Amendment Agreement to which no response is required. To the extent a response is required, Westchester denies Plaintiff's characterization of the Amendment Agreement and refers the Court to the Amendment Agreement for a full and complete recitation of its terms.

39.  Paragraph 39 of the Complaint purports to summarize portions of the Amendment Agreement to which no response is required. To the extent a response is required, Westchester denies Plaintiff's characterization of the Amendment Agreement and refers the Court to the Amendment Agreement for a full and complete recitation of its terms.

40.  Paragraph 40 of the Complaint purports to summarize portions of the Contracts and Amendment Agreement to which no response is required. To the extent a response is required, Westchester denies Plaintiff's characterization of the Contracts and Amendment Agreement and refers the Court to the Contracts and Amendment Agreement for a full and complete recitation of their terms.

6

41.     Paragraph 41 of the Complaint purports to summarize portions of the Amendment Agreement to which no response is required. To the extent a response is required, Westchester denies Plaintiff's characterization of the Amendment Agreement and refers the Court to the Amendment Agreement for a full and complete recitation of its terms.

42.     The allegations contained in Paragraph 42 of the Complaint represent conclusions of law to which no response is required.  To the extent that a response is required, the allegations are denied.

43.     Paragraph 43 of the Complaint purports to summarize portions of the Amendment Agreement to which no response is required. To the extent a response is required, Westchester denies Plaintiff's characterization of the Amendment Agreement and refers the Court to the Amendment Agreement for a full and complete recitation of its terms.

44.     Westchester denies the allegations contained in paragraph 44 of the Complaint.

45.     Westchester denies the allegations contained in paragraph 45 of the Complaint.

46.     Westchester denies the allegations contained in paragraph 46 of the Complaint.

47.     Westchester denies the allegations contained in paragraph 47 of the Complaint.[1]

48.     Westchester admits only that it made certain payments to Glasswall on or around the time stated but otherwise denies Monadnock's characterization of the payments as set forth in paragraph 48 of the Complaint.

49.     Westchester admits only that Monadnock made a payment on or about the date stated but otherwise denies the characterization of the payment and the remainder of the allegations of paragraph 49 of the Complaint.

---

[1] Westchester denies the allegations contained in footnote 1 of the Complaint.

7

50.     Westchester admits only that Glasswall delivered windows and other materials before and after the stated date but denies the remainder of the allegations of paragraph 50 of the Complaint.

51.     Westchester denies the allegations contained in paragraph 51 of the Complaint.

52.     Westchester denies the allegations contained in paragraph 52 of the Complaint.

53.     Westchester admits only that on March 4, 2015, Monadnock served a Notice of Default on Westchester.  The remaining allegations in Paragraph 53 of the Complaint are denied.

54.     Westchester denies the allegations contained in paragraph 54 of the Complaint.

55.     Westchester admits only that on March 16, 2015, Plaintiff purported to terminate the Contracts. Westchester otherwise denies the allegations contained in Paragraph 55 of the Complaint.

56.     Westchester admits only that on March 16, 2015, Monadnock sent Westchester a purported Section 3.2 notice under the Bonds.  The remaining allegations in paragraph 56 of the Complaint characterize the purported Section 3.2 notice, which is in writing and speaks for itself, and the characterization of it is therefore denied.

57.     Westchester admits only that on April 20, 2015, Monadnock sent Westchester a purported 7-day notice under Section 6 of the Bonds.  The remaining allegations in paragraph 57 of the Complaint characterize the purported Section 6 notice, which is in writing and speaks for itself, and the characterization of it is therefore denied.

58.     Westchester admits only that on April 25, 2015, it denied Monadnock's claim under the Bonds. The remaining allegations in Paragraph 58 of the Complaint purport to characterize Westchester's counsel's written notice to Monadnock, which is in writing and speaks for itself, and the characterization of it is therefore denied.

8

59.     Westchester denies the allegations of Paragraph 59 of the Complaint.

60.     Westchester denies the allegations contained in paragraph 60 of the Complaint.

61.     Westchester denies the allegations contained in Paragraph 61 of the Complaint.

### FIRST CLAIM FOR RELIEF

(Breach of Contract)

62.     Westchester repeats and realleges its responses to the allegations set forth in Paragraphs 1 through 61 as if fully set forth herein.

