EXHIBIT "B" TO DECLARATION OF JOEL S. MAGOLNICK

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 14-02090 CA 24

SARA JAYNE COLOMBO KENNEDY

      Plaintiffs,

v.

GLASSWALL, LLC, WESTCHESTER FIRE INSURANCE COMPANY, MONADNOCK CONSTRUCTION, INC., HPS 50TH AVENUE ASSOCIATES, LLC, and HPS BORDEN AVENUE ASSOCIATES, LLC,

      Defendants.

_____/

## AMENDED COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Sara Jayne Colombo Kennedy ("Kennedy"), hereby sues defendants, Glasswall, LLC ("Glasswall"), Monadnock Construction, Inc. ("Monadnock"), Westchester Fire Insurance Company ("Westchester"), HPS 50th Avenue Associates, LLC ("HPS 50th") and HPS Borden Avenue Associates, LLC ("HPS Borden") (collectively, HPS 50th and HPS Borden are referred to as "HPS"), and as grounds therefor, states as follows:

## JURISIDICTION, PARTIES AND VENUE

1.    This is an action for declaratory relief, pursuant to Florida Statutes Chapter 86, arising under two (2) Performance Bonds (the "Bonds") entered into among Glasswall, Monadnock and Westchester, and under which Kennedy may have personal liability.  Copies of the Bonds are attached hereto as Composite Exhibit "A."

EXHIBIT "B" TO DECLARATION OF JOEL S. MAGOLNICK

2.      At all relevant times, Kennedy was a resident of Miami-Dade County, Florida and otherwise *sui juris*.

3.      At all relevant times, Glasswall was and is a Florida limited liability company, qualified to do business and doing business in Miami-Dade County, Florida.

4.      At all relevant times, Westchester was and is a foreign corporation, authorized to do business and doing business in Miami-Dade County, Florida.

5.      At all relevant times, Monadnock was a foreign corporation.

6.      At all relevant times, HPS 50th and HPS Borden were foreign limited liability companies.

7.      Jurisdiction over Monadnock and Westchester in this Court is proper by virtue of the provisions of Section 11 in each of the Bonds, which provides for any legal or equitable proceeding under the Bond to be "instituted in any court of competent jurisdiction in the location in which the work or part of the work is located…"  In the instant matter, a part of the work performed by Glasswall, which work is the subject of the Bonds, is located in Miami-Dade County, Florida.

8.      Additionally, jurisdiction over Westchester is proper by virtue of the fact that it is authorized to conduct business and conducts business in Florida, including having issued the Bonds in this matter.

9.      Finally, jurisdiction over Monadnock and HPS in this Judicial Circuit is proper by virtue of the fact that they have engaged in tortious conduct directed to parties in Miami-Dade County, Florida, such as Kennedy and Glasswall, which conduct was and is intended to cause injury and damage to parties in Miami-Dade County, Florida.

10.      Venue is appropriate in this Judicial Circuit by virtue of the provisions of Section 11 of each of the Bonds, by virtue of the fact that: (i) Glasswall is located in this

Case 1:16-cv-00420-ILG-VMS   Document 81-2   Filed 11/29/17   Page 5 of 38 PageID #: 1059

Judicial Circuit, (ii) Westchester is authorized to conduct business and is conducting business in this Judicial Circuit, including issuing the Bonds in this matter and (iii) the damage from the tortious conduct described herein, and which forms the basis for the declaratory relief sought by Kennedy, was and is intended to occur, and will occur, in this Judicial Circuit.

## COUNT I – DECLARATORY RELIEF

11.     Kennedy adopts and realleges the allegations contained in paragraphs 1 through 10 of this Complaint as though more fully set forth herein, and alleges further:

12.     On January 3, 2013, Monadnock and Glasswall entered into two (2) agreements (the "HPS Parcel A Contract" and the "HPS Parcel B Contract")(collectively, the "HPS Contracts"), pursuant to which Glasswall was to furnish and deliver, *inter alia*, certain window assemblies and other materials (collectively, the "Window Assemblies") to the HPS Parcels A and B Projects, owned by HPS 50th and HPS Borden, respectively.

13.     In connection with the HPS Contracts, Glasswall procured the Bonds, dated February 12, 2013, from Westchester.

14.     Kennedy may have personal exposure relating to the Bonds.

15.     Subsequent to the execution of the HPS Contracts and the issuance of the Bonds, Monadnock, at the direction of HPS, and without any justifiable basis, claimed that Glasswall was in breach of its obligations under the HPS Contracts.  Kennedy was never provided notice of Monadnock's claim against Glasswall.

16.     In September and October 2013, Monadnock, at the direction of HPS, issued Notices of Default to Glasswall.  Kennedy was never provided with the Notices of Default.

17.     On January 13, 2014, Monadnock, at the direction of HPS, sent Glasswall a Notice of Termination, terminating the HPS Contracts.  A copy of the Notice of Termination is attached hereto as Exhibit "B."

18.     Similarly, on January 13, 2014, Monadnock, at the direction of HPS, sent Westchester a letter advising of its termination of the HPS Contracts and seeking performance under the Bonds (the "Westchester Letter").  A copy of the Westchester Letter is attached hereto as Exhibit "C."

19.     Monadnock's termination of the HPS Contracts, done at HPS's direction, was in bad faith.

20.     The sole purpose behind Monadnock issuing the Notices of Default and the Notice of Termination, and for HPS's tortious interference with the HPS Contracts, was a bad-faith attempt by Monadnock and HPS to renegotiate and change material terms in the HPS Contracts, so as to render the terms of the HPS Contracts more favorable to Monadnock and HPS.

