EXHIBIT "C" TO DECLARATION OF JOEL S. MAGOLNICK

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.

UGO COLOMBO

       Plaintiffs,

v.

THE RELATED COMPANIES, INC., BRUCE BEAL, JR., GLASSWALL, LLC, WESTCHESTER FIRE INSURANCE COMPANY, MONADNOCK CONSTRUCTION, INC., HPS 50TH AVENUE ASSOCIATES, LLC, and HPS BORDEN AVENUE ASSOCIATES, LLC,

       Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Ugo Colombo ("Colombo"), hereby sues defendants, The Related Companies, Inc. ("Related"), Bruce Beal, Jr. (Beal"), HPS 50th Avenue Associates, LLC ("HPS 50th"), HPS Borden Avenue Associates, LLC ("HPS Borden") (collectively, HPS 50th and HPS Borden are referred to as "HPS"), (collectively, HPS, Related and Beal are referred to as the "Related Defendants"), Glasswall, LLC ("Glasswall"), Monadnock Construction, Inc. ("Monadnock"), and Westchester Fire Insurance Company ("Westchester"), and as grounds therefor, states as follows:

## JURISIDICTION, PARTIES AND VENUE

1.     This is an action for declaratory relief, pursuant to Florida Statutes Chapter 86, arising under two (2) Performance Bonds (the "Bonds") entered into among

EXHIBIT "C" TO DECLARATION OF JOEL S. MAGOLNICK

Glasswall, Monadnock and Westchester, and under which Colombo may have personal liability.  Copies of the Bonds are attached hereto as Composite Exhibit "A."

2.      This is also an action for injunctive relief and for damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of costs and interest.

3.      At all relevant times, Colombo was a resident of Miami-Dade County, Florida and otherwise *sui juris.*

4.      At all relevant times, Glasswall was and is a Florida limited liability company, qualified to do business and doing business in Miami-Dade County, Florida.

5.      At all relevant times, Westchester was and is a foreign corporation, authorized to do business and doing business in Miami-Dade County, Florida.

6.      At all relevant times, Related was and is a foreign corporation, authorized to do business and doing business in Miami-Dade County, Florida.

7.      At all relevant times, Monadnock was a foreign corporation.

8.      At all relevant times, HPS 50th and HPS Borden were foreign limited liability companies.

9.      At all relevant times, Beal was a resident of New York and otherwise *sui juris.*

10.     Jurisdiction over Monadnock and Westchester in this Court is proper by virtue of the provisions of Section 11 in each of the Bonds, which provides for any legal or equitable proceeding under the Bond to be "instituted in any court of competent jurisdiction in the location in which the work or part of the work is located…"  In the instant matter, a part of the work performed by Glasswall, which work is the subject of the Bonds, is located in Miami-Dade County, Florida.

11.     Additionally, jurisdiction over Westchester, Related is proper by virtue of the fact that they are each authorized to conduct and do conduct substantial and not isolated business in Florida.

12.     Further, jurisdiction over Beal in this Judicial Circuit is proper by virtue of the fact that Beal engages in substantial and not isolated business in Florida.

13.     Finally, jurisdiction over Monadnock, HPS, Related and Beale in this Judicial Circuit is proper by virtue of the fact that they have engaged in tortious conduct directed to parties in Miami-Dade County, Florida, such as Colombo and Glasswall, which conduct was and is intended to cause injury and damage to parties in Miami-Dade County, Florida.  In fact, the tortious conduct of Monadnock, HPS, Related and Beale has resulted in Westchester filing a lawsuit relating to the Bonds against Colombo and others in the U.S. District Court for the Southern District of New York (the "NY Lawsuit").  A copy of the NY Lawsuit is attached hereto as Exhibit "B."[1]

14.     Venue is appropriate in this Judicial Circuit by virtue of the provisions of Section 11 of each of the Bonds, by virtue of the fact that: (i) Glasswall is located in this Judicial Circuit, (ii) Westchester and Related are authorized to conduct business and are conducting substantial and not isolated business in this Judicial Circuit, and (iii) the damage from the tortious conduct described herein, and which forms the basis for the relief sought by Colombo, was and is intended to occur, and will occur, in this Judicial Circuit.

## FACTUAL ALLEGATIONS/BACKGROUND

15.     On January 3, 2013, Monadnock and Glasswall entered into two (2) agreements (the "HPS Parcel A Contract" and the "HPS Parcel B Contract")(collectively, the "HPS Contracts"), pursuant to which Glasswall was to furnish and deliver, *inter alia*,

---

[1]  Colombo has not yet been served with the NY Lawsuit.

certain window assemblies and other materials (collectively, the "Window Assemblies")

to the HPS Parcels A and B Projects, owned by HPS 50th and HPS Borden, respectively

(the HPS Parcels A and B Projects are collectively referred to as the "HPS Project").

16.     In connection with the HPS Contracts, Glasswall procured the Bonds,

dated February 12, 2013, from Westchester.

17.     Colombo may have personal exposure relating to the Bonds.

18.     Subsequent to the execution of the HPS Contracts and the issuance of the

Bonds, Monadnock, at the direction of the Related Defendants, and without any

justifiable basis, claimed that Glasswall was in breach of its obligations under the HPS

Contracts.  Colombo was never provided notice of Monadnock's claim against

Glasswall.

19.     In September and October 2013, Monadnock, at the direction of the

Related Defendants, issued Notices of Default to Glasswall.  Colombo was never

provided with the Notices of Default.

20.     On January 13, 2014, Monadnock, at the direction of the Related

Defendants sent Glasswall a Notice of Termination, terminating the HPS Contracts.  A

copy of the Notice of Termination is attached hereto as Exhibit "C."

21.     Similarly, on January 13, 2014, Monadnock, at the direction of the Related

Defendants, sent Westchester a letter advising of its termination of the HPS Contracts

and seeking performance under the Bonds (the "Westchester Letter").  A copy of the

Westchester Letter is attached hereto as Exhibit "D."

22.     Monadnock's termination of the HPS Contracts, done at the direction of

the Related Defendants, was in bad faith.

23.     The sole purpose behind Monadnock issuing the Notices of Default and the Notice of Termination, and for the tortious interference by the Related Defendants with the HPS Contracts, was a bad-faith attempt by Monadnock and the Related Defendants to renegotiate and change material terms in the HPS Contracts, so as to render the terms of the HPS Contracts more favorable to Monadnock and HPS.

24.     In fact, prior to the termination, Glasswall had produced approximately $4,000,000 worth of product in reliance upon Monadnock's agreement under the HPS Contracts to pay for the product.  Monadnock, at the direction of the Related Defendants, refused to pay Glasswall for the product.

25.     The glass panels produced by Glasswall are unique items which were produced pursuant to the specifications under the HPS Contracts and solely for the HPS Project.  Thus, the glass panels cannot be used for any other purpose, nor can they be resold to a third party.

