UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

MONADNOCK CONSTRUCTION, INC.,                Case No.: 16 CIV. 00420 (JBW)(VMS)
                                             ECF Case
                        Plaintiff,

        -against-

WESTCHESTER FIRE INSURANCE
COMPANY,

                        Defendant.

-------------------------------------------------------X

WESTCHESTER FIRE INSURANCE
COMPANY,

                        Third-Party Plaintiff,

        -against-

GLASSWALL, LLC, UGO COLOMBO, and
SARA JAYNE KENNEDY COLOMBO,

                        Third-Party Defendants.

-------------------------------------------------------X


### DECLARATION OF JAMES P. CINQUE
### IN SUPPORT OF MOTION TO
### DISMISS AMENDED COMPLAINT

        JAMES P. CINQUE declares under penalty of perjury pursuant to 28 U.S.C.

§1746:

        1.  I am a member of Cinque & Cinque, P. C., attorneys for third-party defendant

Glasswall, LLC ("Glasswall").  I have knowledge of the facts set forth herein and submit

this declaration in support of Glasswall's motion to dismiss claims in the amended

complaint both defendant and third-party plaintiff Westchester Fire Insurance Company ("WFIC") and third-party defendant Glasswall.  A copy of the amended complaint is annexed as Exhibit A.

**A CONDITION PRECEDENT TO WFIC'S**
**LIABILITY CANNOT BE ESTABLISHED**

2.  The first two claims in the amended complaint are asserted against WFIC for breach of two performance bonds (referred to as the "Bonds" in ¶1).  Copies of the two Bonds are collectively annexed as Exhibit B.

3.  Pursuant to §3 of the Bonds WFIC's obligations thereunder only arise "if there is no Owner Default under the Construction Contract [defined as the Subcontracts on the first page of the Bonds]."  The Subcontracts between Monadnock and Glasswall referred to in paragraph 16 of the amended complaint are collectively annexed hereto as Exhibit C.

4.  The term "Owner Default" is defined in §14.4 of the Bonds (Exhibit B) as:

> Failure of the Owner [Monadnock], which has not been remedied or waived...to perform and complete or comply with the other material terms of the Construction Contract [the Subcontracts].

5.  The arbitrators specifically determined on page 10 of their August 29, 2017 award (referred to in ¶69 of the amended complaint) that Monadnock had in fact breached the Subcontracts by refusing to accept delivery of approximately 1,000 windows in the Fall and Winter of 2013-2014:

> We find that Monadnock wrongfully refused to accept delivery of the windows, including ancillary materials needed for their installation in the Fall and Winter of 2013-2014, in breach of

2

the Subcontracts.

A copy of the arbitration award (the "Award") is annexed as Exhibit D.  As explained in the accompanying memorandum, Glasswall's sale of windows (as "Manufacturer" under the terms of the Subcontracts) falls within Article 2 of the Uniform Commercial Code.  Under the terms of the statute, Monadnock was obligated to accept and pay for these windows.  Its failure to do so constitutes a material breach of the Subcontracts, which absolves WFIC from any liability under the Bonds.

## MONADNOCK HAS NOT SUSTAINED ANY ACTUAL DAMAGES

6.  Monadnock alleges that, as a result of WFIC's breach of the Bonds, it has suffered "damages in an amount to be determined at trial" (Exhibit A, ¶¶ 79 and 84).

7.  However, the arbitrators specifically found that any damages which may have been sustained by Monadnock were reimbursed by the owners of the building projects:

> It is undisputed that Monadnock was reimbursed by the Owners for all costs incurred for the performance of the Window Work.  This include, without limitation, all additional construction costs, escalations, extended general conditions and additional insurance and bond interest costs (Ex. D, p. 6).

The arbitrators nevertheless awarded damages in Monadnock's favor, finding that Monadnock could assert the Owner's damages pursuant to the "pass-through" clause in Article 2 of the Subcontracts, which in relevant part provides that Monadnock "shall have the benefit of all rights, remedies and redress against the Manufacturer [Glasswall] that the Owner,... has against the Contractor [Monadnock]."  No "pass-through" damages would have been incurred had

3

Monadnock not breached the Subcontracts, as Glasswall would have timely completed its work but for the delay resulting from Monadnock's breach.

8.  There is no "pass-through" clause in the Bonds (Exhibit B) and the project owners are not parties thereto.[1]  Pursuant to §7.3 of the Bonds WFIC's liability is limited to "actual damages caused by delayed performance or non-performance of the Contractor [Glasswall]."  As Monadnock was reimbursed by the owners of the projects for all additional costs and expenses, it has not sustained any "actual damages" under the terms of the Bonds.[2]

## THE CLAIMS AGAINST GLASSWALL AND THE CLAIMS AGAINST WFIC DO NOT ARISE OUT OF THE SAME TRANSACTION OR OCCURRENCE

9.  The amended complaint (Exhibit A, ¶¶ 75-84) asserts two claims against WFIC:  the first and second claims for relief allege that WFIC breached its obligation under the Bonds.  In the third, fifth and sixth claims for relief (Exhibit A, ¶¶ 85-97, and 122-160) Monadnock alleges that Glasswall participated in a fraudulent conveyance of its assets on or about January 13, 2015. The fraudulent conveyance claims clearly have nothing whatsoever to do with the Bond claims.

## THE "CLAIM PRECLUSION" DOCTRINE BARS NEW CLAIMS AGAINST GLASSWALL

10.  The Subcontracts contain a very broad arbitration clause covering "any claim arising out of or related to this Subcontract" (Ex. C, §6.1.1).  Furthermore, §6.3.1 provides that a party

---

[1]  In fact, §9 of the Bonds provides: "No right of action shall accrue on this Bond to any person or entity other than the Owner [Monadnock] or its heirs, executors, administrators, successors and assigns."

[2]  The terms of the Bonds must be strictly enforced, as two alleged indemnitors relied on them and the fact that they would be absolved from any liability if Monadnock breached the Subcontracts.

demanding arbitration "<u>must</u> assert in the demand all claims then known to that party" (emphasis added).

11. Under the relevant arbitration provision Monadnock was required to assert all claims arising out of or relating to the Subcontracts in its arbitration demand. Its failure to do so precludes it from asserting new claims in this litigation.

## THE PRIOR PENDING FLORIDA <br> <u>STATE COURT ACTION</u>

12. On or about May 8, 2015 Glasswall sued Monadnock in the Florida State Court. A copy of this complaint is annexed as Exhibit E.

## TO THE EXTENT THAT FRAUDULENT <br> INDUCEMENT CLAIMS CAN BE ASSERTED, <br> <u>THEY ARE SUBJECT TO THE ARBITRATION AGREEMENT</u>

13. Even assuming that Monadnock has any viable claims for fraudulent conveyance against Glasswall, they are subject to the agreement to arbitrate and therefore cannot be asserted in this Court.

## <u>CONCLUSION</u>

14. For the reasons specified above, it is respectfully requested that Glasswall's motion to dismiss the amended complaint be in all respects granted.

Executed this 30th day of November, 2017 at New York, New York.

JAMES P. CINQUE