UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

MONADNOCK CONSTRUCTION, INC.,
                  Plaintiff,

    -against-

WESTCHESTER FIRE INSURANCE
COMPANY,

                  Defendant.

--------------------------------------------------------X

WESTCHESTER FIRE INSURANCE
COMPANY,

                  Third-Party Plaintiff,

    -against-

GLASSWALL, LLC, UGO COLOMBO, and
SARA JAYNE KENNEDY COLOMBO,

                  Third-Party Defendants.

--------------------------------------------------------X

Case No.: 16 CIV. 00420 (JBW)(VMS)
ECF Case

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS <u>THE AMENDED COMPLAINT</u>

### <u>PRELIMINARY STATEMENT</u>

This memorandum is submitted by third-party defendant Glasswall, LLC ("Glasswall") in

support of its motion to dismiss the amended complaint, both in respect to plaintiff Monadnock

Construction, Inc.'s ("Monadnock") claims against defendant Westchester Fire Insurance

Company ("WFIC") and to the claims asserted against Glasswall.

## STATEMENT OF RELEVANT FACTS

In December of 2015 Monadnock sued WFIC in State Court for breach of performance bonds issued by WFIC (the "Bonds"). The matter was removed by WFIC to this Court and suspended pending conclusion of an arbitration between Monadnock and Glasswall which was commenced in March of 2015. The arbitration related to Glasswall's manufacturing of windows for a housing project in Long Island City, pursuant to two agreements dated January 3, 2013 between Monadnock (as Contractor) and Glasswall (as Manufacturer). (These two agreements are referred to as the "Subcontracts.") By award dated August 29, 2017 the arbitrators ruled that Monadnock had breached the Subcontracts by "wrongfully refus(ing) to accept delivery of the windows" which were manufactured by Glasswall. The arbitrators also found that "it is undisputed that Monadnock was reimbursed by the [project] Owners for all costs incurred for the performance of the Window Work." Relying upon a "pass through" clause in the Subcontracts the arbitrators permitted Monadnock to seek damages which were allegedly incurred by the Owners and awarded so-called "performance damages" of $1,280,003.25. All of Monadnock's claims for "delay damages" were rejected.

On or about September 12, 2017 WFIC filed a third-party complaint against Glasswall seeking indemnification. On October 3, 2017 Monadnock filed an amended complaint which, in addition to seeking damages for WFIC's alleged breach of the Bonds, also contained a fraudulent conveyance claim against Glasswall, based upon the allegation that on or about January 13, 2015 Glasswall sold all of its assets, leaving it insolvent.

Glasswall seeks to dismiss Monadnock's claims against WFIC under the Bonds upon two grounds. First, as the windows which were manufactured by Glasswall are "goods" for purposes

2

of Article 2 of the Uniform Commercial Code, Monadnock was obligated to accept their delivery and pay for them as they were manufactured.  The arbitrators determined that Monadnock "wrongfully refused to accept delivery of the windows" and therefore was "in breach of the Subcontracts."  Under the provisions of the Bonds, WFIC was only obligated under the Bonds if there was no "Owner Default," which was defined in the Bonds as a failure by Monadnock to perform or comply with material terms of the Subcontracts.  Monadnock's failure to accept delivery and pay for the windows as they were manufactured by Glasswall constitutes a breach of the Subcontracts (as found by the arbitrators) and an "Owner Default," thereby precluding a claim under the Bonds.

In addition, the arbitrators found that Monadnock was reimbursed by the project Owners for all costs incurred in connection with the project.  Under the terms of the Bonds, WFIC is only liable for Monadnock's "actual damages."  As Monadnock was made whole by the Owners, it has not sustained any "actual damages" and therefore its claims under the Bonds should be dismissed.

