# Exhibit E

2015 JUL 13 PM 2:11

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

SARA JAYNE KENNEDY,

    Plaintiff,

v.

GLASSWALL, LLC, MONADNOCK
CONSTRUCTION, INC., WESTCHESTER FIRE
INSURANCE COMPANY, HPS 50TH AVENUE
ASSOCIATES, LLC, HPS BORDEN AVENUE
ASSOCIATES, LLC, THE RELATED COMPANIES,
INC., and BRUCE BEAL,

    Defendants.
_____/

CASE NO.: 15-6405-CA-40
          14-2090-CA-40
          14-5447-CA-40

GLASSWALL, LLC,

    Cross-Plaintiff,

v.

MONADNOCK CONSTRUCTION, INC.,
WESTCHESTER FIRE INSURANCE COMPANY,
HPS 50TH AVENUE ASSOCIATES, LLC, HPS
BORDEN AVENUE ASSOCIATES, LLC, THE
RELATED COMPANIES, INC., and BRUCE BEAL,

    Cross-Defendants.
_____/

**ORDER GRANTING DEFENDANTS/CROSS-DEFENDANTS' MOTION TO
STAY CASES PENDING CONCLUSION OF THE NEW YORK ARBITRATION**

This matter came before the Court on July 7, 2015 at 1:30 p.m. for hearing on Defendants/Cross-Defendants Monadnock Construction, Inc. ("Monadnock"), HPS 50th Avenue Associates, LLC ("HPS 50th"), HPS Borden Avenue Associates, LLC ("HPS Borden"), The

Related Companies, Inc. ("Related"), and Bruce Beal ("Beal", collectively, "Defendants") Motion to Stay Cases Pending Conclusion of the New York Arbitration ("Motion to Stay"), to which Defendant/Cross-Plaintiff Glasswall, LLC ("Glasswall"), Plaintiff Sara Jayne Kennedy ("Kennedy"), and Plaintiff Ugo Colombo ("Colombo") filed Responses in opposition, and Defendants filed a Reply. Having reviewed the record, the Motion to Stay, the Responses, the Reply, the relevant authorities, and considered the arguments of counsel during the hearing, it is hereby **ORDERED AND ADJUDGED** that the Motion to Stay is **GRANTED**.

## I. INTRODUCTION

On January 3, 2013, Monadnock (a Florida-based manufacturer of impact-resistant windows and door systems) and Glasswall (a New York-based construction company) entered into AIA-modified contracts[1] ("Contracts") under which Glasswall agreed to produce and deliver approximately 9,300 windows, doors, and other materials (collectively, the "Windows") to two high-rise affordable development projects in New York City (the "Projects") for which Monadnock is the construction manager.

On March 4, 2015, as a result of Glasswall's alleged failures to perform under the Contracts, Monadnock instituted an arbitration proceeding with the American Arbitration Association ("AAA") in New York against Glasswall, seeking damages for its alleged breaches ("New York Arbitration"). Monadnock subsequently moved to stay the proceedings in this

---

[1] "AIA" stands for The American Institute of Architects. AIA contracts are "commonly used in the construction industry." *Higley S., Inc. v. Park Shore Dev. Co.*, 494 So. 2d 227, 228 (Fla. 2d DCA 1986); *see Lake Plumbing, Inc. v. Seabreeze Constr. Corp.*, 493 So. 2d 1100, 1102 (Fla. 2d DCA 1986) ("Arbitration is especially appropriate in situations involving issues that are unique to certain industries and which require specialized knowledge for their resolution. We believe the construction industry is such an industry and that the industry has heeded this intent by its adoption of the 'Standard AIA Contract.'").

