# Exhibit G

Sara Jayne Kennedy vs HPS 50th Avenue Associates, LLC, et al.
HONORABLE JOHN W. THORTON, JR. on 12/19/2017

```
 1   IN THE CIRCUIT COURT
     OF THE ELEVENTH JUDICIAL CIRCUIT
 2   IN AND FOR MIAMI-DADE COUNTY, FLORIDA

 3   CASE NO. 2015-6405 CA 40
              2014-2090 CA 40
 4            2014-5447 CA 40

 5   SARA JAYNE KENNEDY,
             Plaintiff,
 6
     -vs-
 7
     HPS 50TH AVENUE ASSOCIATES, LLC.,
 8   HPS BORDEN AVENUE ASSOCIATES, LLC.,
     THE RELATED COMPANIES, INC.,
 9   and BRUCE BEAL, et al.,
             Defendant.
10   _____/
     GLASSWALL, LLC,
11           Cross-Plaintiff,
     -vs-
12
     HPS 50TH AVENUE ASSOCIATES, LLC.,
13   HPS BORDEN AVENUE ASSOCIATES, LLC.,
     THE RELATED COMPANIES, INC.,
14   and BRUCE BEAL, et al.,
             Cross-Defendants.
15   _____/

16   * * * * * * * * * * * * * * * * * * * * * * * * *

17                  TRANSCRIPT OF PROCEEDINGS

18
      BEFORE:                JOHN W. THORTON, JR.
19
      DATE TAKEN:            December 19, 2017
20
      TIME:                  9:50 a.m. - 10:18 a.m.
21
      PLACE:                 Dade County Courthouse
22                           73 West Flagler Street
                             Miami, Florida 33130
23
      REPORTED BY:           DANIA ALEN, FPR
24                           AND NOTARY PUBLIC

25   * * * * * * * * * * * * * * * * * * * * * * * * *
```

Case 1:16-cv-00420-ILG-VMS   Document 95-7   Filed 01/09/18   Page 3 of 8 PageID #: 1570

Sara Jayne Kennedy vs HPS 50th Avenue Associates, LLC, et al.
HONORABLE JOHN W. THORTON, JR. on 12/19/2017                                                    Pages 2..5

Page 2

```
 1   APPEARANCES:
 2       GIOVANNA ABREU-O'CONNOR, ESQUIRE
         Marko Magolnick, Attorney at Law
 3       3001 S.W. 3rd Avenue
         Miami, Florida 33129
 4       abreu@mm-pa.com
         APPEARING ON BEHALF OF COLOMBO AND KENNEDY
 5
         JESSE DEAN-KLUGER, ESQUIRE
 6       Jesse Dean-Kluger, P.A.
         1550 Biscayne Boulevard
 7       Miami, Florida 33132
         jdk@jdkpa.com
 8       APPEARING ON BEHALF OF DEFENDANT/CROSS-PLAINTIFF
         GLASSWALL
 9
         ALVIN LODISH, ESQUIRE
10       and RICHARD D. SHANE, ESQUIRE
         Duane Morris, LLP
11       200 S. Biscayne Boulevard
         Suite 3400
12       Miami, Florida 33131-2318
         rdshane@duanemorris.com
13       alodish@duanemorris.com
         APPEARING ON BEHALF OF DEFENDANTS
14
         JAMES P. CINQUE, ESQUIRE
15       Law Offices Cinque & Cinque, P.C.
         845 Third Avenue
16       New York, N.Y. 10022
         cinque845@aol.com
17       APPEARING ON BEHALF OF GLASSWALL
18       JEFFREY GILBERT, ESQUIRE
         Cozen O'Connor
19       200 S. Biscayne Boulevard
         Suite 3000
20       Miami, Florida 33131-2305
         jgilbert@cozen.com
21       APPEARING ON BEHALF OF WESTCHESTER
         INSURANCE COMPANY
22
23
24
25
```

