# Exhibit F



March 4, 2015

**Via Email and Fed Ex**
Glasswall, LLC
3550 N.W. 49th Street
Miami, FL  33142
Attn: Mr. Ugo Colombo, Chairman

Re: (a) Agreement between Monadnock Construction, Inc. ("Monadnock) and Glasswall, LLC ("Glasswall") dated January 3, 2013 for the project known as HPS "Parcel A" (Bond No. K08840295); (b) Agreement between Monadnock and Glasswall dated January 3, 2013 for the project known as HPS "Parcel B" (Bond No. K08840258) (collectively, the "Agreements"); and (c) Agreement to Amend Contracts dated April 4, 2014 (the "Amendment Agreement").

## NOTICE OF DEFAULT

Dear Mr. Colombo:

This letter shall serve as written Notice of Default for the above referenced Agreements and Amendment Agreement pursuant to Article 7.2.1 of the Agreements. As you are aware, the Agreements were executed on January 3, 2013 and required Glasswall to commence production and delivery of windows, doors and other fabricated materials for a complete window wall system (collectively, "Work") on April 15, 2013 for the HPS Parcels A and B sites (collectively, the "Projects") and commence shipment of the Parcel A windows on September 1, 2013 and the Parcel B windows on July 1, 2013 (see Article 9.3 of the Agreements).

The Agreements required Glasswall to fabricate and store off site all windows and doors "as necessary to allow for timely and continuous installation of windows in conformance with Construction Managers requirements" (Rider 5, ¶17.d.2) and to provide "sufficient material to jobsite for both [buildings] to be erected at a pace of two floors per week or as requested by the Construction Manager" (Rider 5, ¶37). The Agreements also required Glasswall to "manufacture a sufficient amount of overrun extrusions for all types of windows in the event that damages occur during the construction of the project" and to "provide and maintain adequate and

available amount of material to repair and or replace units during the course of project" (Rider 5, ¶38). The Agreements further required Glasswall to "order sufficient extrusion metals, louvers, etc. so as not to cause shortages or delays to the fabrication and delivery schedule of this job" including "glass in various types and sizes" (Rider 5, Items Discussed at the Window Buy Meeting on 9/21/12, 13). Moreover, time was "of the essence" on all of Glasswall's obligations in the Agreements (Article 9.4).

Glasswall never timely met any of its contractual obligations. As a result, Monadnock sent Glasswall Notices of Default and /or Continuing Default on September 16, 2013, October 23, 2013, and December 31, 2013. The Agreements required Glasswall "to be 6 floors below the Superstructure Contractor" (Rider 5, ¶44b). In fact, by the time Monadnock had erected the entire concrete superstructure of both the HPS A and B buildings Glasswall had still not shipped a single window to the Projects. As a result of all the foregoing and the breaches listed in the Notices of Default and /or Continuing Default, Monadnock terminated the Agreements on January 13, 2014.

In order to mitigate Monadnock's damages, on April 4, 2014, Monadnock entered into the Amendment Agreement to provide for Glasswall's shipment of windows to the Projects. The Amendment Agreement was entered into by Glasswall, Monadnock, the bonding company, Westchester Fire Insurance Company ("WFIC"), the project owners, HPS 50th Avenue Associates LLC and HPS Borden Avenue Associates LLC (collectively, "HPS") and the indemnitors on the bonds, Ugo Colombo and Sara Jayne Colombo Kennedy (collectively, "Indemnitors"). The Amendment Agreement was structured so that WFIC would pay Glasswall for windows produced in its manufacturing facility and Monadnock would pay WFIC for windows received at the Projects. The Amendment Agreement also deferred all claims that had accrued thru April 4, 2014 until after Glasswall had completed its work under the Agreements or was terminated. Upon information and belief, unbeknownst to Monadnock at that time, WFIC and Glasswall entered into a side agreement whereby WFIC agreed to pay Glasswall an additional 7% above and beyond its Agreements price in order to induce Glasswall to complete its Work.

Pursuant to the Amendment Agreement, Monadnock withdrew its termination of Glasswall without prejudice and Glasswall agreed to commence delivery of the windows it had produced to date and production of the remaining windows and other materials required to complete its Work, pursuant to a schedule that was annexed to the Amendment Agreement.

The schedule required Glasswall to complete production of all windows by October 28, 2014. The Agreements required Glasswall to complete its Work so that the Projects could be completed by "4th quarter of 2014 to 1st quarter of 2015" for Parcel A (Rider 5, ¶44c) and "3rd quarter of 2014" for Parcel B (Rider 5, ¶43c). The Amendment Agreement further required Glasswall to deliver completed windows "on a continuous basis to the Project as expeditiously as possible consistent with the Production Schedules" (Amendment Agreement, ¶6).

