Exhibit L

<u>AMERICAN ARBITRATION ASSOCIATION</u>
<u>Construction Arbitration Tribunal</u>

In the Matter of the Arbitration between:

MONADNOCK CONSTRUCTION, INC.,

                                        Claimant,

                -and-

GLASSWALL, LLC,

                                        Respondent.

AAA Case No. 02-15-0002-8160

## **AWARD OF ARBITRATOR**

We, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the arbitration agreements contained in the subcontracts entered into between the parties, dated as of January 3, 2013 (collectively, "Subcontracts"), and having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby AWARD as follows:

## **<u>PROCEEDINGS</u>**

The panel conducted nine, non-consecutive evidentiary hearings in this matter beginning on November 14, 2016 and ending on February 28, 2017. By agreement, the parties submitted lengthy briefs and reply briefs, the last of which were submitted on June 5, 2017. Thereafter, the panel held a telephone conference with counsel for the parties to hear further arguments on several specific points raised by the post hearing submissions.

1

## THE PARTIES

Monadnock Construction, Inc. ("Monadnock") is a general contractor/construction manager.  Glasswall, LLC ("Glasswall") is a fabricator of curtain walls and windows based in the State of Florida.

## THE BUILDINGS, THE PRIME CONTRACTS & THE SUBCONTRACTS

### The Buildings

The dispute concerns the development of two high rise residential buildings in Long Island City, Queens County (collectively, "Buildings"), together with the work related to the design, fabrication and delivery of window wall units to enclose the Buildings (collectively, "Window Work").  The development was known as Hunters Point South ("HPS") and the Buildings were designated as Parcel A, a 31-story 619 residential building located at 1-50 50th Avenue, and Parcel B, a 32-story 306-unit residential building located at 1-55 Borden Avenue. The development was being constructed under an affordable housing plan through the City of New York.  Parcel A and Parcel B had different owners, HPS 50th Avenue Associates, LLC for Parcel A; and HPS Borden Avenue Associates, LLC for Parcel B (collectively, "Owners").  The Owners each had several members, but an affiliate of The Related Companies ("Related") and Monadnock were principals of both of the Owners.  Related served, in effect, as the managing owner in connection with the development of the Buildings.

### The Prime Contracts

In February, 2013, Monadnock and the Owners entered into separate, but identical agreements (except for address and scope of work) for the design and construction of the Buildings

2

(inclusive of the Window Work) at Parcel A and Parcel B (collectively, "Prime Contracts"), with Monadnock serving as the construction manager for the Owners.  The Prime Contracts did not contain guaranteed maximum prices, and Monadnock served in a no-risk position concerning the costs and timing of construction of the Buildings (inclusive of the Window Work), absent breach of its duties to cause the Buildings to be constructed on time and free of defects and otherwise in strict accordance with the subcontracts (inclusive of the Subcontracts for the Window Work.) The Prime Contracts also provided that the trade contractors/subcontractors (collectively, "Subcontractors") would contract directly with Monadnock.  The Owners were to pay Monadnock for the work performed by the Subcontractors, and Monadnock would pass payment onto the Subcontractors in accordance with the terms of their respective subcontracts.  The form of the subcontract to be used with the Subcontractors was annexed as an exhibit to the Prime Contracts, providing for a direct contractual relationship between Monadnock and the Subcontractors and expressly negating any contractual relationship between the Subcontractors and the Owners.

The Subcontracts

Both Subcontracts for Parcel A and Parcel B provided that Glasswall, among other things, was to assist with the design and to fabricate the complex, custom made, glass window wall system comprising the Window Work.  There was to be a shop drawing process governing the Window Work, and Glasswall was to commence production "on or about" April 15, 2013, and be ready to ship the windows portion of the Window Work for Parcel B on July 1, 2013 and for Parcel A on September 1, 2013.  The dates for shipment were pushed back on consent of the parties until September 16, 2013 (Parcel B) and October 1, 2013 (Parcel A).  The Subcontracts also provided that the pace of delivery of the windows portion of the Window Work was to be such so

3

as to allow for the windows to be installed six floors below the rising superstructure of the Buildings. The "Subcontract Sum" under the Subcontracts for the Window Work at Parcel A was $8,412,502 and for the Window Work at Parcel B was $4,587,498, respectively.

