UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

MONADNOCK CONSTRUCTION, INC.,                    Case No.: 16 CIV. 00420
                                                 (JBW)(VMS)
                                                 ECF Case
                    Plaintiff,

        -against-

WESTCHESTER FIRE INSURANCE
COMPANY,

                    Defendant.

--------------------------------------------------------X

WESTCHESTER FIRE INSURANCE
COMPANY,

                    Third-Party Plaintiff,

        -against-

GLASSWALL, LLC, UGO COLOMBO, and
SARA JAYNE KENNEDY COLOMBO,

                    Third-Party Defendants.

--------------------------------------------------------X

## REPLY MEMORANDUM OF POINTS AND
## AUTHORITIES IN SUPPORT OF
## MOTION TO DISMISS
## AMENDED COMPLAINT

## PRELIMINARY STATEMENT

        Third-party defendant Glasswall, LLC ("Glasswall") hereby submits this

memorandum in reply to the memorandum submitted by plaintiff Monadnock

Construction, Inc. ("Monadnock") in opposition to Glasswall's motion to dismiss the amended complaint.

At the outset it should be noted that this is the first motion addressed to the merits of the amended complaint. Glasswall's motion filed on October 6, 2017 was a procedural one to dismiss "Monadnock's application to confirm the August 29, 2017 arbitration award upon the ground that Glasswall, LLC filed a petition to confirm the award on September 22, 2017 and served it on September 25, 2017, and therefore the State Court has jurisdiction under the 'first filed' rule." No motion was made to dismiss the amended complaint.

## POINT I

## THE UCC IS APPLICABLE

Monadnock totally ignores the cases cited on pages 5 and 6 of Glasswall's memorandum in support of its motion to dismiss, holding that the sale of windows falls within Article 2 of the UCC. Monadnock cites only one case in support of its proposition that the UCC is not applicable: Schenectady Steel Co. v. Bruno Trimpoli Gen. Const. Co., Inc., 43 App.Div.2d 234, 350 N.Y.S.2d 920 (3d Dep't), aff'd, 316 N.E.2d 875 (1974). In that case, however, the Court found that the contract at issue "was a contract for the rendition of services, a work, labor and materials contract, rather than a contract for the sale of goods, the steel beams involved" because:

2

> Respondent was not contracting simply for the steel beams
> but in essence for their erection and installation with the
> transfer of the title to the steel a mere incident of the overall
> transaction, a mere accessory to the work and labor to be
> performed.  350 N.Y.S.2d at 923.

This case is clearly distinguishable from the case at bar, as Glasswall (denominated

"Manufacturer" in the Subcontracts (Exhibit C to Glasswall's motion)) was merely

supplying windows.  Indeed, the amended complaint acknowledges that Glasswall was

not responsible for installation of the windows when it alleges that Glasswall was to

"deliver window assemblies and other materials" (Amended Complaint, ¶1, Exhibit "A"

to the moving papers) and that "Glasswall committed to provide over 9,000 window wall

units" (Id., ¶15).[1]  Glasswall had absolutely no responsibility to install the windows, as

acknowledged in paragraph 16 on page 13 of Rider #5 to the Subcontracts (Exhibit B to

the January 9, 2018 Declaration of Jocelyn Weinstein):

> Further to this is Glasswall's guaranty that they will be
> onsite to insure that the installer installs the Glasswall System
> to their current high standards so as to avoid finger pointing
> issues later on.

The arbitration award (Exhibit D to the motion) confirms that Glasswall was contracted

"to <u>fabricate</u> the complex, custom made, glass window wall system" (p. 3, emphasis

---

[1]  On page 22 of its brief Monadnock disingenuously argues that Glasswall was obligated
to "assist with installation of the window wall units."  Glasswall had absolutely no installation
responsibilities.

3

added).

