UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MONADNOCK CONSTRUCTION, INC.,

                    Plaintiff,

     -against-

WESTCHESTER FIRE INSURANCE
COMPANY,

                    Defendant.

------------------------------------------------------------X

WESTCHESTER FIRE INSURANCE
COMPANY,

                 Third-Party Plaintiff,

     -against-

GLASSWALL, LLC, UGO COLOMBO, and
SARA JAYNE KENNEDY COLOMBO

               Third-Party Defendants.

------------------------------------------------------------X

Case No.: 16 CIV. 00420 (JBW)
ECF Case

## MEMORANDUM OF LAW IN SUPPORT OF WESTCHESTER FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 3

THE BONDS, THE CONTRACTS, AND THE ARBITRATION ............................................... 3

I.    The Monadnock-Glasswall Contracts and the Bonds ......................................................... 3

    A.    Provisions of the Bonds .......................................................................................... 3

    B.    Provisions of the Construction Contracts ............................................................... 5

II.    The Arbitration Award ........................................................................................................ 6

    A.    The Arbitrators' Adjudication of Monadnock's Damages Claims ........................ 6

    B.    The Award Determined Monadnock's Contract Performance Bond Claims against Westchester ............................................................................................................. 8

LEGAL STANDARD ................................................................................................................ 10

LEGAL ARGUMENT ............................................................................................................... 11

POINT I: MONADNOCK'S FAILURE TO FULFILL CONDITIONS PRECEDENT OF THE BONDS PRECLUDES A VALID BOND CLAIM .................................................................... 11

    1.    Monadnock's First "Bond Claim" ....................................................................... 13

    2.    Monadnock's Second "Bond Claim" .................................................................... 15

POINT II: NOTWITHSTANDING THE INVALIDITY OF MONADNOCK'S BOND CLAIMS, WESTCHESTER FULFILLED ITS OBLIGATIONS UNDER THE BONDS ......... 18

POINT III: MONADNOCK'S CLAIM OF BAD FAITH MUST BE DISMISSED ................... 20

CONCLUSION ......................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

*120 Greenwich Dev. Assocs., LLC v. Reliance Ins. Co.*,
    No. 01 CIV.8219(PKL), 2004 WL 1277998 (S.D.N.Y. 2004)....................................11, 12, 14

*845 UN Ltd. P'ship v. Flour City Architectural Metals, Inc.*,
    28 A.D.3d 271, 813 N.Y.S.2d 404 (1st Dept. 2006)........................................................16, 17

*Burdick Assocs. Owners Corp. v. Indem. Ins. Co. of N. Am.*,
    166 A.D.2d 402, 560 N.Y.S.2d 481 (2d Dept. 1990) ..............................................................9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..............................................................................................................10

*Continental Information Systems Corp. v. Federal Ins. Co.*,
    2003 WL 145561 (S.D.N.Y. 2003)......................................................................................21

*Elm Haven Constr. Ltd. P'ship v. Neri Constr. LLC*,
    376 F.3d 96 (2d Cir. 2004)...................................................................................................11

*Gen. Ins. Co. of Am. v. K. Capolino Const. Corp.*,
    903 F. Supp. 623 (S.D.N.Y. 1995) ......................................................................................14

*Hicks & Warren LLC v. Liberty Mut. Ins. Co.*,
    No. 10 CIV. 9457 SAS, 2011 WL 2436703 (S.D.N.Y. 2011)................................................9

*Int'l Fid. Ins. Co. v. County of Rockland*,
    98 F.Supp.2d 400 (S.D.N.Y. 2000) .....................................................................................11

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..............................................................................................................10

*Michael G. Buck & Son Const. Corp. v. Poncell Const. Co.*,
    217 A.D.2d 925, 629 N.Y.S.2d 584 (4th Dept. 1995) ..........................................................17

*U.S. ex rel. Platinum Mech., LLC v. U.S. Sur. Co.*,
    2007 WL 4547849 (S.D.N.Y. 2007).....................................................................................13

*Rockland County v. Aetna Cas. & Sur. Co.*,
    129 A.D.2d 606, 514 N.Y.S.2d 102 (2d Dep't 1987)............................................................10

*Sikarevich Family L.P. v. Nationwide Mut. Ins. Co.*,
    30 F. Supp. 3d 166, 171 (E.D.N.Y. 2014) .......................................................................21, 22

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*,
    735 F. Supp. 2d 42 (S.D.N.Y. 2010).....................................................................................11

*Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
   726 F. Supp. 2d 339 (S.D.N.Y. 2010)........................................................................................9

*United Capital Corp. v. Travelers Indem. Co.*,
   237 F.Supp. 2d 270 (E.D.N.Y. 2002) ....................................................................................22

*Wingates, LLC v. Commonwealth Ins. Co. of Am.*,
   21 F. Supp. 3d 206, 221 (E.D.N.Y. 2014) .............................................................................21

*Winston & Winston, P.C. v. Travelers Cas. Ins. Co. of Am.*,
   2017 U.S. Dist. LEXIS 130017 (S.D.N.Y. 2017)............................................................21, 22

**Other Authorities**

Fed. R. Civ. P. 56(a) ....................................................................................................................10

## PRELIMINARY STATEMENT

Plaintiff Monadnock Construction, Inc. ("Monadnock") sues Defendant Westchester Fire Insurance Company ("Westchester") for alleged breaches of Westchester's obligations under two identical performance bonds (the Bonds"). Subject to stated conditions precedent, the Bonds assured the performance of two Contracts (incorporated into the Bonds by reference) between Monadnock and third-party defendant Glasswall LLC ("Glasswall"), pursuant to which Glasswall was to design and manufacture curtainwall units ("Windows," as the parties came to call them) for two apartment buildings Monadnock was constructing in Queens, New York City.

