# Exhibit G

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

## CONSTRUCTION INDUSTRY ARBITRATION RULES
### Demand for Arbitration

**MEDIATION:** If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box. ☒
There is no additional administrative fee for this service.

| | | | | | | |
|---|---|---|---|---|---|---|
| **Name of Respondent** Glasswall, LLC | | | **Name of Representative (if known)** James E. Frankel, Esq. | | | |
| **Address:** 3550 NW 49th Street | | | **Name of Firm (if applicable)** Schiff Hardin LLP | | | |
| | | | **Representative's Address:** 666 Fifth Avenue, Suite 1700 | | | |
| **City** Miami | **State** FL | **Zip Code** 33142 | **City** New York | **State** NY | **Zip Code** 10103 | |
| **Phone No.** (305) 683-5151 | | **Fax No.** (305) 638-5158 | **Phone No.** (212) 745-0837 | | **Fax No.** (212) 753-5044 | |
| **Email Address:** janderson@glasswall.com | | | **Email Address:** jfrankel@schiffhardin.com | | | |

The named claimant, a party to an arbitration agreement dated **January 3, 2013**, which provides for arbitration under the Construction Industry Rules of the American Arbitration Association, hereby demands arbitration.

**ARBITRATION CLAUSE:** Please indicate whether the contract containing the dispute resolution clause governing this dispute is a standard industry form contract (such as AIA, ConsensusDOCS or AGC) or a customized contract for the specific project.
Contract Form: **AIA A201-2007**

**THE NATURE OF THE DISPUTE**

BREACH OF CONTRACT

**Dollar Amount of Claim** $ **TBD**

**Other Relief Sought:** ☒ Attorneys Fees  ☒ Interest  ☒ Arbitration Costs  ☐ Punitive/Exemplary  ☐ Other _____

**Amount Enclosed** $ **7,000.00**   In accordance with Fee Schedule:  ☐ Flexible Fee Schedule  ☒ Standard Fee Schedule

**PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:**
Owner/Contractor/Construction Attorney

**Hearing locale requested** 150 E. 42nd St., NY, NY       **Project site** 1-55 Borden Avenue/1-50 50th Avenue, L.I.C., NY

**Estimated time needed for hearings overall:**
_____ hours or   **10.00**   days

**Specify type of business:**  Claimant **Contractor**
                             Respondent **Manufacturer**

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| | | | | | | |
|---|---|---|---|---|---|---|
| **Signature** (may be signed by a representative) *[signed]* | | **Date:** 3/4/15 | **Name of Representative** Judah D. Greenblatt, Esq. | | | |
| **Name of Claimant** Monadnock Construction, Inc. | | | **Name of Firm (if applicable)** Greenblatt Lesser LLP | | | |
| **Address** (to be used in connection with this case) 155 3rd Street | | | **Representative's Address** 122 E. 42nd Street, 31st Floor | | | |
| **City** Brooklyn | **State** NY | **Zip Code** 11231 | **City** New York | **State** NY | **Zip Code** 10168 | |
| **Phone No.** (718) 875-8160 | | **Fax No.** (718) 802-1109 | **Phone No.** (212) 682-9832 | | **Fax No.** (212) 867-9319 | |
| **Email Address:** gbauso@moncon.com | | | **Email Address:** jgreenblatt@greenblattlesser.com | | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.

AMERICAN ARBITRATION ASSOCIATION
CASE NO.:

-----------------------------------------------------------------X
**Monadnock Construction, Inc.,**

                Claimant,

and

**Glasswall, LLC,**

                Respondent.

-----------------------------------------------------------------X

**SUMMARY OF DISPUTE**

Claimant, Monadnock Construction, Inc. ("Monadnock") by its attorneys, Greenblatt Lesser LLP, as and for its Summary of Dispute pursuant to its Demand for Arbitration against Glasswall, LLC ("Glasswall"), states as follows:

1.     On or about January 3, 2013, Monadnock, as Contractor, located at 155 3rd Street, Brooklyn, New York, entered into two (2) AIA A401-2007 contracts (hereinafter collectively referred to as the "Contracts") with Glasswall, as Manufacturer, located at 3550 NW 49th Street, Miami, Florida, for the supply of windows and other materials (collectively, "Windows") to two (2) mixed use (commercial/affordable housing) projects in the Hunters Point South section of Long Island City. The Contracts are annexed hereto as Exhibit "A".

2. The Windows required under the Contracts are long lead items that require many months to design, engineer and produce. The Windows are also unique and were to be specifically manufactured for the projects.

3. The first project, referred to as "HPS Parcel A", is a thirty-seven (37) story building located at 1-50 50th Avenue, and is owned by HPS 50th Avenue Associates LLC. The second project, referred to as "HPS Parcel B", is a thirty-two (32) story building located at 1-55 Borden Avenue, is owned by HPS Borden Avenue Associates LLC. The two (2) HPS entities are hereinafter collectively referred to as "HPS". The HPS Parcels A and B projects are hereinafter collectively referred to as the "Projects".

