# Exhibit J



James E. Frankel
212.745.0837
JFrankel@schiffhardin.com

666 Fifth Avenue, 17th Floor
New York, New York  10103
t 212.753.5000
f 212.753.5044
www.schiffhardin.com

April 23, 2015

**VIA EMAIL AND US MAIL**

Robert McL. Boote - rboote@cozen.com
Cozen O'Connor
200 Four Falls Corporate Center, Suite 400
West Conshohocken, PA  19428

Re:   Letter Dated April 20, 2015 from Monadnock Construction, Inc. to Westchester Fire   Insurance Company ("WFIC");   Agreements between Monadnock Construction, Inc. and Glasswall, LLC dated January 3, 2013, as amended, for the Construction of the Projects Known as HPS Parcel A and HPS Parcel B; Performance Bonds Issued by WFIC

Dear Bob:

I have your email of April 20, 2015 attaching the above-referenced letter. For the reasons set forth below, our client, Glasswall, LLC, requests that WFIC at this time deny any and all claims made by Monadnock under the performance bonds issued by WFIC. To the extent we have been given to understand the position of WFIC's indemnitors, by their separate counsel, they join in this request.

I refer also to your letter to me dated March 17, 2015, following Monadnock's notice of termination of the contracts, and my response dated March 18, 2015 and its attachments. Since then we have had a number of telephone exchanges during which we and our client have demonstrated further legal and factual support for Glasswall's position. This letter will be augmented by one or more exhibits to be furnished to you by Glasswall in connection with the telephonic review that occurred on April 22, 2015 of the items listed in Monadnock's notice of default to Glasswall.

Glasswall's fundamental position is that Monadnock, by terminating Glasswall's contracts after the contracts were substantially completed, materially breached the contracts. A purported termination for cause after substantial completion is not merely ineffective under New York law; it constitutes a wrongful termination and material breach on the part of the acting party. *845 UN Limited Partnership v. Flour City Architectural Metals, Inc.*, 28 A.D.3d 271, 813 N.Y.S.2d 404 (1st Dep't 2006) ("Since undisputed record evidence amply demonstrates that



Robert McL. Boote
April 23, 2015
Page 2 of 6

defendant substantially completed its work, plaintiff owner was powerless to terminate the contract for defendant's alleged default..."). See, also, F. Garofalo Electric Co. Inc. v New York University, 300 A.D.2d 186, and Michael G Buck & Son etc. v Poncell Const. Co., 217 A.D.2d 925.

Whether or not its wrongful termination of the contracts leaves it with any remaining contractual remedies against Glasswall (we believe it does not), Monadnock's wrongful termination clearly relieves WFIC of any liability under the performance bond. *Gulf Ins. Co. v. Fidelity & Deposit Co. of Maryland*, 16 Misc.3d 1116(A), 847 N.Y.S.2d 896 (Sup.Ct. N.Y. Co. 2007); 4C N.Y. Prac., Com. Lit. in New York State Courts § 104:17 (3d ed.) ("[T]he surety will have no liability for failing to complete if the contractor's performance was wrongfully terminated by the owner"); 5 Bruner & O'Connor Construction Law § 18:3 ("An owner's wrong decision to terminate the contract discharges both the contractor and its performance bond surety from all performance obligations").

As you are well aware, the performance bond, by its terms, cannot be called into play, unless there is a proper termination of performance. Ipso facto, under New York law (which is consistent with the majority of jurisdictions) by its terms it cannot cover any claims arising out of any post-substantial completion contract obligations, including punch-list, close-out, or warranty claims.

At the time that Monadnock first served a notice of default upon Glasswall, Glasswall was continuing to perform those post-substantial-completion obligations which it acknowledged to Monadnock remained to be performed. It advised Monadnock that it was at all times ready willing and able to continue to do so. It is obvious that Monadnock's purported "termination" of the contracts was a calculated risk designed to somehow re-acquire bond rights that its contracts, and its prior actions, as a matter of law, had already extinguished. It had no other comprehensible business interest in "terminating" the contracts.

**Substantial Completion**

None of the alleged defective or incomplete work belatedly asserted by Monadnock goes to the issue of substantial completion of the work. At best these are mere potential warranty or punch list items.

Issues of Substantial Completion are mixed questions of law and fact under the case law of New York. Notwithstanding, the record cited above leaves no doubt that same was achieved by Glasswall long prior to the purported Notices of Default and subsequent Notice of Termination issued by Monadnock to Glasswall in March of 2015.



Robert McL. Boote
April 23, 2015
Page 3 of 6

       Glasswall was a supplier, not a subcontractor, of Monadnock. The mere form of the "pre- amended agreement" contracts used (AIA A 401 2007) does not alter the essence of the parties' relationship. It is noted that within that form, in every instance where the printed version uses the term, "Subcontractor", it is stricken and replaced with the term, "Manufacturer."

       Glasswall was engaged to shop draw from the Architect's design documents, manufacture, and ship to the jobsite, for installation by Monadnock or other erectors of its own choosing, approximately 9,300 window units required for the two buildings involved in the project, plus some overfills and miscellaneous other materials. It had only limited services to perform at the site, such as observation of the erector's means and methods, and assisting with field corrections of any variances by Monadnock's erector from approved shop drawings. An independent firm was retained by Monadnock to inspect and certify the window units as conforming.

       Under the Amended Agreement, Glasswall made and shipped all the window units over a period of nine months, some 250 truckloads, each of which units was received, accepted, and signed for by others --primarily Monadnock and/or its erector, off-loaded by others, uncrated and distributed throughout the two buildings by others, hoisted into position for installation by others, installed by others, and maintained and (ostensibly) protected by others, while work went along by many other trades at the site, all of such others having been under Monadnock's, or the Owner's, control.

