# EXHIBIT 33



January 13, 2014

**Via Email and Fed Ex**
Glasswall, LLC
3550 N.W. 49th Street
Miami, FL 33142
Attn: Mr. Ugo Colombo, Chairman

Re: (a) Agreement between Monadnock Construction, Inc. and Glasswall, LLC dated January 3, 2013 for the project known as HPS "Parcel A" ("Contract A") and, (b) Agreement between Monadnock Construction, Inc. and Glasswall, LLC dated January 3, 2013 for the project known as HPS "Parcel B" ("Contract B")

### NOTICE OF TERMINATION

Dear Mr. Colombo:

This letter shall serve as written notice of termination for both Contracts A and B pursuant to AIA A401, Article 7.2.1 thereof.

Glasswall was sent a Notice of Default on September 16, 2013, a Notice of Continuing Default on October 23, 2013 and a Notice of Continuing Default on December 31, 2013. Nevertheless, Glasswall is still in default of its production obligations, delivery obligations, scheduling obligations, and quality assurance/quality control ("QA/QC") obligations and it has submitted falsified requisitions.

The Contracts A and B required Glasswall to ship completed window assemblies to Parcel B of the Hunters Point South ("HPS") Project starting on July 1, 2013 and to Parcel A of the HPS Project starting on September 1, 2013. Glasswall did not meet those dates. On March 15, 2013, the project schedule was updated and reflected window assembly delivery start dates of August 7, 2013 for Parcel B and of August 29, 2013 for Parcel A. Glasswall did not meet those delivery start dates either. On August 16, 2013, your attorney at the time, Clinton D. Flagg, sent us a letter representing that "completed window assemblies" will be ready to ship by Glasswall

Confidential                                                                                                          MC_00038044

to the project on September 1, 2013. That representation proved false. On November 20, 2013, Glasswall issued a production schedule representing that Release 1 for Parcel A would be complete by December 6, 2013 and Release 1 for Parcel B would be complete by December 12, 2013. Those representations proved to be false as well.

The contract also required Glasswall to fabricate, and store off site, windows and doors as necessary to allow for their timely and continuous installation (Rider 5, ¶17.d.2) at a rate of 2 floors per week (Rider 5, ¶37) while keeping pace 6 floors below the superstructure contractor (Rider 5, ¶4.3.b), who has now completed both buildings. Glasswall was also required to: "diligently perform the work, and maintain men in sufficient numbers and materials in sufficient quantities to accomplish the rapid completion of the job." (AIA A401-2007, section 9.3). Moreover, "time is of the essence" (AIA A401-2007, section 9.4).

Although Monadnock has asked Glasswall several times for a recovery schedule that would show how Glasswall intends to accelerate its production to make up for lost time, Glasswall has refused to provide same. Instead, Glasswall issued production schedules on September 17, 25, 27, October 28 and November 20, 2013, all of which Glasswall has not been followed and all of which failed to show the recovery of lost time. As recently as November 27, 2013, Glasswall emailed Monadnock that Parcel A Release 1 would be complete by December 6, 2013 and Parcel B Release 1 would be complete by December 12, 2013. Those Releases were not completed as represented and they are still not complete. On January 7, 2014, in the face of yet another default letter, Glasswall issued another production schedule that once again fails to recover all of the lost time and guarantees that Glasswall will be late in its "time of the essence" deliveries. Given Glasswall's prior history of broken production and delivery promises and its continued problems with its suppliers, we have doubts that Glasswall can maintain the January 7, 2014 production schedule.

Moreover, QA/QC issues continue to remain an issue of concern. Glasswall's failure to cooperate with IBA and Steve Barber, failure to permit full access to Glasswall's facility, and ill treatment of one of the members of the IBA team has aggravated the situation. The attached 1/3/14 Israel Berger & Associates, LLC ("IBA") list of open deficiencies amply demonstrates Glasswall's QA/QC problems … and that list was based on IBA's observations of a fraction of the windows assemblies Glasswall claims to have completed. When Glasswall, at IBA's request, recently opened up 3-5 crates of "completed window assemblies" that Glasswall had represented were defect-free and ready for shipment to the HPS Project, IBA discovered numerous defects in several of those "completed window assemblies".

Last, Glasswall has anticipatorily breached the contract by demanding payment before it is due and declaring its refusal to ship window assemblies if ordered to do so by Monadnock (after the QA/QC issues are resolved and the respective Release 1's are complete). As was explained to you several times, Contracts A and B do not require Monadnock to pay Glasswall for stored materials not delivered to the HPS Project. Delivery of these materials was held up due to QA/QC concerns and the respective Release 1's for Parcels A and B are not complete. In addition, the certified requisition amounts are false and have never been resubmitted with accurate quantities.

Since window assembly delivery is critical to the progress of the HPS Project, delays in their delivery will delay the completion of the HPS Project and push out our TCO dates. This exposes us to substantial damages including, but not limited to, extended general conditions, extended field costs, extended overhead costs, trade delay claims, extended financing costs, loss of rents and other damages. The full financial impact of the delays is ongoing. Subject to the provisions in Contracts A and B, we intend on holding Glasswall responsible for all damages that we incur.

Despite Glasswall's defaults and repeated and continuous failure to cure, we have paid Glasswall for each properly submitted requisition when and if due, inclusive of the engineering line items. In order to mitigate the damages we face, we demand that Glasswall deliver to us its shop drawings and fabrication drawings in electronic media CAD form, as well as all engineering work prepared by third parties such as structural calculations, modeling, etc. and assign its contracts with said third party engineers to us.

This letter is written without prejudice to Monadnock's common law, contractual and bond rights and shall not be construed as a waiver, estoppel or modification of any or all of Monadnock's rights, remedies and defenses, legal or equitable, whether expressly mentioned herein or not, all of which remain reserved. Please be guided accordingly.

Very truly yours,

Monadnock Construction Inc.

By: _____
Greg Bauso, Senior Vice President

cc: Henry Minissale, WFIC/ACE USA
    Frank Monterisi, HPS