63.     The allegations contained in Paragraph 63 of the Complaint represent conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

64.     The allegations contained in Paragraph 64 of the Complaint represent conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

65.     Westchester denies the allegations contained in Paragraph 65 of the Complaint.

66.     Westchester denies the allegations contained in Paragraph 66 of the Complaint.

### SECOND CLAIM FOR RELIEF

(Breach of Contract)

67.     Westchester repeats and realleges its responses to the allegations set forth in Paragraphs 1 through 67 as if fully set forth herein.

68.     The allegations contained in Paragraph 68 of the Complaint represent conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

69.     The allegations contained in Paragraph 69 of the Complaint represent conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

70.     Westchester denies the allegations contained in Paragraph 70 of the Complaint.

71.     Westchester denies the allegations contained in Paragraph 71 of the Complaint.

**WHEREFORE**, Defendant Westchester Fire Insurance Company respectfully requests that the Court deny Plaintiff's requested relief, dismiss the Complaint with prejudice, and award Westchester attorneys' fees and any other relief this Court deems just and proper.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

1.     The Complaint, and each and every claim contained therein, fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

2.     Monadnock's claims are barred by the statute of limitations, the contractual limitation period and/or laches.

### THIRD AFFIRMATIVE DEFENSE

3.     Monadnock suffered no damages because it has been paid for all of its alleged damages by others.

### FOURTH AFFIRMATIVE DEFENSE

4.     Monadnock's claims are barred in whole or in part by its release of claims.

### FIFTH AFFIRMATIVE DEFENSE

5.     Monadnock's claims are barred in whole or in part by accord and satisfaction.

### SIXTH AFFIRMATIVE DEFENSE

6.　　Monadnock's claims are barred by its failure to fulfill the express terms and conditions of the Bonds.

### SEVENTH AFFIRMATIVE DEFENSE

7.　　Monadnock's claims are barred in whole or in part by failure to mitigate damages.

### EIGHTH AFFIRMATIVE DEFENSE

8.　　Monadnock's claims are barred by waiver and estoppel.

### NINTH AFFIRMATIVE DEFENSE

9.　　Monadnock's claims are barred in whole or in part by the Award of Arbitrator dated August 29, 2017.

### TENTH AFFIRMATIVE DEFENSE

10.　　Westchester maintains all rights and defenses of its principal, Glasswall, and Westchester is only liable to the extent of the Award of Arbitrator, dated August 29, 2017, provided that the surety bonds are deemed in force.

**WHEREFORE**, Defendant, Westchester Fire Insurance Company, respectfully requests that the Court deny Plaintiff's requested relief, dismiss the Complaint with prejudice, and award Westchester attorneys' fees and any other relief this Court deems just and proper.

Dated:　New York, New York
　　　　　September 12, 2017

　　　　　　　　　　　COZEN O'CONNOR

　　　　　　　By:　 /s/ John J. Sullivan
　　　　　　　　　John J. Sullivan
　　　　　　　　　45 Broadway Atrium, Suite 1600
　　　　　　　　　New York, NY 10006
　　　　　　　　　P: 212-453-3729
　　　　　　　　　F: 646-461-2073
　　　　　　　　　JSullivan@cozen.com

11

Robert McL. Boote*
*Admitted Pro Hac Vice
Suite 400, 200 Four Falls Corporate Center
P.O. Box 800
West Conshohocken, PA 19428
P: 215-665-4630
F: 215-701-2424
RBoote@cozen.com

*Attorneys for Defendant*
*Westchester Fire Insurance Company*

TO:

Howard Kleinhendler
Jocelyn Weinstein
WACHTEL MISSRY LLP
885 Second Avenue
New York, NY 10017
P: 212-909-9500
F: 212-909-9430
kleinhendler@wmllp.com
jweinstein@wmllp.com
*Attorneys for Plaintiff*
*Monadnock Construction, Inc.*