21.     In fact, prior to the termination, Glasswall had produced approximately $4,000,000 worth of product in reliance upon Monadnock's agreement under the HPS Contracts to pay for the product.  Monadnock, at HPS's direction, refused to pay Glasswall for the product.  The sole reason for the failure to pay was to cause financial hardship to Glasswall and force Glasswall to renegotiate the terms of the HPS Contracts.  Accordingly, any delay in the installation of the glass panels was the result of Monadnock and HPS' strategic decision to refuse to pay for and receive the very substantial amount of already finished glass panels.

22.     As a result of the bad faith termination of the HPS Contracts by Monadnock and the wrongful demand for performance under the Bonds, brought about

by HPS's tortious interference with the HPS Contracts and with the Bonds, the potential exposure to Kennedy relating to the Bonds has significantly changed.

22.     Kennedy maintains that, by virtue of Monadnock's above-described wrongful conduct in terminating the HPS Contracts and invoking the Bonds, and HPS's tortious interference with the Bonds, any responsibility that Kennedy may have under the Bonds should be completely discharged.

23.     Additionally, Kennedy maintains that Westchester has a duty to act in good faith towards Kennedy and to fully investigate any claims made under the Bonds.

24.     Kennedy has a justiciable question regarding her rights, duties and obligations vis-à-vis the Bonds.

25.     Accordingly, an actual controversy exists between the parties hereto.

26.     There is a *bona fide*, actual, present need for the declaration sought.

27.     None of the parties hereto has sought by any other legal action to have their, rights, duties or obligations under the Bonds.

28.      Section 86.111, Fla. Stat., provides for expedited consideration of claims for declaratory relief and, based upon the foregoing, Kennedy respectfully requests such expedited consideration in this matter.

WHEREFORE, Kennedy hereby respectfully requests a declaration by this Honorable Court that:

(a) The HPS Contracts were wrongfully terminated and the Notice of Termination is null and void;

(b) Monadnock's demand under the Bonds was improper;

(c) As a result of the wrongful conduct described herein, any liability that Kennedy may have under the Bonds is fully and completely discharged; and

(d) For such further relief as this Court deems just and proper.

Respectfully submitted,

**MARKO & MAGOLNICK, P.A.**
Attorneys for Kennedy
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000
Facsimile:   (305) 285-5555

By: /s/Joel S. Magolnick
       Joel S. Magolnick, Esq.
       Florida Bar No. 776068
       Magolnick@mm-pa.com

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing is being furnished, via an automated email generated by the Florida Courts E-Filing Portal on this 28th day of January 2014, to Jason B. Giller, Esq., Counsel for Glasswall, 701 Brickell Avenue, 24th Floor, Miami, Florida 33131; and via U.S. mail, to: HPS 50th Avenue Associates, LLC, c/o Corporation Service Company, 80 State Street, Albany, NY 12207 and c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808; Monadnock Construction, Inc., 155 3rd St Brooklyn, NY 11231; and Westchester Fire Insurance Company, c/o Chief Financial Officer, P O Box 6200 (32314-6200), 200 E. Gaines St., Tallahassee, FL 32399-0000.

/s/Joel S. Magolnick
Joel S. Magolnick

Composite Exhibit "A"

Exhibit "A-1"

Bond No.   K08840258

# Document A312™ – 2010

Conforms with The American Institute of Architects AIA Document 312

## *Performance Bond*

**CONTRACTOR:**
*(Name, legal status and address)*

Glasswall, LLC
3550 N.W. 49th Street
Miami, FL  33142

**OWNER:**
*(Name, legal status and address)*
Monadnock Construction, Inc.
155-3rd Street
Brooklyn, NY  11231

**SURETY:**
*(Name, legal status and principal place of business)*
Westchester Fire Insurance Company
436 Walnut Street, P. O. Box 1000
Philadelphia, PA  19106
**Mailing Address for Notices**

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**CONSTRUCTION CONTRACT**
Date:     January 3, 2013
Amount: $ 4,587,498.00

Four Million Five Hundred Eighty Seven Thousand Four Hundred Ninety Eight Dollars and 00/100

Description:
*(Name and location)*
HPS "Parcel B" 1-55 Borden Avenue, Long Island City, New York  11101

**BOND**
Date:     February 11, 2013
*(Not earlier than Construction Contract Date)*

Amount: $4,587,498.00

Four Million Five Hundred Eighty Seven Thousand Four Hundred Ninety Eight Dollars and 00/100

Modifications to this Bond:     ☒ None          ☐ See Section 16

**CONTRACTOR AS PRINCIPAL**
Company:          *(Corporate Seal)*
Glasswall, LLC

Signature:
Name  Federico Balestrazzi
and Title:  PRESIDENT

**SURETY**
Company:          *(Corporate Seal)*
Westchester Fire Insurance Company

Signature:
Name   Charles J. Nielson
and Title:  Attorney-in-Fact



*(Any additional signatures appear on the last page of this Performance Bond.)*
*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
Nielson, Hoover & Associates
8000 Governors Square Blvd. #101
Miami Lakes, FL  33016
305-722-2663
S-1852/AS 8/10

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*
Ismael Leyva Architects, P.C.
48 West 37th Street, #13
New York, NY  10018

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

§ 2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except when applicable to participate in a conference as provided in Section 3.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after

.1    the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

.2    the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

.3    the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

§ 4 Failure on the part of the Owner to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to the Surety's obligations, or release the Surety from its obligations, except to the extent the Surety demonstrates actual prejudice.

§ 5 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

§ 5.1 Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor Default; or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1    After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

.2    Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

§ 6 If the Surety does not proceed as provided in Section 5 with reasonable promptness, the Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 5.4, and the Owner refuses the payment or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

§ 7 If the Surety elects to act under Section 5.1, 5.2 or 5.3, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. Subject to the commitment by the Owner to pay the Balance of the Contract Price, the Surety is obligated, without duplication, for

.1 the responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;
.2 additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 5; and
.3 liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

§ 8 If the Surety elects to act under Section 5.1, 5.3 or 5.4, the Surety's liability is limited to the amount of this Bond.