26.     The sole reason for the failure to pay Glasswall for the product is and was to cause financial hardship to Glasswall and force Glasswall to renegotiate the terms of the HPS Contracts.  Accordingly, any delay in the installation of the glass panels was the result of a strategic decision by Monadnock and the Related Defendants to refuse to pay for and receive the very substantial amount of already finished glass panels.

27.     As a result of the bad faith termination of the HPS Contracts by Monadnock and the wrongful demand for performance under the Bonds, brought about by tortious interference of the Related Defendants with the HPS Contracts and with the Bonds, Colombo has been damaged, including, but not limited to, by the fact that Westchester has filed the NY Lawsuit seeking performance by Colombo under the Bonds.

28.     Colombo maintains that, by virtue of Monadnock's above-described wrongful conduct in terminating the HPS Contracts and invoking the Bonds, and the tortious interference by the Related Defendants with the HPS Contracts and the Bonds, any responsibility that Colombo may have under the Bonds should be completely discharged.

29.     Additionally, Colombo maintains that Westchester has a duty to act in good faith towards Colombo and to fully investigate any claims made under the Bonds.

30.     Further, because of the unique nature of the glass panels at issue, Colombo is unable to use or sell the glass panels in order to reduce or offset any potential liability under the Bonds.  Accordingly, prior to demanding performance by Colombo under the Bonds, Westchester should be required, pursuant to Section 5.2 of the Bonds, to "[u]ndertake to perform and complete the [HPS Contracts] itself, through its agents or independent contractors."

31.     All conditions precedent to maintaining this action have been performed, satisfied, excused or waived.

## COUNT I – DECLARATORY RELIEF (AS TO WESTCHESTER)

Colombo adopts and realleges each and every allegation contained in paragraphs 1-31 of this Complaint as though more fully set forth herein, and alleged further:

32.     Colombo has a justiciable question regarding his rights, duties and obligations vis-à-vis the Bonds.

33.     Accordingly, an actual controversy exists between the parties hereto.

34.     There is a *bona fide*, actual, present need for the declaration sought.

35.     None of the parties hereto has sought by any other legal action to have their, rights, duties or obligations determined under the Bonds.

36.     Section 86.111, Fla. Stat., provides for expedited consideration of claims for declaratory relief and, based upon the foregoing, Colombo respectfully requests such expedited consideration in this matter.

WHEREFORE, Colombo hereby respectfully requests a declaration by this Honorable Court that:

(a) The HPS Contracts were wrongfully terminated and the Notice of Termination is null and void;

(b) Monadnock's demand under the Bonds was improper;

(c) As a result of the wrongful conduct described herein, any liability that Colombo may have under the Bonds is fully and completely discharged;

(d) Prior to demanding performance by Colombo under the Bonds, Westchester should be required to comply with Section 5.2 of the Bonds, and "[u]ndertake to perform and complete the [HPS Contracts] itself, through its agents or independent contractors;" and

(e) For such further relief as this Court deems just and proper.

## COUNT II – TORTIOUS INTERFERENCE (AS TO THE RELATED DEFENDANTS)

Colombo adopts and realleges each and every allegation contained in paragraphs 1-31 of this Complaint as though more fully set forth herein, and alleged further:

37.     Glasswall, Monadnock and Westchester are parties to the Bonds.

38.     Colombo, Westchester and Glasswall are parties to an Agreement of

Case 1:16-cv-00420-ILG-VMS   Document 81-3   Filed 11/29/17   Page 10 of 45 PageID #: 1102

Indemnity securing the Bonds.

39.     Without a legal right to do so, and as more fully set forth herein, the Related Defendants tortiously, intentionally and maliciously interfered with Colombo's rights under the Bonds vis-à-vis the Agreement of Indemnity securing each, by directing Monadnock to wrongfully demand performance by Westchester under the Bonds after wrongfully terminating the HPS Contracts.

40.     As a result of the Related Defendants' tortious conduct, Westchester has demanded performance by Colombo under the Bonds vis-à-vis the Agreement of Indemnity securing each.

41.     As a direct and proximate result of the wrongful conduct described herein, Colombo has been damaged in an amount to be proven at trial.

WHEREFORE, Colombo demands judgment against the Related Defendants for compensatory damages, plus costs and interest, and for such further relief as this Court deems just and proper.

## COUNT III – INJUNCTIVE RELIEF (AS TO WESTCHESTER)

Colombo adopts and realleges each and every allegation contained in paragraphs 1-31 of this Complaint as though more fully set forth herein, and alleged further:

42.     This is an action for injunctive relief.

43.     Section 3 of the Bonds provides for the circumstances under which Westchester's obligations under the Bonds arise if there is no default by Monadnock and if Mondanock declares Glasswall in default.

44.      Section 5 of the Bonds set forth the various actions to be taken by Westchester, assuming compliance by Monadnock with the provisions of Section 3.

Page 9 of 10                                                    Case No.14-02090 CA 24

45.     As one of the actions, Section 5.2 of the Bonds provides for Westchester to "[u]ndertake to perform and complete the [HPS Contracts] itself, through its agents or independent contractors."

46.     In the instant case, Westchester should be required to comply with the provisions of Section 5.2 prior to demanding performance by Colombo under the Agreement for Indemnity securing the Bonds.

47.     Specifically, because of the unique nature of the glass panels at issue, it is undisputed that Colombo is unable to sell the glass panels, or otherwise use them in any project other than the HPS Project.  As such, Colombo is prevented from reducing or offsetting any potential liability he has under the Bonds.

48.     Accordingly, Colombo will suffer irreparable harm if  Westchester is not required to pursue the course of action set forth in Section 5.2 of the Bonds, to "[u]ndertake to perform and complete the [HPS Contracts] itself, through its agents or independent contractors."

49.     Colombo has no adequate remedy at law.

50.     Colombo has a substantial likelihood of success on the merits of his claim.

51.     There will be no undue prejudice to Westchester if the relief sought herein is granted in that Westchester will only be required to do that which it has already agreed to do in Section 5 of the Bonds.  Conversely, Colombo will suffer severe prejudice if the injunctive relief sought herein is denied.

52.     Public policy supports the relief sought herein, as it promotes the enforcement of contracts and the implied covenant of good faith contained therein.

WHEREFORE, Colombo respectfully requests the Court to enter an Order requiring Westchester to withdraw its demand to Colombo for performance under the

Bonds and Agreement of Indemnity, to undertake to perform and complete the HPS

Contracts itself, through its agents or independent contractors, and for such further relief

as this Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Colombo hereby demands a trial by jury on all issues triable as of right by a jury.