The fraudulent conveyance claims asserted against Glasswall in the amended complaint relate to an alleged sale of assets in January of 2015.  This claim has nothing whatsoever to do with Monadnock's claim against WFIC under the Bonds and therefore is not properly asserted as a third-party claim against Glasswall.  In addition, the Subcontracts required Monadnock to pursue all claims against Glasswall in one arbitration.  Monadnock's failure to include this claim in the arbitration results in the application of the "claim preclusion" doctrine and precludes Monadnock from asserting the claim in this litigation.  Finally, to the extent that any fraudulent conveyance claim is viable, it would be subject to the arbitration agreement and not properly

3

asserted in this Court.

## POINT I

## MONADNOCK CANNOT MAINTAIN CLAIMS AGAINST WFIC

Federal Rule of Civil Procedure 14(a)(2)(C) allows a third-party defendant such as

Glasswall to assert against a plaintiff such as Monadnock "any defense that the third-party

plaintiff [such as WFIC] has to the plaintiff's claim." Glasswall submits that there are two

defenses: (A) a condition precedent to WFIC's obligations under the Bonds (that Monadnock not

be in breach of the Subcontracts) has not been satisfied; and (B) WFIC is only liable for

Monadnock's "actual damages" and it has not sustained any in light of the award's finding that it

was reimbursed by the Owners for all additional expenses.

**(A)     The Arbitration Finding that Monadnock Breached
         the Agreements Precludes the Maintenance of a Bond Claim**

Pursuant to the terms of the Subcontracts between Glasswall and Monadnock, Glasswall

was to manufacture windows for a housing project and deliver them on an as manufactured basis.

Indeed, the Subcontracts identify Glasswall as "Manufacturer." As explained on pages 9 and 10

of the arbitration award, in or about October and November of 2013, Glasswall had

manufactured approximately 1,000 windows and tendered delivery of them to Monadnock which

refused to accepted them.[1] The Arbitrators found that Monadnock's refusal to accept the

windows was wrongful and constituted a breach of the agreements:

> We find that Monadnock wrongfully refused to accept
> delivery of the windows, including ancillary materials needed for
> their installation in the Fall and Winter of 2013-2014, in breach of

---

[1] Monadnock did not pay Glasswall for the windows Monadnock refused to accept.

> the Subcontracts [the agreements between Monadnock and
> Glasswall] (Award, p. 10).

Section 3 of the bonds at issue in the action between Monadnock and WFIC specifically

states that WFIC's obligations under the bonds only arise if Monadnock is not in default of the

subcontracts between Monadnock and Glasswall.  Specifically, this section provides in relevant

part:

> If there is no Owner Default under the Construction
> Contract, the Surety's [WFIC's] obligation under this Bond shall
> arise....

"Owner Default" is defined in §14.4 of the bonds as:

> Failure of the Owner [Monadnock], which has not been remedied
> or waived, to pay the Contractor [Glasswall] as required under the
> Construction Contracts [the January 3, 2013 subcontracts between
> Monadnock and Glasswall] or to perform and complete or comply
> with the other material terms of the Construction Contract.

The Arbitrators' ruling that Monadnock breached the Subcontracts by wrongfully refusing to

accept delivery of 1,000 windows precludes Monadnock from claiming that it did not materially

breach the Subcontracts.

There is no doubt but that Monadnock's wrongful refusal to accept delivery of the

windows constitutes a material breach.  The windows which Glasswall supplied to Monadnock

were "specially manufactured goods" under UCC §2-105(1).  As such, Article 2 of the UCC

(relating to sale of goods) is applicable.  It is well-established that transactions involving the sale

of windows fall within the purview of Article 2 of the UCC.  See, e.g.: Katopodis v. Marvin

Windows and Doors, 105 App.Div.3d 633, 964 N.Y.S.2d 123 (1st Dep't 2016); Chopra v. Pella

Window Corp., 2 App.Div.3d 187, 768 N.Y.S.2d 680 (3d Dep't 2003); Imperia v. Marvin

Windows of New York, Inc., 297 App.Div.2d 621, 747 N.Y.S.2d 35 (2nd Dep't 2002); Robert

Hunt Co. v. S&R Coachworks, Inc., 215 App.Div.2d 361, 625 N.Y.S.2d 662 (2nd Dep't 1995);

and Matter of Barney Schogel, Inc., 12 B.R. 697 (S.D.N.Y. 1981).  See, also: PPG Industries,

Inc. v. JMB/Houston Centers Partners, Ltd., 146 S.W.3d 79, 83 (Texas Sup. Ct. 2004) (holding

that a contract providing for the manufacture of more than 12,000 windows for a 46 story

skyscraper "was a sale of goods").