2

Court pending the conclusion of the New York Arbitration.[2] Glasswall argues that despite agreed-upon arbitration provisions in the Contracts, the New York Arbitration should not go forward and the Motion to Stay should be denied because this Court, not arbitrators, must decide issues of arbitrability. As discussed below, the Contracts require, and the law is clear, that issues of arbitrability are to be decided by the arbitrators, and not this Court. A stay of the proceedings is appropriate pending conclusion of the New York Arbitration.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Three Cases And The Relevant Parties

This consolidated action stems from Glasswall's alleged failures to perform under the Contracts. As outlined below, the parties filed four lawsuits, one of which was voluntarily dismissed.[3]

On January 14, 2014, Kennedy filed suit (Case No. 14-2090) against Glasswall, Westchester Fire Insurance Company ("WFIC"),[4] Monadnock, HPS 50th, and HPS Borden for declaratory relief seeking to have the Court declare her rights vis-à-vis her obligations under the surety Bonds—that the Contracts between Monadnock and Glasswall were wrongfully terminated by Monadnock in January 2014 and Monadnock's demand under the Bonds was improper.[5] "Friendly" defendant Glasswall cross-claimed against HPS 50th, HPS Borden and

---

[2] On May 12, 2015, this Court entered an Order denying Glasswall's motion to temporarily enjoin/stay an ongoing arbitration proceeding in New York. Glasswall appealed that Order to the Third District Court of Appeal, which it denied. The Court's May 12, 2015 Order contains certain findings of fact and conclusions of law that are relevant to the instant Order.

[3] On March 13, 2015, Glasswall filed suit (Case No. 15-6017) against Monadnock. Glasswall voluntarily dismissed this suit on April 9, 2015.

[4] WFIC, the surety, issued payment and performance bonds ("Bonds") for the Contracts.

[5] Kennedy is not a party to the Contracts.

3

Monadnock for declaratory relief, breach of contract and tortious interference with the Contracts.[6]

On February 28, 2014, Colombo filed suit (Case No. 14-5447) against Glasswall, HPS 50th, HPS Borden, Monadnock, Beal, Related, and WFIC for declaratory relief and tortious interference with the Contracts.[7] Colombo's claims are substantially similar to Kennedy's claims in her January 2014 suit.

On March 18, 2015, Kennedy filed a second suit (Case No. 15-6405) for declaratory relief and tortious interference against Glasswall, Monadnock, HPS 50th, HPS Borden, Beal, Related, and WFIC. This suit seeks to stop the New York Arbitration and have all the pending claims heard before this Court, and alleges that HPS 50th, HPS Borden, Beal, and Related tortiously interfered with the Contracts between Monadnock and Glasswall by requiring a default and termination of the Contracts and demanding arbitration.

On May 8, 2015, Glasswall filed cross-claims in Case No. 15-6405 against Monadnock, HPS 50th, HPS Borden, Beal, Related, and WFIC for declaratory relief (ultimately to enjoin the New York Arbitration), tortious interference with the Contracts, and civil conspiracy based on the underlying tort of tortious interference with the Contracts.

On May 19, 2015, the three cases were transferred to the Complex Business Litigation Division. On June 5, 2015, Defendants filed their Motion to Stay. On June 8, 2015, the three cases were consolidated for all purposes. On July 7, 2015 this hearing was conducted.

---

[6] The Court notes that Kennedy is Colombo's wife. Colombo was the owner of Glasswall during the relevant time periods, and Colombo and Kennedy are indemnitors and guarantors on the surety Bonds that Glasswall was required to secure for the Contracts with Monadnock.

[7] Beal is a vice-president of Related. The claims are against Beal individually.

4

This Court previously denied Kennedy and Glasswall's emergency motion to enjoin the New York Arbitration. Glasswall appealed that Order to the Third District Court of Appeal, which also denied a stay of the New York Arbitration pending determination of its appeal. All Defendants filed motions to dismiss for lack of personal jurisdiction except for Related and WFIC, which filed motions to dismiss for other reasons.[8] Nothing of any substance has occurred and no discovery has been concluded in any of the cases. Arbitration has not been waived.

### B. The Construction Contracts

It is undisputed that the Contracts were entered into between Glasswall and Monadnock and binding arbitration provisions were included. Section 6.1.1 of the Contracts contains identical binding arbitration provisions: "Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Section 4.1.5 and except those waived in this Subcontract, shall be subject to mediation as a condition precedent to binding dispute resolution." Section 4.1.5 provides Monadnock and the Projects' architect with the unquestioned authority to reject Glasswall's work based upon aesthetic considerations without any review. Section 6.2 provides that if any claim is not resolved in mediation, the parties are to be bound by arbitration proceedings in accordance with Section 6.3 of the method to resolve the claims. Section 6.3.1 provides that dispute resolution shall be in the place where the Projects are located (New York City), unless another location is mutually agreed upon:

> If the Contractor [Monadnock] and Manufacturer [Glasswall] have selected arbitration as the method of binding dispute resolution in Section 6.2, any claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, ***shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement.*** (emphasis added).