Page 3

1   P R O C E E D I N G S
2       THE COURT: All right. 15-6405. Let me have
3   appearances, please.
4       MR. DEAN-KLUGER: Good morning, Your Honor,
5   Jesse Dean-Kluger on behalf of
6   Defendant/Cross-Plaintiff Glasswall, LLC. Also here
7   with me today is Glasswall's counsel in the New York
8   proceedings, both the federal court and the
9   arbitration, Mr. James Cinque.
10      MR. CINQUE: Good morning.
11      MR. DEAN-KLUGER: He was in town on vacation
12  anyway. He thought it might be helpful for him to
13  show up. You heard his voice, and now you get him in
14  person.
15      MS. ABREU-O'CONNOR: Good morning, Your Honor.
16  Giovanna Abreu-O'Connor on behalf of Ugo Colombo and
17  Sara Jayne Kennedy.
18      THE COURT: All right. Great. Good morning.
19      MR. LODISH: Good morning, Your Honor, Alvin
20  Lodish and Richard Shane on behalf of Monadnock
21  Construction; HPS 50th Avenue Associates, LLC; HPS
22  Borden Avenue Associates, LLC; The Related Companies,
23  Inc.; and Bruce Beal.
24      THE COURT: All right. Good morning.
25      MR. GILBERT: Good morning, Judge. Jeffrey

Page 4

1   Gilbert from Cozen O'Connor on behalf of Westchester
2   Fire Insurance Company.
3       THE COURT: Okay. So what's the story?
4       MR. DEAN-KLUGER: Okay. Your Honor, so we're
5   here on what was noticed as a request for a special
6   set arising out of the Court's instructions from the
7   October 17th hearing where the parties were ordered
8   to submit memorandum and then subsequently request a
9   special set. There was an order in that time period
10  that Your Honor issued denying a motion to lift stay.
11  There was no formal motion to lift the stay, and I'd
12  like to take this opportunity here today to sort of
13  flesh out --
14      THE COURT: I thought this was a status
15  conference.
16      MR. DEAN-KLUGER: Well --
17      THE COURT: Okay.
18      MR. DEAN-KLUGER: I'd love to have a status
19  conference. Great. And that's exactly -- I would
20  love to treat it like one, Your Honor.
21      THE COURT: I didn't see any motions. That's
22  why I was wondering what you're -- where you're
23  headed.
24      MR. DEAN-KLUGER: Only to flesh out what's going
25  on in New York versus these cases here. As a

Page 5

1   beginning point, all of the cases pending before Your
2   Honor were filed well in advance of the federal court
3   action in New York. They predate, all three of them,
4   predate that action.
5       THE COURT: Okay.
6       MR. DEAN-KLUGER: And I'll let Mr. Cinque in a
7   moment flesh out the claims pending up there versus
8   what's pending down here. There are several party
9   defendants here that are not parties to that action.
10  There are several claims that cannot be brought there
11  that were lodged here first.
12      Also, since the last hearing on October 7th --
13      THE COURT: Sounds like you're arguing for
14  something. Okay. Go ahead.
15      MR. DEAN-KLUGER: I'm arguing for more
16  opportunity to practice in front of Your Honor on
17  this case. That's what I'm arguing for today.
18      THE COURT: Nicely put.
19      MR. DEAN-KLUGER: Thank you, Your Honor. And
20  since the -- and since --
21      THE COURT: Is that your mom or your dad who
22  taught you to do that? I mean, I happen to know both
23  of them, and I was just curious.
24      MR. DEAN-KLUGER: It's a hybrid, definitely a
25  hybrid. I try to take the good parts from both of

Case 1:16-cv-00420-ILG-VMS   Document 95-7   Filed 01/09/18   Page 4 of 8 PageID #: 1571

Sara Jayne Kennedy vs HPS 50th Avenue Associates, LLC, et al.
HONORABLE JOHN W. THORTON, JR. on 12/19/2017                                Pages 6..9

Page 6

1  them.
2      THE COURT:  Okay.
3      MR. DEAN-KLUGER:  And I guess I'm going to refer
4  to the transcript from the last hearing where Your
5  Honor indicated that, you know, once the arbitration
6  award was confirmed that you were inclined to open
7  this back up, allow discovery.  They would probably
8  re-file these motions to dismiss on personal
9  jurisdiction, and we'd take that discovery.  The
10 arbitration award has been confirmed.  That is
11 completely over.
12     THE COURT:  Everything?
13     MR. DEAN-KLUGER:  The arbitration award has been
14 confirmed.  We submitted it to Your Honor.  It's been
15 confirmed.
16     THE COURT:  How many arbitrations are there?
17     MR. DEAN-KLUGER:  One.  It's over.
18     THE COURT:  There is only one?
19     MR. DEAN-KLUGER:  No.  There is a pending
20 federal --
21     THE COURT:  Are you in agreement with that
22 Mr. Lodish?
23     MR. LODISH:  That there was one arbitration,
24 yes, there was one arbitration.
25     THE COURT:  Okay.