By October 28, 2014, Glasswall had neither completed production of the windows nor delivered all the windows it had produced. Instead, Glasswall first slowed down its shipment of completed windows and then stopped the deliveries completely, even though it had many

truckloads of windows at its facilities ready for shipment. Glasswall also slowed its production of the remaining windows and other fabricated materials. Glasswall explained that it would not continue shipment of completed windows or production of new windows until it was paid in advance by WFIC its entire contract balance. Glasswall also demanded that Monadnock pay WFIC in advance for Glasswall's remaining Work, even though it had neither been produced nor delivered to the Projects.

On November 14, 2014, WFIC acceded to Glasswall's duress and paid Glasswall its entire contract balance on both Agreements. On November 24, 2014, Monadnock likewise acceded to Glasswall's duress and paid WFIC the entire remaining contract balance on the Agreements without deduction. The Monadnock payment was made with a full reservation of rights and in order to mitigate the damages resulting from Glasswall's breaches of the Agreements that were delaying completion of the Projects.

Despite being paid in advance and in full for all the Work required under the Agreements, Glasswall has breached same by not timely completing its Work. Glasswall has caused delays to other contractors in the completion of their work. In fact, Monadnock has had to or will have to pay said contractors for damages they have incurred due to Glasswall's delays. Pursuant to the General Conditions (AIA A201-2007, ¶6.2.3) of the Agreements, Monadnock demands reimbursement for the amounts it has paid other contractors for delay damages caused by Glasswall.

In addition, Glasswall has delayed the completion of the Projects. Monadnock demands damages for delay to the Projects as well. Moreover, it has come to Monadnock's attention that several of Glasswall's suppliers have not been paid in full. Monadnock demands that Glasswall pay all unpaid suppliers of materials incorporated into the Work Glasswall supplied to the Projects. It has further come to Monadnock's attention that Glasswall has ceased operations and will not be able to fulfill any of its warranty obligations. Monadnock demands assurances from Glasswall that it has the capability to, and in fact will, stand behind its warranties should defective Work be discovered. The following is a partial list of the outstanding and/or defective Work to date.

1. 4 terrace doors for Parcel B remain to be supplied;
2. Over 150 window casements were supplied with the handle on the wrong side of the casement and need to be corrected;
3. Replace all broken windows delivered to the Projects;
4. All casements with noted IBA deficiencies including but not limited to structural glazing leak repairs, gasket repairs and casement edge delineation repairs, must be corrected;
5. PE stamped shop drawings and structural calculations must be provided;
6. All warranties required by the Agreements must be provided and the companies behind the warranties including but not limited to Glasswall, Keymark and AGC, must be capable of satisfying the warranty obligations;
7. All LEED documentation required by the Agreements must be provided;
8. Field measured metal infill panels at three and four way window system transitions must be provided;
9. The picture frame metal for Parcel B storefront must be provided;

    10. All missing or damaged painted finished metal alucobond panels must be provided;

    11. All window panels that were not supplied with tree attachment clips (or that were supplied with the clips installed in the wrong location) must be supplied, installed and/or corrected, as needed;

    12. All windows with micro bubble silicon sealant deficiencies noted in the IBA reports must be corrected;

    13. All limit arms without a visible DOH stamp must be corrected;

    14. All deficiencies, if any, in the hoist run apartment windows must be corrected;

    15. All missing interior finish metal trim material, if any, must be supplied;

    16. All missing exterior metal coping material must be supplied;

    17. All material certifications must be supplied;

    18. All missing locksets for the balcony doors must be supplied;

    19. Windows for each roof bulkhead must be supplied;

    20. All overrun extrusions must be supplied;

    21. All missing Parcel B ACM panel work must be supplied;

    22. All missing sheet metal left handed clips must be supplied;

    23. All missing coping fasteners must be supplied;

    24. All missing parapet hook anchors must be supplied;

    25. All missing sealant must be supplied;

    26. All missing fasteners must be supplied;

    27. All missing fist brackets must be supplied;

    28. All additional window locksets must be supplied;

    29. All touch up spray paint must be supplied; and,

    30. Final lien waivers for all suppliers must be provided.

In addition, Monadnock demands reimbursement for damage caused to the overhead protection by Glasswall's truckers, and damage caused to the finished roofs, due to Glasswall's late delivery of windows. Monadnock also demands reimbursement for all additional costs it has or will incur due to Glasswall's defective, delayed or incomplete work.

Monadnock demands that Glasswall cure its defaults within seven (7) working days of receipt of this Notice. Monadnock reserves its rights under the Agreements and Amendment Agreement including the right to execute Glasswall's work pursuant to the Agreements (Article 3.4) and/or to terminate the Agreements (Article 7.2.1).

This letter is written without prejudice to Monadnock's contractual and bond rights and shall not be construed as a waiver, estoppel or modification of any or all of Monadnock's rights, remedies and defenses, legal or equitable, whether expressly mentioned herein or not, all of which remain reserved. Please be guided accordingly.

Very truly yours,

Monadnock Construction Inc.

By: _____
Greg Bauso, Senior Vice President

cc: Henry Minissale, WFIC
    Frank Monterisi, HPS