The Subcontracts each contained handwritten language inserted after Article 3.3.1 for Parcel A and for Parcel B, respectively, reading as follows:

"Liquidated damages will be capped at $300,000", and "Liquidated damages will be capped at $200,000."

Article 3.3.1 of the Subcontracts, which was not substantively amended by the parties, reads as follows:

"Liquidated damages for delay, if provided for in Section 9.3 of the Agreement, shall be assessed against the Manufacturer (Glasswall) only to the extent caused by the Manufacturer or any person or entity for whose conduct the Manufacturer may be liable, and in no case for delays or causes arising outside the scope of the Subcontract."

Despite this apparent handwritten limit on "liquidated damages," Article 9.3 does not provide for liquidated damages.

Article 2 of the Subcontracts provide, in essence, that Glasswall had the same duties, responsibilities and rights toward Monadnock as Monadnock had toward the Owners.

Amendment of Subcontracts

In January, 2014 the parties were engaged in a continuing dispute concerning timing of delivery, costs, delays, payment and other issues related to the Window Work. Actions were commenced in Florida and New York between Glasswall's surety, Westchester Fire Insurance Company ("Westchester"), indemnitors of Westchester, Monadnock, Glasswall and the Owners.

4

In April, 2014 Glasswall, Westchester, Monadnock, the Owners and indemnitors of Westchester entered into an agreement entitled "Agreement to Amend Contracts" ("Amended Agreement").

Under the Amended Agreement, (i) Monadnock agreed to withdraw its notice of default of the Subcontracts and its bond claims without prejudice, (ii) Westchester agreed to advance moneys to Glasswall and its suppliers for windows fabricated and to be fabricated, (iii) Glasswall agreed to deliver, and Monadnock agreed to accept, Window Work that had been fabricated, (iv) Glasswall agreed to commit to complete its Window Work under the Subcontracts, and (v) Monadnock agreed to pay the amounts due under the Subcontracts as the Window Work progressed and as windows were delivered. The progress payments would be paid to Westchester in escrow for the benefit of Glasswall. Glasswall and Monadnock also agreed to waive their respective rights to terminate the Subcontracts based upon events of default occurring prior to the Amended Agreement. All other rights were reserved.

## SUMMARY OF CLAIMS & DEFENSES

### Monadnock's Claims

Summarily, Monadnock asserts that Glasswall delayed completion of the Buildings by failing to timely perform the Window Work. Monadnock also claims that many of the windows delivered as part of the Window Work had significant defects which required field remediation work paid for by Monadnock. Monadnock refers to damages related to defects in the windows portion of the Window Work as "performance damages." Monadnock also seeks a category of damages it refers to as "Soft Costs" which are akin to delay damages and consist of increase in insurance costs, added inspection costs, increased bond and subsidy costs and legal fees to various

law firms (but not the litigation fees charged by counsel that represented Monadnock in this arbitration proceeding).   In all Monadnock seeks damages as follows:

| | |
|---|---|
| Delay Damages: | $7,648,302.77 |
| Performance Damages: | $2,446,535.98 |
| Soft Costs: | $7,261,919.16 |
| Grand Total: | $17,356,757.91, plus interest |

Monadnock has been paid in full by the Owners, and Glasswall has been paid in full by Monadnock, for the Window Work.

<strong>Glasswall's Claims</strong>

There are no affirmative claims from Glasswall before the panel.

<strong>Glasswall's Defenses to Monadnock's Claims</strong>

In addition to challenging certain specific damage claims for, among other things, contractual defenses or for being too speculative, Glasswall has asserted a number of fundamental defenses that warrant separate mentioning.