Equally unavailing is Monadnock's argument that "the UCC does not apply because Glasswall never delivered the windows as required" (Monadnock Brief, p. 22). First, Monadnock is not entitled to relitigate the Award's finding that Monadnock breached the Subcontracts by refusing to accept delivery of the windows:

> Glasswall argues that in October-November, 2013 it had approximately 1,000 additional windows completed along with other Window Work all of which were available for delivery, but that Monadnock refused delivery. ...
>
> Monadnock did not materially dispute its refusal to accept the completed windows and ancillary Window Work,...
>
> We find that Monadnock wrongfully refused to accept delivery of the windows, including ancillary materials needed for their installation in the Fall and Winter of 2013-2014, in breach of the Subcontracts. (Award, Ex. D to the motion, pp. 9 and 10).

Second, under the terms of the Subcontracts Glasswall only had to offer to deliver the windows: the time of delivery was at Monadnock's election. See paragraph 17(c) on page 4 of Rider #5 (Exhibit B to the Jocelyn Weinstein Declaration):

> Wall units will be left out for the complete vertical run of the hoists and should not be delivered until requested by the Construction Manager [Monadnock].

and paragraph 16 on page 15 of Rider #5:

4

> All deliveries of materials shall be coordinated with the
> Construction Manager [Monadnock] giving at least 48 hours
> advance notice.

Third, UCC §2-503(1) states that "Tender of delivery requires that the seller put and hold

conforming goods at the buyer's disposition and give the buyer any notification

reasonably necessary to enable him to take delivery." The award's finding that

Monadncok refused delivery conclusively establishes a proper tender under the UCC.

## POINT II

### WRONGFUL REFUSAL TO ACCEPT DELIVERY
### OF 1,000 WINDOWS IS A MATERIAL BREACH

The arbitrators found that "Monadnock wrongfully refused to accept delivery of

the windows...in breach of the Subcontracts" (Award, Exhibit D to the motion, p. 10).

The arbitrators noted that Glasswall stated that it "had approximately 1,000 additional

windows completed along with other Window Work all of which were available for

delivery" and that "Monadnock did not materially dispute its refusal to accept the

completed windows and ancillary Window Work" (Award, pp. 9 and 10).

Monadnock alleges in paragraph 17 of its amended complaint (Exhibit A) that the

"window units were to be shipped floor by floor."[2] As such, the contract is to be deemed

---

[2] On page 21 of its brief Monadnock states that it refused to accept "two or three floors"
out of 69. This is false, as the Subcontracts provided that 9,000 windows were to be
manufactured by Glasswall (amended complaint, Exhibit A, ¶15). 1,000 windows would
therefore comprise about eight floors.

an "installment contract" under UCC §2-612(1) since it "requires or authorizes the

delivery of goods in separate lots to be separately accepted." Under UCC §2-612(3), a

default with respect to one installment can be deemed a breach of the entire contract:

> Whenever non-conformity or default with respect to
> one or more installments substantially impairs the value of the
> whole contract there is a breach of the whole....

A decision by the New York Court of Appeals under the predecessor statute to UCC §2-

612 (Personal Property Law §126) establishes that Monadnock's refusal to accept

delivery of 1,000 windows is a material breach of the Subcontracts as a whole. In C.

Bahnsen & Co., Inc. v. Gerst, 235 N.Y. 426 (1923), the parties agreed that plaintiff would

sell 90 pieces of goods in two installments. Plaintiff seller tendered delivery of the first

lot and the defendant purchaser replied "I don't want them." The Court ruled that "it was

the duty of defendant [purchaser]" to accept delivery and that "such refusal operated as a

breach of the contract." Id. at 431. The Court went on to hold that the refusal to accept

delivery of the first installment constituted a material breach of the entire contract:

> The enumerated circumstances of this case disclose a manifest
> intention on the part of defendant to abandon and refuse to
> perform the contract on his part and required the trial justice
> to determine as matter of law that there was a material breach
> of the entire contract on the part of defendant. (*Helgar
> Corporation v. Warner Features,* 222 N. Y. 449.). ...the
> breach of the contract was entire. Id. at 431-32 (emphasis
> added).