After disputes arose between Monadnock and Glasswall, Monadnock sent notices of default to Glasswall and to Westchester. Then, on January 13, 2014, Monadnock gave notice of termination of the Contracts and notice to Westchester of claims under the Bonds. In turn, within the time (agreed in writing by Monadnock) that Westchester was required to act, the parties entered into a carefully negotiated "Agreement to Amend Contracts" (the "Amendment Agreement"), which provided that Glasswall would complete the Contracts, with Monadnock paying Westchester as Glasswall completed Windows and Westchester, in turn, paying Glasswall. By separate agreement with Glasswall, Westchester also agreed to pay (and did pay) Glasswall incentive payments of $1.5 million as Glasswall manufactured Windows.

Thereafter, on March 4, 2015, after the Windows had been manufactured and delivered, Monadnock commenced an arbitration (the venue required in the Contracts) against Glasswall asserting claims for breach of the Contracts and claiming damages of $17,356,757.91, which encompassed all of the Contract breaches that Monadnock had alleged from the inception of the Contracts. After nine days of evidentiary hearings and full briefing, the arbitrators issued an Award finding that, in fact, Monadnock had breached the Contracts by failing to accept Windows that Glasswall had manufactured and, in addition, that Monadnock, in the Amendment Agreement, had waived its purported right to terminate the contracts in January 2014. Ultimately, the

1

Arbitrators awarded Monadnock $1.2 million (plus interest and fees) for items that Glasswall did not complete or supply and other items requiring correction. The Arbitrators denied the balance of Monadnock's claims. The arbitrators' Award thus comprehensively determined the rights and the obligations under the Contracts (incorporated into the Bonds) between Monadnock and Glasswall, as well as between Monadnock and Glasswall's surety, Westchester.

Both Monadnock's breach of the Contracts and its unreserved waiver, by contract amendment, of its right to terminate the Contracts based on events prior to April 4, 2014 constituted failures to fulfill express conditions precedent of the Bonds and, therefore, barred Monadnock's January 2014 bond claim. Moreover, regardless of the invalidity of Monadnock's claim, Westchester, reserving its rights, timely took one of the Surety actions provided for in the bonds; that is, completion of the Contracts by the bonded contractor (Glasswall), with the Owner's (Monadnock's) consent, as provided in the Amendment Agreement.

Nevertheless, on March 16, 2015, Monadnock made a second bond claim based on a second purported contract termination. Again, however, Monadnock failed to fulfill the express conditions precedent of a valid termination since it based the second termination, in part, on events prior to the Amendment Agreement. In addition, Glasswall's substantial completion of the Contracts precluded a valid termination of the Contracts under New York law, and rendered Monadnock's invalid termination a breach (on the part of Monadnock) of the Contracts, as amended. Moreover, Monadnock waived its right to assert backcharges or claims against Glasswall (and Westchester). The Amendment Agreement required Monadnock to deposit into escrow, subject to a later determination of entitlement, the amount of payments otherwise due for Windows that Monadnock wished to assert as a backcharge or claim. Monadnock failed to make any such deposit and thus waived its right to assert such claims against Glasswall or Westchester.

Based on the foregoing, and the facts and law presented below, Westchester respectfully requests that the Court enter an Order pursuant to Federal Rule of Civil Procedure 56 granting Westchester summary judgment and dismissing Monadnock's Amended Complaint against Westchester in its entirety.

## STATEMENT OF FACTS

The material facts as to which there is no genuine issue on this motion are set forth in Westchester's Rule 56.1 Statement and the Declaration of Robert McL Boote (hereinafter "Boote Declr."), attorney for Westchester.

## THE BONDS, THE CONTRACTS, AND THE ARBITRATION

The following undisputed provisions of the Bonds and Contracts, as well as the rulings of the arbitrators in the arbitration, are relevant for purposes of this motion for summary judgment.

## I.      The Monadnock-Glasswall Contracts and the Bonds

On January 3, 2013, Glasswall entered into two contracts (the "Contracts") with Monadnock to design and supply windows, doors, storefronts, and other materials for two mixed use projects in Long Island City, New York for contract prices totaling $13 million. *See* Westchester's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("SOF"), ¶ 1. The Contracts required Glasswall to obtain payment and performance bonds. SOF, ¶ 2. Accordingly, on February 11, 2013 and February 12, 2013, Westchester, as surety for Glasswall, executed two performance bonds and payment bonds (the "Bonds") in favor of Monadnock, as obligee.  SOF, ¶ 4.

### A.      Provisions of the Bonds

The Bonds contain the following relevant provisions:

> § 1   The Contractor [Glasswall] and Surety [Westchester], jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner [Monadnock] for the performance of the

Construction Contract, <u>which is incorporated herein by reference</u>. (Emphasis added).

\*\*\*\*\*\*

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after

1.  the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance.  If the Owner does not request a conference, the Surety may, within five (5) business days after receipt or the Owner's notice, request such a conference.  If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice.  If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

2.  the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

3.  the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

\*\*\*\*\*\*

§ 5 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

§ 5.1 Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's

concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor Default; or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

1. After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

2. Deny liability in whole or in part and notify the Owner, citing the reasons for the denial.

\*\*\*\*\*\*

§ 6 If the Surety does not proceed as provided in Section 5 with reasonable promptness, the Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 5.4, and the Owner refuses the payment or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

*See* the Bonds, annexed to Plaintiff's Complaint as Exhibit A (Doc. 9-1).

**B.    Provisions of the Construction Contracts**

The Contracts required Glasswall to design, produce and manufacture the Windows for the buildings that Monadnock was to construct. SOF, ¶ 1. The Contracts contain the following relevant provisions:

§ 6.1.1 Any claim arising out of or related to this Subcontract, except <u>claims as otherwise provided in Section 4.1.15 [relating to esthetic judgments] and except</u> those waived in this Subcontract, shall be subject to mediation as a condition precedent to binding dispute resolution.