4. The Monadnock/Glasswall HPS Parcel A Contract was in the amount of Eight Million, Four Hundred and Twelve Thousand, Five Hundred and Two Dollars ($8,412,502) and required Glasswall to deliver Five Thousand, Eight Hundred and Thirty-Six (5,836) Windows to HPS Parcel A. The Monadnock/Glasswall HPS Parcel B Contract was in the amount of Four Million, Five Hundred and Eighty-Seven Thousand, Four Hundred and Ninety-Eight Dollars ($4,587,498) and required Glasswall to deliver Three Thousand, One Hundred and Twenty (3,120) Windows to HPS Parcel B.

5. The Contracts required Glasswall to obtain payment and performance bonds for each Contract. Pursuant thereto, Glasswall obtained from WFIC Payment and Performance Bonds No. K08840295 dated February 12, 2013 for HPS Parcel A and Payment and Performance Bonds. No. K08840258 dated February 11, 2013 for HPS Parcel B in the amounts of the Contracts.

6. The Contracts have a "time of the essence" clause (AIA A401-2007, section 9.4). They required Glasswall to ship completed Windows to HPS Parcel B starting on July 1, 2013 and to HPS Parcel A starting on September 1, 2013. Glasswall did not meet those dates.

7. On March 15, 2013, the project schedule was updated and reflected Window delivery start dates of August 7, 2013 for Parcel B and of August 29, 2013 for Parcel A. Glasswall did not meet those delivery start dates either. On August 16, 2013, Glasswall's attorney at the time, Clinton D. Flagg, sent Monadnock a letter representing that "completed window assemblies" would be ready to ship by Glasswall to the Projects on September 1, 2013. That representation proved false. On November 20, 2013, Glasswall issued a production schedule representing that Release 1 for Parcel A (i.e. Windows for floors 2-6) would be complete by December 6, 2013 and Release 1 for Parcel B (i.e. Windows for floors 2-9) would be complete by December 12, 2013. Those representations proved to be false as well.

8. The Contracts also required Glasswall to fabricate, and store off-site, Windows as necessary to allow for their timely and continuous installation (Rider 5, ¶17.d.2) at a rate of 2 floors per week (Rider 5, ¶37) while keeping pace 6 floors below the superstructure contractor (Rider 5, ¶4.3.b). On or about January 15, 2014, Monadnock's subcontractor completed the concrete superstructure on HPS Parcel A and on or about November 21, 2013, it completed the concrete superstructure on HPS Parcel B. Glasswall was also required to: "diligently perform the work, and maintain men in sufficient numbers and materials in sufficient quantities to accomplish the rapid completion of the job." (AIA A401-2007, section 9.3). Significant work on the Projects ground to a halt as the Windows were necessary to protect the interior of the buildings from the outside elements and were a necessary construction pre-condition to the various interior construction trades progressing their work.

3

9. Although Monadnock asked Glasswall several times for a recovery schedule that would show how Glasswall intended to accelerate its production to make up for lost time, Glasswall refused to provide same. Instead, Glasswall issued production schedules on September 17, 25, 27, October 28, and November 20, 2013, none of which Glasswall followed and all of which failed to show the recovery of lost time.

10. On November 27, 2013, Glasswall emailed Monadnock that Parcel A Release 1 would be complete by December 6, 2013 and Parcel B Release 1 would be complete by December 12, 2013. Those Releases were not completed as represented. On January 7, 2014, Glasswall issued another production schedule, which failed to provide for critical storefront Windows, and once again failed to recover all of the lost time. Moreover, it guaranteed that Glasswall would be late in its "time of the essence" deliveries. Given Glasswall's prior history of broken production and delivery promises and its continued problems with its suppliers, Monadnock had doubts that Glasswall would maintain the January 7, 2014 production schedule.

11. Moreover, quality assurance/quality control ("QA/QC") issues pervaded Glasswall's production. Israel Berger & Associates, LLC ("IBA"), acting as HPS's representative, conducted limited inspections of Glasswall's production in its Miami facilities. It issued weekly deficiency reports demonstrating Glasswall's QA/QC problems. Those deficiencies continued to plague Glasswall's production. In late December, 2013, Glasswall, at IBA's request, opened up 3-5 crates of "completed window assemblies" that Glasswall had represented were defect-free and ready for shipment to the HPS Project. IBA discovered that numerous previously known defects in several of those "completed window assemblies" had not been remedied.

4

12. Last, Glasswall anticipatorily breached the Contracts by demanding payment before it was due and declaring its refusal to ship Windows if ordered to do so by Monadnock. The Contracts did not require Monadnock to pay Glasswall for stored materials not delivered to the Projects. In any event, delivery of those Windows was held up due to QA/QC concerns and, moreover, the respective Release 1's for Parcels A and B were not complete. In addition, Glasswall's certified requisition amounts for its production were false and were never resubmitted with accurate quantities.