       Glasswall has furnished or will furnish you with signed delivery tickets by which Monadnock acknowledged receipt of all units and incidental materials in good condition, with the exception of any that were either damaged before delivery, or from which lites were missing (approximately 39 out of 9300 due to supplier error). Coupled with the fact of 100% payment, this undisputed completion of delivery and acknowledgment of receipt by itself is a conclusive index of substantial completion by November, 2014.

       Finally, at no time did Monadnock ever deposit any payment or part thereof due to WFIC under the Agreement into the "defective or incomplete work escrow account" even though it was Monadnock's unilateral right and obligation to do so under said Agreement. The inescapable conclusions are that Monadnock at no time contended or believed that there was any defective work which went to performance of the contract work, i.e., substantial completion, or if it did, it has waived any right to so maintain by failing to follow the express contract provisions for preservation of that contention. In essence, such deposits were conditions precedent to any claims that Glasswall did not substantially complete its work.

       We believe that Monadnock has accordingly both failed to comply with a contractual condition precedent to the assertion of any such claims, and has otherwise waived any claims based on such matters against both Glasswall and WFIC.



Robert McL. Boote
April 23, 2015
Page 4 of 6

Thus the documents more recently submitted by Monadnock to WFIC in March and April, 2015 in apparent support of Monadnock's baseless claims under the already defunct performance bonds, are irrelevant to the issue of substantial completion. The performance bonds have been discharged by reason of Monadnock's wrongful termination of the bonded contracts after their substantial completion.

Notwithstanding the foregoing, without prejudice and under a full reservation of rights, Glasswall has continued to respond to WFIC's requests that it address Monadnock's alleged grounds for its default notice and termination notice, and to provide WFIC with factual information respecting same. To that end, as mentioned at the beginning of this letter, it has been gathering documents, such as the signed delivery tickets, and reviewing the facts pertaining to the items set forth in the notice of default and will furnish same and its comments to you or your consultant shortly.

Based upon our own perusal, and the lengthy conference-call interview we participated in on April 22nd we observe that many claims appear to have no reasonable connection with Glasswall, are not in Glasswall's scope of work, have been previously closed out by Monadnock and Glasswall, and deal wholly with punch list, potential warranty, and paper close-out items which Glasswall was addressing and would have completed in due course but for Monadnock's wrongful termination of the contracts. It seeks to charge Glasswall with responsibility for glass breakage and chipping that was caused solely by Monadnock's handling of the units and glass after delivery acknowledged by Monadnock to have been received undamaged. In a number of instances when Glasswall asked for needed cooperation from Monadnock respecting identification of and access to locations of various items now appearing in Monadnock's "claim," including during an extended period of time that Glasswall provided tools and trained ironworkers on site, Monadnock simply refused to cooperate.

The costs claimed or values given by Monadnock appear on their face to be stupendously overstated.

It is our client's belief that Monadnock has simply endeavored to manufacture a bond claim. Even after receipt of the ill-advised notice of default, at your request Glasswall attempted to meet with Monadnock in order to discuss and resolve any legitimate open issues. Glasswall's attempts were met with stony refusals. Monadnock refused to meet with John Anderson to discuss the "issues" and on 3/18/15 Greg Bauso stated that the contracts were terminated and the issues would be handled by the attorneys. In lieu of cooperating with Glasswall to resolve any open punch list or other alleged claims at the request of WFIC Monadnock ran to file a spurious demand for arbitration/mediation designed to intimidate WFIC into treating its "punchlist" claims as bond claims, long after substantial completion. It refused to allow Glasswall to participate in WFIC's investigative meetings with its consultants.



Robert McL. Boote
April 23, 2015
Page 5 of 6

    We believe that Monadnock's actions and submissions as a whole have been taken in bad faith and in violation of the specific provisions of the amended agreements.

    If for any reason Glasswall elects or agrees to perform any of these items, or acknowledges responsibility or willingness to pay for any items of this claim, it does so under said reservation of rights and without prejudice to its stated position.

    Accordingly, we respectfully repeat: the obligations of Glasswall and its performance bond surety have been discharged for the reasons stated above, and we expect WFIC to (i) deny the "claims" against the bonds and (ii) advise Monadnock of the discharge of the bonds based on the wrongful termination outlined above. Its claims are nothing more than punch list items, at best. It has failed to comply with the contractual conditions precedent to asserting any such claims. It has acted in bad faith respecting the completion of those punch list items both prior to and after its issuance of contrived notices of default and termination. Any response by WFIC to Monadnock which does not fully take the foregoing into account will be viewed by Glasswall and its indemnitors as being voluntary on WFIC's part. In no event can WFIC expect Glasswall or the indemnitors to make good for any courtesy that WFIC may elect to extend to Monadnock or its interested parties by reason of competing business relationships or otherwise.

    Please feel free to call and discuss the foregoing at your convenience. Certainly if you have any contrary evidence or views I would like to hear about them.

    All of our clients' rights are reserved.

Sincerely,

Schiff Hardin LLP

James E. Frankel
Partner

Copy Via Email and US Mail:
Westchester Fire Insurance Company/ACE USA
PO Box 5108
Scranton, PA 18505-0525
Att: Henry Minissale, Vice President, Claims

Attachments



Robert McL. Boote
April 23, 2015
Page 6 of 6

46636-0000
NY\52499951.1\04.23.15 11:44