§ 9 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators, successors and assigns.

§ 10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 11 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after a declaration of Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears.

§ 13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

## § 14 Definitions

§ 14.1 Balance of the Contract Price. The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

§ 14.2 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and changes made to the agreement and the Contract Documents.

§ 14.3 Contractor Default. Failure of the Contractor, which has not been remedied or waived, to perform or otherwise to comply with a material term of the Construction Contract.

§ 14.4 Owner Default. Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

§ 14.5 Contract Documents. All the documents that comprise the agreement between the Owner and Contractor.

§ 15 If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

§ 16 Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

**CONTRACTOR AS PRINCIPAL**                                    **SURETY**
Company:                          *(Corporate Seal)*           Company:                          *(Corporate Seal)*

Signature: _____                    Signature: _____
Name and Title:                                                Name and Title:
Address                                                        Address

S-1852/AS 8/10

Bond No.   K08840258

# Document A312™ – 2010

## Payment Bond

Conforms with The American Institute of Architects AIA Document 312

**CONTRACTOR:**
*(Name, legal status and address)*

Glasswall, LLC
3550 N.W. 49th Street
Miami, FL  33142

**OWNER:**
*(Name, legal status and address)*

Monadnock Construction, Inc.
155-3rd Street
Brooklyn, NY  11231

**SURETY:**
*(Name, legal status and principal place of business)*

Westchester Fire Insurance Company
436 Walnut Street, P. O. Box 1000
Philadelphia, PA  19106
**Mailing Address for Notices**

This document has important legal
consequences. Consultation with
an attorney is encouraged with
respect to its completion or
modification.

Any singular reference to
Contractor, Surety, Owner or
other party shall be considered
plural where applicable.

**CONSTRUCTION CONTRACT**
Date:     January 3, 2013
Amount: $4,587,498.00

Four Million Five Hundred Eighty Seven Thousand Four Hundred Ninety Eight Dollars and 00/100

Description:
*(Name and location)*
HPS "Parcel B" 1-55 Borden Avenue, Long Island City, New York  11101

**BOND**
Date:     February 11, 2013
*(Not earlier than Construction Contract Date)*

Amount: $4,587,498.00

Four Million Five Hundred Eighty Seven Thousand Four Hundred Ninety Eight Dollars and 00/100

Modifications to this Bond:     [X] None     [ ] See Section 18

**CONTRACTOR AS PRINCIPAL**
Company:          *(Corporate Seal)*
Glasswall, LLC

Signature: _____
Name Federico Balestrazzi
and Title: PRESIDENT

**SURETY**
Company:          *(Corporate Seal)*
Westchester Fire Insurance Company

Signature: _____
Name   Charles J. Nielson
and Title: Attorney-in-Fact

*(Any additional signatures appear on the last page of this Payment Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
Nielson, Hoover & Associates
8000 Governors Square Blvd. #101
Miami Lakes, FL  33016
305-722-2663
S-2149/AS 8/10

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*
Ismael Leyva Architects, P.C.
48 West 37th Street, #13
New York, NY  10018

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

§ 2 If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

§ 4 When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

§ 5 The Surety's obligations to a Claimant under this Bond shall arise after the following:

§ 5.1 Claimants, who do not have a direct contract with the Contractor,

 .1 have furnished a written notice of non-payment to the Contractor, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were, or equipment was, furnished or supplied or for whom the labor was done or performed, within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim; and

 .2 have sent a Claim to the Surety (at the address described in Section 13).

§ 5.2 Claimants, who are employed by or have a direct contract with the Contractor, have sent a Claim to the Surety (at the address described in Section 13).

§ 6 If a notice of non-payment required by Section 5.1.1 is given by the Owner to the Contractor, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Section 5.1.1.

§ 7 When a Claimant has satisfied the conditions of Sections 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

§ 7.1 Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

§ 7.2 Pay or arrange for payment of any undisputed amounts.

§ 7.3 The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

§ 8 The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

§ 9 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any construction performance bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work. .

§ 10 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to, or give notice on behalf of, Claimants or otherwise have any obligations to Claimants under this Bond.

§ 11 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 12 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Section 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 13 Notice and Claims to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

§ 14 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ 15 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

§ 16 Definitions

§ 16.1 Claim. A written statement by the Claimant including at a minimum:

    .1  the name of the Claimant;
    .2  the name of the person for whom the labor was done, or materials or equipment furnished;
    .3  a copy of the agreement or purchase order pursuant to which labor, materials or equipment was furnished for use in the performance of the Construction Contract;
    .4  a brief description of the labor, materials or equipment furnished;
    .5  the date on which the Claimant last performed labor or last furnished materials or equipment for use in the performance of the Construction Contract;
    .6  the total amount earned by the Claimant for labor, materials or equipment furnished as of the date of the Claim;
    .7  the total amount of previous payments received by the Claimant; and
    .8  the total amount due and unpaid to the Claimant for labor, materials or equipment furnished as of the date of the Claim.

§ 16.2 Claimant. An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

§ 16.3 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

**§ 16.4 Owner Default.** Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

**§ 16.5 Contract Documents.** All the documents that comprise the agreement between the Owner and Contractor.

**§ 17** If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

**§ 18** Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

| **CONTRACTOR AS PRINCIPAL** | | **SURETY** | |
|---|---|---|---|
| Company: | *(Corporate Seal)* | Company: | *(Corporate Seal)* |

Signature: _____

Name and Title:

Address

Signature: _____

Name and Title:

Address

## DUAL OBLIGEE RIDER

To be attached to and form part of Bond No. ___K08840258___ executed by
___Glasswall, LLC___, as Principal, and
___Westchester Fire Insurance Company___ as Surety,
in favor of ___Monadnock Construction, Inc.___ Obligee
in the penalty of ___Four Million Five Hundred Eighty-Seven___ Dollars ($ 4,587,498.00
___Four Hundred Ninety-Eight and 00/100___ 2013
on or about the ___11___ day of ___February___ covering the Contract described as
___HPS "Parcel B" 1-55 Borden Avenue, Long Island City, NY  11101___

SIGNED, SEALED AND DATED this ___11___ day of ___February___, ___2013___.