Respectfully submitted,

**MARKO & MAGOLNICK, P.A.**
Co-Counsel for Colombo
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000
Facsimile:  (305) 285-5555

and

Joseph W. Lawrence, II
Florida Bar No. 211303
**VEZINA, LAWRENCE &
PISCITELLI, P.A.**
Co-Counsel for Colombo
300 S.W. First Avenue, Suite 150
Fort Lauderdale, FL 33301
Telephone:  (954) 728-1270
Facsimile:    (954) 728-1271
Primary email:  jlawrence@vlplaw.com
Secondary email: jfrometa@vlplaw.com

By: /s/Joel S. Magolnick
        Joel S. Magolnick, Esq.
        Florida Bar No. 776068
        Magolnick@mm-pa.com

Bond No.   K08840258

# Document A312™ – 2010

Conforms with The American Institute of Architects AIA Document 312

## Performance Bond

**CONTRACTOR:**
*(Name, legal status and address)*

Glasswall, LLC
3550 N.W. 49th Street
Miami, FL 33142

**OWNER:**
*(Name, legal status and address)*

Monadnock Construction, Inc.
155-3rd Street
Brooklyn, NY 11231

**SURETY:**
*(Name, legal status and principal place of business)*

Westchester Fire Insurance Company
436 Walnut Street, P. O. Box 1000
Philadelphia, PA 19106
**Mailing Address for Notices**

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**CONSTRUCTION CONTRACT**
Date:     January 3, 2013

Amount: $ 4,587,498.00          Four Million Five Hundred Eighty Seven Thousand Four Hundred Ninety Eight Dollars and 00/100

Description:
*(Name and location)*

HPS "Parcel B" 1-55 Borden Avenue, Long Island City, New York 11101

**BOND**
Date:     February 11, 2013

*(Not earlier than Construction Contract Date)*

Amount: $4,587,498.00          Four Million Five Hundred Eighty Seven Thousand Four Hundred Ninety Eight Dollars and 00/100

Modifications to this Bond:      [X] None          [ ] See Section 16

| **CONTRACTOR AS PRINCIPAL** | | **SURETY** | |
|---|---|---|---|
| Company: | *(Corporate Seal)* | Company: | *(Corporate Seal)* |
| Glasswall, LLC | | Westchester Fire Insurance Company | |
| Signature: | | Signature: | |
| Name Federico Balestrazzi | | Name Charles J. Nielson | |
| and Title: PRESIDENT | | and Title: Attorney-in-Fact | |

*(Any additional signatures appear on the last page of this Performance Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

| **AGENT or BROKER:** | **OWNER'S REPRESENTATIVE:** |
|---|---|
| Nielson, Hoover & Associates | *(Architect, Engineer or other party:)* |
| 8000 Governors Square Blvd. #101 | Ismael Leyva Architects, P.C. |
| Miami Lakes, FL 33016 | 48 West 37th Street, #13 |
| 305-722-2663 | New York, NY 10018 |

S-1852/AS 8/10

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

§ 2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except when applicable to participate in a conference as provided in Section 3.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after

.1   the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

.2   the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

.3   the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

§ 4 Failure on the part of the Owner to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to the Surety's obligations, or release the Surety from its obligations, except to the extent the Surety demonstrates actual prejudice.

§ 5 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

§ 5.1 Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor Default; or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1   After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

.2   Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

§ 6 If the Surety does not proceed as provided in Section 5 with reasonable promptness, the Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 5.4, and the Owner refuses the payment or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

§ 7 If the Surety elects to act under Section 5.1, 5.2 or 5.3, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. Subject to the commitment by the Owner to pay the Balance of the Contract Price, the Surety is obligated, without duplication, for

    .1    the responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

    .2    additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure of the Surety under Section 5; and

    .3    liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

§ 8 If the Surety elects to act under Section 5.1, 5.3 or 5.4, the Surety's liability is limited to the amount of this Bond.

§ 9 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators, successors and assigns.

§ 10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 11 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after a declaration of Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears.

§ 13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ 14 Definitions

§ 14.1 Balance of the Contract Price. The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

§ 14.2 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and changes made to the agreement and the Contract Documents.

§ 14.3 Contractor Default. Failure of the Contractor, which has not been remedied or waived, to perform or otherwise to comply with a material term of the Construction Contract.

§ 14.4 Owner Default. Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

§ 14.5 Contract Documents. All the documents that comprise the agreement between the Owner and Contractor.

§ 15 If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

S-1852/AS 8/10

§ **16** Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

**CONTRACTOR AS PRINCIPAL**                           **SURETY**
Company:                          *(Corporate Seal)*     Company:                          *(Corporate Seal)*


Signature: _____           Signature: _____
Name and Title:                                          Name and Title:
Address                                                  Address

S-1852/AS 8/10

Bond No.   K08840258

# Document A312™ – 2010

**Payment Bond**

Conforms with The American Institute of Architects AIA Document 312

**CONTRACTOR:**
*(Name, legal status and address)*

Glasswall, LLC
3550 N.W. 49th Street
Miami, FL  33142

**OWNER:**
*(Name, legal status and address)*

Monadnock Construction, Inc.
155-3rd Street
Brooklyn, NY  11231

**SURETY:**
*(Name, legal status and principal place of business)*

Westchester Fire Insurance Company
436 Walnut Street, P. O. Box 1000
Philadelphia, PA  19106
**Mailing Address for Notices**

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**CONSTRUCTION CONTRACT**
Date:     January 3, 2013

Amount: $4,587,498.00

Four Million Five Hundred Eighty Seven Thousand Four Hundred Ninety Eight Dollars and 00/100

Description:
*(Name and location)*
HPS "Parcel B" 1-55 Borden Avenue, Long Island City, New York  11101

**BOND**
Date:     February 11, 2013

*(Not earlier than Construction Contract Date)*

Amount: $4,587,498.00

Four Million Five Hundred Eighty Seven Thousand Four Hundred Ninety Eight Dollars and 00/100

Modifications to this Bond:     [X] None          [ ] See Section 18

| **CONTRACTOR AS PRINCIPAL** | **SURETY** |
|---|---|
| Company:          *(Corporate Seal)* | Company:          *(Corporate Seal)* |
| Glasswall, LLC | Westchester Fire Insurance Company |
| Signature: | Signature: |
| Name  Federico Balestrazzi | Name   Charles J. Nielson |
| and Title:  President | and Title:  Attorney-in-Fact |

*(Any additional signatures appear on the last page of this Payment Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
Nielson, Hoover & Associates
8000 Governors Square Blvd. #101
Miami Lakes, FL  33016
305-722-2663
S-2149/AS 8/10

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party;)*
Ismael Leyva Architects, P.C.
48 West 37th Street, #13
New York, NY  10018

**§ 1** The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

**§ 2** If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond.

**§ 3** If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

**§ 4** When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

**§ 5** The Surety's obligations to a Claimant under this Bond shall arise after the following:

**§ 5.1** Claimants, who do not have a direct contract with the Contractor,

    **.1** have furnished a written notice of non-payment to the Contractor, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were, or equipment was, furnished or supplied or for whom the labor was done or performed, within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim; and

    **.2** have sent a Claim to the Surety (at the address described in Section 13).

**§ 5.2** Claimants, who are employed by or have a direct contract with the Contractor, have sent a Claim to the Surety (at the address described in Section 13).