Pursuant to UCC §2-301, a buyer such as Monadnock is obligated to accept and pay for

goods subject to the contract:

> The obligation of the seller is to transfer and deliver and
> that of the buyer is to accept and pay in accordance with the
> contract.

When Glasswall tendered delivery of the 1,000 windows in the fall of 2013 Monadnock had a

duty to accept and pay for them, pursuant to UCC §2-507(1):

> Tender of delivery is a condition to the buyer's duty to
> accept the goods and, unless otherwise agreed, to his duty to pay
> for them. Tender entitles the seller to acceptance of the goods and
> to payment according to the contract.

Pursuant to UCC §2-612 Monadnock was obligated to accept (and therefore pay for) delivery of

the windows in installments:

> (1) An "installment contract" is one which requires or authorizes the delivery of goods in separate lots to be separately accepted, even though the contract contains a clause "each delivery is a separate contract" or its equivalent.
>
> (2) The buyer may reject any installment which is non-conforming if the non-conformity substantially impairs the value of that installment and cannot be cured or if the non-conformity is a defect in the required documents; but if the non-conformity does not fall within subsection (3) and the seller gives adequate assurance of its cure <u>the buyer must accept that installment</u> (emphasis added).

UCC §2-703 provides that a seller such as Glasswall has the right to cancel the contract if a buyer such as Monadnock "wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole...."  Even under New York common law Monadnock's refusal to either accept or pay for the windows must be deemed a "material" breach, as noted in <u>Lipsky</u> v. <u>Commonwealth United Corp.</u>, 551 F.2d 887, 895 (2nd Cir. 1986):

> A " material" breach has been defined as one which would justify the other party to suspend his own performance, 12 Williston on Contracts, s 1469 at 186 (3rd ed. 1970), or a breach which is so substantial as to defeat the purpose of the entire transaction. Fink, supra.

**(B)     Monadnock Has Not Sustained Any Actual Damages**

As noted on page 6 of the Arbitration Award:

> It is undisputed that Monadnock was reimbursed by the Owners for all costs incurred for the performance of the Window Work.  This include, without limitation, all additional construction costs, escalations, extended general conditions and additional

interest and bond interest costs.

Despite this finding of fact, the Arbitrators nevertheless awarded Monadnock damages, finding "that the pass-through clause found in Article 2 of the Subcontracts[2] is controlling and permits Monadnock to seek the damages sought in this proceeding" (Award, p. 8).

Section 7.3 of the bonds provides in relevant part that WFIC is obligated for:

> Actual damages caused by delayed performance or non-performance of the Contractor [Glasswall] (emphasis added).

As noted in Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co., 2016 WL 8458987 (S.D.N.Y.) at *4, "actual damages by definition require a showing of injury or loss." Specifically, the Court noted the following definition of "actual damages:"

> Actual damages are defined as "an amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." *Id. (citing Black's Law Dictionary)*.