---

[8] Related's motion to dismiss is for failure to state a cause of action based on the premise that one cannot interfere with their own contract as a related party. WFIC filed a motion to dismiss for improper venue.

5

### C. The New York Arbitration And Monadnock's Claims

On March 4, 2015, Monadnock instituted the New York Arbitration with the AAA against Glasswall, seeking damages for its alleged breaches. In its Statement of Claim, Monadnock seeks damages from Glasswall for breaching the Contracts on the following matters (collectively, "Monadnock's Claims"):

(a) Glasswall has still not completed the Work;
(b) Glasswall has not corrected defective Work;
(c) Glasswall has not provided documentation required under the Contracts, as amended, including but not limited to warranties, LEED documentation, material certifications, and final lien waivers by Glasswall and its suppliers;
(d) Glasswall delayed its performance of its Work thereby causing delays and increased costs to other contractors whom Monadnock has and/or will reimburse;
(e) Glasswall delayed in performance of its Work thereby causing delays and increased costs to Monadnock;
(e) Glasswall has failed to pay all its suppliers for materials used to fabricate the Work and for shipment of same to the Projects; and
(f) Glasswall has ceased operations and it will not be able to fulfill its warranty obligations.

Today, the New York Arbitration is ongoing.

### D. Defendants' Motion to Stay

Defendants' Motion to Stay argues that the three cases should be stayed because they involve the same construction Projects, parties, Contracts, surety Bonds, and New York Arbitration. Defendants further argue that the three cases seek to have the Court decide the same core issues that are either pending before the New York Arbitration or are so intricately involved (inextricably intertwined) in that proceeding that any Court action would risk inconsistent determinations. In other words, Defendants argue that the parties' core disputes can and should be decided in the New York Arbitration, whose outcome will be determinative of most, if not all, of the issues pending before this Court in the three cases. Finally, Defendants argue that none of

6

the parties will be prejudiced if the three cases are stayed while the New York Arbitration proceeds.

Glasswall opposes the Motion to Stay on the grounds that the Court has not yet made a merits determination that Glasswall must arbitrate the claims raised in the New York Arbitration. In this regard, Glasswall argues that before it can be "forced" to arbitrate, the Court must first determine who should determine issues of arbitrability (the Court or the arbitrator), and second, if the Court determines it should determine issues of arbitrability, the Court must determine which claims are subject to arbitration. Glasswall also argues its claims of tortious interference (against Related and Beal) and civil conspiracy (against Defendants and WFIC) are independent of, will not be resolved by, and are beyond the scope of the New York Arbitration and involve parties that are not signatories to the Contracts. Finally, Glasswall argues the Court must resolve its declaratory relief claim against Monadnock prior to ruling on the Motion to Stay.

Kennedy opposes the Motion to Stay on the grounds that her claims (against HPS 50th, HPS Borden, Beal, and Related) cannot be resolved by the New York Arbitration. Colombo filed a notice of joinder with Kennedy's Response to the Motion to Stay wherein he adopted and incorporated the arguments set forth in Kennedy's Response as his own.[9]

### III. ANALYSIS

#### A. Material Facts Not In Dispute

The following material facts are not in dispute: (i) Glasswall and Monadnock executed the Contracts, which include binding arbitration provisions incorporating the AAA and the Construction AAA Rules; and (ii) the Contracts call for the design and production of Windows in Florida for delivery to the Projects in New York.

---

[9] No party has alleged any other defenses to arbitration, such as unconscionability, duress, or coercion.

7

### B. Applicable Legal Principles

Both sides agree that the Federal Arbitration Act ("FAA") applies to the construction Contracts. The FAA "provides for the enforceability of '[a] written provision in . . . a contract evidencing a transaction involving commerce . . . .'" *Rewards Hotel Mgmt. Co. v. Elite Gen. Contractors, Inc.*, 860 So. 2d 1011, 1013 (Fla. 3d DCA 2003) (quoting 9 U.S.C. § 2). This provision of the FAA represents "'a congressional declaration of a liberal federal policy favoring arbitration agreements.'" *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). As such, "upon being satisfied that the issue involved . . . is referable to arbitration under such an agreement, [the Court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. This Court treats the Motion to Stay as a section 3 application to stay.