Page 7

1      MR. DEAN-KLUGER:  The award has been confirmed
2  by stipulation and order of the court.
3      THE COURT:  Okay.
4      MR. DEAN-KLUGER:  There is a federal court
5  proceeding, but it post dates these actions, and I'm
6  going to let Mr. Cinque step up, if you'll allow him,
7  just to sort of flesh out the parties and claims to
8  demonstrate to the Court that, you know, it really is
9  necessary that the claims here are allowed to
10 proceed.  They don't exist up there.  They cannot be
11 brought up there; and, quite frankly, the parties
12 just are not the same.
13     THE COURT:  Okay, Mr. Cinque.
14     MR. CINQUE:  Yes, Your Honor, good morning.  The
15 arbitration award has been confirmed, and Monadnock
16 sued Glasswall in the federal court in New York, A,
17 to confirm the award, which we stipulated to.  The
18 Judge signed the order.  B, there is a claim that
19 there was some sort of a fraudulent conveyance to
20 avoid payment of the judgment.  Those are the claims
21 against Glasswall in New York, and that's it.
22     In your stay order here about a year ago, Your
23 Honor, you said that perhaps the arbitration will
24 resolve some issues, and I will submit that it has.
25 Glasswall --

Page 8

1      THE COURT:  Some.
2      MR. CINQUE:  Well, most.  Glasswall in Florida
3  sued Beal and Related who were not parties in New
4  York.  Glasswall sued the New York/Florida for
5  interference with the contract that was the subject
6  of the arbitration award.  And in the arbitration
7  award, the arbitrators found that, in fact, Monadnock
8  had breached the agreement by refusing to accept
9  delivery of windows as they were being manufactured.
10     So we have a finding now that there was a breach
11 by Monadnock.  It's clear on Page 10 of the award.
12 So in order to prove an interference claim here in
13 Florida, which Glasswall alleged here, we have to
14 prove a contract, which we -- clearly everyone admits
15 there was a contract; knowledge of the contract, I
16 think we can easily establish that the Defendants
17 here in Florida had knowledge of the contract; a
18 breach of the contract, we have the arbitrators'
19 award that, in fact, there was breach by Monadnock.
20 All we have to prove is that the breach was procured
21 by Related and Beal, and we can only prove that here
22 in Florida, nothing to do with the fraudulent
23 conveyance claim that was brought years later.  The
24 fraudulent conveyance claim was asserted just a
25 couple of months ago in New York.

Page 9

1      So, Your Honor, I submit on behalf of Glasswall
2  that the case should proceed here.  They should be
3  allowed to proceed on the claim of tortuous
4  interference with the contract and that the New York
5  case has absolutely nothing to do with that.  The
6  parties are not even in New York; The Related and
7  Beal, they're not parties to those cases.
8      THE COURT:  Okay.
9      MR. CINQUE:  Thank you, Your Honor.
10     MS. ABREU-O'CONNOR:  Your Honor, Giovanna
11 Abreu-O'Connor on behalf of Ugo Colombo and Sara
12 Jayne Kennedy.  With regard to the claims involving
13 Ms. Kennedy and Mr. Colombo, the only things pending,
14 like Mr. Cinque has said, are tortuous interference
15 claims, and those can only be here in Florida.
16 Ms. Kennedy and Mr. Colombo were not parties to the
17 arbitration, and we submit to Your Honor that now
18 they're entitled to a declaratory judgment indicating
19 that they're not liable under the guaranties for the
20 insurance because Monadnock has been determined to
21 have breached the insurance and the bonds that
22 Mr. Colombo and Ms. Kennedy were guarantors of are
23 only triggered if Monadnock was not in breach, and
24 that has been determined by the arbitration award.
25     Similarly, Monadnock was made whole by the

Case 1:16-cv-00420-ILG-VMS   Document 95-7   Filed 01/09/18   Page 5 of 8 PageID #: 1572