1.     Defense of Lack of Standing

It is undisputed that Monadnock was reimbursed by the Owners for all costs incurred for the performance of the Window Work.  This include, without limitation, all additional construction costs, escalations, extended general conditions and additional insurance and bond interest costs.  Because of this, Glasswall argues, in essence, that Monadnock suffered no damages

6

and, therefore, cannot recover damages from Glasswall. Glasswall goes on to argue that if there were damages caused by Glasswall, a point it does not concede, it is the Owners that sustained the damages because they reimbursed Monadnock for all increased costs. Since there is no privity between the Glasswall and the Owners, Glasswall argues there can be no recovery by Monadnock from Glasswall.

To counter this lack of standing argument, Monadnock principally relies on the application of the collateral source rule and reference to the pass-through clause found at Article 2 of the Subcontracts.

## 2.     Allegation that the Subcontracts Capped Delay Damages at $300,000 and $200,000

Glasswall argues that even if it were responsible for delays relating to the completion of the Buildings, the damages that could be assessed by Monadnock against Glasswall were capped at $300,000 for Parcel A and $200,000 for Parcel B. Glasswall argues that this was clearly the intention of the parties when they added the handwritten language to Article 3.3.1 of the Subcontracts capping the amount of "liquidated damages." In essence, Glasswall argues that "liquidated damages" should read "delay damages."

Monadnock argues in opposition to this cap that the handwritten clause referred specifically to "liquidated damages," and that the entire clause to which the handwriting was added (Article 3.3.1) is applicable only if liquidated damages are "provided for in Section 9.3," and it is undisputed that no liquidated damages are provided for in Article 9.3 of the Subcontracts. Accordingly, Monadnock argues that the cap has no application to the claims asserted.

## GENERAL FINDINGS

1.     The Issue of Standing

We find the collateral source rule to be inapplicable to this contract dispute. However, we do find that the pass-through clause found in Article 2 of the Subcontracts is controlling and permits Monadnock to seek the damages sought in this proceeding.  While the evidence established that the Owners have no intention of pursuing Monadnock for the increased costs incurred, we find that under the Prime Contracts the Owners could seek reimbursement if Monadnock breached the Prime Contract by failing to perform its duties, including failing to cause its Subcontractors to perform their work in strict accordance with the requirements of their respective subcontracts.  For instance, at Article 6 of the Prime Contracts, Monadnock warrants that the work will be "free from improper workmanship and defective materials and in strict conformance with the applicable Trade Contract.......".  Furthermore, in Article 9(d) of the Prime Contracts, Monadnock is in default if it fails to cause its Subcontractors to complete their work on time, as required under Article 13.  To the extent that the Subcontractors' work did not comply with this standard, Monadnock could be held liable to the Owners.  Therefore, if, as alleged by Monadnock, the Window Work exhibited poor workmanship, was defective or not in compliance with the plans and specifications, or was delayed and not on schedule, Glasswall would be liable to Monadnock, as Monadnock would be liable to the Owners.

Accordingly, because Article 2 of the Subcontracts binds Glasswall to the same extent that Monadnock is bound to the Owners under the Prime Contracts, we find that Monadnock is permitted to pursue the claims asserted here.  Again, the fact that the Owners do not intend to pursue the claims does not diminish their ability to do so, and that is an obligation which Glasswall undertook.

8

2.     The Limits on "Liquidated Damages"

We find that the limits on "liquidated damages" of $300,000 and $200,000 for Parcel A and Parcel B, respectively, are not applicable to the claims asserted by Monadnock in this proceeding. The Subcontracts clearly state that the clause will apply only if liquidated damages are provided in Article 9.3, and the simple fact is that there are no liquidated damages provided for in that Article. As such, we find that the language has no application. We sympathize with Glasswall's speculative argument that the parties must have meant for the cap to apply to all delay damages, whether liquidated or not, and we are troubled by the possibility of an unfair overreach by Monadnock at the time of negotiations. However, Glasswall did not provide testimony or documentary evidence to show what was discussed during the negotiations and why the language was inserted in Article 3.3.1 and no liquidated damages inserted in Article 9. Therefore, we are left with the language of the Subcontracts themselves, which we find does not support the defense. In essence, Glasswall asks the Panel to change the handwritten phrase from "Liquidated Damages" will be capped at $200,000 ($300,000) to "Delay Damages" will be capped at $200,000 ($300,000), and we respectfully decline to do so.