6

Monadnock's refusal to accept delivery of 1,000 windows was, as found by the arbitrators, a breach of the Subcontracts as it was Monadnock's duty to accept them. <u>See also</u>, UCC §2-301, which provides that "the obligation...of the buyer is to accept and pay in accordance with the contract." The failure to accept an installment shipment is a material breach of the Subcontracts. UCC §2-507(1) provides that a buyer has a "duty to accept" tendered goods:

> Tender entitles the seller to acceptance of the goods and to payment according to the contract.

Monadnock's argument that this breach was "remedied" by the terms of the April 2014 Amendment Agreement has no foundation. The Amendment Agreement, by Monadnock's own admission in paragraph 47 of the amended complaint (Exhibit A to the moving papers), contained a provision that "all claims among the parties that had accrued through the date of the Amendment Agreement were preserved and deferred pending the completion of the Contracts or the earlier termination thereof."

## POINT III

### MONADNOCK HAS NOT SUSTAINED ANY "ACTUAL DAMAGES"

Section 7.3 of the Bonds at issue limits the surety's liability to "actual damages caused by delayed performance or non-performance of the Contractor [Glasswall]"

(Exhibit "B" to the moving papers).  As found by the arbitrators on page 6 of their Award

(Exhibit D to the motion): "It is undisputed that Monadnock was reimbursed by the

Owners for all costs incurred for the performance of the Window Work," so that

Monadnock does not have any out-of-pocket loss.  The relevant rules regarding

construction of surety bonds were set forth in Seneca Insurance Co. v. People, 40

App.Div.3d 1151, 1153, 834 N.Y.S.2d 581, 583 (3rd Dep't 2007):

> As relevant here, "[s]urety bonds—like all
> contracts—are to be construed in accordance with their terms"
> (*Walter Concrete Constr. Corp. v. Lederle Labs.,* 99 N.Y.2d
> 603, 605, 758 N.Y.S.2d 260, 788 N.E.2d 609 [2003] ) under
> established rules of contract construction (*see General
> Phoenix Corp. v. Cabot,* 300 N.Y. 87, 92, 89 N.E.2d 238
> [1949]; *Mendel– Mesick–Cohen–Architects v. Peerless Ins.
> Co.,* 74 A.D.2d 712, 713, 426 N.Y.S.2d 124 [1980] ). Where
> the terms are unambiguous, interpretation of the surety bonds
> is a question of law (*see State of New York v. Peerless Ins.
> Co.,* 67 N.Y.2d 845, 848, 501 N.Y.S.2d 651, 492 N.E.2d 779
> [1986]; *General Phoenix Corp. v. Cabot, supra* at 92, 89
> N.E.2d 238). Under settled principals, they must be construed
> strictly in the surety's favor and the surety's obligations cannot
> be extended beyond the plain language of the bonds (*see
> Becker v. Faber,* 280 N.Y. 146, 148–149, 19 N.E.2d 997
> [1939]; *United States Fid. & Guar. Co. v. Orix Credit
> Alliance,* 290 A.D.2d 504, 504, 736 N.Y.S.2d 274 [2002];
> *Mendel–Mesick–Cohen–Architects v. Peerless Ins. Co., supra,*
> at 713, 426 N.Y.S.2d 124; *People v. Henry,* 33 A.D.2d 1031,
> 1032, 308 N.Y.S.2d 245 [1970] ).

The amended complaint alleges that the surety "breached its obligations under the Bonds"

(¶ 78, Exhibit A to the motion papers). As the surety's liability under the Bonds was

8

limited to Monadnock's "actual damages," and as Monadnock did not sustain any "actual damages" it is not entitled to any recovery under the Bonds.