\*\*\*\*\*

5

§ 6.2 BINDING DISPUTE RESOLUTION
For any claim subject to, but not resolved by mediation pursuant to Section 6.1, the method of binding dispute resolution shall be as follows:

[X]   Arbitration pursuant to Section 6.3 of this Agreement.

*****

§ 6.3 ARBITRATION
§ 6.3.1 If the Contractor and Manufacturer have selected arbitration as the method of binding dispute resolution in Section 6.2, any claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with Construction Industry Arbitration Rules in effect on the date of the Agreement …

*See* the Contracts, annexed to the Declaration of James P. Cinque in Support of Glasswall's Motion to Dismiss the Amended Complaint as Exhibit C (Doc. 84-3).

## II.   **The Arbitration Award**

### A.   **The Arbitrators' Adjudication of Monadnock's Damages Claims**

Under the dispute resolution terms of the Contracts, on March 4, 2015, Monadnock filed a demand for Arbitration with the American Arbitration Association ("AAA") in New York against Glasswall, seeking damages for Glasswall's alleged breaches of the bonded Contracts. SOF, ¶ 24. The arbitration proceeded with nine separate hearings and full briefing by the parties. SOF, ¶ 32. On August 29, 2017, the AAA issued an Award of Arbitrator (the "Award") awarding damages to Monadnock, and against Glasswall, which, as described in detail below, fundamentally vitiates Monadnock's claims in this action. SOF, ¶ 33.

The Award summarized Monadnock's damage claims as follows:

"Summarily, Monadnock asserts that Glasswall delayed completion of the Buildings by failing to timely perform the Window Work. Monadnock also claims that many of the windows delivered as part of the Window Work had significant defects which required field remediation work paid for by Monadnock. Monadnock refers to damages related to defects in the windows portion of the Window Work as 'performance damages.' Monadnock also seeks a category of damages it refers to as 'Soft Costs' which are akin to delay damages and consist of increase in insurance costs, added inspection costs, increased bond and subsidy costs and legal fees to

6

various law firms (but not the litigation fees charged by counsel that represented Monadnock in this arbitration proceeding). In all Monadnock seeks damages as follows:

| | |
|---|---|
| Delay Damages: | $7,648,302.77 |
| Performance Damages: | $2,446,535.98 |
| Soft Costs: | $7,261,919.16 |
| Grand Total: | $17,356,757.91, plus interest." |

*See* Award, annexed to the Boote Declr. as Exhibit L.

In adjudicating Monadnock's claims, the arbitrators ruled on issues that bear directly on whether Monadnock fulfilled required conditions precedent of the Bonds. First, the arbitrators denied Monadnock's delay damage claim, in part, due to their express finding that Monadnock breached the Contracts:

> "We find that Monadnock wrongfully refused to accept delivery of the windows, including ancillary materials needed for their installation in the Fall and Winter of 2013-2014, in breach of the Subcontracts."

*See* Award, Boote Declr., Ex. L, at pg. 10; *see also* SOF, ¶ 36.

Second, the arbitrators ruled that, while Glasswall and Monadnock reserved various rights in the Amendment Agreement, both parties agreed to waive their respective rights to terminate the Contracts based upon events of default occurring prior to April 4, 2014. The arbitrators stated:

> "Under the Amendment Agreement …. Glasswall and Monadnock also agreed to waive their respective rights to terminate the Subcontracts based upon events of default occurring prior to the Amended Agreement. All other rights were reserved."

*See* the Award, Boote Declr., Ex. L, at pg. 5.

Ultimately, the arbitrators awarded damages to Monadnock, and against Glasswall, in the amount of $1,280,003.25 on the basis that Glasswall was paid for some items that Glasswall did not complete or supply and other items requiring field remediation. SOF, ¶ 38. The arbitrators added interest and arbitration fees for a total award of $1,499,255.18. SOF, ¶ 33.

7

Schedule A of the Award itemizes Monadnock's claims for which damages were awarded and those claims for which damages were denied. SOF, ¶ 35. The arbitrators adjudicated all claims presented in the arbitration, stating "[t]his Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied." *See* the Award, Boote Declr., Ex. L, at pg. 13; *see also* SOF, ¶ 40.

On November 24, 2017, Monadnock and Glasswall, by mutual agreement, submitted a Stipulation and Order Confirming Arbitration Award (the "Stipulation"), pursuant to which the Award was confirmed by this Court. SOF, ¶ 40; *see also* Doc. 77. On December 22, 2017, Monadnock filed a letter motion requesting entry of judgment based on the Award, thereby confirming that the Award is valid and enforceable. SOF, ¶ 41; *see also* Doc. 90.

## B. The Award Determined Monadnock's Contract Performance Bond Claims against Westchester

Westchester's Bonds incorporate the terms of the Contracts, including their mandatory arbitration terms. Accordingly, the arbitration award not only determined the contract rights and obligations of Monadnock and of Glasswall, but also, by collateral estoppel, the rights and obligations of Monadnock and Westchester under the Contracts, as incorporated into the Bonds.

Under well-established New York law, the liability of Westchester is measured by the liability of its principal, Glasswall. *See Hicks & Warren LLC v. Liberty Mut. Ins. Co.*, No. 10 CIV. 9457 SAS, 2011 WL 2436703, at \*3 (S.D.N.Y. 2011) ("Where the terms of the surety's liability are not expressly extended or limited in the performance bond, and the bond expressly incorporates by terms of the underlying contract, 'a surety's liability to perform under a performance bond is coextensive with that of the principal.'"); *Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 726 F. Supp. 2d 339, 343 (S.D.N.Y. 2010) ("Travelers' liability under the Payment Bond is measured by the liability of its principal, Urban, as 'it is a well settled rule in

8

New York that the liability of the surety is measured by the liability of the principal.'") (Citations omitted) (Collecting cases).