13. Since Window delivery is critical to the progress of the Projects, delays in their delivery delayed the completion of the Projects and pushed out the temporary certificate of occupancy ("TCO") dates. This exposed Monadnock to substantial damages including, but not limited to, extended general conditions, extended field costs, extended overhead costs, trade delay claims, extended financing costs, loss of rents and other damages. The full financial impact of the delays is ongoing.

14. In consequence of all the foregoing, Monadnock sent Glasswall a Notice of Default on September 16, 2013, a Notice of Continuing Default on October 23, 2013 and a Notice of Continuing Default on December 31, 2013. Nevertheless, Glasswall remained in default of its production obligations, delivery obligations, scheduling obligations, and QA/QC obligations and it submitted falsified requisitions that it demanded to be paid for, despite having never delivered a single Window to the Projects. On January 13, 2014, Monadnock terminated Glasswall's Contracts.

15. For the next few months, Glasswall continued to refuse to ship any Windows to the Project. Ultimately, on April 4, 2014, in an effort to mitigate damages, and without any waiver of its rights, Monadnock entered into an Agreement to Amend Contracts ("Amendment

Agreement") with Glasswall, WFIC, HPS and the indemnitors on the Bonds, Ugo Colombo and his wife Sara Jayne Colombo Kennedy (the "Indemnitors"). The Amendment Agreement is annexed hereto as Exhibit "B". The Amendment Agreement provided, *inter alia* that Glasswall would produce Windows for the Projects according to an April 4, 2014 Production Schedule and "deliver Competed Windows Units on a continuous basis to the Project as expeditiously as possible consistent with the Production Schedules" (Amendment Agreement, paragraph 6). The Production Schedules required production to be completed by October 28, 2014.

16. The Agreements required Glasswall to complete its Work so that the Projects could be completed by "4th quarter of 2014 to 1st quarter of 2015" for Parcel A (Rider 5, ¶44c) and "3rd quarter of 2014" for Parcel B (Rider 5, ¶43c). The Amendment Agreement further required Glasswall to deliver completed windows "on a continuous basis to the Project as expeditiously as possible consistent with the Production Schedules" (Amendment Agreement, ¶6).

17. The Amendment Agreement also provided that WFIC would pay Glasswall for all windows it produced at its Miami facilities and Monadnock would pay WFIC for all Windows it received at the Projects. Monadnock withdrew its termination of Glasswall without prejudice. All claims among the parties that had accrued thru the date of the Amendment Agreement were deferred pending the final delivery of Windows or the earlier termination of the Contracts.

18. By October 28, 2014, Glasswall had neither completed production of the windows nor delivered all the windows it had produced. Instead, Glasswall first slowed down its shipment of completed windows and then stopped the deliveries completely, even though it had many truckloads of windows at its facilities ready for shipment. Glasswall also slowed its production of the remaining windows and other fabricated materials. Glasswall explained that it would not

6

continue shipment of completed windows or production of new windows until it was paid in advance by WFIC its entire contract balance. Glasswall also demanded that Monadnock pay WFIC in advance for Glasswall's remaining Work, even though it had neither been produced nor delivered to the Projects.

19. On November 14, 2014, WFIC acceded to Glasswall's duress and paid Glasswall its entire contract balance on both Agreements. On November 24, 2014, Monadnock likewise acceded to Glasswall's duress and paid WFIC the entire remaining contract balance on the Agreements without deduction. The Monadnock payment was made with a full reservation of rights and in order to mitigate the damages resulting from Glasswall's breaches of the Agreements that were delaying completion of the Projects.

20. Despite being paid in advance and in full for all the Work required under the Agreements, Glasswall continued to breach same for reasons including but not limited to the following:

> (a) Glasswall has not completed its Work;
> (b) Glasswall has not corrected defective Work;
> (c) Glasswall has not provided documentation required under the Agreements including but not limited to warranties, LEED documentation, material certifications, and final lien waivers by Glasswall and its suppliers;
> (d) Glasswall delayed in performance of its Work thereby causing delays and increased costs to other contractors whom Monadnock has and/or will reimburse;
> (e) Glasswall delayed in performance of its Work thereby causing delays and increased costs to Monadnock;
> (e) Glasswall has failed to pay all its suppliers for materials used to fabricate the Work and for shipment of same to the Projects; and
> (f) Glasswall has ceased operations and it will not be able to fulfill its warranty obligations;

7

21. For all the foregoing, Monadnock demands that a duly constituted Arbitration Panel determine the amount of damages suffered by Monadnock and fashion an Arbitration Award accordingly, inclusive of attorney fees, interest, costs and disbursements.

Dated: March 4, 2015
      New York, New York

      Greenblatt Lesser LLP
      Attorneys for Claimant
      Monadnock Construction, Inc.

By: _____
      Judah D. Greenblatt, Esq.
      The Chanin Building
      122 East 42nd Street, 31st Floor
      New York, NY 10168
      (212) 867-9319