WHEREAS, the Obligee, as evidenced by their signed approval of this rider, have requested and
are agreeable to the Surety and the Principal amending the attached bond by adding
___HPS Borden Avenue Associates, LLC, Citibank, N.A.___ as Obligee(s).
___New York City Housing Development Corporation___ and
New York City Department of Housing Preservation and Development and
PROVIDED, HOWEVER, that the Surety and Principal shall not be liable under the attached
bond and the attached bond as amended by this rider to the Obligees, nor any of them, unless the
Obligees or each of them shall perform all obligations by them or any of them to be performed
under the terms of said contract, including but not limited to making all payments to the
Principal in accordance with the terms of said contract.

PROVIDED, FURTHER, that nothing herein contained shall otherwise amend, alter or modify
any of the terms and conditions of the attached bonds except as herein expressly amended; and

PROVIDED, FURTHER, that the aggregate liability of the Surety under the attached bond and
the attached bond as amended by this rider, shall not exceed the sum of
___Four Million Five Hundred Eighty-Seven Thousand___ Dollars ($ 4,587,498.00).
___Four Hundred Ninety-Eight and 00/100___

Accepted and Approved:
Monadnock Construction, Inc.                              GLASSWALL, LLC

_____        _____
        (Principal Obligee)                                              (Principal)

Accepted and Approved:                      WESTCHESTER FIRE INSURANCE COMPANY
HPS Borden Avenue Associates, LLC

_____        _____
        (Additional Obligee)                        By: Charles J. Nielsen   Attorney in Fact

_____        _____
Citibank, N.A.                                      New York City Dept. of Housing Pres.
                                                                                            & Dev.

New York City Housing Dev. Corp.

# Power of Attorney

## WESTCHESTER FIRE INSURANCE COMPANY

**Know all men by these presents:** That **WESTCHESTER FIRE INSURANCE COMPANY**, a corporation of the Commonwealth of Pennsylvania pursuant to the following Resolution, adopted by the Board of Directors of the said Company on December 11, 2006, to wit:

"RESOLVED, that the following authorizations relate to the execution, for and on behalf of the Company, of bonds, undertakings, recognizances, contracts and other written commitments of the Company entered into the ordinary course of business (each a "Written Commitment"):

(1) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise.

(2) Each duly appointed attorney-in-fact of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise, to the extent that such action is authorized by the grant of powers provided for in such persons written appointment as such attorney-in-fact.

(3) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to appoint in writing any person the attorney-in-fact of the Company with full power and authority to execute, for and on behalf of the Company, under the seal of the Company or otherwise, such Written Commitments of the Company as may be specified in such written appointment, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(4) Each of the Chairman, the President and Vice President of the Company is hereby authorized, for and on behalf of the Company, to delegate in writing any other officer of the Company the authority to execute, for and on behalf of the Company, under the Company's seal or otherwise, such Written Commitment of the Company as is specified in such written delegation, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(5) The signature of any officer or other person executing any Written Commitment or appointment or delegation pursuant to this Resolution, and the seal of the Company, may be affixed by facsimile on such Written Commitment or written appointment or delegation.

FURTHER RESOLVED, that the foregoing Resolution shall not be deemed to be an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and such Resolution shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested."

Does hereby nominate, constitute and appoint Brett Rosenhaus, Charles D Nielson, Charles J Nielson, David R Hoover, Edward M Clark, Ian A Nipper, Joseph P Nielson, Katherine S Grimsley, Kevin R Wojtowicz, Laura D Mosholder, all of the City of MIAMI LAKES, Florida, each individually if there be more than one named, its true and lawful attorney-in-fact, to make, execute, seal and deliver on its behalf, and as its act and deed any and all bonds, undertakings, recognizances, contracts and other writings in the nature thereof in penalties not exceeding Ten million dollars & zero cents ($10,000,000.00) and the execution of such writings in pursuance of these presents shall be as binding upon said Company, as fully and amply as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its principal office.

IN WITNESS WHEREOF, the said Stephen M. Haney, Vice-President, has hereunto subscribed his name and affixed the Corporate seal of the said **WESTCHESTER FIRE INSURANCE COMPANY** this 16 day of July 2012.

WESTCHESTER FIRE INSURANCE COMPANY



Stephen M. Haney , Vice President

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF PHILADELPHIA     ss.
On this 16 day of July, A.D. 2012 before me, a Notary Public of the Commonwealth of Pennsylvania in and for the County of Philadelphia came Stephen M. Haney ,Vice-President of the **WESTCHESTER FIRE INSURANCE COMPANY** to me personally known to be the individual and officer who executed the preceding instrument, and he acknowledged that he executed the same, and that the seal affixed to the preceding instrument is the corporate seal of said Company; that the said corporate seal and his signature were duly affixed by the authority and direction of the said corporation, and that Resolution, adopted by the Board of Directors of said Company, referred to in the preceding instrument, is now in force.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at the City of Philadelphia the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KAREN E. BRANDT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 25, 2014

I, the undersigned Assistant Secretary of the **WESTCHESTER FIRE INSURANCE COMPANY**, do hereby certify that the original POWER OF ATTORNEY, of which the foregoing is a substantially true and correct copy, is in full force and effect.