**§ 6** If a notice of non-payment required by Section 5.1.1 is given by the Owner to the Contractor, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Section 5.1.1.

**§ 7** When a Claimant has satisfied the conditions of Sections 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

**§ 7.1** Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

**§ 7.2** Pay or arrange for payment of any undisputed amounts.

**§ 7.3** The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

**§ 8** The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

**§ 9** Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any construction performance bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work. .

§ 10 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to, or give notice on behalf of, Claimants or otherwise have any obligations to Claimants under this Bond.

§ 11 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 12 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Section 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 13 Notice and Claims to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

§ 14 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ 15 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

## § 16 Definitions
§ 16.1 Claim. A written statement by the Claimant including at a minimum:

.1  the name of the Claimant;

.2  the name of the person for whom the labor was done, or materials or equipment furnished;

.3  a copy of the agreement or purchase order pursuant to which labor, materials or equipment was furnished for use in the performance of the Construction Contract;

.4  a brief description of the labor, materials or equipment furnished;

.5  the date on which the Claimant last performed labor or last furnished materials or equipment for use in the performance of the Construction Contract;

.6  the total amount earned by the Claimant for labor, materials or equipment furnished as of the date of the Claim;

.7  the total amount of previous payments received by the Claimant; and

.8  the total amount due and unpaid to the Claimant for labor, materials or equipment furnished as of the date of the Claim.

§ 16.2 Claimant. An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

§ 16.3 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

S-2149/AS 8/10

§ 16.4 **Owner Default.** Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

§ 16.5 **Contract Documents.** All the documents that comprise the agreement between the Owner and Contractor.

§ 17 If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

§ 18 Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

**CONTRACTOR AS PRINCIPAL**                                      **SURETY**
Company:                          *(Corporate Seal)*            Company:                               *(Corporate Seal)*



Signature: _____                     Signature: _____
Name and Title:                                                Name and Title:
Address                                                        Address

S-2149/AS 8/10

## DUAL OBLIGEE RIDER

To be attached to and form part of Bond No. __K08840258__ executed by
__Glasswall, LLC__, as Principal, and
__Westchester Fire Insurance Company__ as Surety,
in favor of __Monadnock Construction, Inc.__ Obligee
in the penalty of __Four Million Five Hundred Eighty-Seven__ Dollars ($ 4,587,498.00
__Four Hundred Ninety-Eight and 00/100__ 2013)
on or about the __11__ day of __February__ covering the Contract described as
__HPS "Parcel B" 1-55 Borden Avenue, Long Island City, NY  11101__

SIGNED, SEALED AND DATED this __11__ day of __February__ __2013__.

WHEREAS, the Obligee, as evidenced by their signed approval of this rider, have requested and
are agreeable to the Surety and the Principal amending the attached bond by adding
__HPS Borden Avenue Associates, LLC, Citibank, N.A.__ as Obligee(s).
__New York City Department of Housing Preservation and Development and__
__New York City Housing Development Corporation__
PROVIDED, HOWEVER, that the Surety and the Principal shall not be liable under the attached
bond and the attached bond as amended by this rider to the Obligees, nor any of them, unless the
Obligees or each of them shall perform all obligations by them or any of them to be performed
under the terms of said contract, including but not limited to making all payments to the
Principal in accordance with the terms of said contract.

PROVIDED, FURTHER, that nothing herein contained shall otherwise amend, alter or modify
any of the terms and conditions of the attached bonds except as herein expressly amended; and

PROVIDED, FURTHER, that the aggregate liability of the Surety under the attached bond and
the attached bond as amended by this rider, shall not exceed the sum of
__Four Million Five Hundred Eighty-Seven Thousand__ Dollars ($ 4,587,498.00).
__Four Hundred Ninety-Eight and 00/100__

Accepted and Approved:
Monadnock Construction, Inc.

_____
(Principal Obligee)

Accepted and Approved:
HPS Borden Avenue Associates, LLC

_____
(Additional Obligee)

_____
Citibank, N.A.

_____
New York City Housing Dev. Corp.

GLASSWALL, LLC

_____
(Principal)

WESTCHESTER FIRE INSURANCE COMPANY

By: Charles J. Nielson   Attorney in Fact

New York City Dept. of Housing Pres.
& Dev.

# Power of Attorney

## WESTCHESTER FIRE INSURANCE COMPANY

**Know all men by these presents:** That **WESTCHESTER FIRE INSURANCE COMPANY**, a corporation of the Commonwealth of Pennsylvania pursuant to the following Resolution, adopted by the Board of Directors of the said Company on December 11, 2006, to wit:

"RESOLVED, that the following authorizations relate to the execution, for and on behalf of the Company, of bonds, undertakings, recognizances, contracts and other written commitments of the Company entered into the ordinary course of business (each a "Written Commitment"):

(1) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise.

(2) Each duly appointed attorney-in-fact of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise, to the extent that such action is authorized by the grant of powers provided for in such persons written appointment as such attorney-in-fact.

(3) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to appoint in writing any person the attorney-in-fact of the Company with full power and authority to execute, for and on behalf of the Company, under the seal of the Company or otherwise, such Written Commitments of the Company as may be specified in such written appointment, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(4) Each of the Chairman, the President and Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to delegate in writing any other officer of the Company the authority to execute, for and on behalf of the Company, under the Company's seal or otherwise, such Written Commitments of the Company as are specified in such written delegation, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(5) The signature of any officer or other person executing any Written Commitment or appointment or delegation pursuant to this Resolution, and the seal of the Company, may be affixed by facsimile on such Written Commitment or written appointment or delegation.

FURTHER RESOLVED, that the foregoing Resolution shall not be deemed to be an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and such Resolution shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested."

Does hereby nominate, constitute and appoint Brett Rosenhaus, Charles D Nielson, Charles J Nielson, David R Hoover, Edward M Clark, Ian A Nipper, Joseph P Nielson, Katherine S Grimsley, Kevin R Wojtowicz, Laura D Mosholder, all of the City of MIAMI LAKES, Florida, each individually if there be more than one named, its true and lawful attorney-in-fact, to make, execute, seal and deliver on its behalf, and as its act and deed any and all bonds, undertakings, recognizances, contracts and other writings in the nature thereof in penalties not exceeding Ten million dollars & zero cents ($10,000,000.00) and the execution of such writings in pursuance of these presents shall be as binding upon said Company, as fully and amply as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its principal office.