As Monadnock was reimbursed for any alleged losses by the owners of the projects, Monadnock did not sustain any "actual damages." Indeed, as held in Inchaustegui v. 666 5th Avenue Limited Partnership, 96 N.Y.S.2d 111, 115-116, 725 N.Y.S.2d 627, 630-631 (2001), payments made by a third party to a plaintiff in a breach of contract case are specifically deducted from any alleged

---

[2] This provision provides in relevant part that Monadnock "shall have the benefit of all rights, remedies and redress against the Manufacturer [Glasswall] that the Owner [HPS], under such documents, has against the Contractor [Monadnock]...." The bonds at issue do not contain any "pass-through clause" and specifically provide in §9 that: "No right of action shall accrue on this Bond to any person or entity other than the Owner [Monadnock] or its heirs, executors, administrators, successors and assigns."

damages:

> The landlord argues that we should apply the [collateral source] rule in this breach of contract case and hold that its damages should not be reduced by virtue of any insurance proceeds it stands to receive. Under settled contract principles, however, the landlord—the only appellant before us—is entitled to be placed in as good a position as it would have been had the tenant performed. Its recovery is limited to the loss it actually suffered by reason of the breach (*see,* Restatement [Second] of Contracts § 344[b]; § 347, comment e; see also, 3 Dobbs, Remedies § 12.2[1], at 22–23 [2d ed.] ) (emphasis added).

As Monadnock was made whole by the owners, and as WFIC's liability is limited to Monadnock's "actual damages," Monadnock has not sustained any actionable damages under the Bonds.

## POINT II

### MONADNOCK CANNOT MAINTAIN CLAIMS AGAINST GLASSWALL

Monadnock has asserted third-party claims against Glasswall for a fraudulent conveyance allegedly made in January of 2015, before Monadnock commenced the arbitration against Glasswall.  These claims must be dismissed since: (A) they do not arise out of the same transaction or occurrence as Monadnock's claims against WFIC for breach of the Bonds; (B) they are barred by the "claim preclusion" doctrine; and (C) to the extent any claims are viable, they are subject to an agreement to arbitrate.

**(A)    Monadnock's Third-Party Claims Against Glasswall Do Not Arise Out of the Transaction or Occurrence as Monadnock's Claims Against WFIC**

Federal Rule of Civil Procedure 14(a)(3) provides in relevant part:

9

> The plaintiff may assert against the third-party defendant any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff.

Plaintiff Monadnock's claims against third-party plaintiff WFIC are for breach of contract: specifically, Monadnock claims that WFIC breached its obligation under two performance bonds. The third-party claims against Glasswall are for fraudulent conveyance, alleging that Glasswall transferred its assets to frustrate Monadnock's ability to enforce any judgment against Glasswall. The fraudulent conveyance claims simply have absolutely nothing whatsoever to do with the Bonds. Therefore, as the fraudulent conveyance claims do not arise out of the bond claims against WFIC, they are not properly asserted against Glasswall and should be dismissed.

**(B)    "Claim Preclusion" Bars New Fraudulent Conveyance Claims Against Glasswall**

Monadnock alleges that Glasswall became insolvent on or about January 13, 2015 when it sold all of its assets (amended complaint, ¶88). This sale was made public on or about the sale date. Monadnock commenced its arbitration against Glasswall on or about March 4, 2015 – after Glasswall sold its assets. Monadnock could have, but did not, submit the fraudulent conveyance claim to the arbitrators, and as explained below is therefore precluded from now raising it.

**(i)    The Arbitration Agreement is Broad**

Section 6.1.1 of the Subcontracts provides:

> Any claim arising out of or related to this Subcontract,...., shall be subject to mediation as a condition precedent to binding dispute resolution.

10

The use of the phrase "any claim" denotes a very broad arbitration clause. *See, e.g.:*

Knickerbocker Dialysis, Inc. v. True Blue, Inc., 601 F.Supp.2d 502, 504 (E.D.N.Y. 2009):

> It is well-established that the FAA creates a strong federal policy in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see Arciniaga v. General Motors Corp.,* 460 F.3d 231, 234 (2d Cir.2006) (noting that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied."). Indeed, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927; *see United Steelworkers of Am. v. Warrior & Gulf,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (finding that courts must submit matters to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").
>
> Here, the arbitration clause at issue provides, in relevant part, that "[a]ny controversy or claim arising out of or relating to this Policy, or the breach thereof, shall be settled by Arbitration in accordance with the rules of the American Arbitration Association." It is beyond contention that this exceedingly broad arbitration clause encompasses TrueBlue's third-party claim.

and American Airlines, Inc. v. Licon Associates, Inc., 56 App.Div.2d 774, 392 N.Y.S.2d 451 (1ˢᵗ Dep't 1977) (finding that a clause referring "all claims, disputes and other matters in question arising out of or relating to this contract or the breach thereof" was a "broad arbitration clause" and included a claim for damage to repudiation).