The FAA "applies if the transaction involves 'interstate commerce, even if the parties did not contemplate an interstate commerce connection.'" *Rewards Hotel Mgmt. Co.*, 860 So. 2d at 1013 (quoting *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995)). The FAA requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25.

The Construction Industry Arbitration Rules of the AAA, effective as of October 1, 2009 ("Construction AAA Rules") and incorporated into the Contracts, state as follows regarding jurisdiction:

R-9. Jurisdiction

(a) ***The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.***

8

(b) ***The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.*** Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award. (emphasis added).

In *Terminix Int'l Co. v. Palmer Ranch Ltd.*, 432 F.3d 1327 (11th Cir. 2005), the court ruled that the AAA rules referenced in the parties' arbitration agreement meant that the parties "clearly and unmistakably" agreed that the arbitrator should decide issues of arbitrability:

> Here, we are able to avoid the usual process [of answering the question of arbitrability] for a different reason: the parties have agreed that the arbitrator will answer this question by providing (in all three of the arbitration clauses at issue) that "arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association" (AAA). ***AAA Rule 8(a), in turn, provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."*** By incorporating the AAA Rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid.

*Id.* at 1332 (emphasis added). Rule 8(a) of the Commercial AAA rules applied in *Terminix*, which is identical to Rule 9(a) of the Construction AAA Rules in this case.

Similarly, in *Brandon, Jones, et al. v. MedPartners, Inc.*, 203 F.R.D. 677, 683-84 (S.D. Fla. 2001), the court found that the AAA rules incorporated into the parties' contract provided for the arbitrator to decide arbitrability. That court, interpreting the identical AAA rules, concluded that "these facts provide clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. Under Rules 1 and 8, the Arbitrators have the authority over arbitrability determinations and other jurisdictional questions." *Id.* at 685; *see Younessi v. Recovery Racing, LLC*, 88 So. 3d 364, 365 (Fla. 4th DCA 2012) ("[W]here language of the contract clearly

9

indicates that AAA rules govern, they are expressly incorporated into the contract. The contract expressly stated that any dispute arising from it was to be arbitrated under AAA rules."). Therefore, Florida federal and state courts have found that incorporation of the AAA rules into a contract evinces a clear and unmistakable intent for an arbitrator to decide arbitrability.

### C. The FAA And Who Should Consider Issues Of Arbitrability

It is well-settled law in Florida that "[i]f the court finds that there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate." Fla. Stat. § 682.03(2). Our Third District Court of Appeal has recognized that "under Florida law a trial court has broad discretion to order stays in proceedings before it." *Wilcox v. Hotelerama Assocs., Ltd.*, 19 So. 2d 444, 446 (Fla. 3d DCA 1993); *see Hessen v. Schemmel*, No. 3D15-262 (Fla. 3d DCA April 29, 2015) (directing a trial court to stay court proceedings before it pending arbitration).

There is no dispute that the Contracts affect and involve interstate commerce—they concern the design and production of Windows in Florida for delivery to the Projects in New York. Therefore, the FAA applies to the Contracts' arbitration provisions. *See Jensen v. Rice*, 809 So. 2d 895, 899 (Fla. 3d DCA 2002) ("[W]e find the employment agreement is covered within the provisions of the [FAA], given the interstate business involved."); *see Default Proof Credit Card Sys., Inc. v. Friedland*, 992 So. 2d 442, 444 (Fla. 3d DCA 2008) (when contracts involve interstate commerce, agreements to arbitrate are enforceable in Florida under the FAA).

The Court must next consider whether the Contracts' arbitration provisions delegate the authority to determine issues of arbitrability to the Court or arbitrators. "Generally, arbitrability is a question for the trial court—and not the arbitrator—unless the parties 'clearly and unmistakably' provide otherwise." *Bhim v. Rent-A-Center, Inc.*, 655 F. Supp. 2d 1307, 1310 (S.D. Fla. 2009) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010) (stating that "parties can agree

10

to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy"). However, when parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator. *Terminix*, 432 F.3d at 1332 (holding that the incorporation of the AAA rules into an arbitration provision serves as clear and unmistakable evidence that the parties agreed an arbitrator would decide gateway determinations).