Sara Jayne Kennedy vs HPS 50th Avenue Associates, LLC, et al.
HONORABLE JOHN W. THORTON, JR. on 12/19/2017                                    Pages 10..13

Page 10

1  owners of the project. So it did not sustain actual
2  damages under the terms of the bond, and because the
3  declaratory relief claims in this consolidated
4  proceeding were, in reality, resolved by the
5  arbitration, the only issues that remain are the
6  tortuous interference claims. And the parties
7  against whom those claims are, Related, Beal, HPS 50,
8  and HPS Borden are not parties in the New York
9  action.
10     THE COURT: Okay, go ahead.
11     MR. LODISH: Thank you, Your Honor.
12     First of all, I'm not quite sure why we're here
13  'cause the day after they noticed this hearing for
14  status conference Your Honor entered your order --
15     THE COURT: I'm looking at it on the screen.
16     MR. LODISH: -- denying request to lift stay. I
17  could go through lots of things, Your Honor. Both
18  sides agree what is left in this case, and Your
19  Honor's order is correct, the New York litigation
20  goes on. There has been no jurisdiction found over
21  Bruce Beal. There has been no jurisdiction found
22  over The Related Companies. There's been no
23  jurisdiction found over HPS 50 or HPS Borden that are
24  all New York entities and an individual.
25     So, first of all, what's happened before, Your

Page 11

1  Honor, way back was virtually nothing because
2  arbitration was required under the contract. They're
3  arguing taking this -- little snippets out of the
4  arbitration award that said that they should have
5  accepted windows which was a breach of the
6  subcontract. That portion of the arbitration award
7  all went to whether Monadnock was entitled to delay
8  damages. The arbitration panel essentially found
9  because of that fact and others, you don't get delay
10  damages.
11     Did Glasswall counterclaim for breach of the
12  subcontract in arbitration? No. And will that be
13  the final answer on all of that? Absolutely, Your
14  Honor. It was absolutely a compulsory claim in the
15  arbitration. They never brought it and the Court --
16  they didn't find that they breached the subcontract
17  which would lead to any type of remedy, pointed it
18  out because you're not going to get delay damages.
19     There's no dispute that Glasswall was paid every
20  dime under their contract. They're not owed any
21  money. The only issue there today, Your Honor, my
22  client, Monadnock, was awarded approximately
23  $1,500,000 out of the arbitration against Glasswall.
24  Westchester, the surety company, is still in the case
25  'cause they got to pay it because Glasswall hasn't

Page 12

1  paid it. The fraudulent transfer issue goes to the
2  fact that Ugo Colombo sold all the assets of
3  Glasswall during the course of all this for 4 to
4  5 million dollars. So where is the money going to
5  come from to pay Monadnock for the arbitration award.
6     So the issues that Sara Jayne Kennedy and Ugo
7  Colombo have is that they're the indemnitor
8  guaranties on the surety. That's their issue here.
9  That's their claim here is whether they're going to
10  have to pay as the indemnitor guarantors us because
11  Glasswall may or may not have the money. All of that
12  is being litigated right now in New York.
13     And, in fact, Mr. Cinque I guess didn't tell you
14  that Glasswall had -- has filed a motion for
15  abstention up in New York up there saying wait, let's
16  have the Florida court hear it, not you hear it. So
17  that is pending before the federal court now.
18  Glasswall has also filed a motion --
19     THE COURT: Has that been set for argument or
20  no?
21     MR. LODISH: Well, the briefing schedule, I'm
22  just going to give you all of that. Let me
23  short-circuit that by saying that the briefing
24  schedule for all of that will end with opposition's
25  replies at the end of January. So presumably

Page 13

1  sometime in February the federal court will rule on
2  perhaps Glasswall's motion to dismiss the complaint
3  up there, will rule on their abstention request, and
4  then, you know, Westchester also has their matter,
5  which is really the primary matter, 'cause they're
6  the surety. They're going after Colombo and Kennedy
7  as the indemnitor guaranties on all that, and that is
8  all that Kennedy and Colombo were trying to get out
9  of down here. They're trying to get out of their
10  guaranty.
11     All of this is being handled in New York, and
12  I'll turn it over to Mr. Gilbert because there's no
13  question New York is the only jurisdiction where the
14  surety issues and the indemnification and the
15  guaranty can be heard.
16     So, Your Honor, I believe your order denying the
17  request to lift stay was proper. It is still proper.
18  You entered it on November 30th, the day after the
19  notice of hearing, that until the litigation is done
20  up in the federal court in New York, the state court
21  is done because Glasswall withdrew their complaint in
22  the state court to confirm the arbitral award. They
23  agreed to be in federal court, and so there was a
24  stipulation as to the award itself. Everything else
25  is all over the payment to our client for the award