## SPECIFIC FINDINGS ON THE CLAIMS

### Delays To The Window Work

1.     The Issue of Responsibility for Delay

Glasswall argues that in October-November, 2013 it had approximately 1,000 additional windows completed along with other Window Work all of which were available for delivery, but that Monadnock refused delivery. Glasswall introduced evidence to suggest that the actual reason Monadnock would not accept delivery of the completed windows was because it

demanded $3,000,000 in delay damages from Glasswall before it would continue with the Subcontracts and/or that Monadnock wished to hire an affiliated company to supply the windows. Around this time meetings were held, default notices were issued, and no new windows were delivered until after the Amended Agreement was executed in April, 2014. This delay, Glasswall argues, was not its responsibility but rather is attributed to Monadnock's conduct.

Monadnock did not materially dispute its refusal to accept the completed windows and ancillary Window Work, but countered it by arguing that at that time it had paid Glasswall more than $3,000,000, it had not obtained any windows, and had serious doubts as to whether Glasswall could complete the Window Work. If Glasswall could not complete, Monadnock would need to retain a substitute window manufacturer and any windows paid for and received from Glasswall would be useless and would need to be replaced.

We find that Monadnock wrongfully refused to accept delivery of the windows, including ancillary materials needed for their installation in the Fall and Winter of 2013-2014, in breach of the Subcontracts. While it is true that Glasswall was struggling to meet its contractual obligations, and there were quality control issues, when faced with those obstacles Monadnock did not exercise its right to terminate the Subcontracts as it could have done for failure to meet the agreed to delivery schedule. Rather it issued a series of Notices of Defaults and Notices of Continuing Defaults, all the while Glasswall continued to manufacture windows, trying to satisfy its contractual obligations. We do not conclude that there was a nefarious reason behind Monadnock's action, such as a desire to oust Glasswall to pursue use of an affiliated company, but we do find that Monadnock could not, whatever the reason, properly hold Glasswall in proverbial limbo while it decided whether to terminate the Subcontracts and hire a new subcontractor or exacted some damages before completion of the Window Work by Glasswall. We were

10

significantly persuaded by the ample documentary evidence showing that Monadnock would not accept Window Work without a signed agreement resolving the disputes that had arisen.

<u>Lack of a Baseline Schedule or Critical Path Schedule</u>

It was not possible to accurately assess damages for delay without a baseline schedule containing a critical path schedule to compare it to the as built schedule. Monadnock admitted that there was no baseline schedule (including a critical path) prepared by it because, in essence, it did not need one. Without a baseline schedule with a critical path presented to Glasswall, there is nothing upon which we can determine how Glasswall impacted that baseline schedule, nor would Glasswall know how its delays would impact the baseline schedule. It is clear that Glasswall did cause delays and breached its Subcontracts by failing to deliver in accordance with the time requirements set forth in its Subcontracts, but without a baseline schedule against which an as-built schedule is compared, we are unable to determine which delays became the controlling delays and who was responsible for those controlling delays.

<u>Delay Damages</u>

In addition to the issues we found assessing blame to Glasswall for delays as outlined above, we also find that certain categories of delay damages, even if Glasswall were responsible for the associated delays, could not be properly assessed against it.

The significant amount paid to Subcontractors for escalations, we find cannot be properly assessed. The executed subcontracts (Eckert and Glasswall) submitted into evidence provide that escalations were to be borne by the Subcontractors and not Monadnock. Additionally, the executed subcontracts and the form subcontract annexed to the Prime Contracts provide at Article 4.1 (C) that the Subcontractors may be required, at no additional charge to Monadnock, to

do work out of sequence and perform "comeback work." We were not persuaded by Monadnock's argument that these clauses applied only to the initial work period and not for any extended period. These types of subcontractor clauses are specifically included in subcontracts to avoid delay damages claims and escalation charges against the general contractor or construction manager.