As the issue of Monadnock's "actual damages" under the Bonds was never addressed in the arbitration, the surety is free to raise this defense in this action (and by extension, Glasswall is entitled to raise the defense under Rule 14(a)(2)(C). See, e.g.: Continental Group, Inc. v. NPS Communications, Inc., 873 F.2d 613, 619 (2nd Cir. 1989):

> In point of fact, Corp. is bound under *Fidelity [and Deposit Co. of Maryland v. Parsons & Whittemore Contractors* Corp., 48 N.Y.2d 127, 421 N.Y.S.2d 869 (1979)] by the arbitrators' award in favor of CGI and against Communications in the sense that the merits of those disputes cannot be relitigated. But Corp. did not consent to arbitral resolution of its obligations as guarantor.

Indeed, as held in QDR Consultants & Development Corp. v. Colonia Ins. Co., 251 App.Div.2d 641, 643, 675 N.Y.S.2d 117, 119 (2nd Dep't 1998), since the issue of Monadnock's "actual damages" under the terms of the Bonds was not an issue in the arbitration, the surety is free to raise this as a defense in this action:

> Although the arbitrators awarded QDR $337,421 for lost profits, the issue of whether lost profits were recoverable under the bond was not addressed in the arbitration proceeding. Therefore, Colonia [the surety] may assert this issue as a defense in the instant action (citations omitted).

As Monadnock was made whole by the project owners it "suffered no damages and is

entitled to recover none." <u>Degnon Contracting Co.</u> v. <u>City of New York</u>, 235 N.Y. 481, 487 (1923).

**POINT IV**

**MONADNOCK DID NOT SATISFY A
CONDITION PRECEDENT TO
THE SURETY'S LIABILITY
<u>UNDER THE BONDS</u>**

In paragraphs 77 and 82 of the amended complaint (Exhibit "A" to the moving papers) Monadnock alleges that it "fulfilled its obligations under the Bonds": a prerequisite to an action under the Bonds.  However, Section 3 of the Bonds (Exhibit B to the motion) expressly provides that the surety's obligation only arises "if there is no Owner Default under the Construction Contract."  "Owner Default" is defined in Section 14.4 as the failure of Monadnock "to perform and complete or comply with the other material terms of the Construction Contract."[3]  The Award's finding that Monadnock breached the Subcontracts by refusing to accept delivery of over 1,000 windows constitutes an "Owner Default" under the terms of the bonds.

It is clear that claims under the Bonds were never litigated in the arbitration. The surety is entitled to raise any defenses it has under the terms of the Bond. <u>See</u>, <u>e.g.</u>: <u>Fidelity and Deposit Co. of Maryland</u> v. <u>Parsons & Whittemore Contractors Corp.</u>, 48

---

[3]   Monadnock's argument on page 19 of its brief, that its default in the fall and winter of 2013 was remedied by the April 2014 Amendment Agreement, ignores its admission in paragraph 44 of the amended complaint (Exhibit A) that the "Amendment Agreement...preserved all parties' claims that had accrued to date...and deferred them until the earlier of the completion of the Contracts or termination thereof."

10

N.Y.2d 127, 131, 421 N.Y.S.2d 869, 871 (1979):

> A critical distinction must be drawn between disputes arising
> under the subcontract between Parsons [the general
> contractor] and Central [the subcontractor] (in the resolution
> of which Fidelity as surety on the performance bond has a
> very real and practical interest) and possible unrelated
> differences which may arise between Fidelity and Parsons as
> to the liability of the surety company under the terms of its
> performance bond. ...there was no agreement on the part of
> any party that controversies arising as to rights and
> obligations under the terms of the performance bond would be
> submitted to arbitration.

and Zacher v. Oakdale Islandia Ltd. Partnership, 211 App.Div.2d 712, 715, 621 N.Y.S.2d

376, 379 (2nd Dep't 1995) (holding that a surety "may raise defenses arising under the

terms of its performance bonds").  In 120 Greenwich Development Associates, LLC v.