Here, the issue of Glasswall's liability to Monadnock was determined in the arbitration. Monadnock asserted the same damages claims against Glasswall totaling $17,356,757.91 that it now asserts against Westchester. The arbitrators considered Monadnock's claims itemized in the Award's Schedule A, awarding some and denying the rest. The Award constitutes a final determination of the rights and obligations under the Contracts, and that determination applies equally to Monadnock's claims against Westchester.

New York courts have repeatedly held that bond obligees such as Monadnock are collaterally estopped from asserting claims against a surety in similar circumstances. For example, in *Burdick Assocs. Owners Corp. v. Indem. Ins. Co. of N. Am.*, 166 A.D.2d 402, 403, 560 N.Y.S.2d 481 (2d Dept. 1990), the Appellate Division, Second Department, affirmed the surety-defendants' motion to dismiss on the ground of collateral estoppel. There, the plaintiff entered into a construction contract with Karlan Construction Corp. ("Karlan") to renovate a brownstone building. *Id.* The contract provided that any disputes would be submitted for arbitration. *Id.* The defendant insurance companies jointly issued a performance bond, which provided that in the event of a default by Karlan, the sureties would remedy the default or complete the contract. *Id.* A contract dispute subsequently developed between plaintiff and Karlan, and, following an arbitration hearing, the arbitration panel directed the plaintiff to pay Karlan $133,000. *Id.* While the arbitration proceeding was still pending, the plaintiff filed a separate action against the surety-defendants, as Monadnock has done here, alleging that the sureties failed to meet their performance bond obligation to complete the construction project. The Second Department noted that it is "beyond dispute that collateral estoppel applies to arbitration awards and that a surety stands in its principal's shoes for collateral estoppel purposes." *Id.* (citations omitted). Accordingly, since the

"issue of Karlan's liability to the plaintiff was determined in the arbitration proceeding," the Second Department upheld the trial court's granting of the motion to dismiss. *See also Rockland County v. Aetna Cas. & Sur. Co.*, 129 A.D.2d 606, 607, 514 N.Y.S.2d 102, 103 (2d Dep't 1987) (holding that a prior arbitral decision finding that an obligee had no cause of action for default against surety's principal collaterally estopped the obligee from later suing the surety).

This Court stated in its May 17, 2016 Order that the parties "agree that the arbitration may moot all claims in the instant suit." Order at 8. That statement has proven largely correct. The Award collaterally estops Monadnock from relitigating claims decided by the arbitrators. The following sections of this memorandum demonstrate that the terms of the Contracts, the Amendment Agreement, the Bonds, and the Award, as applied to the undisputed actions of the parties, entitle Westchester to summary judgment on the claims against it in Monadnock's Amended Complaint.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After such a showing is made, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of . . . element[s] essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat the motion, the non-moving party must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Further, it is well established under New York law that "[t]he interpretation of a contract of suretyship is governed by the standards which govern the interpretation of contracts in general." *Int'l Fid. Ins. Co. v. County of Rockland*, 98 F.Supp.2d 400, 405 (S.D.N.Y. 2000) (citation omitted). Accordingly, New York courts routinely "give effect to the intent of the parties as

expressed in the clear language of the [bonds]," and the "liability of a surety … cannot be extended beyond the plain and explicit language of the [bonds]." *120 Greenwich Dev. Assocs., LLC v. Reliance Ins. Co.*, No. 01 CIV.8219(PKL), 2004 WL 1277998, at *11 (S.D.N.Y. 2004) (citations omitted). In addition, "[w]hether a condition precedent exists under the terms of a contract is a matter of law for the court to decide." *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*, 735 F. Supp. 2d 42, 74 (S.D.N.Y. 2010) (citation omitted).

## LEGAL ARGUMENT

### POINT I: MONADNOCK'S FAILURE TO FULFILL CONDITIONS PRECEDENT OF THE BONDS PRECLUDES A VALID BOND CLAIM

Monadnock asserts two claims against Westchester for breach of contract. It alleges that (i) "Monadnock fulfilled its obligations under the Bonds and all other conditions precedent, if any to [Westchester's] liability under the Bonds have been met or waived," (ii) "[Westchester] was required to take action pursuant to Section 5 of the Contracts after Glasswall's default and Monadnock's January 13, 2014 Section 3.2 notice thereof, and March 6, 2014 7-day notice," and (iii) "[Westchester] … has failed and refused to perform, and breached its obligations under the Bonds." Amended Complaint, Doc. 50, ¶¶ 76-78. To the contrary, as established by the Award and as further set forth below, Monadnock has failed to fulfill express conditions precedent for a valid bond claim, thereby precluding valid claims against Westchester.

"[B]efore a surety's obligations under a bond can mature, the obligee must comply with any conditions precedent." *Elm Haven Constr. Ltd. P'ship v. Neri Constr. LLC*, 376 F.3d 96, 100 (2d Cir. 2004) (citation omitted). Here, Section 3 of the Bonds states the conditions precedent relevant to this case. First, Section 3 begins with the requirement that the Surety's obligations arise only "[i]f there is *no owner default* under the Construction Contract"; then, if there has been no Owner default, the Surety's (Westchester's) obligation "shall arise after" the Owner (Monadnock)

11

### 1.   Monadnock's First "Bond Claim"

By mid-summer 2013, Monadnock and Glasswall were engaged in continuing disputes concerning the timing of delivery, costs, delays, payment and other issues related to the Contracts. SOF, ¶ 6. By letters dated September 16, 2013, October 23, 2013 and December 31, 2013, Monadnock sent notices of default to Glasswall and to Westchester. SOF, ¶ 7.  These notices of default, without a termination of the Contracts, did not constitute bond claims. *See, e.g., Dormitory Auth.-State of New York*, 735 F. Supp. 2d at 84 (noting that it is "also undisputed that DASNY never terminated Contract 15 or Contract 16" and holding that the obligee failed to comply with the conditions precedent under the performance bonds at issue).