In witness whereof, I have hereunto subscribed my name as Assistant Secretary, and affixed the corporate seal of the Corporation, this 11 day of February, 2013

William L. Kelly, Assistant Secretary

THIS POWER OF ATTORNEY MAY NOT BE USED TO EXECUTE ANY BOND WITH AN INCEPTION DATE AFTER July 16, 2014.

Super Safety® ANTI-FRAUD PROTECTION
FORM NO. 89095

Exhibit "A-2"

Bond No.   K08840295

# Document A312™ – 2010

Conforms with The American Institute of Architects AIA Document 312

## Performance Bond

**CONTRACTOR:**
*(Name, legal status and address)*

Glasswall, LLC
3550 N.W. 49th Street
Miami          FL          33142

**SURETY:**
*(Name, legal status and principal place of business)*
Westchester Fire Insurance Company
436 Walnut Street, P. O. Box 1000
Philadelphia          PA          19106
**Mailing Address for Notices**

Same as above
Philadelphia          PA          19106

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**OWNER:**
*(Name, legal status and address)*
Monadnock Construction, Inc.
155-3rd Street
Brooklyn   NY          11231

**CONSTRUCTION CONTRACT**
Date:          January 3, 2013
Amount: $ 8,412,502.00

Eight Million Four Hundred Twelve Thousand Five Hundred Two Dollars and 00/100

Description:
*(Name and location)*
HPS "Parcel A" 1-50 - 50th Avenue, Long Island City, New York 11101

**BOND**
Date:          February 12, 2013
*(Not earlier than Construction Contract Date)*

Amount: $8,412,502.00

Eight Million Four Hundred Twelve Thousand Five Hundred Two Dollars and 00/100

Modifications to this Bond:          ☒ None          ☐ See Section 16

**CONTRACTOR AS PRINCIPAL**
Company:          *(Corporate Seal)*
Glasswall, LLC

Signature:
Name   FEDERICO BALESTRAZZI
and Title:   PRESIDENT

**SURETY**
Company:          *(Corporate Seal)*
Westchester Fire Insurance Company

Signature:
Name          Charles J. Nielson
and Title:          Attorney-in-Fact

*(Any additional signatures appear on the last page of this Performance Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
Nielson, Hoover & Associates
8000 Governors Square Blvd. #101
Miami Lakes          FL          33016
305-722-2663
S-1852/AS 8/10

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*
Ismael Leyva Architects, P.C.
48 West 37 Street, #13
New York          NY          10018

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

§ 2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except when applicable to participate in a conference as provided in Section 3.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after

.1 the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

.2 the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

.3 the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

§ 4 Failure on the part of the Owner to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to the Surety's obligations, or release the Surety from its obligations, except to the extent the Surety demonstrates actual prejudice.

§ 5 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

§ 5.1 Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor Default; or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1 After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

.2 Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

§ 6 If the Surety does not proceed as provided in Section 5 with reasonable promptness, the Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 5.4, and the Owner refuses the payment or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

§ 7 If the Surety elects to act under Section 5.1, 5.2 or 5.3, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. Subject to the commitment by the Owner to pay the Balance of the Contract Price, the Surety is obligated, without duplication, for

    .1  the responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

    .2  additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 5; and

    .3  liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

§ 8 If the Surety elects to act under Section 5.1, 5.3 or 5.4, the Surety's liability is limited to the amount of this Bond.

§ 9 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators, successors and assigns.

§ 10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 11 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after a declaration of Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears.

§ 13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

## § 14 Definitions

§ 14.1 Balance of the Contract Price. The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

§ 14.2 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and changes made to the agreement and the Contract Documents.

§ 14.3 Contractor Default. Failure of the Contractor, which has not been remedied or waived, to perform or otherwise to comply with a material term of the Construction Contract.

§ 14.4 Owner Default. Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

§ 14.5 Contract Documents. All the documents that comprise the agreement between the Owner and Contractor.

§ 15 If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

§ 16 Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

**CONTRACTOR AS PRINCIPAL**
Company:                                  *(Corporate Seal)*

**SURETY**
Company:                                  *(Corporate Seal)*

Signature:
Name and Title:
Address

Signature:
Name and Title:
Address

S-1852/AS 8/10

Bond No.   K08840295

# Document A312™ – 2010

**Payment Bond**

Conforms with The American Institute of Architects AIA Document 312

**CONTRACTOR:**
*(Name, legal status and address)*

Glasswall, LLC
3550 N.W. 49th Street
Miami          FL          33142

**OWNER:**
*(Name, legal status and address)*

Monadnock Construction, Inc.
155-3rd Street
Brooklyn        NY          11231

**CONSTRUCTION CONTRACT**
Date:      January 3, 2013
Amount: $8,412,502.00

Description:
*(Name and location)*
HPS "Parcel A" 1-50 - 50th Avenue, Long Island City, New York  11101

**SURETY:**
*(Name, legal status and principal place of business)*

Westchester Fire Insurance Company
436 Walnut Street, P. O. Box 1000
Philadelphia        PA          19106
**Mailing Address for Notices**

Same as above
Philadelphia        PA          19106

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

Eight Million Four Hundred Twelve Thousand Five Hundred Two Dollars and 00/100

**BOND**
Date:      February 12, 2013
*(Not earlier than Construction Contract Date)*

Amount: $ .00

Modifications to this Bond:     [X] None

No Dollars and 00/100

[ ] See Section 18

**CONTRACTOR AS PRINCIPAL**
Company:                *(Corporate Seal)*
Glasswall, LLC

Signature: _____
Name  FEDERICO BALESTRAZZI
and Title:      PRESIDENT

**SURETY**
Company:                *(Corporate Seal)*
Westchester Fire Insurance Company

Signature: _____
Name     Charles J. Nielson
and Title:  Attorney-in-Fact

*(Any additional signatures appear on the last page of this Payment Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
Nielson, Hoover & Associates
8000 Governors Square Blvd. #101
Miami Lakes        FL          33016
305-722-2663
S-2149/AS 8/10

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party;)*
Ismael Leyva Architects, P.C.
48 West 37 Street, #13
New York          NY          10018

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

§ 2 If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

§ 4 When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

§ 5 The Surety's obligations to a Claimant under this Bond shall arise after the following:

§ 5.1 Claimants, who do not have a direct contract with the Contractor,

    .1   have furnished a written notice of non-payment to the Contractor, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were, or equipment was, furnished or supplied or for whom the labor was done or performed, within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim; and

    .2   have sent a Claim to the Surety (at the address described in Section 13).