IN WITNESS WHEREOF, the said Stephen M. Haney, Vice-President, has hereunto subscribed his name and affixed the Corporate seal of the said **WESTCHESTER FIRE INSURANCE COMPANY** this 16 day of July 2012.

WESTCHESTER FIRE INSURANCE COMPANY



*Stephen M. Haney , Vice President*

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF PHILADELPHIA     ss.

On this 16 day of July, A.D. 2012 before me, a Notary Public of the Commonwealth of Pennsylvania in and for the County of Philadelphia came Stephen M. Haney ,Vice-President of the **WESTCHESTER FIRE INSURANCE COMPANY** to me personally known to be the individual and officer who executed the preceding instrument, and he acknowledged that he executed the same, and that the seal affixed to the preceding instrument is the corporate seal of said Company; that the said corporate seal and his signature were duly affixed by the authority and direction of the said corporation, and that Resolution, adopted by the Board of Directors of said Company, referred to in the preceding instrument, is now in force.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at the City of Philadelphia the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KAREN E. BRANDT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 26, 2014

*Notary Public*

I, the undersigned Assistant Secretary of the **WESTCHESTER FIRE INSURANCE COMPANY**, do hereby certify that the original POWER OF ATTORNEY, of which the foregoing is a substantially true and correct copy, is in full force and effect.

In witness whereof, I have hereunto subscribed my name as Assistant Secretary, and affixed the corporate seal of the Corporation, this 11 day of February, 2013

*William L. Kelly, Assistant Secretary*

**THIS POWER OF ATTORNEY MAY NOT BE USED TO EXECUTE ANY BOND WITH AN INCEPTION DATE AFTER July 16, 2014.**

THE BACK OF THIS DOCUMENT LISTS VARIOUS SECURITY FEATURES     THAT WILL PROTECT AGAINST COPY COUNTERFEIT AND ALTERATION.

Super Safety® ANTI-FRAUD PROTECTION

FORM NO. 89005

Bond No.   K08840295

# Document A312™ – 2010

Conforms with The American Institute of Architects AIA Document 312

## Performance Bond

**CONTRACTOR:**
*(Name, legal status and address)*

Glasswall, LLC
3550 N.W. 49th Street
Miami          FL          33142

**SURETY:**
*(Name, legal status and principal place of business)*

Westchester Fire Insurance Company
436 Walnut Street, P. O. Box 1000
Philadelphia          PA          19106
**Mailing Address for Notices**

Same as above
Philadelphia          PA          19106

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**OWNER:**
*(Name, legal status and address)*

Monadnock Construction, Inc.
155-3rd Street
Brooklyn   NY          11231

**CONSTRUCTION CONTRACT**
Date:      January 3, 2013

Amount: $ 8,412,502.00

Eight Million Four Hundred Twelve Thousand Five Hundred Two Dollars and 00/100

Description:
*(Name and location)*

HPS "Parcel A" 1-50 - 50th Avenue, Long Island City, New York  11101

**BOND**
Date:      February 12, 2013

*(Not earlier than Construction Contract Date)*

Amount: $8,412,502.00

Eight Million Four Hundred Twelve Thousand Five Hundred Two Dollars and 00/100

Modifications to this Bond:          [X] None          [ ] See Section 16

**CONTRACTOR AS PRINCIPAL**
Company:                    *(Corporate Seal)*
Glasswall, LLC

Signature: _____
Name   FEDERICO BALESTRAZZI
and Title:   PRESIDENT

**SURETY**
Company:                    *(Corporate Seal)*
Westchester Fire Insurance Company

Signature: _____
Name      Charles J. Nielson
and Title:   Attorney-in-Fact

*(Any additional signatures appear on the last page of this Performance Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
Nielson, Hoover & Associates
8000 Governors Square Blvd. #101
Miami Lakes      FL          33016
305-722-2663

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*
Ismael Leyva Architects, P.C.
48 West 37 Street, #13
New York          NY          10018

S-1852/AS 8/10

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

§ 2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except when applicable to participate in a conference as provided in Section 3.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after

.1    the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

.2    the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

.3    the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

§ 4 Failure on the part of the Owner to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to the Surety's obligations, or release the Surety from its obligations, except to the extent the Surety demonstrates actual prejudice.

§ 5 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

§ 5.1 Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor Default; or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1    After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

.2    Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

§ 6 If the Surety does not proceed as provided in Section 5 with reasonable promptness, the Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 5.4, and the Owner refuses the payment or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

§ 7 If the Surety elects to act under Section 5.1, 5.2 or 5.3, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. Subject to the commitment by the Owner to pay the Balance of the Contract Price, the Surety is obligated, without duplication, for

    .1   the responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

    .2   additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 5; and

    .3   liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

§ 8 If the Surety elects to act under Section 5.1, 5.3 or 5.4, the Surety's liability is limited to the amount of this Bond.

§ 9 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators, successors and assigns.

§ 10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 11 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after a declaration of Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears.

§ 13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

## § 14 Definitions

§ 14.1 Balance of the Contract Price. The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

§ 14.2 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and changes made to the agreement and the Contract Documents.

§ 14.3 Contractor Default. Failure of the Contractor, which has not been remedied or waived, to perform or otherwise to comply with a material term of the Construction Contract.

§ 14.4 Owner Default. Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

§ 14.5 Contract Documents. All the documents that comprise the agreement between the Owner and Contractor.

§ 15 If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

§ 16 Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

**CONTRACTOR AS PRINCIPAL**
Company:                                    *(Corporate Seal)*

**SURETY**
Company:                                    *(Corporate Seal)*

Signature: _____
Name and Title:
Address

Signature: _____
Name and Title:
Address

S-1852/AS 8/10

Bond No.   K08840295

# Document A312™ – 2010

### Conforms with The American Institute of Architects AIA Document 312

## Payment Bond

**CONTRACTOR:**
*(Name, legal status and address)*

Glasswall, LLC
3550 N.W. 49th Street
Miami          FL          33142

**SURETY:**
*(Name, legal status and principal place of business)*

Westchester Fire Insurance Company
436 Walnut Street, P. O. Box 1000
Philadelphia          PA          19106
**Mailing Address for Notices**

Same as above
Philadelphia          PA          19106

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**OWNER:**
*(Name, legal status and address)*

Monadnock Construction, Inc.
155-3rd Street
Brooklyn          NY          11231

**CONSTRUCTION CONTRACT**
Date:          January 3, 2013
Amount: $8,412,502.00          Eight Million Four Hundred Twelve Thousand Five Hundred Two Dollars and 00/100

Description:
*(Name and location)*
HPS "Parcel A" 1-50 - 50th Avenue, Long Island City, New York  11101