**(ii)    Monadnock Is Precluded From Now Raising New Claims**

Section 6.3.1 of the Subcontracts specifically required Monadnock to include all claims against Glasswall in one arbitration:

11

> The party filing a notice of demand for arbitration <u>must assert in</u>
> the demand <u>all claims </u>then known to that party on which
> arbitration is permitted to be demanded (emphasis added).

As Monadnock was required to include all of its claims against Glasswall in the arbitration, its

failure to do so precludes it from now asserting new ones in Court.

The "claim preclusion" doctrine was explained in <u>Murphy</u> v. <u>Gallagher</u>, 761 F.2nd 878,

879 (2nd Cir. 1985):

> Claim preclusion prevents litigation of a matter that could have
> been raised and decided in a previous suit, whether or not it was
> raised. *See Migra v. Warren City School District Board of*
> *Education,* 465 U.S. 75, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56
> (1984); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and
> Procedure §§ 4402, 4403 (1981); Restatement (Second) of
> Judgments, Introductory Note before ch. 3 at 131 and §§ 18, 19
> (1982). Although fair play demands that a party have his day in
> court, the doctrine of res judicata forecloses a second day.

As held in <u>American Ins. Co.</u> v. <u>Messinger</u>, 43 N.Y.2d 184, 189-190, 401 N.Y.S.2d 36, 39

(1977):

> in general the doctrines of claim preclusion and issue preclusion
> between the same parties (more familiarly referred to as res
> judicata or direct estoppel) apply as well to awards in arbitration as
> they do to adjudications in judicial proceedings (citations omitted).

It is well settled that a party to an arbitration agreement cannot, after the arbitration has

concluded, bring new claims in Court which could have been asserted in the arbitration. *See,*

*e.g.*: <u>Williams</u> v. <u>E.F. Hutton & Co.</u>, 753 F.2d 117, 119 (D.C. Cir. 1985), ruling that an

arbitration award:

will generally bar claims falling under an arbitration clause even if those claims were not actually raised in the arbitration proceeding.

Schattner v. Girard Inc., 668 F.2d 1366, 1368 (D.C. Circ. 1982):

> A party whose claims have been decided in arbitration may not then bring the same claims under new labels. The same is true of claims that should have been submitted to arbitration, even if they were not actually heard, for any other rule would allow parties to split their causes of action (citations omitted).

Ganguly v. Charles Schwab & Co., Inc., 2004 WL 213016 (S.D.N.Y.) at *7 n. 8:

> Both New York law and federal law hold that a claim is precluded under the doctrine of res judicata if it could have been raised in a previous arbitration proceeding. *See Horphag Research Ltd. v. Henkel Corp.*, No. 00 Civ. 438, 2004 WL 117601 at *5 n. 3 (S.D.N.Y. Jan.26, 2004) (Mukasey, C.J.), citing *Pike v.. Freeman,* 266 F.3d 78, 90-91 (2d Cir.2001).

and Dalow Industries, Inc. v. Jordache Enterprises, Inc., 631 F.Supp. 779, 782 n. 1 (S.D.N.Y. 1986):

> Both Jordache and Dalow were parties to the arbitration and application of res judicata, or claim preclusion, was appropriate to all matters which there were or could have been raised (emphasis added).