Here, the Court finds that it need not look past the language of the Contracts to find clear and unmistakable evidence of the parties' intent to delegate the issue of arbitrability of the claims to the arbitration panel. *See 24 Go Wireless, Inc. v. AT&T Mobility II, LLC*, No. 11-CV-20930-MORENO, 2011 U.S. Dist. LEXIS 70817, at *2 (S.D. Fla. June 29, 2011) (stating that "the parties clearly and unmistakably agreed to submit that issue to arbitration as well by expressly incorporating the rules of the American Arbitration Association ("AAA") into the arbitration provision of their Agreement"); *Mercury Telco Group, Inc. v. Empresa De Telecommunicaciones De Bogota S.A.E.S.P.*, 670 F. Supp. 2d 1350, 1354-55 (S.D. Fla. 2009) (finding "clear and unmistakable evidence of the parties' intent to delegate the issue of arbitrability of the claims to an arbitrator" based on the incorporation of certain arbitration rules).

Glasswall and Monadnock explicitly incorporated the Construction AAA Rules into the arbitration provisions of the Contracts. These rules delegate the issue of arbitrability of a dispute to the arbitrator. To illustrate, the Construction AAA Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." Construction AAA Rule 9(a). Accordingly, any argument as to issues of arbitrability, the scope of the arbitration agreement, as

11

well as all of Glasswall's challenges to the jurisdiction of the arbitrators, must be presented to the arbitrators. *See Mercedes Homes, Inc. v. Colon*, 966 So. 2d 10, 14 (Fla. 5th DCA 2007) (holding that the "trial court erred in deciding the scope of the instant arbitration argument because the parties had vested the authority to make that decision in the arbitrator"). The Court therefore finds that Glasswall and Monadnock "clearly and unmistakably" agreed that issues of arbitrability should be decided in the New York Arbitration.

### D. <u>Glasswall Can Preserve Its Objection To And Participate In Arbitration</u>

Apart from who should determine issues of arbitrability, Glasswall is also concerned that it will be prejudiced should it participate in the New York Arbitration as it will be deemed to have waived any objection to arbitration. Glasswall's concern is not supported by law. In fact, contrary to Glasswall's position, a party does not waive its right to have the issue of arbitrability decided by a court after the conclusion of an arbitration, provided that the party has timely objected to the jurisdiction of the arbitrators to decide such issue. *See First Options*, 514 U.S. at 946-47. Accordingly, a party may address the issue of the arbitrator's jurisdiction during the arbitration on the merits, without risk of waiver, provided it has also objected to the arbitrator's authority to decide such issue. *Id.*[10] Notably, Florida's Fifth District Court of Appeal's recent

---

[10] Decisions of multiple federal circuit courts of appeal are in accord. *See, e.g., China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 291-92 (3d Cir. 2003) (finding no waiver where a party "consistently objected to [arbitrator's] jurisdiction throughout the proceedings"); *Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.*, 320 F.3d 362, 368 (2d Cir. 2003) (finding no waiver where a party "objected repeatedly to arbitration"); *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 9 n.10 (1st Cir. 2000) (finding no waiver where a party "consistently and vigorously maintained its objection to the scope of arbitration"); *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000) (finding no waiver where a party "carefully and explicitly, in unambiguous language", preserved its objection to arbitrability); *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003) (finding no waiver where a party "never submitted or acquiesced in the submission of the issue" to the arbitration panel).

decision in *Grant v. Rotolante*, 147 So. 3d 128 (Fla. 5th DCA 2014), discusses a party's ability to preserve its objection to arbitrability all while participating in an arbitration under the FAA:

> Under the FAA, in determining the threshold issue of arbitrability, courts consider whether the party opposing confirmation objected throughout the arbitration proceeding. *See, e.g., Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1294 (11th Cir. 2004); *Avis Rent A Car Sys. v. Garage Emps. Union*, 791 F.2d 22, 26 (2d Cir. 1986). In *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1510 (3d Cir. 1994), the Third Circuit held that **"where a party objects to arbitrability but nevertheless voluntarily participates in the arbitration proceedings, waiver of the challenge to arbitral jurisdiction will not be inferred."** In that case, after the arbitrator rejected the plaintiffs' objection to arbitration, they participated in the arbitration on the merits and lost. In affirming, the United States Supreme Court concluded that since the plaintiffs had "forcefully object[ed] to the arbitrators deciding their dispute," they had not clearly agreed to submit the issue of arbitrability to arbitration.