Case 1:16-cv-00420-ILG-VMS   Document 95-7   Filed 01/09/18   Page 6 of 8 PageID #: 1573

Sara Jayne Kennedy vs HPS 50th Avenue Associates, LLC, et al.
HONORABLE JOHN W. THORTON, JR. on 12/19/2017                          Pages 14..17

Page 14

1 and the indemnification and the guaranty. That's
2 what it's all about, Judge, at this point.
3    THE COURT: Okay. I'm getting a lot of shaking
4 heads on the other side from left to right and back.
5    MR. LODISH: That's been true for three years,
6 Your Honor.
7    THE COURT: Let me hear from them.
8    MR. GILBERT: Judge, on behalf of Westchester we
9 support your order denying the request to lift stay,
10 obviously, for the reason that Mr. Lodish just said.
11    There is a stipulation for the briefing schedule
12 in New York that Westchester is supposed to file its
13 motion to dismiss the amended complaint filed by
14 Glasswall and the Colombos by January 9th, 2018, and
15 then the reply papers would be due by them on
16 January 31st, dealing with the -- all the issues that
17 they're seeking to litigate down here.
18    And I'll remind the Court, based upon the
19 indemnity agreement, there is a mandatory forum
20 selection clause, and it just states specifically
21 that indemnitors, which are the Colombos, agree that
22 all actions or proceedings directly or indirectly
23 from the -- arising directly or indirectly from this
24 agreement shall be litigated only in courts having
25 status within the state of New York and consent to

Page 15

1 all the procedural jurisdictional issues.
2    So there is a mandatory forum selection clause
3 with respect to the indemnity agreement. That's
4 what's being litigated in New York exactly right now,
5 and we fully support the order denying the request to
6 lift stay. And I would just like to add my two
7 cents. It's my first hearing. I'm here for Raquel
8 Fernandez, but we're just here on a motion to set a
9 hearing. We're not here on the hearing.
10    THE COURT: Right. No. I got you. You know,
11 it's okay, 'cause I want to hear about what's going
12 on.
13    MR. CINQUE: And, Your Honor, if I may just be
14 heard. We heard a lot about indemnification. It has
15 nothing to do with Glasswall's claim for interference
16 with the contract. That's what I'm here to argue,
17 that there's no reason -- we haven't heard one thing
18 as to why that's going to proceed. Beal and Related
19 intentionally interfered with the contract Glasswall
20 had to provide windows, and as I said before -- and I
21 don't want to repeat myself -- we have a finding of
22 breach. The arbitrators said clearly Monadnock
23 breached the agreements. They used the word breached
24 the agreements by failing to accept delivery of
25 windows. So we now have that finding. We spent

Page 16

1 years trying to get that finding. So what we're
2 asking Your Honor to do is to let Glasswall say,
3 well, the procuring agent of that found breach was
4 Beal and Related, and there is nothing in New York,
5 indemnifications, bonds, nothing has to do with that
6 issue, Your Honor, and that's why at a minimum I
7 think you should permit Glasswall to pursue the claim
8 for tortuous interference against Related and Beal.
9 New York, they haven't heard anything about that
10 claim in New York. It's just not there.
11    THE COURT: All right. Talk to me about that.
12    MR. LODISH: Your Honor, first of all, this is
13 what under, if you -- Your Honor has it, but this is
14 under the issue of responsibility for delay. This is
15 the arbiters' award. This is what they say.
16    "We find that Monadnock wrongfully refused to
17 accept delivery of the windows, including ancillary
18 materials needed for their installation in the fall
19 and winter of 2013, 2014 in breach of the
20 subcontract. While it is true that Glasswall was
21 struggling to meet its contractual obligations and
22 there were quality control issues, when faced with
23 those obstacles, Monadnock did not exercise its right
24 to terminate the subcontract, as it could have done,
25 for failure to meet the agreed-to delivery schedule.