In addition, the claims for "bond interest" and "subsidy interest" were never adequately explained or established by Monadnock or its expert. The same is true of the claim for reimbursement of legal fees, with Monadnock's witness, at one point, being unaware of which entity a particular law firm was representing or why the fees should be chargeable to Glasswall. Under such circumstances we would have declined to award these damages even if entitlement were to be found.

### Performance Damages

The evidence established that Glasswall was paid for some materials it did not supply or some which required extensive field remediation. In fact, Glasswall has conceded that a credit of $308,739.16 is due to Monadnock for such matters. We have carefully reviewed the category of damages referred to by Monadnock as "Performance Damages" and have awarded such damages as indicated in the attached Schedule A.

### Schedule A

Schedule A to this Award is a list of all damages sought by Monadnock and the amount awarded, if any, for each item. Schedule A is hereby made part of this Award.

### MONETARY AWARD

Based upon our findings outlined above and the amount awarded for each item of damages sought by Monadnock as indicated at Schedule A, Monadnock Construction, Inc. is

hereby Awarded the sum of $1,280,003.25 against Glasswall, LLC with interest at the rate of 5% per annum commencing on March 5, 2015 which calculated to August 31, 2017 totals $159,289.61 for a grand total of $1,439,292.86

The administrative fees and expenses of the American Arbitration Association totaling $29,986.30 shall be borne as incurred, and the compensation and expenses of the arbitrators $137,174.65 shall be shared equally by the parties so that Respondent shall pay to Claimant the sum of $59,962.32.

Therefore, within 30 days of the date that this Award is transmitted to counsel for the parties Respondent shall pay the Claimant the total sum of $1,499,255.18.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

8/29/17
Date

Thomas J. Rossi

Date

Susanna S. Fodor

Date

Michael Oscar Renda

13

Schedule A to this Award is a list of all damages sought by Monadnock and the amount awarded, if any, for each item. Schedule A is hereby made part of this Award.

## MONETARY AWARD

Based upon our findings outlined above and the amount awarded for each item of damages sought by Monadnock as indicated at Schedule A, Monadnock Construction, Inc. is hereby Awarded the sum of $1,280,003.25 against Glasswall, LLC with interest at the rate of 5% per annum commencing on March 5, 2015 which calculated to August 31, 2017 totals $159,289.61 for a grand total of $1,439,292.86

The administrative fees and expenses of the American Arbitration Association totaling $29,986.30 shall be borne as incurred, and the compensation and expenses of the arbitrators $137,174.65 shall be shared equally by the parties so that Respondent shall pay to Claimant the sum of $59,962.32.

Therefore, within 30 days of the date that this Award is transmitted to counsel for the parties Respondent shall pay the Claimant the total sum of $1,499,255.18.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

_____          _____
Date                                             Thomas J. Rossi


8/29/17
_____          _____
Date                                             Susanna S. Fodor


_____          _____
Date                                             Michael Oscar Renda

13

Schedule A to this Award is a list of all damages sought by Monadnock and the amount awarded, if any, for each item.  Schedule A is hereby made part of this Award.

## MONETARY AWARD

Based upon our findings outlined above and the amount awarded for each item of damages sought by Monadnock as indicated at Schedule A, Monadnock Construction, Inc. is hereby Awarded the sum of $1,280,003.25 against Glasswall, LLC with interest at the rate of 5% per annum commencing on March 5, 2015 which calculated to August 31, 2017 totals $159,289.61 for a grand total of $1,439,292.86

The administrative fees and expenses of the American Arbitration Association totaling $29,986.30 shall be borne as incurred, and the compensation and expenses of the arbitrators $137,174.65 shall be shared equally by the parties so that Respondent shall pay to Claimant the sum of $59,962.32.