Reliance Insurance Co., 2004 WL 1277998 (S.D.N.Y.) at *12, the Court considered

paragraph 3 of the AIA Bond (the exact same bond at issue in this action) and held as a

matter of law that the phrase "the surety's obligation under this Bond shall arise after"

constitutes a condition precedent[4] to the surety's obligations under the Bond.  The Court

went on to hold that the action against the surety should be dismissed since the owner did

not comply with the conditions precedent:

> Having failed to comply with the conditions precedent
> to Reliance's obligations under the Bond, 120 Greenwich may
> not maintain the present action. Accordingly, the case must be

---

[4]  Defined in Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.3f 685,
690, 636 N.Y.S.2d 734, 737 (1995), as "an event...which must occur before a duty to perform a
promise in the agreement arises."

dismissed.  Id. at *13.

See also: U.S. Fidelity and Guaranty Co. v. Braspetro Oil Services Co., 219 F. Supp.2d

403, 477 (S.D.N.Y. 2002), holding that paragraph 3 of the AIA bond "plainly constitutes

conditions precedent."

As the arbitrators determined that Monadnock breached the Subcontracts and as a

condition precedent to the surety's obligations under the Bonds is that Monadnock not

have breached the Subcontracts, a condition precedent has not been established and the

surety is not obligated under the Bonds.  See also: Dimacopoulos v. Consort Development

Corp., 158 App.Div.2d 658, 660, 552 N.Y.S.2d 124, 125 (2nd Dep't 1990), granting

summary judgment dismissing a complaint against a surety under a performance bond

where the arbitrators determined that the developer had not complied with its contract

with a contractor:

> Moreover, the obligation of the sureties, IINA and
> NYSC, under the performance bonds, attached only where the
> plaintiff performed all of his obligations under the contract.
> Implicit in the arbitrator's award was a finding that the
> plaintiff had not fully performed his obligations.

## POINT V

### THE FRAUDULENT CONVEYANCE
### CLAIM IS BARRED

Monadnock's fraudulent conveyance claim against Glasswall is barred both by the

"claim preclusion" doctrine and by the limitation in Rule 14 on third-party claims.

12

**(i)      "Claim Preclusion"**

Glasswall argued in its brief that the fraudulent conveyance claim against it is barred both by the "claim preclusion" doctrine and the fact that the Subcontracts required a party demanding arbitration to "assert in the demand all claims then known to that party."

Monadnock seeks to avoid the application of the "claim preclusion" doctrine by taking the position that its claim against Glasswall is "judgment enforcement."  Contrary to Monadnock's argument, the fraudulent conveyance claims do not "spring from the issuance of the award."  As claims for fraudulent conveyance "fall within the scope of the arbitration agreement," Prograph International Inc. v. Barhydt, 928 F.Supp. 983, 990 (N.D. Cal. 1996), Monadnock is precluded from asserting them in this action.

**(ii)     Rule 14(a)(3)**

In order for plaintiff Monadnock to assert a claim against third-party defendant Glasswall the claim must "arise out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff [Westchester]."  The claims asserted against Westchester are for breach of Westchester's obligations under performance bonds issued by Westchester.  The claims against Glasswall are for fraudulent conveyances under New York Debtor & Creditor Law.  Clearly, the claims are totally separate, and as noted in Index Fund v. Hagopian, 417 F.Supp. 734, 744 (S.D.N.Y. 1976):

an entirely separate and independent claim cannot be maintained against the third-party under Rule 14 even though it does arise out of the same general set of facts as the main claim....

## CONCLUSION

Third-party defendant Glasswall's motion to dismiss the amended complaint should in all respects be granted.

DATED: NEW YORK, NEW YORK
        JANUARY 30, 2018

                              Respectfully submitted,

                              CINQUE & CINQUE, P. C.

                              By: _____
                                  James P. Cinque, Esq.
                              Attorneys for Third-Party Defendant
                               Glasswall, LLC
                              845 Third Avenue, Suite 1400
                              New York, New York 10022
                              Telephone: (212) 759-5515
                              Telefax:    (212) 759-7737
                              E-mail:    CINQUE845@aol.com

14