Thereafter, by letter dated January 13, 2014, Monadnock gave notice that it had terminated the Contracts based on Glasswall's alleged defaults and sent Westchester notice under Section 3.2 of the Bonds, thereby making a claim under the Bonds.  SOF, ¶ 10.  However, at the time of Monadnock's Section 3.2 notice, the arbitrators found that Monadnock was already in breach of the Contracts due to its failure to accept windows that Glasswall had manufactured.  SOF, ¶ 38. Accordingly, at the time Monadnock presented its bond claims to Westchester, there had been "an event of Owner Default under the Construction Contract" – defined to mean the "[f]ailure of [Monadnock] … to perform and complete or comply with the … material terms of the Construction Contract." *See* the Bonds, Doc. 9-1. This Owner default constituted the failure of a condition precedent, thereby precluding Monadnock from making a valid bond claim.  Monadnock's breach of the Contracts also precluded it from validly terminating the Contracts, thus constituting a failure of the condition precedent of contract termination required in Section 3.2 of the Bonds. *See, e.g., Gen. Ins. Co. of Am. v. K. Capolino Const. Corp.*, 903 F. Supp. 623, 627 (S.D.N.Y. 1995) ("The performance bonds at issue here state that the surety's obligation arises '[i]f there is no Owner

Default.' … General is obligated to complete the contracts only if the WPHA was actually not in default.").

Finally, regardless of whether Monadnock had then been in default, Monadnock explicitly waived its right to assert that it validly terminated the Contracts at that time – a condition precedent to a valid bond claim – by the provisions of the subsequently executed Amendment Agreement. SOF, ¶ 19. As described in Point II below, before and after Monadnock's January 2014 bond claim, the parties engaged in lengthy negotiations to seek a resolution of the disputes leading to Monadnock's claim. SOF, ¶¶ 9, 13, 16. The ultimate result was the April 4, 2014 Amendment Agreement, which indisputably was carefully negotiated. SOF, ¶ 17. While the Amendment Agreement contained various reservations of the parties' rights, some provisions of the Amendment Agreement were without reservation, in particular, the last sentence of Section 7 providing that:

> "Monadnock agrees that it waives any right it may have to terminate the initial Contracts based on events occurring to date [April 4, 2014.]"

SOF, ¶ 19. The Award confirmed Monadnock's forgoing waiver stating "Glasswall and Monadnock also agreed to waive their respective rights to terminate the [Contracts] based upon events of default occurring prior to the Amended Agreement".[1] *See* the Award, Doc. Boote Declr., Ex. L, at pg. 5. Accordingly, Monadnock's unreserved waiver of its right to terminate the Contracts based on events up to April 4, 2014 constituted a voluntary and intentional waiver of Monadnock's ability to fulfill the condition precedent of a contract termination required for a valid bond claim. *120 Greenwich*, 2004 WL 1277998, at *8 ("Waiver, 'the intentional relinquishment of a known right, may be accomplished by express agreement…'").

In summary, Monadnock possesses no valid bond claim based on its January 13, 2014 notice of termination because it was then already in breach of its obligation to accept windows

---

[1] The arbitrators awarded Monadnock no damages for events prior to April 4, 2014. SOF, ¶ 38.

has taken the three actions stated in Sections 3.1-3.3. *See* the Bonds, Doc. 9-1 (emphasis added). That is, (1) notify the contractor and the surety that it is considering declaring a default and, if warranted, request a meeting with the contractor and the surety to attempt to resolve the problems with the contractor's performance; (2) formally declare a contractor default and terminate the contractor's right to complete the contract; and (3) pay the balance of the contract price to the surety or to the contractor selected to complete the construction contract.

New York Courts recognize that provisions analogous to Sections 3.1-3.3 of the Bonds represent "common conditions of performance bonds which … resemble the conditions included in the standard [AIA] Performance Bond." *Dormitory Auth.-State of New York*, 735 F. Supp. 2d at 84. *See generally*, *120 Greenwich*, 2004 WL 1277998, at *12. This language has further been held to create unambiguous preconditions for triggering a surety's obligations under the Bonds. *Id.* (collecting cases); *see also Dormitory Auth.-State of New York*, 735 F. Supp. 2d at 84 (noting that the "conditions precedent of the Performance Bonds are set forth in 'unmistakable language of condition,' and as 'express conditions,' they 'must be literally performed'"); *U.S. ex rel. Platinum Mech., LLC v. U.S. Sur. Co.*, 2007 WL 4547849, at *3 (S.D.N.Y. 2007) ("The Performance Bond … contained an explicit notice requirement that was a condition precedent to [Utica's] performance.").

As described below, Monadnock was in default of its contractual obligations in early 2014 (the first condition precedent) when it presented its bond claim and thus could not have validly terminated Monadnock's Contracts, thereby failing to fulfill the section 3.2 condition precedent of contract termination.

manufactured by Glasswall and because its own breach precluded its right of termination. Further, Monadnock's unconditional agreement to waive any right to assert a termination of the Contracts based on events occurring prior to April 4, 2014 requires a finding that Monadnock did not satisfy the condition precedent of terminating the Contracts.  Nevertheless, as described in Point II below, rather than denying Monadnock's invalid bond claim, Westchester, reserving its rights, implemented one of the proper surety actions provided for in the Bonds.  That is, it arranged for the Contractor to complete the Contracts with Monadnock's consent.