§ 5.2 Claimants, who are employed by or have a direct contract with the Contractor, have sent a Claim to the Surety (at the address described in Section 13).

§ 6 If a notice of non-payment required by Section 5.1.1 is given by the Owner to the Contractor, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Section 5.1.1.

§ 7 When a Claimant has satisfied the conditions of Sections 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

§ 7.1 Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

§ 7.2 Pay or arrange for payment of any undisputed amounts.

§ 7.3 The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

§ 8 The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

§ 9 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any construction performance bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work. .

§ 10 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to, or give notice on behalf of, Claimants or otherwise have any obligations to Claimants under this Bond.

§ 11 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 12 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Section 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 13 Notice and Claims to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

§ 14 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ 15 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

§ 16 Definitions
§ 16.1 Claim. A written statement by the Claimant including at a minimum:
    .1   the name of the Claimant;
    .2   the name of the person for whom the labor was done, or materials or equipment furnished;
    .3   a copy of the agreement or purchase order pursuant to which labor, materials or equipment was furnished for use in the performance of the Construction Contract;
    .4   a brief description of the labor, materials or equipment furnished;
    .5   the date on which the Claimant last performed labor or last furnished materials or equipment for use in the performance of the Construction Contract;
    .6   the total amount earned by the Claimant for labor, materials or equipment furnished as of the date of the Claim;
    .7   the total amount of previous payments received by the Claimant; and
    .8   the total amount due and unpaid to the Claimant for labor, materials or equipment furnished as of the date of the Claim.

§ 16.2 Claimant. An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

§ 16.3 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

**§ 16.4 Owner Default.** Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

**§ 16.5 Contract Documents.** All the documents that comprise the agreement between the Owner and Contractor.

**§ 17** If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

**§ 18** Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

**CONTRACTOR AS PRINCIPAL**
Company:                    *(Corporate Seal)*

**SURETY**
Company:                    *(Corporate Seal)*

Signature: _____
Name and Title:
Address

Signature: _____
Name and Title:
Address

S-2149/AS 8/10

# DUAL OBLIGEE RIDER

To be attached to and form part of Bond No. ___K08840295___ executed by
___Glasswall, LLC___
_____Westchester Fire Insurance Company_____, as Principal, and
in favor of ___Monadnock Construction, Inc.___ as Surety,
in the penalty of ___Eight Million Four Hundred Twelve Thousand Five___ Dollars ($ 8,412,502.00 ),
on or about the ___3rd___ day of January, 2013 covering the Contract described as
HPS "Parcel A" 1-50 — 50th Avenue, Long Island City, New York  11101

SIGNED, SEALED AND DATED this _12th_ day of _February_ , _2013_ .

WHEREAS, the Obligee, as evidenced by their signed approval of this rider, have requested and are agreeable to the Surety and the Principal amending the attached bond by adding
HPS 50th Avenue Associates, LLC, Wells Fargo, N.A., Bank of America, N.A.,  as Obligee(s).
New York City Department of Housing Preservation and Development, New York City Housing Development Corporation

PROVIDED, HOWEVER, that the Surety and Principal shall not be liable under the attached bond and the attached bond as amended by this rider to the Obligees, nor any of them, unless the Obligees or each of them shall perform all obligations by them or any of them to be performed under the terms of said contract, including but not limited to making all payments to the Principal in accordance with the terms of said contract.

PROVIDED, FURTHER, that nothing herein contained shall otherwise amend, alter or modify any of the terms and conditions of the attached bonds except as herein expressly amended; and

PROVIDED, FURTHER, that the aggregate liability of the Surety under the attached bond and the attached bond as amended by this rider, shall not exceed the sum of
Eight Million Four Hundred Twelve Thousand Five Hundred Two and 00/100  Dollars ($ 8,412,502.00 ).

Accepted and Approved:
Monadnock Construction, Inc.

_____
(Principal Obligee)

Accepted and Approved:
HPS 50th Avenue Associates, LLC

_____
(Additional Obligee)

Wells Fargo, N.A.

_____

New York City Department of Housing
Preservation and Development

_____

Glasswall, LLC

_____
(Principal)

Westchester Fire Insurance Company

By: Charles J. Nielson Attorney in Fact

Bank of America, N.A.

_____

New York City Housing Development Corporation

_____

# Power of Attorney

## WESTCHESTER FIRE INSURANCE COMPANY

**Know all men by these presents:** That **WESTCHESTER FIRE INSURANCE COMPANY**, a corporation of the Commonwealth of Pennsylvania pursuant to the following Resolution, adopted by the Board of Directors of the said Company on December 11, 2006, to wit:

"RESOLVED, that the following authorizations relate to the execution, for and on behalf of the Company, of bonds, undertakings, recognizances, contracts and other written commitments of the Company entered into the ordinary course of business (each a "Written Commitment"):

(1) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise.

(2) Each duly appointed attorney-in-fact of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise, to the extent that such action is authorized by the grant of powers provided for in such person's written appointment as such attorney-in-fact.