**BOND**
Date:          February 12, 2013
*(Not earlier than Construction Contract Date)*

Amount: $ .00          No Dollars and 00/100

Modifications to this Bond:          [X] None          [ ] See Section 18

**CONTRACTOR AS PRINCIPAL**
Company:          *(Corporate Seal)*

Glasswall, LLC

Signature: _____
Name  FEDERICO BALESTRAZZI
and Title:    PRESIDENT

**SURETY**
Company:          *(Corporate Seal)*

Westchester Fire Insurance Company

Signature: _____
Name  Charles J. Nielson
and Title:  Attorney-in-Fact

*(Any additional signatures appear on the last page of this Payment Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
Nielson, Hoover & Associates
8000 Governors Square Blvd. #101
Miami Lakes          FL          33016
305-722-2663
S-2149/AS 8/10

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party;)*
Ismael Leyva Architects, P.C.
48 West 37 Street, #13
New York          NY          10018

**§ 1** The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

**§ 2** If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond.

**§ 3** If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

**§ 4** When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

**§ 5** The Surety's obligations to a Claimant under this Bond shall arise after the following:

**§ 5.1** Claimants, who do not have a direct contract with the Contractor,

.1  have furnished a written notice of non-payment to the Contractor, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were, or equipment was, furnished or supplied or for whom the labor was done or performed, within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim; and

.2  have sent a Claim to the Surety (at the address described in Section 13).

**§ 5.2** Claimants, who are employed by or have a direct contract with the Contractor, have sent a Claim to the Surety (at the address described in Section 13).

**§ 6** If a notice of non-payment required by Section 5.1.1 is given by the Owner to the Contractor, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Section 5.1.1.

**§ 7** When a Claimant has satisfied the conditions of Sections 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

**§ 7.1** Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

**§ 7.2** Pay or arrange for payment of any undisputed amounts.

**§ 7.3** The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

**§ 8** The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

**§ 9** Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any construction performance bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work. .

§ 10 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to, or give notice on behalf of, Claimants or otherwise have any obligations to Claimants under this Bond.

§ 11 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 12 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Section 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 13 Notice and Claims to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

§ 14 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ 15 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

§ 16 Definitions
§ 16.1 Claim. A written statement by the Claimant including at a minimum:

    .1   the name of the Claimant;
    .2   the name of the person for whom the labor was done, or materials or equipment furnished;
    .3   a copy of the agreement or purchase order pursuant to which labor, materials or equipment was furnished for use in the performance of the Construction Contract;
    .4   a brief description of the labor, materials or equipment furnished;
    .5   the date on which the Claimant last performed labor or last furnished materials or equipment for use in the performance of the Construction Contract;
    .6   the total amount earned by the Claimant for labor, materials or equipment furnished as of the date of the Claim;
    .7   the total amount of previous payments received by the Claimant; and
    .8   the total amount due and unpaid to the Claimant for labor, materials or equipment furnished as of the date of the Claim.

§ 16.2 Claimant. An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

§ 16.3 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

**§ 16.4 Owner Default.** Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

**§ 16.5 Contract Documents.** All the documents that comprise the agreement between the Owner and Contractor.

**§ 17** If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

**§ 18** Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

**CONTRACTOR AS PRINCIPAL**
Company:                              *(Corporate Seal)*

Signature:
Name and Title:
Address

**SURETY**
Company:                              *(Corporate Seal)*

Signature:
Name and Title:
Address

S-2149/AS 8/10

## DUAL OBLIGEE RIDER

To be attached to and form part of Bond No. __K08840295__ _____ executed by

__Glasswall, LLC__ _____, as Principal, and

_____ Westchester Fire Insurance Company _____ as Surety,

in favor of __Monadnock Construction, Inc.__ _____ Obligee

in the penalty of __Eight Million Four Hundred Twelve Thousand Five__ Dollars ($ __8,412,502.00__),
_____Hundred Two and 00/100_____

on or about the __3rd__ day of __January , 2013__ covering the Contract described as

__HPS "Parcel A" 1-50 - 50th Avenue, Long Island City, New York  11101__
_____

_____

SIGNED, SEALED AND DATED this __12th__ day of __February__ _____, __2013__ .

WHEREAS, the Obligee, as evidenced by their signed approval of this rider, have requested and
are agreeable to the Surety and the Principal amending the attached bond by adding
__HPS 50th Avenue Associates, LLC, Wells Fargo, N.A., Bank of America, N.A.,__ _____ as Obligee(s).
__New York City Department of Housing Preservation and Development, New York City Housing Development Corporation__

PROVIDED, HOWEVER, that the Surety and Principal shall not be liable under the attached
bond and the attached bond as amended by this rider to the Obligees, nor any of them, unless the
Obligees or each of them shall perform all obligations by them or any of them to be performed
under the terms of said contract, including but not limited to making all payments to the
Principal in accordance with the terms of said contract.

PROVIDED, FURTHER, that nothing herein contained shall otherwise amend, alter or modify
any of the terms and conditions of the attached bonds except as herein expressly amended; and

PROVIDED, FURTHER, that the aggregate liability of the Surety under the attached bond and
the attached bond as amended by this rider, shall not exceed the sum of
__Eight Million Four Hundred Twelve Thousand Five Hundred Two__ Dollars ($ __8,412,502.00__ ).
_____and 00/100_____

Accepted and Approved:
Monadnock Construction, Inc.

_____
(Principal Obligee)

Accepted and Approved:
HPS 50th Avenue Associates, LLC

_____
(Additional Obligee)

Wells Fargo, N.A.

_____

New York City Department of Housing
Preservation and Development

_____

Glasswall, LLC

_____
(Principal)

Westchester Fire Insurance Company

By: Charles J. Nielson Attorney-in-Fact
_____

Bank of America, N.A.

_____

New York City Housing Development Corporation

_____

## Power of Attorney

# WESTCHESTER FIRE INSURANCE COMPANY

**Know all men by these presents:** That **WESTCHESTER FIRE INSURANCE COMPANY**, a corporation of the Commonwealth of Pennsylvania pursuant to the following Resolution, adopted by the Board of Directors of the said Company on December 11, 2006, to wit:

"RESOLVED, that the following authorizations relate to the execution, for and on behalf of the Company, of bonds, undertakings, recognizances, contracts and other written commitments of the Company entered into the ordinary course of business (each a "Written Commitment"):

(1) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise.

(2) Each duly appointed attorney-in-fact of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise, to the extent that such action is authorized by the grant of powers provided for in such persons written appointment as such attorney-in-fact.