An additional ground supporting dismissal is the fact that Monadnock has already been awarded damages in the arbitration.  In Ritchie v. Landau, 475 F.2d 151 (2nd Cir. 1973), plaintiff submitted an arbitration claim for a bonus allegedly due from his employer and was awarded damages.  After the award plaintiff asserted in court a new claim for fraud.  Even though the

13

fraud claim had not been raised in the arbitration, the Court nevertheless dismissed it, on the
ground that there were no additional damages which could have been awarded other than those
that were awarded in the arbitration:

> Plaintiff also contends that, irrespective of a disposal
> adverse to him of his contract and quantum meruit claims against
> Landau, his newly raised fraud cause of action should not
> summarily be dismissed because the fraud claim had not been
> raised in the arbitration proceeding. Aside from the question of
> whether plaintiff has waived his right to raise this at this late stage,
> we conclude that the court should not now entertain the issue.
> Although fraudulent inducement to enter into a contract is
> actionable in tort in New York State and can be raised in addition
> to any claims for compensatory damages arising from the breach of
> the contract, the plaintiff must be able to show actual damages
> resulting from the fraud which are distinguishable from the
> damages which he has already recovered in a prior adjudicatory
> proceeding. Even assuming plaintiff could prove that Landau made
> a promise of a bonus which Landau never intended to perform and
> thereby fraudulently induced plaintiff to execute the second
> two-year employment contract, the $200,000 recovery would estop
> any claim for compensatory damages,.... Id. at 156 (citations
> omitted).

The same rationale is applicable to the case at bar, as Monadnock has already been awarded
damages, and therefore is estopped from asserting the fraudulent inducement claim.

### (iii)    The Court Should Abstain, Pending Conclusion
### of the Florida State Court Action

In May of 2015 Glasswall asserted claims against Monadnock in the Florida State Court.
To the extent that Monadnock wishes to assert any claims against Glasswall, it can easily do so
in Florida and this Court should abstain from exercising jurisdiction over Monadnock's claims.

14

As noted in FDIC v. Four Star Holding Co., 178 F.3d 97, 101 (2ⁿᵈ Cir. 1999), the Court should consider six factors when deciding whether to grant abstention:

> The test for determining whether abstention is appropriate, first articulated in Colorado River, now requires examination of six factors: "(1) assumption of jurisdiction over a res; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights." *De Cisneros v. Younger,* 871 F.2d 305, 307 (2d Cir.1989).

With respect to the first factor, both actions are *in personam*, and there is no *res*. The second factor favors abstention since the distance between the Florida State Court in Miami and the Federal Court in New York is substantial. Monadnock's claims asserted in this Federal action all arise under State law, and are claims which the Florida State Court can easily resolve. Piecemeal litigation will be avoided and judicial resources conserved if the Court abstains since the Florida State Court can resolve claims of both parties, so that the third factor is in favor of this relief. The next factor, order in which the actions were filed, weighs in favor of abstention since the Florida State Court action was commenced more than two years before this action. The next factor, whether State or Federal law applies, also favors abstention since there are no Federal claims at issue in this proceeding. The last factor also favors abstention since the Florida State Court can adequately protect Monadnock's rights since the Federal Court does not have exclusive jurisdiction over any of the claims. Based upon a balancing of the six factors the Court should grant abstention.

### (iv)    Any Claims Must Be Arbitrated

To the extent that any fraudulent conveyance claims are viable they must be arbitrated, in

15

light of the broad arbitration provision in the Subcontracts.

<b><u>CONCLUSION</u></b>

For the reasons specified above, third-party defendant Glasswall's motion to dismiss the amended complaint should in all respects be granted.

DATED: NEW YORK, NEW YORK
         NOVEMBER 30, 2017

Respectfully submitted,

CINQUE & CINQUE, P. C.

By:_____
    James P. Cinque, Esq.
Attorneys for Third-Party Defendant
 Glasswall, LLC
845 Third Avenue, Suite 1400
New York, New York 10022
Telephone: (212) 759-5515
Telefax:   (212) 759-7737
E-mail:   CINQUE845@aol.com