*Id.* at 131-32 (emphasis added); *see Shank/Balfour Beatty v. IBEW Local 99*, 497 F.3d 83, 90 n.2 (1st Cir. 2007) (determining that appellant "did not waive its right to challenge arbitrability by participating in the hearing on the merits after it raised the arbitrability issues before the arbitrator and the arbitrator ruled against [the appellant]"). Therefore, Glasswall's argument—that if it participates in arbitration it will be deemed to have waived any objections to the arbitrability of the underlying claims—is contrary to established law. *See, e.g., Kaplan*, 19 F.3d 1503, 1510 (3d Cir. 1994) ("where a party objects to arbitrability but nevertheless voluntarily participates in the arbitration proceedings, waiver of the challenge to arbitral jurisdiction will not be inferred").

In summary, Glasswall's concern that it will be prejudiced and irreparably harmed if the New York Arbitration moves forward is misplaced because it can preserve its objection to arbitrability all while participating in that proceeding.

printing document Page 14 of 18

### E. The New York Arbitration May Affect The Non-Contractual Claims

A stay is also appropriate here because "it cannot be said that 'resolution of the arbitrable claims will have no effect' on the pending litigation." *Shores of Pan., Inc. v. Safeco Inc. Co. of Am.*, No. 07-00602-KD-B, 2008 U.S. Dist. LEXIS 75956, at *13 (S.D. Ala. Sept. 29, 2008) (quoting *Am. Int'l Group, Inc. v. Cornerstone Bus., Inc.*, 872 So. 2d 333, 338 (Fla. 2d DCA 2004)); *see Okeelanta Corp. v. United States Sugar Corp.*, 712 So. 2d 814, 815 (Fla. 2d DCA 1998) (reversing a trial court's decision and directing it to enter an order staying the litigation until the conclusion of an arbitration proceeding, noting that "[w]hile this court makes no determination regarding the effect the arbitration decision might have on the litigation, it cannot be said that the resolution of the arbitrable claims will have no effect on the claims pending in court") (citing *Sabates v. Int'l Med. Ctrs., Inc.*, 450 So. 2d 514, 519 (Fla. 3d DCA 1984)); *see also Cornerstone*, 872 So. 2d at 338 (finding the trial court erred by denying a motion to stay pending arbitration where the claims involving third-parties "reasonably and logically derive from [the party's] ostensibly arbitrable claim"; noting that "[w]here the claims involving a third party are based on the same operative facts and are inherently inseparable from the claims subject to arbitration, the third party is entitled to a stay of proceedings pending arbitration even though it is not a signatory to the arbitration agreement") (citation omitted).

The New York Arbitration will resolve the specific issues between Monadnock and Glasswall and will determine the core issues of the claims filed by Kennedy and Colombo as indemnitors and guarantors on the Bonds that were obtained to insure Glasswall's performance under the Contracts. The gravamen of Kennedy's and Colombo's claims are that Monadnock improperly terminated or defaulted Glasswall under the Contracts or waived its right to arbitrate and therefore the surety has no obligation, and, in turn the indemnitors/guarantors of the Bonds have no liability. Whether Monadnock properly terminated or sought defaults under the

14

Contracts or has a right to bring the claims in arbitration will all be decided by the arbitrators in the New York Arbitration. The outcome of that proceeding will likely determine whether Kennedy and Colombo as indemnitors/guarantors have any potential liability. If Glasswall prevails on its claim of improper termination or otherwise prevails in the New York Arbitration, the surety and its indemnitors/guarantors will have no liability. Simply put, there is no viable way that these issues are distinguishable from the claims before the New York Arbitration, nor would attempting to do so make any practical sense.[11]

In summary, while the New York Arbitration may not resolve every claim raised before this Court, that proceeding will decide all of Glasswall's objections and may resolve or greatly impact the remaining claims of Kennedy and Colombo. *See Shores of Pan., Inc.*, 2008 U.S. Dist. LEXIS at *37 ("Tort claims and other non-contract claims, however, are not automatically excluded from a contractual arbitration clause, where the claims are intimately founded in and intertwined with the obligations in the contract.") (quotations omitted). A stay is especially appropriate in this instance where continuing the litigation would undermine the New York Arbitration. *See Id.* at *21 ("the court may stay litigation pending arbitration where the litigation would undermine the arbitration and thwart federal policy in favor of arbitration"). Accordingly, no party will be prejudiced if the litigation is stayed while the New York Arbitration proceeds. However, if these cases proceed, the Court is likely to undermine the New York Arbitration or at least risk inconsistent decisions.