Page 17

1 Rather, it issued a series of notices of default,
2 notices of continuing default. All the while,
3 Glasswall continued to manufacture windows trying to
4 satisfy its contractual obligations. We do not
5 conclude that there was a nefarious reason behind
6 Monadnock's actions, such as a desire to oust
7 Glasswall to pursue use of an affiliated company, but
8 we do find that Monadnock could not, whatever the
9 reason, properly hold Glasswall in proverbial limbo
10 while it decided whether to terminate the
11 subcontracts and hire a new subcontractor or
12 extracted some damages before completion of the
13 window work by Glasswall."
14    That was all to say, so your delayed claims,
15 we're not putting that delay on Glasswall. That was
16 your -- that's more your problem. We are awarding
17 you damages on the defects, you know, and the other
18 issues, et cetera.
19    They didn't make a finding that the contract was
20 breached. And, in fact, to counter their argument
21 about this tortuous interference because what they
22 said was, "When faced with those obstacles, Monadnock
23 did not exercise its right to terminate the
24 subcontracts." What their tortuous interference is,
25 which is not a proper tortuous interference, Judge,

Case 1:16-cv-00420-ILG-VMS   Document 95-7   Filed 01/09/18   Page 7 of 8 PageID #: 1574

Sara Jayne Kennedy vs HPS 50th Avenue Associates, LLC, et al.
HONORABLE JOHN W. THORTON, JR. on 12/19/2017                             Pages 18..21

Page 18

and it would be a waste of this Court's time to hear it, because, as Your Honor knows, you've got to be an unrelated third party to a contract.

If we go into the arbitration award as well as the facts as they've laid it out, Related Companies was a directly interested party in the contract. They were -- they were part of the ownership. HPS, the two HPSs were part of the ownership. Bruce Beal is a corporate officer of Related Companies. So this whole idea that they tortuously interfered with the contract with Monadnock, who was a co-investor in the project, is going to fall on its face legally, Judge.

But the whole point is why do they want this tortuous interference claim? They want it because they say they're not responsible for the indemnification and guaranty obligations under the bond. Well, we still don't know whether, in fact, they have that obligation or not because it's being litigated in federal court in New York, and as he indicated, Glasswall filed in a complaint in New York. They're in New York as a Plaintiff as well.

MR. CINQUE: That's absolutely not true.

MR. DEAN-KLUGER: The only thing filed was in state court to confirm the arbitration award. That was dismissed, and they confirmed it in federal

Page 19

court.

MR. CINQUE: The only claim against Glasswall now, Your Honor, is confirmation that it's been taken cared of and then a fraudulent conveyance claim. And what Mr. Lodish said, Your Honor, the contract at issue here is between Monadnock and Glasswall. That's the contract that had the arbitration clause. That's what was litigated. That's what Monadnock was found to have breached.

Glasswall's asserted claim that these parties that are not parties to the contract, matters between Glasswall and Monadnock, not Beal, not Related, not HPS, the contract to supply windows was those parties, Glasswall and Monadnock, and the claim would be that Monadnock was induced to breach by Related and Beal, who are not parties in New York.

MR. LODISH: Your Honor, let me just -- this one part, here again, from the arbitration award. This is in their -- in the beginning part of the award, just so Your Honor understands the parties.

Parcel A and B had different owners. This is affordable housing development. The development was being constructed under affordable housing plan for the City of New York. This is Page 2 of the arbitration award. Parcel A and B had different

Page 20

owners. HPS 50th Avenue Associates for Parcel A. HPS Borden Avenue Associates for Parcel B. Collectively owners. The owners each had several members. But an affiliate of the Related Companies and Monadnock were principals of both of the owners. Related served, in effect, as the managing owner in connection with the development of the building.

So, Your Honor, this whole tortuous interference issue, Related was, as was Monadnock, was part of the ownership of this project.

MR. CINQUE: Your Honor, the contract was with Glasswall.

MR. LODISH: Excuse me. I wasn't done.

THE COURT: Hold on.

MR. LODISH: Excuse me. Down here we wait. Okay.

THE COURT: No, no, Mr. Lodish, please. Go ahead.