Therefore, within 30 days of the date that this Award is transmitted to counsel for the parties Respondent shall pay the Claimant the total sum of $1,499,255.18.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration.  All claims not expressly granted herein are hereby denied.

_____        _____
Date                                         Thomas J. Rossi


_____        _____
Date                                         Susanna S. Fodor


_____        _____
Date                                         Michael Oscar Renda

8/29/17

13

I, Thomas J. Rossi, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is our Final Award.

8/29/17
_____
Date

_____
Thomas J. Rossi


I, Susanna S. Fodor, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is our Final Award.


_____
Date

_____
Susanna S. Fodor


I, Michael Oscar Renda, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is our Final Award.


_____
Date

_____
Michael Oscar Renda

14

I, Thomas J. Rossi, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is our Final Award.

_____
Date

_____
Thomas J. Rossi

I, Susanna S. Fodor, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is our Final Award.

_8/29/17_
Date

_____
Susanna S. Fodor

I, Michael Oscar Renda, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is our Final Award.

_____
Date

_____
Michael Oscar Renda

14

I, Thomas J. Rossi, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is our Final Award.

_____          _____
Date                                             Thomas J. Rossi

I, Susanna S. Fodor, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is our Final Award.

_____          _____
Date                                             Susanna S. Fodor

I, Michael Oscar Renda, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is our Final Award.

_8/29/17_____          _____
Date                                             Michael Oscar Renda

14

# Schedule A

*Monadnock v. Glasswall*

| # | Subcontractor | Category | Amount of Damages |
|---|---|---|---|
| 1 | All Fasteners (Coping Fasteners) | Performance Damage | $305.68 |
| 2 | All Fasteners (Coping Fasteners) | Performance Damage | $379.12 |
| 3 | RSG Caulking & Waterproofing CRSG Scaffold) | Performance Damage | $1,678.70 |
| 4 | RSG Caulking & Waterroofing (RSG Rigging) | Performance Damage | $462,131.00 |
| 5 | Ornamental Erectors (Union Workers to Reglaze Windows) | Performance Damage | $242,547.00 |
| 6 | Digital Buyer (Casement Window Reversal Equipment) | Performance Damage | $975.25 |
| 7 | Leed Himmel Industries (Tree Bracket Engineering) | Performance Damage | $0.00 |
| 8 | Ornamental Erectors (Fix Tree Brackets and Re-Install Trees) | Performance Damage | $0.00 |
| 9 | Hadco Metal Trading (Metal Closure Pieces) | Performance Damage | $0.00 |
| 10 | Pride Equipment (Boom Lift) | Performance Damage | $0.00 |
| 11 | Pride Equipment (Included in Previous Line Item) | Performance Damage | $0.00 |
| 12 | Hadco Metal Trading (Parapet Anchor Plates) | Performance Damage | $705.51 |
| 13 | Kenseal Construction Products (Dow Corning Sealant and etc.) | Performance Damage | $15,629.77 |
| 14 | Metropolitan Lumber and Hardware (Harnesses) | Performance Damage | $1,468.21 |
| 15 | Stanley Supply & Tool (Tools) | Performance Damage | $0.00 |
| 16 | AGC Glass Company North America (Reolacement Glass) | Performance Damage | $22,000.00 |
| 17 | Woodworks Construction Company (Carpentry Protection) | Performance Damage | $22,555.00 |
| 18 | Kings County Waterproofing (Bulkhead Windows) | Performance Damage | $12,600.00 |
| 19 | Various Vendors for Miscellaneous Supplies | Performance Damage | $0.00 |
| 20 | Ecker Window (Casement Reversal) | Performance Damage | $146,124.06 |
| 21 | Ecker Window (Structural Glazing) | Performance Damage | $13,979.00 |
| 22 | Spieler & Ricca Electrical (Casement Edge Insoection/Repair) | Performance Damage | $0.00 |
| 23 | Spieler & Ricca Electrical (Weather Damaged Equipment) | Performance Damage | $0.00 |
| 24 | Intercoastal Erectors (Storefront Support Steel) | Pertixmance Damage | $0.00 |
| 25 | Trulite Glass & Aluminum Solutions (Replacement Glass) | Performance Damage | $51,209.71 |