### 2.    Monadnock's Second "Bond Claim"[2]

After the parties entered into the Amendment Agreement, Glasswall continued to perform its obligations under the Contracts and under the Amendment Agreement.  SOF, ¶ 22.  However, by letter dated March 4, 2015, Monadnock again sent a notice of default to Glasswall and to Westchester. SOF, ¶ 23.  Thereafter, by letter dated March 16, 2015, Monadnock gave notice that it had terminated the Contracts based on Glasswall's alleged defaults and sent Westchester notice under Section 3.2 of the Bonds.  SOF, ¶ 26.  For the reasons set forth below, Westchester submits that Monadnock's second "bond claim" is also invalid because Monadnock again failed to satisfy the required condition precedent to Westchester's obligations under the Bonds of contract termination.

First, Monadnock's March 16, 2015 notice of termination plainly states that it is based upon the events specified in the March 4, 2015 notice of default, which itself references events

---

[2] Although the claims against Westchester in Monadnock's Amended Complaint are specifically limited to Westchester's acts and/or omissions in connection with "Section 5 of the Contracts after Glasswall's default and Monadnock's January 13, 2014 Section 3.2 notice thereof, and March 6, 2014 7-day notice," Monadnock elsewhere alleges that "on March 4, 2015, four months after Glasswall was required to complete its work per the Amendment Agreement, Monadnock served a Notice of Default on Glasswall" and on Westchester. Amended Complaint, Doc. 50, ¶ 59.  Monadnock further alleges that on March 16, 2015, after the expiration of the purported cure period provided by the Notice of Default, Monadnock sent a notice of termination of the Contracts and made a second claim under Section 3.2 of the Bonds. Amended Complaint, Doc. 50, ¶ 62. Accordingly, in an abundance of caution, Westchester submits that Monadnock's second "bond claim" is also invalid for the reasons set forth herein.

occurring prior to April 4, 2014.  SOF, ¶¶ 23, 26.  However, as set forth above, and as found by the arbitrators in the Award, Monadnock previously agreed to waive its right to terminate the Contracts based upon events of default occurring prior to the Amendment Agreement.  Therefore, Monadnock's notice of termination was invalid on this ground alone, while also constituting a breach by Monadnock of the Contracts, as amended.  Nevertheless, while Westchester had no obligation to treat this second claim as valid, as described in Point II below, Westchester, reserving its rights, promptly investigated the claim.  SOF, ¶¶ 28-29.

Westchester's investigation revealed that Monadnock's March 16, 2015 notice of termination was also invalid because (i) the Contracts had been substantially completed and under New York law could not be properly terminated and (ii) Monadnock's failure to exercise its right to deposit the amount of backcharges and claims it then had pursuant to the Amendment Agreement constituted a waiver of its claims.

New York law is clear that a substantially completed contract cannot be terminated based upon purported events of default.  *See, e.g.*, *845 UN Ltd. P'ship v. Flour City Architectural Metals, Inc.*, 28 A.D.3d 271, 271, 813 N.Y.S.2d 404, 405 (1st Dept. 2006) ("Since undisputed record evidence amply demonstrates that defendant substantially completed its work, plaintiff owner was powerless to terminate the contract for defendant's alleged default.").  Here, it is undisputed that the Windows had been delivered at the time of Monadnock's purported termination, and that Monadnock had paid the entire contract balance. SOF, ¶ 39.  Even further, Glasswall remained ready, willing and able to perform any of its remaining obligations under the Contracts, which, as evidenced by Monadnock's payment, in full, to Glasswall, was limited to minor punch list items. SOF, ¶ 27.

Moreover, the Award supports the conclusion that the Contracts had been substantially completed because the items for which damages were awarded represent "completion items" akin to minor punch list items, rather than items that prevented Monadnock from realizing the benefits of Glasswall's substantially completed work. SOF, ¶ 39. Accordingly, the "substantial performance rule precludes contract termination" under these circumstances (*845 UN Ltd.*, 28 A.D.3d at 272), and Monadnock's March 16, 2015 notice of termination therefore failed to satisfy the condition precedent for a valid second bond claim. *See, e.g., Michael G. Buck & Son Const. Corp. v. Poncell Const. Co.*, 217 A.D.2d 925, 925, 629 N.Y.S.2d 584, 585 (4th Dept. 1995) ("We conclude that the evidence establishes that defendant breached the contract by wrongfully ordering plaintiff off the job at a time when plaintiff was in substantial compliance.").

Further, Monadnock waived its right to assert claims of default arising after the Amendment Agreement by failing to follow the process required by the Amendment Agreement to preserve any such claims. Section 13 of the Amendment Agreement provided:

> 13. Notwithstanding any of the foregoing provisions of this Agreement, and superseding all such provisions, Monadnock shall pay to WFIC, in accordance with the Contracts, a sum equal to the gross dollar value of all Windows delivered to the project site determined from the Schedule of Values. If Monadnock asserts that any payment to WFIC should be reduced based on a backcharge, change order or similar reduction permitted under the terms of the Contracts and arising after the date hereof, Monadnock shall make payment to WFIC by payment of the amount of the asserted backcharge, change order or other reduction to the escrow account of Duane Morris, pursuant to the attached escrow agreement (Exhibit "G"), and the amounts so deposited shall thereafter be paid from the escrow account based on the agreement of the parties or as determined in arbitration pursuant to the Contracts. The payment of such sums to escrow shall be without prejudice to, and subject to, the claims reserved by the parties pursuant to paragraph 9 hereof as well as to all parties' backcharges, change orders or claims arising after the date of this Agreement, the resolution of all of which shall be deferred until the completion or termination of the contracts as set forth in paragraph 9. Required payments to be made to WFIC will be regarded as payments to Glasswall under the Contracts.