(3) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to appoint in writing any person the attorney-in-fact of the Company with full power and authority to execute, for and on behalf of the Company, under the seal of the Company or otherwise, such Written Commitments of the Company as may be specified in such written appointment, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(4) Each of the Chairman, the President and Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to delegate in writing any other officer of the Company the authority to execute, for and on behalf of the Company, under the Company's seal or otherwise, such Written Commitments of the Company as are specified in such written delegation, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(5) The signature of any officer or other person executing any Written Commitment or appointment or delegation pursuant to this Resolution, and the seal of the Company, may be affixed by facsimile on such Written Commitment or written appointment or delegation.

FURTHER RESOLVED, that the foregoing Resolution shall not be deemed to be an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and such Resolution shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

Does hereby nominate, constitute and appoint Brett Rosenhaus, Charles D Nielson, Charles J Nielson, David R Hoover, Edward M Clark, Ian A Nipper, Joseph P Nielson, Katherine S Grimsley, Kevin R Wojtowicz, Laura D Mosholder, all of the City of MIAMI LAKES, Florida, each individually if there be more than one named, its true and lawful attorney-in-fact, to make, execute, seal and deliver on its behalf, and as its act and deed any and all bonds, undertakings, recognizances, contracts and other writings in the nature thereof in penalties not exceeding Ten million dollars & zero cents ($10,000,000.00) and the execution of such writings in pursuance of these presents shall be as binding upon said Company, as fully and amply as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its principal office.

IN WITNESS WHEREOF, the said Stephen M. Haney, Vice-President, has hereunto subscribed his name and affixed the Corporate seal of the said **WESTCHESTER FIRE INSURANCE COMPANY** this 16 day of July 2012.

**WESTCHESTER FIRE INSURANCE COMPANY**



_Stephen M. Haney_ , Vice President

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF PHILADELPHIA    ss.

On this 16 day of July, AD. 2012 before me, a Notary Public of the Commonwealth of Pennsylvania in and for the County of Philadelphia came Stephen M. Haney, Vice-President of the **WESTCHESTER FIRE INSURANCE COMPANY** to me personally known to be the individual and officer who executed the preceding instrument, and he acknowledged that he executed the same, and that the seal affixed to the preceding instrument is the corporate seal of said Company; that the said corporate seal and his signature were duly affixed by the authority and direction of the said corporation, and that Resolution, adopted by the Board of Directors of said Company, referred to in the preceding instrument, is now in force.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at the City of Philadelphia the day and year first above written.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KAREN E. BRANDT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 26, 2014

_Karen E Brandt_
Notary Public

I, the undersigned Assistant Secretary of the **WESTCHESTER FIRE INSURANCE COMPANY**, do hereby certify that the original POWER OF ATTORNEY, of which the foregoing is a substantially true and correct copy, is in full force and effect.

In witness whereof, I have hereunto subscribed my name as Assistant Secretary, and affixed the corporate seal of the Corporation, this 12 day of February, 2013



_William L. Kelly_
William L. Kelly, Assistant Secretary

THIS POWER OF ATTORNEY MAY NOT BE USED TO EXECUTE ANY BOND WITH AN INCEPTION DATE AFTER July 16, 2014

THE BACK OF THIS DOCUMENT LISTS VARIOUS SECURITY FEATURES      THAT WILL PROTECT AGAINST COPY COUNTERFEIT AND ALTERATION.

Super Safety® ANTI-FRAUD PROTECTION

FORM NO. 8905

Exhibit "B"



January 13, 2014

<u>**Via Email and Fed Ex**</u>
Glasswall, LLC
3550 N.W. 49th Street
Miami, FL 33142
Attn: Mr. Ugo Colombo, Chairman

Re: (a) Agreement between Monadnock Construction, Inc. and Glasswall, LLC dated January 3, 2013 for the project known as HPS "Parcel A" ("Contract A") and, (b) Agreement between Monadnock Construction, Inc. and Glasswall, LLC dated January 3, 2013 for the project known as HPS "Parcel B" ("Contract B")

<u>**NOTICE OF TERMINATION**</u>

Dear Mr. Colombo:

This letter shall serve as written notice of termination for both Contracts A and B pursuant to AIA A401, Article 7.2.1 thereof.

Glasswall was sent a Notice of Default on September 16, 2013, a Notice of Continuing Default on October 23, 2013 and a Notice of Continuing Default on December 31, 2013. Nevertheless, Glasswall is still in default of its production obligations, delivery obligations, scheduling obligations, and quality assurance/quality control ("QA/QC") obligations and it has submitted falsified requisitions.

The Contracts A and B required Glasswall to ship completed window assemblies to Parcel B of the Hunters Point South ("HPS") Project starting on July 1, 2013 and to Parcel A of the HPS Project starting on September 1, 2013. Glasswall did not meet those dates. On March 15, 2013, the project schedule was updated and reflected window assembly delivery start dates of August 7, 2013 for Parcel B and of August 29, 2013 for Parcel A. Glasswall did not meet those delivery start dates either. On August 16, 2013, your attorney at the time, Clinton D. Flagg, sent us a letter representing that "completed window assemblies" will be ready to ship by Glasswall

to the project on September 1, 2013. That representation proved false. On November 20, 2013, Glasswall issued a production schedule representing that Release 1 for Parcel A would be complete by December 6, 2013 and Release 1 for Parcel B would be complete by December 12, 2013. Those representations proved to be false as well.

The contract also required Glasswall to fabricate, and store off site, windows and doors as necessary to allow for their timely and continuous installation (Rider 5, ¶17.d.2) at a rate of 2 floors per week (Rider 5, ¶37) while keeping pace 6 floors below the superstructure contractor (Rider 5, ¶4.3.b), who has now completed both buildings. Glasswall was also required to: "diligently perform the work, and maintain men in sufficient numbers and materials in sufficient quantities to accomplish the rapid completion of the job." (AIA A401-2007, section 9.3). Moreover, "time is of the essence" (AIA A401-2007, section 9.4).