(3) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to appoint in writing any person the attorney-in-fact of the Company with full power and authority to execute, for and on behalf of the Company, under the seal of the Company or otherwise, such Written Commitments of the Company as may be specified in such written appointment, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(4) Each of the Chairman, the President and Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to delegate in writing any other officer of the Company the authority to execute, for and on behalf of the Company, under the Company's seal or otherwise, such Written Commitments of the Company as are specified in such written delegation, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(5) The signature of any officer or other person executing any Written Commitment or appointment or delegation pursuant to this Resolution, and the seal of the Company, may be affixed by facsimile on such Written Commitment or written appointment or delegation.

FURTHER RESOLVED, that the foregoing Resolution shall not be deemed to be an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and such Resolution shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested."

Does hereby nominate, constitute and appoint Brett Rosenhaus, Charles D Nielson, Charles J Nielson, David R Hoover, Edward M Clark, Ian A Nipper, Joseph P Nielson, Katherine S Grimsley, Kevin R Wojtowicz, Laura D Mosholder, all of the City of MIAMI LAKES, Florida, each individually if there be more than one named, its true and lawful attorney-in-fact, to make, execute, seal and deliver on its behalf, and as its act and deed and all bonds, undertakings, recognizances, contracts and other writings in the nature thereof in penalties not exceeding Ten million dollars & zero cents ($10,000,000.00) and the execution of such writings in pursuance of these presents shall be as binding upon said Company, as fully and amply as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its principal office.

IN WITNESS WHEREOF, the said Stephen M. Haney, Vice-President, has hereunto subscribed his name and affixed the Corporate seal of the said **WESTCHESTER FIRE INSURANCE COMPANY** this 16 day of July 2012.

WESTCHESTER FIRE INSURANCE COMPANY

*Stephen M. Haney*

Stephen M. Haney , Vice President

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF PHILADELPHIA   ss.

On this 16 day of July, AD. 2012 before me, a Notary Public of the Commonwealth of Pennsylvania in and for the County of Philadelphia came Stephen M. Haney ,Vice-President of the **WESTCHESTER FIRE INSURANCE COMPANY** to me personally known to be the individual and officer who executed the preceding instrument, and he acknowledged that he executed the same, and that the seal affixed to the preceding instrument is the corporate seal of said Company; that the said corporate seal and his signature were duly affixed by the authority and direction of the said corporation, and that Resolution, adopted by the Board of Directors of said Company, referred to in the preceding instrument, is now in force.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at the City of Philadelphia the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KAREN E. BRANDT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 26, 2014

*Karen E Brandt*

Notary Public

I, the undersigned Assistant Secretary of the **WESTCHESTER FIRE INSURANCE COMPANY**, do hereby certify that the original POWER OF ATTORNEY, of which the foregoing is a substantially true and correct copy, is in full force and effect.

In witness whereof, I have hereunto subscribed my name as Assistant Secretary, and affixed the corporate seal of the Corporation, this 12 day of February, 2013



*William L. Kelly*

William L. Kelly, Assistant Secretary

THIS POWER OF ATTORNEY MAY NOT BE USED TO EXECUTE ANY BOND WITH AN INCEPTION DATE AFTER July 16, 2014

FORM NO. 88005

Super Safety® ANTI-FRAUD PROTECTION

EXHIBIT "D"

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

WESTCHESTER FIRE INSURANCE COMPANY,

*Plaintiff*

v.

GLASSWALL, LLC, UGO COLOMBO and SARA
JAYNE COLOMBO,

*Defendant*

)
)
)
)
)
)
)

Civil Action No.

2/26/14
RD1608
12:00p

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Glasswall, LLC
3550 N.W. 49th Street
Miami, FL 33142

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  COZEN O'CONNOR
45 Broadway, 16th Floor
New York, NY 10006
(212) 509-9400

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____
                                          *Signature of Clerk or Deputy Clerk*

JUDGE SCHOFIELD

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK



WESTCHESTER FIRE INSURANCE
COMPANY,

     Plaintiff,

v.

GLASSWALL, LLC, UGO COLOMBO,
and SARA JAYNE KENNEDY
COLOMBO,

     Defendants.

CIVIL ACTION NO.:

JURY DEMANDED

Plaintiff, Westchester Fire Insurance Company ("Westchester"), by its attorneys, Cozen

O'Connor, complains of the defendants, Glasswall, LLC, Ugo Colombo and Sara Jayne Kennedy

Colombo, and respectfully alleges the following:

## JURISDICTION AND VENUE

  1.  The Court has jurisdiction over this action based upon the diversity of citizenship

pursuant to 28 U.S.C. § 1332.

  2.  The amount in controversy, exclusive of interest and costs, exceeds $75,000.

  3.  Venue is proper in the United States District Court for the Southern District of

New York pursuant to an Agreement of Indemnity dated February 1, 2013 between Westchester

Fire Insurance Company and defendants (a copy of which is attached hereto as Exhibit A)

(hereafter the "Agreement of Indemnity") which provides in its paragraph 10 that courts within

the State of New York shall be the exclusive forum for all actions or proceedings arising directly

or indirectly from the Agreement of Indemnity.

## THE PARTIES

4.     Westchester Fire Insurance Company (hereafter referred to as "Westchester Fire") is a corporation of the Commonwealth of Pennsylvania with its principal place of business at 436 Walnut Street, Philadelphia, Pennsylvania 19103.

5.     Defendant Glasswall, LLC (hereafter "Glasswall") is a limited liability company formed in the State of Florida with its principal place of business located at 3550 N. W. 49th Street Miami, Florida 33142 in Florida having as its sole member, Ugo Colombo, who is also a citizen of the State of Florida and the citizenship of Glasswall is therefore diverse from the citizenship of Westchester Fire.

6.     Defendant, Ugo Colombo, is an individual and a citizen of the State of Florida residing at 5020 North Bay Road, Miami, Florida and his citizenship is diverse from that of Westchester Fire.

7.     Defendant Sara Jayne Kennedy Colombo is an individual and a citizen of the State of Florida, residing at 5020 North Bay Road, Miami, Florida and her citizenship is diverse from that of Westchester Fire.

8.     Defendants, as "Indemnitors" under the Agreement of Indemnity that Agreement in partial consideration of, and as an inducement to, Westchester Fire to execute bonds as surety for Glasswall, LLC.

9.     The Agreement of Indemnity provides in part as follows:

> 1.    PREMIUMS   &   COLLATERAL   FOR
> SURETYSHIP – The INDEMNITORS shall pay or cause to be
> paid to the SURETY both the agreed premium and, upon written
> request by the SURETY at any time, collateral security for its
> suretyship until the INDEMNITOR shall furnish to the SURETY
> competent written evidence, satisfactory to the SURETY, of the
> termination of any past, present and future liability under any
> Bond.  The INDEMNITOR expressly waives any right to interest

2

which may be earned on the collateral security and further consents that the collateral security provided in consideration of suretyship may be held by the SURETY in any investment or depository that the SURETY in its sole discretion deems advisable and prudent. The Surety's election not to demand collateral at the inception of the suretyship obligation shall not operate as a waiver of the right to demand and receive such collateral at any time before liability has terminated under any Bond.