---

[11] In fact, Kennedy's Response to the Motion to Stay, to which Colombo joined, acknowledges that "[w]hile Monadnock's arbitration demand is only against Glasswall, the **issues raised in the arbitration demand clearly affect the substantive rights and interests** of [Kennedy]." Kennedy's Response at p.4 (emphasis added).

15

### F. The Court Need Not Rule On Glasswall's Declaratory Relief Claim Against Monadnock Prior To Staying The Litigation

Glasswall's contention that this Court must decide its declaratory relief claim against Monadnock before it can grant Defendant's Motion to Stay is contrary to federal law.[12] The parties do not dispute that this matter is subject to the FAA and relevant federal case law. 9 U.S.C. § 1 *et seq.* And neither the FAA nor relevant case law require a court to determine the arbitrability of a claim before it can order a stay of proceedings pending an arbitration.

A court's power to grant a stay under section 3 of the FAA is not conditioned on its power to compel arbitration under section 4 of the FAA. *Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp.*, 293 U.S. 449, 453 (1935) ("[T]here is no reason to imply that the power to grant a stay is conditioned upon the existence of power to compel arbitration in accordance with section 4 of the act."), *overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287 (1988); *Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986) ("[W]e hold that a motion to compel arbitration under section 4 is not a prerequisite to raising the issue of arbitrability under section 3"); *B-S Steel of Kan. v. Tex. Indus.*, 321 F. Supp. 2d 1214 (D. Kan. 2004) ("[T]he power to stay is not conditioned on the power to compel arbitration under § 4 of the FAA."); *Sanders v. Kave Enters., LLC*, No. 3:07-CV-123(CDL), 2008 U.S. Dist. LEXIS 6835, at *6 (M.D. Ga. Jan. 30, 2008) ("The FAA also permits a court to grant a motion for stay even if it does not have the authority to compel the arbitration.").

---

[12] Because the FAA applies in this case, the Court construes federal law in resolving the Motion to Stay. *See Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1033 (11th Cir. 2003) ("[W]hether a court or arbitrator is to decide particular issues is not a question of contract law, but is instead governed by the FAA; it is a federal law issue to be decided under the 'body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA].'" (citing *Moses H. Cone*, 460 U.S. at 24)).

The United States Supreme Court has rejected the argument that a court can only order a stay when it also has the power to compel arbitration. *Shanferoke*, 485 U.S. at 452-53. Where a defendant has notified a plaintiff of its willingness to arbitrate pursuant to their arbitration agreement, and the defendant has moved the court to stay proceedings, it is appropriate for the court to grant the stay even if it would lack the authority to compel arbitration, and even if the defendant has not requested that the court compel arbitration. *Id.* Because neither a motion to compel nor the authority to compel are necessary prerequisites for a court to order a stay, a court need not determine if arbitration is appropriate before entering an order to stay proceedings. Accordingly, this Court need not decide Glasswall's declaratory relief claim against Monadnock before ordering a stay pending the conclusion of the New York Arbitration.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Stay is **GRANTED**. This matter is hereby **STAYED**. The parties are instructed to file a joint notice with this Court within 30 days of a final decision by the arbitration panel. Aside from Glasswall's Verified Emergency Motion for Expedited Declaratory Relief and to Compel Depositions, for which the Court will enter a separate order, all pending motions are **DENIED AS MOOT**.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 07/11/15.

JOHN W. THORNTON
CIRCUIT COURT JUDGE

**No Further Judicial Action Required on THIS MOTION
CLERK TO RECLOSE CASE IF POST JUDGMENT**

17

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter. The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed and stamped original Order sent to court file by Judge Thornton's staff.

Copies furnished to: Counsel of Record