MR. LODISH: Your Honor, so the issue is, as it happened before, they are throwing -- they are throwing suits and claims wherever they can. They're trying to see what is going to stick. Your Honor, the whole issue that you focused on, which was correct and this was -- the order was the second time you had done it in two years was, wait a second,

Page 21

these are intertwined. The relief and the claims are intertwined and that we have to get to a point where the arbitration award, the enforcement of it, the surety, the indemnification, and the guaranties are decided once and for all.

For anything to go forward here on any of these claims runs the real risk of contradicting what's going on in New York, and as Mr. Gilbert pointed out and I pointed out, the briefing schedule under the current issues are all supposed to be done by the end of January and presumably sometime shortly thereafter there will be some decisions. And that would be the only proper time for there even to be a consideration of anything down here, Your Honor.

THE COURT: Okay. All right.

MR. CINQUE: Yes, Your Honor, just on the contractual arrangements. Monadnock had an agreement with the owners, a construction agreement where they were to supervise the construction. Then Monadnock entered into a subcontract with Glasswall to provide the windows. So there's no privity between Glasswall and the owners. So this conversation about who the owners are is irrelevant. It's just Glasswall and Monadnock.

THE COURT: All right. Here is what I'm going

Case 1:16-cv-00420-ILG-VMS Document 95-7 Filed 01/09/18 Page 8 of 8 PageID #: 1575

Sara Jayne Kennedy vs HPS 50th Avenue Associates, LLC, et al.
HONORABLE JOHN W. THORTON, JR. on 12/19/2017                              Pages 22..24

Page 22

1  to do.  I'm going to leave the stay order in place
2  right now.  I want this set in 90 days, and you-all
3  get a date set, and I want you to set it with Judge
4  Thomas, because my five years in the CBL is up this
5  January.  Okay.  So Judge Thomas and Judge Butcko, in
6  the blind filing system, Judge Thomas got it.
7      MR. LODISH:  Then it's going back to him, Your
8  Honor.
9      THE COURT:  Why?
10     MR. LODISH:  Because he had it before you had it
11 before we moved it to complex.
12     THE COURT:  Oh, is that true?
13     MR. LODISH:  He had it, yeah.  That's perfect.
14     THE COURT:  Then the blind filing system may be
15 not so blind.  I don't know, but I want this set in
16 90 days.  I want to know what's going on in New York,
17 and then at that particular point, it's going to be
18 up for a decision as to whether we reopen the case or
19 not.  In other words, I want you-all telling Judge
20 Thomas, that's the issue that's going to be set in
21 front of him, do we take this off inactive status or
22 not.  Okay.
23     MR. DEAN-KLUGER:  And, Your Honor, just to be
24 clear so that we can get this written out here and
25 not have to, you know, come back or anything, say 90

Page 23

1  days to set a status conference in front of Judge
2  Thomas?
3      THE COURT:  Well, you can set a hearing.  I
4  mean, if you-all -- let's put it this way.  If
5  you-all find out that the motions are granted,
6  denied, whoever, whatever happens up in -- up there
7  in New York, I'm sure he'll want to know what
8  happened in that regard.  Okay.  And if certain
9  things -- you know, you know what you're going to do
10 as far as whatever happens up in New York, you know,
11 Mr. Kluger.  So whatever happens, you know, file it
12 in front of Judge Thomas.  Tell him that I wanted it
13 revisited in 90 days after those issues were decided
14 in New York.  All right.
15     MR. DEAN-KLUGER:  Okay.
16     THE COURT:  Okay.
17     MR. DEAN-KLUGER:  Thank you, Your Honor.
18     MR. LODISH:  Thank you, Your Honor.
19     MR. CINQUE:  Thank you, Your Honor.
20     (Thereupon, the hearing was concluded at 10:18
21 a.m.)

Page 24

                C E R T I F I C A T E

STATE OF FLORIDA

COUNTY OF MIAMI-DADE

     I, Dania Alen, Court Reporter, do hereby certify that
I was authorized to and did stenographically report the
foregoing proceedings and that the transcript, pages 1
through 23 is a true and correct record of my
stenographic notes.
     I further certify that I am not a relative, employee,
attorney, or counsel of any of the parties, nor am I a
relative or employee of such attorney or counsel, nor am
I financially interested in the foregoing action.

     Dated this 30th day of December, 2017.



                    *Dania Alen*
                    Dania Alen, FPR