| # | Subcontractor | Category | Amount of Damages |
|---|---|---|---|
| 26 | S&J Sheet Metal Supply (Window Install Clips) | Performance Damage | $5,879.25 |
| 27 | Pinquist Tool & Die Company (Coping Fasteners) | Performance Damage | $12,860.00 |
| 28 | D. LaMontana Transport (Trucking) | Performance Damage | $12,250.00 |
| 29 | Pioneer Window Manufactor. (Fist Brackets) | Performance Damage | $15,528.16 |
| 30 | Pinquist Tool & Die Company (Parapet Hook Anchor Fabrication) | Performance Damage | $0.00 |
| 31 | Air Performance (Picture Frame Material) | Performance Damage - | $28,278.00 |
| 32 | All Fasteners (Fasteners for Coping and etc.) | Performance Damage | $18,732.46 |
| 33 | Kenseal Construction Products and Garvin Brown | Performance Damage | $24,802.18 |
| 34 | Eagle One Roofing Contractors (Roofing Repairs) | Performance Damage | $0.00 |
| 35 | Crown Partition (Additional Carpentry Wall Framing) | Performance Damage | $0.00 |
| 36 | Kings County Waterproofing (ACM Panel Work) | Performance Damage | $0.00 |
| 37 | | WAIVED | |

$1,112,618.06

*Monadnock v. Glasswall*
Summary of Claimant's Damages

| # | Subcontractor | Category | Amount of Damages |
|---|---|---|---|
| 38 | Ecker Window (Additional Storefront Installation) | Performance Damage | $0.00 |
| 39 | All-Safe (Damaged Overhead Projection) | Performance Damage | $0.00 |
| 40 | Eagle One Roofing Contractors (Parapet Coping Installation) | Performance Damage | $0.00 |
| 41 | Iron Horse Transport (Trailer Storage) | Performance Damage | $0.00 |
| 42 | Ecker Window (Moving & Handling) | Performance Damage | $0.00 |
| 43 | L & L Painting (Parapet Panels) | Performance Damage | $0.00 |
| 44 | Ecker Window (Premium Time Hoist Window Installation) | Performance Damage | $0.00 |
| 45 | Navillus Contracting (Engineer and Lull to Load/Unload Hoist Run) | Performance Damage | $0.00 |
| 46 | Ecker Window (Window Unit Modifications) | Performance Damage | $0.00 |
| 47 | Ecker Window (Window Unit Modifications) | Performance Damage | $0.00 |
| 48 | Ecker Window (Field Window Modifications) | Performance Damage | $0.00 |
| 49 | Ecker Window (Misc. Glasswall Problems) | Performance Damage | $0.00 |
| 50 | Ecker Window (Glasswall Open Items) | Performance Damage | $103,523.19 |
| 51 | Jerome Aluminum Products (Interior Storefront Metal Trim) | Performance Damage | $9,200.00 |
| 52 | Woodworks Construction Company (Carpenter) | Delay Damage | $0.00 |
| 53 | B.W.B. Crown Partition (Carpenter) | Delay Damage | $0.00 |