*See* Amendment Agreement, annexed to the Boote Decl. as Exhibit E.

Thus, the Amendment Agreement provided that if Monadnock had backcharges or claims it wished to assert against Glasswall, it was required to deposit an amount equal to the amount of those backcharges into the Duane Morris escrow account described in Section 13.  The purpose of the escrow account was to assure payment for Windows but to also allow disputed claims to be resolved via the dispute resolution process.  However, Monadnock paid nothing into the escrow account and thus waived its rights with respect to any "backcharge, change order or similar reduction permitted under the terms of the Contracts and arising after [April 4, 2014]".  *Id.*

In sum, Monadnock again failed to validly terminate the Contracts, and, under the terms of the Amendment Agreement, waived its right to assert claims or backcharges against Glasswall and Glasswall's surety, Westchester.

## POINT II: NOTWITHSTANDING THE INVALIDITY OF MONADNOCK'S BOND CLAIMS, WESTCHESTER FULFILLED ITS OBLIGATIONS UNDER THE BONDS

Monadnock asserts in its Amended Complaint that "WFIC refused to take any Section 5 action whatsoever" and thereby breached the Bonds.  Amended Complaint, Doc. 50, ¶¶ 38, 42. Putting aside the invalidity of Monadnock's Bond claims, Westchester, without prejudice to its right to deny the claims, responded to Monadnock's January 2014 Bond claim by engaging in lengthy, complex negotiations to find a solution to complete the bonded Contracts. These efforts ultimately resulted in the Amendment Agreement that provided for completion of the Contracts by Glasswall with the consent of Monadnock.  SOF, ¶ 17.

The Bonds define the time within which Westchester is obligated to respond to a valid bond claim, and, if a valid bond claims exists, Westchester's options to respond to that claim. Specifically, Section 5 of the Bonds provides that Westchester can fulfill its obligations by arranging for the Contractor (Glasswall), with the consent of the Owner (Monadnock), to complete the Contracts. *See* the Bonds, Doc. 9-1. Section 6 of the Bonds provides the time within which

Westchester must take such action provided for in Section 5. After additional written notice from the Owner (Monadnock) demanding that Westchester perform its obligations, Section 6 provides that Westchester must act within seven days after receipt of such a notice.

While the parties were negotiating a resolution to Monadnock's claims, Monadnock issued a section 6 notice to Westchester on March 6, 2014. SOF, ¶ 12. However the parties continued to negotiate. SOF, ¶ 13. While the substance of the settlement negotiations should remain confidential, Monadnock agreed on three separate occasions to extend the time within Westchester must act in response to its first Bond claim to April 4, 2014 in order to allow the parties to continue and conclude their negotiations. SOF, ¶¶ 14-16.

The result of the negotiations was the complex Amendment Agreement dated April 4, 2014. SOF, ¶ 17. The Amendment Agreement's complexity, and Monadnock's repeated agreements to extend the time to allow the parties to negotiate, demonstrate that Westchester expended considerable effort (with the agreement of Monadnock) to address Monadnock's claims, regardless of their validity. The Amendment Agreement resulting from those months of negotiations is a permitted action by Westchester under Section 5.1 of the Bonds. That is, Westchester arranged for Glasswall, with the consent of Monadnock, to perform and complete the contracts. Under the Amendment Agreement, Glasswall was to "proceed to perform the Contracts … under their original terms, including price and payment, except as modified by this [Amendment Agreement]." SOF, ¶ 18. In other words, the Amendment Agreement's undisputed terms belie Monadnock's allegation that the Amendment Agreement was not an available option to Westchester under its Bonds.

With respect to Monadnock's second Bond "claim," Westchester also promptly responded by investigating the claim. Counsel for Westchester and Counsel for Monadnock promptly met along with an expert retained by Westchester to review the items stated in Monadnock's March 4,

2015 notice of default. SOF, ¶ 28. Based on that review and Westchester's further investigation, Westchester denied Monadnock's second Bond claim by letter dated April 25, 2015 for the reasons identified above, in accordance with Section 5.4 of the Bonds providing that Westchester may deny liability and notify Monadnock, citing the reasons for the denial. SOF, ¶ 31.

Based on the foregoing, setting aside the invalidity of Monadnock's claims under the Bonds, Westchester responded to Monadnock's claims constructively, duly investigated them and negotiated the Amendment Agreement permitting Glasswall to complete the Contracts. In fact, Westchester went well beyond timely implementing a Surety action prescribed in the Bonds. Westchester separately agreed to pay $1.5 million of Westchester's own funds to Glasswall as incentive payments for Glasswall's manufacture of the Windows. SOF, ¶ 21. Regardless of the fundamental invalidity of Monadnock's claims, Westchester timely responded to the claims and implemented a permitted action prescribed by the Bonds, thereby fulfilling its Bond obligations.

## POINT III: MONADNOCK'S CLAIM OF BAD FAITH MUST BE DISMISSED

Monadnock's "Second Claim for Relief (Breach of Contract)" alleges that Westchester engaged in a bad faith investigation and denial of Monadnock's claim. Focusing only on its January 2014 bond claim, Monadnock alleges that "[Westchester's] denial of Monadnock's claims was in bad faith, as all of the reasons [Westchester] provided … were patently false and [Westchester] knew them to be false." Amended Complaint, Doc. 50, ¶¶ 39, 83. As described above, however, putting aside that Monadnock did not possess a valid bond claim at that time, Westchester did not deny the claim. Instead, Westchester implemented the permitted action to arrange for Glasswall's completion of the Contracts and paid $1.5 million to incentivize Glasswall's completion. Presumably, Monadnock contends that Westchester's actions were insufficient under the Bonds, constituting a claim denial. However, even if Monadnock's argument had merit, such a denial would simply amount to a claim for breach of contract. Based on the foregoing, Monadnock's

second claim for relief is duplicative of its first claim for relief, also for breach of contract, and should be dismissed on that basis.