Although Monadnock has asked Glasswall several times for a recovery schedule that would show how Glasswall intends to accelerate its production to make up for lost time, Glasswall has refused to provide same. Instead, Glasswall issued production schedules on September 17, 25, 27, October 28 and November 20, 2013, all of which Glasswall has not been followed and all of which failed to show the recovery of lost time. As recently as November 27, 2013, Glasswall emailed Monadnock that Parcel A Release 1 would be complete by December 6, 2013 and Parcel B Release 1 would be complete by December 12, 2013. Those Releases were not completed as represented and they are still not complete. On January 7, 2014, in the face of yet another default letter, Glasswall issued another production schedule that once again fails to recover all of the lost time and guarantees that Glasswall will be late in its "time of the essence" deliveries. Given Glasswall's prior history of broken production and delivery promises and its continued problems with its suppliers, we have doubts that Glasswall can maintain the January 7, 2014 production schedule.

Moreover, QA/QC issues continue to remain an issue of concern. Glasswall's failure to cooperate with IBA and Steve Barber, failure to permit full access to Glasswall's facility, and ill treatment of one of the members of the IBA team has aggravated the situation. The attached 1/3/14 Israel Berger & Associates, LLC ("IBA") list of open deficiencies amply demonstrates Glasswall's QA/QC problems … and that list was based on IBA's observations of a fraction of the windows assemblies Glasswall claims to have completed. When Glasswall, at IBA's request, recently opened up 3-5 crates of "completed window assemblies" that Glasswall had represented were defect-free and ready for shipment to the HPS Project, IBA discovered numerous defects in several of those "completed window assemblies".

Last, Glasswall has anticipatorily breached the contract by demanding payment before it is due and declaring its refusal to ship window assemblies if ordered to do so by Monadnock (after the QA/QC issues are resolved and the respective Release 1's are complete). As was explained to you several times, Contracts A and B do not require Monadnock to pay Glasswall for stored materials not delivered to the HPS Project. Delivery of these materials was held up due to QA/QC concerns and the respective Release 1's for Parcels A and B are not complete. In addition, the certified requisition amounts are false and have never been resubmitted with accurate quantities.

Since window assembly delivery is critical to the progress of the HPS Project, delays in their delivery will delay the completion of the HPS Project and push out our TCO dates. This exposes us to substantial damages including, but not limited to, extended general conditions, extended field costs, extended overhead costs, trade delay claims, extended financing costs, loss of rents and other damages. The full financial impact of the delays is ongoing. Subject to the provisions in Contracts A and B, we intend on holding Glasswall responsible for all damages that we incur.

Despite Glasswall's defaults and repeated and continuous failure to cure, we have paid Glasswall for each properly submitted requisition when and if due, inclusive of the engineering line items. In order to mitigate the damages we face, we demand that Glasswall deliver to us its shop drawings and fabrication drawings in electronic media CAD form, as well as all engineering work prepared by third parties such as structural calculations, modeling, etc.  and assign its contracts with said third party engineers to us.

This letter is written without prejudice to Monadnock's common law, contractual and bond rights and shall not be construed as a waiver, estoppel or modification of any or all of Monadnock's rights, remedies and defenses, legal or equitable, whether expressly mentioned herein or not, all of which remain reserved.  Please be guided accordingly.

Very truly yours,

Monadnock Construction Inc.

By: _____
Greg Bauso, Senior Vice President

cc: Henry Minissale, WFIC/ACE USA
    Frank Monterisi, HPS

Exhibit "C"



January 13, 2014

**<u>Via Email and Fed Ex</u>**
Westchester Fire Insurance Company/ACE USA
PO Box 5108
Scranton, PA  18505-0525
Henry Minissale, claims

Re: (a) Performance Bond No. K08840258 dated February 11, 2013 regarding the project known as HPS "Parcel B" 1-55 Borden Avenue, Long Island City, New York and (b) Performance Bond No. K08840295 dated February 12, 2013 regarding the project known as HPS "Parcel A" 1-50 50th Avenue, Long Island City, New York.

<u>**PERFORMANCE BONDS SECTION 3.2 NOTICE**</u>

Dear Mr. Minissale:

Enclosed herewith is a copy of a Notice of Termination we sent Glasswall LLC ("Glasswall") earlier today. This letter shall serve as notification to Westchester Fire Insurance Company ("WFIC") pursuant to section 3.2 of the above referenced Performance Bond No. K08840258 and Performance Bond No. K08840295 (collectively, the "Bonds") that Glasswall's January 3, 2012 contracts (collectively, the "Contracts") to, *inter alia*, furnish completed window assemblies and other materials to the HPS Parcels A and B projects (collectively, the "Projects") are terminated.

Since issuance to Glasswall of our September 16, 2013 Notice of Default, and our October 23, 2013 and December 31, 2013 Notices of Continuing Default, we have spoken to, met with, and exchanged correspondence with Glasswall to explore options to cure the defaults listed therein and mitigate damages we have suffered and continue to suffer as a result of Glasswall's failure to meet its contractual obligations. Unfortunately, to date, Glasswall remains in default of its contractual obligations.

We agree to pay the balance of the Contracts price in accordance with the terms of the Contracts. We request that WFIC promptly take action pursuant to Section 5 of the Bonds so that the Projects do not get further delayed.

We reserve our rights under the Contracts and the Bonds.  This letter is written without prejudice to and without waiver, estoppel or modification of any or all of Monadnock's common law, Contracts and/or Bonds rights, remedies and defenses, legal or equitable, whether expressly mentioned herein or not, all of which remain reserved.

Very truly yours,

Monadnock Construction Inc.

By: _____
　　　Greg Bauso, Senior Vice President

cc: Ugo Colombo, Glasswall, LLC
　　Frank Monterisi, HPS