2.      INDEMNITY & COLLATERAL FOR CLAIM – The INDEMNITOR shall indemnify and save harmless the SURETY from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by the SURETY in any action or proceeding between the INDEMNITOR and the SURETY, or between the SURETY and any third party, which SURETY shall at any time incur by reason of its execution of any Bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against the SURETY as a joint or several obligor and whether the INDEMNITOR is then liable to make such payment, and to place the SURETY in funds to meet all of its liability under any Bond, promptly upon request and before the SURETY may be required to make any payment thereunder; and copy of the claim, demand, voucher or other evidence of the payment by the SURETY of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of INDEMNITOR's liability to the SURETY under this Agreement. Any demand upon the SURETY by the Obligee shall be sufficient to conclude that a liability exists and the INDEMNITOR shall then place the SURETY with sufficient funds in a form and amount deemed acceptable in the SURETY'S sole discretion, as collateral security to cover the liability.

10.     Following execution of the Agreement of Indemnity by defendants, Westchester Fire executed performance bonds for Glasswall with an aggregate limit of $15,372,315 and payment bonds of an equal amount.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST THE DEFENDANTS FOR DEPOSIT OF COLLATERAL

11.     Plaintiff Westchester Fire repeats and realleges the allegations contained in paragraphs 1 through 10 hereof.

3

12.     By letter dated August 12, 2013, Monadnock Construction, Inc. (hereafter "Monadnock") obligee under two Westchester Fire performance bonds (the "Bonds") in an aggregate amount of $13,000,000 for performance of two contracts to supply curtain wall units for a project known as Hunters Point South gave notice to Westchester that it regarded Glasswall, LLC to have defaulted on its bonded contractual obligations.

13.     By letters dated September 23, 2013, counsel for Westchester Fire informed the defendants that Westchester Fire exercised its right under the Agreement of Indemnity to require them to deposit collateral of $13,000,000 equal to the limits of the two foregoing performance bonds.

14.     Despite this demand, defendants did not provide Westchester Fire with the required collateral.

15.     By letters dated January 13, 2014, Monadnock gave notice to Glasswall of Monadnock's termination of its contracts with Glasswall and gave notice to Westchester Fire that it asserted claims under the Bonds.

16.     Defendants asserted that Monadnock's termination of the contracts was improper and invalid.

17.     Under the Agreement of Indemnity, defendants are obligated, inter alia, to defend Westchester, to indemnify it from all loss and expense and to immediately provide Westchester with the collateral it has demanded.

18.     By reason of the foregoing, Westchester Fire demands that defendants provide collateral and deposit with Westchester Fire the sum of $13,000,000, plus any future loss, costs, fees or expenses incurred, interest and attorney's fees,

4

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST
## THE DEFENDANT FOR DECLARATORY JUDGMENT OF INDEMNIFICATION

19.    Westchester Fire realleges the allegations set forth in paragraphs 1 through 19 hereof.

20.    Westchester Fire will be required to defend actions by the obligees of the Bonds and is exposed to potential obligations to pay the obligees in the event the positions asserted by Glasswall and Westchester are not sustained.

21.    Under the Agreement of Indemnity, defendants are obligated to indemnify Westchester Fire for all losses, expenses or other payments it may be required to incur or make by reasons of having executed the bonds.

22.    Westchester Fire is entitled to a declaratory judgment that defendants have the foregoing obligations.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST
## THE DEFENDANT FOR A PRELIMINARY INJUNCTION

23.    Westchester Fire realleges the allegations set forth in paragraphs 1 through 23 hereof.

24.    The Agreement of Indemnity requires defendants to post collateral with Westchester Fire promptly upon the request of Westchester Fire.

25.    Westchester Fire's right to collateral from defendants was specifically bargained for and agreed to by defendants.

26.    Westchester Fire has no adequate remedy at law and will be irreparably harmed if defendants fail to pay collateral in the sum of $13,000,000 to Westchester Fire. Westchester Fire would not have executed the Bonds without the right to demand collateral".

27.    Westchester Fire has a strong likelihood of success on the merits in this action.

5

28.     The issuance of a preliminary injunction will not create an undue hardship for defendants as the preliminary injunction will require that defendants do only what they contracted to do in the Agreement of Indemnity.

29.     Westchester Fire will suffer irreparable injury if a preliminary injunction is not granted as Westchester Fire would then be deprived of the security that the Indemnitors guaranteed in their Agreement of Indemnity.

30.     For the foregoing reasons, Westchester Fire respectfully requests that the Court issue a preliminary injunction requiring (1) that defendants immediately post collateral in the sum of $13,000,000, and (2) until defendants post such collateral, enjoining and restraining defendants from selling, transferring, disposing or encumbering its assets and property and granting Westchester Fire a lien upon all the assets and property owned by defendants or in which defendants have an interest.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS FOR COSTS, EXPENSES AND ATTORNEY'S FEES

31.     Westchester Fire realleges the allegations set forth in paragraphs 1 through 31 hereof.

32.     The Agreement of Indemnity requires that defendants indemnify Westchester Fire for all losses and/or expenses of whatsoever kind or nature, including interest, court costs, and attorney's fees that Westchester Fire may incur by reason of having executed the bonds.

33.     Defendants are obligated to pay Westchester Fire the attorney's fees and expenses it has incurred in connection with this action.

**WHEREFORE**, Plaintiff, Westchester Fire Insurance Company, respectfully requests judgment as follows:

6

a.      On the First Cause of Action against defendants for the deposit of the sum of $13,000,000 plus any future loss, costs, fees or expenses incurred, interest and attorney's fees;

b.      On the Second Cause of Action a declaration that defendants are required to indemnify Westchester Fire for all losses, expenses or other payments that it may incur or be required to make by reason of having executed the bonds;

c.      On the Third Cause of Action issuing a preliminary injunction requiring (1) that defendants immediately post collateral in the sum of $13,000,000 and (2) until defendants post such collateral, enjoining and restraining defendants from selling, transferring, disposing or encumbering its assets and property and granting Westchester Fire a lien upon all the assets and property owned by defendants or and in which they have an interest;

d.      On the Fourth Cause of Action against defendants for costs, expenses and attorney's fees;

e.      And for such other relief as this Court deems just and proper.

Dated: New York, New York
      February 24, 2014

Ryan T. Kearney, Esq. [RK1608]
John J. McDonough, Esq. [JM0651]
Cozen O'Connor, P.C.
45 Broadway, 16th Floor
New York, NY 10006
(212) 509-9400
JMcDonough@cozen.com
RKearney@cozen.com

*Attorneys for Plaintiff, Westchester Fire*
*Insurance Company*

# EXHIBIT A