| 54 | S.J. Electric (Electrical Contractor) | Delay Damage | $0.00 |
| 55 | Spieler & Ricca Electrical (Electrical Contractor) | Delay Damage | $0.00 |
| 56 | Paramount Plumbing Company (Plumbing Contractor) | Delay Damage | $0.00 |
| 57 | Parkview Plumbing (Plumbing Contractor) | Delay Damage | $0.00 |
| 58 | Federated Fire Protection (Fire ProtectionContractor) | Delay Damage | $0.00 |
| 59 | Federated Fire Protection (Fire Protection Contractor) | Delay Damage | $0.00 |
| 60 | Ecker Window (Labor Installational Escalation) | Delay Damage | $0.00 |
| 61 | Ecker Window (Labor Installational Escalation) | Delay Damage | $0.00 |
| 62 | City Elevator (Elevator Cab Storage) | Delay Damage | $0.00 |
| 63 | Islandaire (PTAC Sleeve Storage) | Delay Damage | $0.00 |
| 64 | Various Entities (Additional General Conditions) | Delay Damage | $0.00 |
| 65 | Various Entities (Additional General Conditions) | Delay Damage | $0.00 |
| 66 | AON/Alliant (Additional Insurance Costs) | Delay Damage | $0.00 |
| 67 | AON/Alliant (Additional Insurance Costs) | Delay Damage | $0.00 |
| 68 | City Elevator (Elevator Shaft Rust Remediation) | Delay Damage | $0.00 |
| 69 | City Elevator (Elevator Shaft Rust Remediation) | Delay Damage | $0.00 |
| | | | **$112,723.19** |

*Monadnock v. Glasswall*
Summary of Claimant's Damages

| # | Subcontractor | Category | Amount of Damages |
|---|---|---|---|
| 70 | Ecker Window (Overtime for Interior Job Catch Up) | Delay Damage | $0.00 |
| 71 | Ecker Window (Overtime for Interior Job Catch Up) | Delay Damage | $0.00 |
| 72 | Ecker Window (Overtime for Glasswall Late Deliveries) | Delay Damage | $0.00 |
| 73 | L & L Painting (KADEX Repair) | Delay Damage | $0.00 |
| 74 | S.J. Electric (Electric Heating) | Delay Damage | $0.00 |
| 75 | L & L Painting (Coping Paint Cost) | Performance Damage | $0.00 |
| 76 | Air Performance (Hoist Run Window) | Performance Damage | $0.00 |
| 77 | M Cohen and Sons (Missine Windows) | Performance Damage | $0.00 |
| 78 | Summit HVAC Mechanical (North Curtain Wall PTAC Grills) | Performance Damage | $29,010.00 |
| 79 | City Elevator (Additional Rust Remediation) | Performance Damage | $7,000.00 |
| 80 | City Elevator (Labor and Material Escalation) | Delay Damage | $0.00 |
| 81 | M Cohen and Sons (Terrace Door) | Performance Damage | $18,652.00 |
| | | | **$54,662.00** |

*Monadnock v. Glasswall*
Summary of Claimant's Damages

| # | Subcontractor | Category | Amount of Damages |
|---|---|---|---|
| 82 | AGS Ventures II, LLC (Builders Risk Extension) | Soft Cost | $0.00 |
| 83 | AGS Ventures II, LLC (Builders Risk Extension) | Soft Cost | $0.00 |
| 84 | Steven D. Barber (Glasswall Inspections) | Soft Cost | $0.00 |
| 85 | Steven D. Barber (Glasswall Inspections) | Soft Cost | $0.00 |
| 86 | Vidaris (Exterior Wall Inspections) | Soft Cost | $0.00 |
| 87 | Vidaris (Exterior Wall Inspections) | Soft Cost | $0.00 |
| 88 | Various Entities (Bond Interest Costs) | Soft Cost | $0.00 |
| 89 | Various Entities (Bond Interest Costs) | Soft Cost | $0.00 |
| 90 | Various Entities (HPD Subsidy Interest Cost) | Soft Cost | $0.00 |
| 91 | Varies Entities (HPD Subsidy Interest Costs) | Soft Cost | $0.00 |
| 92 | Greenblatt Lesser (Legal Fees) | Soft Cost | $0.00 |
| 93 | Greenblatt Lesser (Legal Fees) | Soft Cost | $0.00 |
| 94 | Duane Morris (Legal Fees) | Soft Cost | $0.00 |
| 95 | Duane Morris (Legal Fees) | Soft Cost | $0.00 |
| 96 | Pathman Lewis (Legal Fees) | Soft Cost | $0.00 |
| 97 | Pathman Lewis (Legal Fees) | Soft Cost | $0.00 |
| | | | $0.00 |

TOTAL $1,280,003.25