"New York law does not recognize an independent cause of action for bad faith denial of insurance coverage." *Winston & Winston, P.C. v. Travelers Cas. Ins. Co. of Am.*, 2017 U.S. Dist. LEXIS 130017 (S.D.N.Y. 2017) (citing *Vitrano v. State Farm Ins. Co.*, 2008 WL 2696156, at *3 (S.D.N.Y. 2008)); *see also United Capital Corp. v. Travelers Indem. Co.*, 237 F.Supp. 2d 270, 277 (E.D.N.Y. 2002) ("Under New York law, no independent tort claim exists for the bad faith denial of insurance coverage."); *Wingates, LLC v. Commonwealth Ins. Co. of Am.*, 21 F. Supp. 3d 206, 221 (E.D.N.Y. 2014).  In fact, a claim for "bad faith denial of coverage . . . would be duplicative of a claim sounding in breach of contract." *Sikarevich Family L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166, 171 (E.D.N.Y. 2014) (citation omitted); *see also Winston*, 2017 U.S. Dist. LEXIS 130017 at *6 (standing for the proposition that when a plaintiff alleges a bad faith claim for denial of payment, absent the alleging of an underlying tort duty sufficient to support a claim for punitive damages, such a claim has also been held to be duplicative of the underlying cause of action for breach of contract); *Continental Information Systems Corp. v. Federal Ins. Co.*, 2003 WL 145561, at *12 (S.D.N.Y. 2003) (in order for a party to recover extra-contractual damages for a claim of bad faith, "there must be allegations of a tort, independent of plaintiff's claim of bad faith denial of insurance coverage").

For example, in *Sikarevich Family L.P.*, plaintiff owned commercial property that was insured by the defendant-insurer under a commercial general liability and commercial property policy.  During the policy period, plaintiff suffered a loss, and defendant denied coverage based on an exclusion in the policy for loss caused by flood, storm surge, water or water-borne material.  In turn, Plaintiff filed suit, asserting claims against the defendant-insurer for breach of contract and breach of the implied covenant of good faith and fair dealing (*i.e.* bad faith), among

21

other things. In support of its bad faith claim, plaintiff alleged that in addition to failing to provide coverage to the plaintiff, the defendant-insurer failed to investigate and evaluate plaintiff's claims for coverage and issued a bad faith denial of coverage. Defendant moved to dismiss the bad faith claim, arguing that the claim was duplicative of plaintiff's claim for breach of contract. This Court agreed, noting that "defendant's decision to deny plaintiff coverage [was] the crux of plaintiff's bad faith allegations. That is, the same facts, regarding defendant's compliance with its contractual obligations, [gave] rise to both claims." *Id.* at 171. To this end, the Court further noted that plaintiff's complaints of "delay and lack of investigation address the same ultimate grievance of failure to comply with the agreement." *Id.* (citing *Cnty. of Orange v. Travelers Indem. Co.*, 2014 WL 1998240, at *3 (S.D.N.Y. May 14, 2014) (good faith and fair dealing claim based on allegations regarding insurer's claim investigation was duplicative of breach of contract claim)). Accordingly, as the same facts gave rise to both claims, the Court dismissed plaintiff's bad faith claim.

Similarly, in this case, Plaintiff's second cause of action in the Amended Complaint alleging bad faith is precisely the type of duplicative claim that is not cognizable under New York law. *See, e.g., Winston,* 2017 U.S. Dist. LEXIS 130017 at *6. Plaintiff asserts only that Westchester's "denial of Monadnock's claims was in bad faith, as all of the reasons [Westchester] provided for denying Monadnock's Bond claims were patently false and [Westchester] knew them to be false." *See* Amended Complaint, Doc. 50, ¶¶ 39, 83. As in *Sikarevich Family L.P.*, Westchester's decisions with respect to Monadnock's Bond claims form the crux of both the first and second causes of action for breach of contract. There is not, nor could there be on these facts, an allegation of a tort independent of the Bonds and Contracts. Without such an allegation of an independent or extra-contractual tort, whatever one labels the second cause of action here – breach of contract or bad faith – its allegations center on an alleged breach of contract under the Bonds.

Of course, Monadnock's first cause of action already alleges a breach of the Bonds. Therefore, its Second Claim for Relief, alleging bad faith, is impermissibly duplicative of its First Claim for breach of contract, and Westchester is therefore entitled to summary judgment on this basis. *Id.*

## CONCLUSION

For the foregoing reasons, Defendant/Third-Party Plaintiff Westchester Fire Insurance Company respectfully requests that the Court grant this motion for summary judgment and enter an Order dismissing Plaintiff's Amended Complaint as against Westchester in its entirety.

Dated:   New York, New York
   January 12, 2018

COZEN O'CONNOR

By:  /s/ John J. Sullivan
   John J. Sullivan
   Alexander Selarnick
   45 Broadway Atrium, Suite 1600
   New York, NY 10006
   P: 212-453-3729
   F: 646-461-2073
   JSullivan@cozen.com
   ASelarnick@cozen.com

   Robert McL. Boote*
   *Admitted Pro Hac Vice*
   Suite 400, 200 Four Falls Corporate Center
   P.O. Box 800
   West Conshohocken, PA 19428
   P: 215-665-4630
   F: 215-701-2424
   RBoote@cozen.com

   *Attorneys for Defendant*
   *Westchester Fire Insurance Company*

23
