UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

MONADNOCK CONSTRUCTION, INC.,                    Case No.: 16 CIV. 00420 (JBW)
                                                 ECF Case
                    Plaintiff,

          -against-

WESTCHESTER FIRE INSURANCE
COMPANY,

                    Defendant.

--------------------------------------------------------------X

WESTCHESTER FIRE INSURANCE
COMPANY,

                    Third-Party Plaintiff,

          -against-

GLASSWALL, LLC, UGO COLOMBO, and
SARA JAYNE KENNEDY COLOMBO

                    Third-Party Defendants.

--------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF WESTCHESTER
FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND IN
OPPOSITION TO MONADNOCK CONSTRUCTION, INC.'S CROSS-MOTION FOR
SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

LEGAL ARGUMENT ........................................................................................................... 5

POINT I MONADNOCK FAILS TO RAISE A GENUINE ISSUE OF MATERIAL FACT
SUFFICIENT TO WITHSTAND SUMMARY JUDGMENT ON ITS CLAIM FOR
CONSEQUENTIAL DAMAGES ARISING OUT OF AN ALLEGED BREACH OF THE
IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ......................................... 5

    A.    Monadnock Offers No Evidence that Might Support a Claim of Bad Faith, and
    Count II of the Amended Complaint Must be Dismissed ......................................7

    B.    The Arbitration Award That Expressly Denied Monadnock's Claims for Millions
    of Dollars of Delay Damages Collaterally Estops Monadnock from Recovering
    the Same Damages Based on a Claim for Consequential Delay Damages for
    Alleged Bad Faith .................................................................................................10

POINT II : MONADNOCK'S FAILURE TO FULFILL CONDITIONS PRECEDENT OF THE
BONDS BARS WESTCHESTER'S LIABILITY FOR THE ARBITRATION AWARD
RENDERED AGAINST GLASSWALL ................................................................................ 13

    A.    Westchester is Not Collaterally Estopped From Asserting the Defense of
    Invalidity of Monadnock's Second Bond Claim Based on Monadnock's Failure to
    Fulfill Bond Conditions Precedent .......................................................................14

    B.    Monadnock's Failure to Fulfill Conditions Precedent of the Bonds Precludes a
    Valid Second Bond Claim for Payment of the Award .........................................15

CONCLUSION ................................................................................................................. 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*845 UN Ltd. P'ship v. Flour City Architectural Metals, Inc.*,
   28 A.D.3d 271, 813 N.Y.S.2d 404 (1st Dept. 2006).........................................21, 22

*Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*,
   10 N.Y.3d 187 (NY 2008) ......................................................................................8

*Burdick Assocs. Owners Corp. v. Indem. Ins. Co. of N. Am.*,
   166 A.D.2d 402, 560 N.Y.S.2d 481 (2d Dept. 1990) .....................................11, 12

*Elm Haven Const. Ltd. P'ship v. Neri Const. LLC*,
   376 F.3d 96 (2d Cir. 2004).....................................................................................10

*F. Garofalo Elec. Co. v. New York Univ.*,
   300 A.D.2d 186, 754 N.Y.S.2d 227 (1st Dept. 2002).....................................18, 19

*Fid. & Deposit Co. of Maryland v. Parsons & Whittemore Contractors Corp.*,
   48 N.Y.2d 127, 397 N.E.2d 380 (1979)................................................................14

*Goldmark, Inc. v. Catlin Syndicate Ltd.*,
   2011 WL 743568 (E.D.N.Y. Feb. 24, 2011).......................................................7, 8

*Hatzel & Buehler, Inc. v. Lovisa Const. Co.*,
   No. CV-92-384, 1993 WL 276971 (E.D.N.Y. July 20, 1993)................................18

*Jane St. Holding, LLC v. Aspen Am. Ins. Co.*,
   No. 13 CIV. 2291 RWS, 2014 WL 28600 (S.D.N.Y. Jan. 2, 2014), *aff'd*, 581
   F. App'x 49 (2d Cir. 2014) ....................................................................................10

*JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*,
   No. 08 Civ. 9116(PGG), 2009 WL 321222 (S.D.N.Y. Feb. 9, 2009) .....................7

*Michael G. Buck & Son Const. Corp. v. Poncell Const. Co.*,
   217 A.D.2d 925, 629 N.Y.S.2d 584 (4th Dept. 1995) ..........................................22

*O.K. Petroleum v. Travelers Indem. Co.*,
   No. 09 CIV. 10273 (LMM), 2010 WL 2813804 (S.D.N.Y. July 15, 2010) ............8

*Panasia Estates, Inc. v. Hudson Ins. Co.*,
   10 N.Y.3d 200 (NY 2008) ................................................................................8, 10

*QDR Consultants & Dev. Corp. v. Colonia Ins. Co.*,
   251 A.D.2d 641, 675 N.Y.S.2d 117 (2d Dept. 1998) (Opp. Br., )...................14, 18

*Rockland County v. Aetna Cas. & Sur. Co.*,
129 A.D.2d 606, 514 N.Y.S.2d 102 (2d Dep't 1987) ........................................... 11

*Russian Entm't Wholesale, Inc. v. Close-Up Int'l, Inc.*,
767 F. Supp. 2d 392 (E.D.N.Y. 2011), *aff'd*, 482 F. App'x 602 (2d Cir. 2012) .................... 17

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of NY*,
735 F. Supp. 2d 42 (S.D.N.Y. 2010) ................................................................ 16

*Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*,
238 F. Supp. 3d 314, 330 (N.D.N.Y. 2017) ............................................... 8, 10, 11

*Zacher v. Oakdale Islandia Ltd. P'ship*,
211 A.D.2d 712, 621 N.Y.S.2d 376 (2d Dept. 1995) ........................................... 14

**Other Authorities**

Local Rule 6.1(b) ................................................................................. 13

## PRELIMINARY STATEMENT

Plaintiff, Monadnock Construction, Inc. ("Monadnock"), presented two bond claims to Westchester.  Monadnock made its first bond claim on January 13, 2014 (the "First Bond Claim"). *See* Westchester Fire Insurance Company's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("SOF"), Doc. 97, ¶ 10; Monadnock Construction Inc.'s Responses to Defendant Westchester Fire Insurance Company's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 and Counterstatement of Undisputed Material Facts in Support of Cross-Motion for Summary Judgment ("CSOF"), ¶ 10.  In response, Westchester promptly set up a meeting with Monadnock to discuss its claim. SOF Doc. 97, ¶ 11; CSOF, ¶ 11. In the course of those discussions, Westchester stated its belief that the parties were moving toward a deal that would resolve Monadnock's claims and requested additional time to act under the Bonds. Monadnock *agreed*. SOF Doc. 97, ¶ 14; CSOF, ¶ 14. Accordingly, in writing, on three successive occasions, Monadnock extended the time for Westchester to act in response to the First Bond Claim. SOF Doc. 97, ¶¶ 14-16; CSOF, ¶¶ 14-16. Thereafter, on April 4, 2014, the final, agreed-to extended deadline for Westchester to act under its Bonds, the parties entered into a fifty-one page (including exhibits) Agreement to Amend Contracts (the "Amendment Agreement"). SOF Doc. 97, ¶ 17; CSOF, ¶ 17. By that Agreement, Westchester satisfied its obligation under the Bonds by implementing the Surety option provided in section 5.1 of the Bonds: "Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract." Thus, two and a half months after Monadnock made the First Bond Claim, after agreed-to extensions, the parties agreed to Westchester's implementation of a surety action explicitly authorized in the Bonds. In fact, Westchester went further than the Bonds required. Westchester agreed to incentivize the Contractor's (Glasswall) performance of the Contracts by agreeing to pay, and, in

1

fact, paying Glasswall $1.5 million from Westchester's own funds. SOF Doc. 97, ¶ 21; CSOF, ¶ 21. Most important, not a single one of the foregoing facts is disputed.

Monadnock fails to offer facts, or to argue, that Westchester breached any bond obligation in acting, as it did, to promptly discuss Monadnock's First Bond Claim and to implement a surety action provided for in the Bonds. This alone is a basis to grant Westchester summary judgment on breach of contract, Monadnock's First Claim for Relief, with regard to its First Bond Claim.

Monadnock's sole effort to salvage its First Bond Claim is on the last page of its Memorandum, where it addresses only its Second Claim for Relief—a claim that Westchester breached the covenant of good faith and fair dealing that is implied into the Bonds. With this, Monadnock underscores its concession that it has no viable claim that Westchester breached the Bonds' explicit terms. In other words, this confirms that the Court should grant Westchester summary judgment on Monadnock's First Claim for Relief as to the First Bond Claim.

As to its Second Claim for Relief (Implied Covenant of Good Faith and Fair Dealing), the last page of Monadnock's Memorandum argues that Westchester knew about the default notices that Monadnock sent to Glasswall in 2013. On this basis alone, Monadnock says that Westchester should have prepared to take over the Glasswall project *before Monadnock ever presented its bond claim* on January 13, 2014. It then argues that Westchester's failure "to promptly take over the project was a breach of the covenant of good faith and fair dealing in its performance bond." In essence, and contrary to the undisputed facts—which include Monadnock agreeing to multiple extensions and the Amendment Agreement under which Westchester would implement a surety option authorized by the Bonds—Monadnock implicitly argues that Westchester's actions amounted to a wrongful denial of its First Bond Claim.

2

But Monadnock cites not a single New York decision in which a court has allowed such a claim under these circumstances or even these allegations.  In fact, Monadnock cites only two cases, each of which stand for the unremarkable proposition that a denial of a claim in breach of the implied covenant of good faith and fair dealing can entitle an insured to consequential damages. *See* Opp. Br. at 22.  These decisions have nothing whatsoever to do with the summary judgment motion before this Court.  First, Westchester did not deny Monadnock's First Bond Claim.  Rather, Westchester, without prejudice to the validity of the claim, implemented a surety action provided for in its Bonds.  Second, the delay damages allegedly arising from Westchester's not taking over the project are, by another name, the alleged "consequential damages" for breach of Monadnock's contracts with Glasswall, which are incorporated into the Bonds.  In the arbitration, however, Monadnock claimed these very same delay damages based on Glasswall's alleged breaches of contract, and the arbitrators denied Monadnock recovery for those damages. Award of Arbitrators (the "Award"), Doc. 99-12 at 10; Defendant Westchester Fire Insurance Company's Counterstatement of Undisputed Material Facts in Opposition to Monadnock Construction, Inc.'s Cross-Motion for Summary Judgment ("WCSOF"), ¶ 95.

Monadnock responds to none of Westchester's arguments, citations of authority and/or undisputed facts. Monadnock fails to answer, and therefore concedes, Westchester's argument that its claim for breach of the covenant of good faith and fair dealing (for denial of coverage) is, under longstanding and robust New York law, improperly duplicative of its breach of contract claim and therefore must be dismissed.  Monadnock abandons its claim that Westchester did not properly elect one of the available surety options provided in the Bonds.  Monadnock ignores, and thereby concedes, (i) that Westchester's obligations under the Bonds arose only *after* Monadnock gave notice of termination of the Glasswall contracts; (ii) that Monadnock *agreed* on three separate

occasions to extend the time for Westchester to act in response to its First Bond Claim; (iii) that Monadnock's claim for delay damages was *denied* in the Arbitration; and (iv) that the arbitrators *found Monadnock to be in breach* of the Glasswall contracts at the time of its First Bond Claim. Monadnock offers no disputed facts, nor any facts, and no New York law even arguably suggesting bad faith. Accordingly, Monadnock's Second Claim for Relief for breach of the implied covenant of good faith and fair dealing must be dismissed.

Monadnock cross-moves for summary judgment against Westchester for payment of the Award based on its Second Bond Claim. Monadnock asserts that "Glasswall failed to perform in multiple ways" and "provided the curtainwall egregiously late, and with significant defects." *See* Opp. Br. at 1. As a result, Monadnock "commenced an arbitration against [Glasswall] (the 'Arbitration') to recover. At the conclusion of the Arbitration, the arbitrators awarded Monadnock nearly $1.5 million in damages, not for Glasswall's delay, but only for its defective and deficient performance. Monadnock brought this action against [Westchester] to recover that amount." *Id.*

In the Arbitration, Glasswall argued that it substantially completed the contracts, which barred any recovery by Monadnock. Monadnock now claims that Westchester is collaterally estopped from asserting substantial completion as a bar to a valid contract termination, a condition precedent to Westchester's obligations under the Bonds, because Monadnock received an award of damages in the Arbitration. The premise of this argument is fundamentally flawed. The arbitrators did not even address Glasswall's substantial completion argument in the Award. Nor did they need to because, under well-established New York law, substantial completion does not bar a court or arbitrator from, nonetheless, awarding damages for defective and deficient performance. In other words, New York law precludes a party from terminating a substantially completed contract but entitles that party to recover damages for poor performance. Accordingly,

the arbitrators' award of damages to Monadnock does not undermine the conclusion that Monadnock could not terminate the contracts and, therefore, could not and did not submit a valid bond claim.

Monadnock's purported 2015 termination also failed as a valid termination because it was based on events occurring prior to April 4, 2014, in violation of the Amendment Agreement.[1] Thus, the purported termination amounted to an Owner Default under the Bonds, and the claimed basis of termination for events prior to the Amendment Agreement rendered the purported termination a nullity.  Accordingly, at the time Monadnock made its Second Bond Claim, it again failed to have fulfilled the conditions precedent for a valid claim.  Monadnock's claim for payment of the Award by Westchester should, therefore, be dismissed.

## LEGAL ARGUMENT

### POINT I MONADNOCK FAILS TO RAISE A GENUINE ISSUE OF MATERIAL FACT SUFFICIENT TO WITHSTAND SUMMARY JUDGMENT ON ITS CLAIM FOR CONSEQUENTIAL DAMAGES ARISING OUT OF AN ALLEGED BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

In the last page of its opposition, Monadnock argues in a heading: "Questions of Fact Preclude Summary Judgment on Monadnock's Bad Faith Claim." Despite this heading, Monadnock's explanation of its argument, when compared to the undisputed facts, fails to support a claim that Westchester breached an implied covenant of good faith and fair dealing.

Specifically, in the last page of its Memorandum, Monadnock states its argument:

> By September 2013, Glasswall was in material breach of the Subcontracts. It did not have any window wall units ready for shipment. Monadnock sent default letters in September, October and December.  WFIC was copied. By December 2013, the concrete infrastructures of the two towers were complete, yet Glasswall did not have the window wall units necessary for the project and the project came to a halt.

---

[1] This has nothing to do with Monadnock's 2013 breach of contract, determined by the arbitrators, due to its contractually improper refusal to accept windows that Glasswall had manufactured.

> WFIC knew of Glasswall's failure to produce window wall units well in advance of the January termination. It had ample time to prepare a plan to prevent Monadnock from having to stop work for several months between January and the April 4, 2014 Amendment Agreement. WFIC's refusal to promptly take over the project was a bad faith breach of the covenant of good faith and fair dealing in its performance bond. (Citations Omitted.)

*See* Opp. Br., at 22 (citations omitted).

Monadnock indisputably sent those pre-termination notices of default, but it is also undisputed that Monadnock chose not to make a bond claim until January 13, 2014. SOF, Doc. 97, ¶ 10; CSOF ¶ 10. In the Arbitration, the arbitrators determined that this delay is squarely on Monadnock, concluding that "while it was true Glasswall was struggling to meet its contractual obligations …. Monadnock did not exercise its right to terminate the Subcontracts as it could have done for failure to meet the agreed-to delivery schedule. Rather, it issued a series of Notices of Defaults and Notices of Continuing Defaults…" *See* Award, Doc. 99-12, at 10. Most important, the arbitrators concluded that Glasswall had a thousand windows ready to ship at the end of 2013, which is before Monadnock made the First Bond Claim, and that Monadnock breached the Contracts by refusing to accept them. *Id.* at 9-11.

Then, once Monadnock actually made its bond claim following its January 13, 2014 notice of termination of the Contracts, the parties voluntarily entered into robust discussions to resolve Monadnock's bond claim. SOF, Doc. 97, ¶¶ 14-17; CSOF, ¶¶ 14-17, 81; WCSOF, ¶ 81. To allow these discussions to continue, Monadnock agreed, on three separate occasions, to extend the time for Westchester to act under its Bonds. SOF, Doc. 97, ¶¶ 14-17; CSOF, ¶¶ 14-17. During this period, Monadnock chose to accept no windows. WCSOF, ¶ 79. Ultimately, on April 4, 2014, within the time agreed to by Monadnock for Westchester act under the Bonds, the parties executed the Amendment Agreement. SOF, Doc. 97, ¶ 17; CSOF, ¶ 17. That Agreement indisputably implemented the permitted surety action under section 5.1 of the Bonds to "[a]rrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract."

As described below, Monadnock offers no meaningful authority or evidence, or response to the above undisputed evidence, that could support an inference of Westchester's breach of the implied covenant of good faith and fair dealing.  Instead, Monadnock merely cites two companion decisions of the New York Court of Appeals, which, as shown below, have no application here. Monadnock's claim of bad faith fails because (i) this Second Claim for Relief is improperly duplicative of its first Claim for Relief alleging breach of the explicit terms of the bonds; (ii) this claim is contradicted by facts that Monadnock itself does not dispute and Monadnock has failed to set forth facts permitting a possible inference of bad faith; and (iii) the arbitration Award denying all of Monadnock's contract claims for delay damages collaterally estops Monadnock from recovering those very same damages against Westchester.

A.   **Monadnock Offers No Evidence that Might Support a Claim of Bad Faith, and Count II of the Amended Complaint Must be Dismissed**

In its opposition, Monadnock completely fails to address Westchester's argument that its Second Claim for Relief for breach of an implied covenant of good faith and fair dealing must be dismissed because New York law makes clear that Monadnock cannot maintain this claim, along with its First Claim for Relief for breach of the explicit terms of the contract, unless the breach of the covenant of good faith and fair dealing claim is supported by allegations different from those underlying the breach of contract claim. *See JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 Civ. 9116(PGG), 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009) ("[A] claim for breach of the implied covenant of good faith can survive … only if it is based on allegations different from those underlying the accompanying breach of contract claim."). Since Monadnock does not address this argument at all, its Second Claim for Relief should be dismissed on this basis alone. *See, e.g., Goldmark, Inc. v. Catlin Syndicate Ltd.*, 2011 WL 743568, at *3 (E.D.N.Y. Feb. 24, 2011) (granting dismissal of bad faith claim even where plaintiff adequately alleged entitlement to consequential damages because plaintiff had done so under a cause of action that was duplicative).

Monadnock cites, without discussion, two companion decisions by the New York Court of Appeals: *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187, 192 (NY 2008) and *Panasia Estates, Inc. v. Hudson Ins. Co.*, 10 N.Y.3d 200, 203 (NY 2008). An examination of these decisions and their progeny demonstrates that Monadnock fails to establish disputed facts possibly supporting a claim for a breach of the covenant of good faith and fair dealing. The facts undisputed by both parties establish just the opposite.

In *Bi-Economy*, the New York Court of Appeals held that an insured may recover consequential damages despite a policy exclusion for such damages where the insured is able to establish a breach of the obligation of good faith and fair dealing. In *Panasia*, decided the same day as *Bi-Economy*, the Court explained that "[a]n insured may recover foreseeable damages, beyond the limits of its policy, for breach of a duty to investigate, bargain for and settle claims in good faith." 10 N.Y.3d at 203.

Following *Bi-Economy* and *Panasia*, courts in New York hold that "consequential damages are permitted when they derive from an insurer's bad faith refusal to pay an insured's claim." *Goldmark*, 2011 WL 743568, at *3. To properly maintain such a claim, Monadnock would have had to show facts amounting to "more than an arguable difference of opinion" between Monadnock and Westchester. *O.K. Petroleum v. Travelers Indem. Co.*, No. 09 CIV. 10273 (LMM), 2010 WL 2813804, at *4 (S.D.N.Y. July 15, 2010). In opposing summary judgment, Monadnock must show facts allowing an inference of "such bad faith in denying [its claim] that no reasonable [surety] would, under the given facts, be expected to" take similar action. *Id.*; *see also Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 238 F. Supp. 3d 314, 330 (N.D.N.Y. 2017) ("For Utica to recover … lost internal resources and lost investment income, it must show that FFIC had no arguable basis to challenge its claim and further show that no reasonable carrier

would, under the given facts, challenge the claim—in other words that the challenge was more than a difference of opinion.").

Here, Monadnock's claim of bad faith rests solely on Westchester's failure "to prepare a plan" to take over the Project even before Monadnock ever made its First Bond Claim on January 13, 2014. Monadnock cites no authority that the obligation of good faith and fair dealing could be breached by surety action *before* the obligee first presents a claim. Maybe just as important, Monadnock's unprecedented theory requires the Court to ignore that, after Monadnock actually did make a bond claim, it voluntarily entered into discussions that resulted in the Amendment Agreement, which implemented a proper and timely (given Monadnock's voluntary extensions) surety action under the bonds. SOF, Doc. 97, ¶¶ 14-17; CSOF, 14-17. Monadnock shows no facts that support any inference of bad faith.

As established in Westchester's moving papers (and putting aside that Monadnock did not possess a valid First Bond Claim based on its refusal to accept windows that Glasswall had manufactured), Westchester did *not* deny the claim. Instead, as mentioned, Westchester implemented the permitted surety action to arrange for Glasswall's completion of the Contracts. Far from bad faith, Westchester also indisputably paid $1.5 million of its own money to incentivize Glasswall to complete the Contracts. SOF Doc. 97, ¶ 21; CSOF, ¶ 21. Monadnock does not dispute the propriety of Westchester's actions. Indeed, in its opposition, Monadnock abandons its claim that Westchester did not properly elect one of the available surety options provided in the Bonds to respond to its First Bond Claim.

Monadnock also does not dispute that it *agreed* – on three separate occasions – to extend the time for Westchester to act in response to its First Bond Claim. CSOF, ¶¶ 14-17. Still, Monadnock asserts, without identifying them, that there are disputed facts that render Westchester's failure to take over the Project during this exact time period an act of bad faith, *even*

*though Monadnock repeatedly and expressly agreed to extend the time to allow the parties to negotiate and then agreed to a contract that set out a proper surety action.*

The undisputed facts—including Monadnock's own voluntary actions—demonstrate that Westchester's actions were reasonable and consistent with what a reasonable surety would do in similar circumstances, thus entitling Westchester to summary judgment as to Monadnock's claim of bad faith. *See, e.g. Utica*, 238 F. Supp. 3d at 332 ("Utica cannot sustain its burden in opposition to summary judgment because it cannot show that FFIC had no arguable basis to challenge its claim nor can it prove that no reasonable carrier would, under the given facts, challenge the claim."); *Jane St. Holding, LLC v. Aspen Am. Ins. Co.*, No. 13 CIV. 2291 RWS, 2014 WL 28600, at *11 (S.D.N.Y. Jan. 2, 2014), *aff'd*, 581 F. App'x 49 (2d Cir. 2014) ("Plaintiff has not shown sufficient evidence or sufficiently pled allegations to support an inference of bad faith. Plaintiff made mere conclusory allegations that Defendant denied coverage in bad faith, but …. Aspen also promptly conducted its investigation into the damage … and paid the sum owed to Plaintiff as per the undisputed portion of the Policy."); *see also Elm Haven Const. Ltd. P'ship v. Neri Const. LLC*, 376 F.3d 96, 102 (2d Cir. 2004) (applying Connecticut law) (granting summary judgment in favor of surety and holding that the surety could not commit bad faith by failing to take action *prior* to the bond obligee satisfying the required conditions precedent of the Bonds).

Based on the foregoing, Westchester is entitled to summary judgment dismissing Monadnock's claim for bad faith breach of contract.

**B.**     **The Arbitration Award That Expressly Denied Monadnock's Claims for Millions of Dollars of Delay Damages Collaterally Estops Monadnock from Recovering the Same Damages Based on a Claim for Consequential Delay Damages for Alleged Bad Faith**

Based on its citation of *Bi-Economy* and *Panasia*, Monadnock implicitly claims consequential delay damages from Westchester. However, those damages are the same delay damages that Monadnock claimed in the Arbitration and that the arbitrators expressly denied. To

10

try to bolster its improper claim here, Monadnock misleadingly characterizes the Award as concluding "that delay damages were appropriate but for the lack of a baseline schedule." (Opp. Br., at 14).  To the contrary, Monadnock broadly sought an award of its delay damages in the arbitration, and that claim was expressly denied because the arbitrators determined that Monadnock did not prove "which delays became the controlling delays" and whether it was Monadnock or Glasswall that was "responsible for those controlling delays."  *See* Award, Doc. 99-12. Due to this explicit failure of proof, the arbitrators denied Monadnock's claim for delay damages, noting that "[a]ll claims not expressly granted herein are hereby denied." *Id.* at 13.

Monadnock does not dispute that New York courts consistently hold that bond obligees such as Monadnock are collaterally estopped from asserting claims against a surety that have already been rejected in arbitration.  *See, e.g.*, *Burdick Assocs. Owners Corp. v. Indem. Ins. Co. of N. Am.*, 166 A.D.2d 402, 403, 560 N.Y.S.2d 481 (2d Dept. 1990) (noting that it is "beyond dispute that collateral estoppel applies to arbitration awards and that a surety stands in its principal's shoes for collateral estoppel purposes" and granting dismissal because the "issue of Karlan's liability to the plaintiff was determined in the arbitration proceeding"); *Rockland County v. Aetna Cas. & Sur. Co.*, 129 A.D.2d 606, 607, 514 N.Y.S.2d 102, 103 (2d Dep't 1987) (holding that a prior arbitral decision finding that an obligee had no cause of action for default against surety's principal collaterally estopped the obligee from later suing the surety).

Here, Monadnock concedes that it sought an award of its delay damages in the arbitration. (Opp. Br., at 13).  Monadnock affirmatively sought the same delay damages from Glasswall that it now tries to get from Westchester, namely the alleged delay damages stemming from Monadnock having to stop work for several months between January 2014 and the April 4, 2014 Amendment Agreement. *See* Award, pp. 9-10 (Doc. 99-12).  Contrary to Monadnock's misleading

argument that the Award concluded "that delay damages were appropriate but for the lack of a baseline schedule," (Opp. Br., at 14), the Award concluded, among other things, that: (i) "Monadnock wrongfully refused to accept delivery of the windows, including ancillary materials needed for their installation in the Fall and Winter of 2013-2014, in breach of the Subcontracts" (Award, Doc. 99-12 at 10); (ii) "without a baseline schedule against which an as-built schedule is compared, we are unable to determine which delays became the controlling delays and *who was responsible for those delays*" (*id.*, at11) (emphasis added); (iii) "we also find that certain categories of delay damages, even if Glasswall were responsible for the associated delays, could not be properly assessed against it," including the "significant amount paid to Subcontractors for escalations" (*id.*); and (iv) "[t]his Award is in full settlement of all claims and counterclaims submitted to this Arbitration," and "[a]ll claims not expressly granted herein are hereby denied" (*id.*, at 13; WCSOF, ¶ 95.).

Undeniably, the arbitrators did *not* award *any* of Monadnock's claimed delay damages. In fact, Monadnock concedes this when it acknowledges that the "Award's $1.5 million in damages was not for Glasswall's delay," and that "the circumstances surrounding the First Bond Claim are of no moment to the damages Monadnock seeks."[2] Opp. Br., at 18. The Award constitutes a final determination of the rights and obligations under the Contracts, and that determination applies equally to Monadnock's claims against Westchester, which collaterally estops Monadnock from asserting a claim for "consequential" delay damages in this action. *Burdick*, 166 A.D.2d at 403. Accordingly, Westchester respectfully requests that the Court grant its motion dismissing

---

[2] This concession lends further support to Westchester's argument that Monadnock fails to establish facts sufficient to support a claim for consequential damages arising out of Westchester's purported denial of the First Bond Claim.

Monadnock's Second Claim for Relief for consequential damages due to an alleged breach of the covenant of good faith and fair dealing.[3]

### POINT II: MONADNOCK'S FAILURE TO FULFILL CONDITIONS PRECEDENT OF THE BONDS BARS WESTCHESTER'S LIABILITY FOR THE ARBITRATION AWARD RENDERED AGAINST GLASSWALL

It is undisputed that Westchester's Bonds incorporate the Glasswall-Monadnock Contracts. SOF, Doc. 97, ¶ 4; CSOF, ¶ 4. It is also undisputed, as Monadnock itself argues, that the Award determined the rights and liabilities of Glasswall, Monadnock and Westchester *under the Glasswall contracts*. SOF, Doc. 97, ¶ 40; CSOF, ¶ 40. Under New York law, however, while a surety is bound by a contract-mandated arbitral determination of the rights and liabilities of the bond principal and obligee if the bond incorporates the construction contract, the arbitration does not necessarily determine whether the separate requirements of the surety bond have been fulfilled. In this case, Monadnock failed to validly terminate Glasswall's contracts, an issue not decided in the arbitration, and that failure bars Monadnock's claim against Westchester to recover the Award rendered against Glasswall.[4] Alternatively, Westchester's defenses under the Bonds, at the very least, raise an issue of fact sufficient to preclude Monadnock's cross-motion for summary judgment.

---

[3] Monadnock has opposed Westchester's motion for summary judgment and cross-moved for summary judgment in a single filing. The Court's scheduling order (Doc 106) provides that Monadnock may file its reply in support of its cross-motion on April 20, 2018. The scheduling order and Local Rule 6.1(b) do not permit Monadnock to include in its reply a surreply to Westchester's motion for summary judgment, particularly with respect to Westchester's arguments regarding Monadnock's claim of bad faith. Accordingly, Monadnock should not be permitted to submit further argument regarding its claim of bad faith in reply.

[4] Monadnock argues that the arbitrators' finding that Monadnock breached the Contracts by refusing delivery of some windows from Glasswall does not preclude a valid First Bond Claim. In doing so, however, Monadnock concedes that the Award's damages are unrelated to the First Bond Claim and that "the circumstances surrounding the First Bond Claim are of no moment to the damages Monadnock seeks." Opp. Br., at 18. Accordingly, although Westchester submits that Monadnock's breach of the Contracts does, in fact, preclude a valid First Bond Claim, it does not re-hash such an argument here insofar as Monadnock does not seek any damages arising out of that claim.

**A.      Westchester is Not Collaterally Estopped From Asserting the Defense of
Invalidity of Monadnock's Second Bond Claim Based on Monadnock's
Failure to Fulfill Bond Conditions Precedent**

Relying primarily on the Court of Appeals' decision in *Fid. & Deposit Co. of Maryland v.
Parsons & Whittemore Contractors Corp.*, 48 N.Y.2d 127, 131–32, 397 N.E.2d 380, 382 (1979),
Monadnock broadly asserts that a surety seeking to assert a defense relating to issues adjudicated
in an arbitration between the contractor and subcontractor must do so in the arbitration, and that
Westchester is therefore estopped from asserting its defenses because it failed to do so (Opp. Br.,
at 15-17). The Court of Appeals' decision in *Parsons* does not say that.

In *Parsons*, the Court of Appeals held that "an implicit corollary" of the surety's acceptance
of the arbitration clause is that the surety has agreed, for purposes of determining its liability under
its performance bond, that it "would accept and be bound by the resolution reached in the
arbitration forum *of any dispute between the general contractor and the subcontractor.*" *Id.* at 872
(emphasis added).

Following *Parsons*, New York courts have confirmed that the binding effect in litigation
of an arbitration award in favor of the obligee extends only to (i) *the question of the principal's
liability* and/or (ii) any *identical* issues raised in this litigation and the arbitration that were also
*material* to the arbitration. A surety remains entitled to raise defenses in the litigation arising under
the terms of its performance bonds. *See, e.g., Zacher v. Oakdale Islandia Ltd. P'ship*, 211 A.D.2d
712, 715, 621 N.Y.S.2d 376, 378–79 (2d Dept. 1995) ("*While FIA may raise defenses arising
under the terms of its performance bonds,* the question of Build's liability under the construction
contract may not be relitigated and the arbitration award will be binding on the principal and the
surety.") (Emphasis added). Monadnock itself cites cases that make this clear. *See, e.g., QDR
Consultants & Dev. Corp. v. Colonia Ins. Co.*, 251 A.D.2d 641, 643, 675 N.Y.S.2d 117, 119 (2d

Dept. 1998) (Opp. Br., at 16) ("Although the arbitrators awarded QDR $337,421 for lost profits, the issue of whether lost profits were recoverable under the bond was not addressed in the arbitration proceeding. Therefore, Colonia may assert this issue as a defense…").

In its opposition, Monadnock candidly admits that an arbitrator's determination of contractual rights and liabilities between a principal and obligee does not extend to a determination of liability of the surety under the terms of its bond: "Because WFIC, as surety, is liable for the damages assessed against Glasswall, *unless it can demonstrate that the terms of the Bonds raise a question of liability that is unrelated to the issues submitted to the arbitrators*, it is responsible for the $1.5 million in damages the arbitrators awarded." (Opp. Br., at 17) (Emphasis added).

Here, as shown below, there is no identity of material issues necessarily decided in the arbitration that determine whether Monadnock met the conditions precedent to even make its bond claims against Westchester. In fact, nothing in the Award purports to decide whether Monadnock's Second Bond Claim is valid. The Award barely even mentions the Bonds. Westchester is permitted to assert its defenses in these circumstances.

### B. Monadnock's Failure to Fulfill Conditions Precedent of the Bonds Precludes a Valid Second Bond Claim for Payment of the Award

First, Monadnock argues that it is irrelevant that its Second Bond Claim referred to conduct prior to the Amendment Agreement, and that this defense is nevertheless barred by the Award. (Opp. Br., at 19). However, Monadnock's March 16, 2015 notice of termination expressly violated the Amendment Agreement, thereby precluding a valid Second Bond Claim. Section 3 of the Bonds provide that the Surety's obligations arise only "[i]f there is no Owner Default under the Construction Contract". Then, if there has been no Owner Default, the Surety's (Westchester's) obligation "shall arise after" the Owner (Monadnock) has taken the actions stated in Sections 3, and as key in this case, in section 3.2 'the Owner declares a Contractor Default terminates the

Construction Contract and notifies the Surety . . . ." Thus, valid contract termination by an owner

who is not in default are conditions precedent for the Surety's bond obligations to arise. *See* the

Bonds, Doc. 9-1. *See, e.g., Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of NY*, 735 F. Supp.

2d 42, 84 (S.D.N.Y. 2010) (noting that the "conditions precedent … are set forth in 'unmistakable

language of condition,' and as 'express conditions,' they 'must be literally performed'").

Monadnock's March 16, 2015 notice of termination plainly states that it is based upon the

events specified in the March 4, 2015 notice of default.  (CSOF ¶ 88; Doc. 99-8).  That notice of

default states, in relevant part, as follows:

> Glasswall never timely met any of its contractual obligations. As a result,
> Monadnock sent Glasswall Notices of Default and/or Continuing Default
> on September 16, 2013, October 23, 2013, and December 31, 2013. The
> Agreements required Glasswall "to be 6 floors below the Superstructure
> Contractor" (Rider 5, ¶44b). In fact, by the time Monadnock had erected the
> entire concrete superstructure of both the HPS A and B buildings Glasswall
> had still not shipped a single window to the Projects.  As a result of all the
> foregoing and the breaches listed in the Notices of Default and/or
> Continuing Default, Monadnock terminated the Agreements on January 13,
> 2014.
> ….
> Despite being paid in advance and in full for all the Work required under
> the Agreements, Glasswall has breached same by not timely completing its
> Work.[5]  Glasswall has caused delays to other contractors in the completion
> of their work.  In fact, Monadnock has had to or will have to pay said
> contractors for damages they have incurred due to Glasswall's delays.
> Pursuant to the General Conditions (AIA A201-2007, ¶6.2.3) of the
> Agreements, Monadnock demands reimbursement for the amounts it has
> paid other contractors for delay damages caused by Glasswall.
>
> In addition, Glasswall has delayed the completion of the Projects.
> Monadnock demands damages for delay to the Projects as well.

*See* Doc. 99-6.

---

[5] Monadnock concedes that its First Bond Claim was based upon Glasswall's delayed performance of the Contracts
(Opp. Br., at 17-18), thereby necessarily implying that its March 16, 2015 notice of termination was based upon events
occurring prior to the Amendment Agreement.

Monadnock's notice of default by Glasswall, and Monadnock's March 16, 2015 notice of termination based on the noticed defaults, expressly violated the Amendment Agreement, which states, without reservation or qualification, that: "Monadnock agrees that it waives any right it may have to terminate the initial Contracts based on events occurring to date [April 4, 2014.]" SOF, Doc. 97, ¶ 19.  In fact, the arbitrators confirmed this waiver of the right to terminate, stating that "[u]nder the Amendment Agreement …. Glasswall and Monadnock also agreed to waive their respective rights to terminate the Subcontracts based upon events of default occurring prior to the Amended Agreement." *See* Award, p. 5 (Doc. 99-12). Therefore, contrary to Monadnock's assertions, the claim of defaults prior to the Amendment Agreement, in breach of that Agreement, bears directly on the validity of Monadnock's Second Bond Claim.  The termination violated the Amendment Agreement and thus failed to fulfill the condition precedent of section 3.2 of the Bonds, which requires a valid contract termination by an Owner not in Default as a condition precedent to Westchester's obligations.

The Amendment Agreement consisted of fifty-one pages of text and exhibits. Doc. 99-5. It was drafted by counseled parties following Monadnock's January 13, 2014 notice of termination, during the periods that Monadnock agreed in writing to extensions of time for Westchester to take action under its Bonds. The Amendment Agreement's length, and the time it took to create, bespeak the parties' intention that the terms of the Agreement meant what they said. *See also Russian Entm't Wholesale, Inc. v. Close-Up Int'l, Inc.*, 767 F. Supp. 2d 392, 404 (E.D.N.Y. 2011), *aff'd*, 482 F. App'x 602 (2d Cir. 2012) (noting that "the words of the contract are to be given their ordinary and reasonable meaning"). Plainly, from Monadnock's point of view, it wanted to preclude Glasswall from walking away from the Contracts. From Westchester and Glasswall's point of view, the waiver provision precluded a bond claim based on past events.

Monadnock's March 16, 2015 notice of termination expressly violated this key term of the Amendment Agreement. As a result, Monadnock's purported termination of the contracts was both ineffective and a breach by the Owner of the contracts, as amended, thus precluding Monadnock from satisfying the required condition precedent of the Bonds of a valid contract termination.

Second, Monadnock asserts that because Glasswall raised the argument of substantial completion in the arbitration, Westchester cannot raise this argument here. (Opp. Br., at 19-21). However, merely "raising the argument" is not the standard for collateral estoppel. *See QDR Consultants*, 251 A.D.2d at 642-643 ("The doctrine of collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior proceeding and decided against that party or those in privity. The issue must have been identical to the issue raised in the prior proceeding and material to the prior proceeding…") (internal citation omitted). Here, the issue of Glasswall's substantial completion was not material to the arbitration, nor necessarily decided in the arbitration, and, therefore, Westchester is not barred from asserting this defense.

Monadnock contends that the arbitrators rejected Glasswall's argument regarding substantial completion, but this ignores that the Award did not even address Glasswall's defense of substantial completion and, further, that such a defense would not have precluded the Award's granting of performance damages to Monadnock. *See, e.g.*, *F. Garofalo Elec. Co. v. New York Univ.*, 300 A.D.2d 186, 189, 754 N.Y.S.2d 227, 230 (1st Dept. 2002) ("If FGE substantially performed its contractual obligations, then it would be entitled to the payment due under the contract *less the cost of any correction of defects in its performance*.") (Emphasis added); *Hatzel & Buehler, Inc. v. Lovisa Const. Co.*, No. CV-92-384, 1993 WL 276971, at *5 (E.D.N.Y. July 20, 1993) (noting that where there has been substantial completion, "although there may be slight defects, caused by inadvertence or unintentional omission, he may recover the contract price, *less*

*the damages on account of such defects*") (emphasis added) (citation omitted).  Accordingly, insofar as Monadnock would have been entitled to an award of performance damages – characterized in the Award as "damages related to defects in the windows portion of the Window Work" (*see* Award, Doc. 99-12, p. 5) – whether or not Glasswall had substantially completed its work,[6] it cannot be said that this issue was material to the arbitration or necessarily decided in the arbitration.  Collateral estoppel plainly does not apply as to this argument.

Monadnock argues that, even if Westchester were entitled to raise this defense, Glasswall "had not reached substantial completion of the Project" under the Prime Contract's definition of "substantial completion" (Opp. Br., at 20).  Monadnock relies on section 11.9 of the Monadnock-Glasswall Contracts entitled "Substantial Completion," which provides that payments shall be made to the Manufacturer "[w]hen the Manufacturer's Work or a designated portion thereof is substantially complete and in accordance with the requirements of the Prime Contract . . . ."  Monadnock argues that the Prime Contract's definition of "Substantial Completion," which provides, in part, that the "Architect certifies that the Project is finally complete," defines Substantial Completion in the Glasswall Contracts.  Thus, Monadnock argues that Glasswall's substantial completion occurs at the Project's "Substantial Completion."

The terms of the Contracts contradict Monadnock's argument.  First, Article 1 of the Contracts provides what documents are included in the Subcontract Documents.  Section 1.1, by strikeout below, provides that the Prime Contract is not one of the Subcontract Documents.

> "§ 1.1.  The Subcontract Documents consist of (1) this Agreement ~~(2) the Prime Contract, consisting of the Agreement between the Owner and Contractor and the other Contract Documents enumerated therein; (3) Modifications issued subsequent to the execution of the Agreement between the Owner and Contractor, whether before or after the execution of this~~

---

[6] Glasswall had been paid in full by Monadnock (Award, Doc. 99-12, p. 6), so the Award of "performance damages" to Monadnock is consistent with New York law holding that the cost of any correction of defects in performance is properly awarded to the Contractor under the circumstances. *F. Garofalo Elec. Co.*, 300 A.D.2d at 189.

~~Agreement;~~ (4) other documents listed in Article 16 of this Agreement; and (5) Modifications to this Subcontract issued after execution of this Agreement. . . ."

In addition, Monadnock selectively quotes section 11.9. The entirety of section 11.9, and the immediately following Article 12 ("Final Payment") and section 12.1, contemplate that the Manufacturer (Glasswall) will be paid as it completes its Work, and, finally, when its Work is complete:

§ 11.9 SUBSTANTIAL COMPLETION
When the Subcontractor's <u>Manufacturer's</u> Work or a designated portion thereof is substantially complete and in accordance with the requirements of the Prime Contract, the Contractor shall, upon application by the Subcontractor, <u>Manufacturer</u>, make prompt application for payment for such Work. Within 30 days following issuance by the Architect of the certificate for payment covering such substantially completed Work, the Contractor shall, to the full extent allowed in the Prime Contract, make payment to the Subcontractor, <u>Manufacturer</u>, deducting any portion of the funds for the Subcontractor <u>Manufacturer's</u> Work withheld in accordance with the certificate to cover costs of items to be completed or corrected by the Subcontractor <u>Manufacturer</u>. Such payment to the Subcontractor <u>Manufacturer</u> shall be the entire unpaid balance of the Subcontract Sum if a full release of retainage is allowed under the Prime Contract for the Subcontractor's <u>Manufacturer's</u> Work prior to the completion of the entire Project. If the Prime Contract does not allow for a full release of retainage, then such payment shall be an amount which, when added to previous payments to the Subcontractor's <u>Manufacturer's</u> substantially completed Work to the same percentage of retainage as that on the Contractor's Work covered by the certificate.

ARTICLE 12   FINAL PAYMENT

§ 12.1 Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor <u>Manufacturer</u> when the Subcontractor's <u>Manufacturer's</u> Work is fully performed in accordance with the requirements of the Subcontract Documents, the Architect has issued a certificate for payment covering the Subcontractor's <u>Manufacturer's</u> completed Work and the Contractor has received payment from the Owner. If, for any cause which is not the fault of the Subcontractor, a certificate for payment is not issued or the Contractor does not receive timely payment or does not pay the Subcontractor within seven days after receipt of payment from the Owner, final payment to the Subcontractor shall be made upon demand.

20

Monadnock's interpretations defy logic. Glasswall's Work would never be substantially complete until the Project itself is "finally complete," per the terms of the Prime Contract. This cannot be true, since section 12.1 of the Contracts provides that Glasswall is entitled to payment when its Work is "fully performed." Accordingly, whether the Project architect certified the *entire Project* as complete or the status of various TCOs at the time of Monadnock's notice of termination of the Contracts (*see* Opp. Br., at 20) has no relevance to a determination of whether Glasswall completed its work. Glasswall's Work under the Contracts consisted of the design and manufacture of windows, not their installation. The Contracts deleted the term "Subcontractor" and replaced it with "Manufacturer" to reflect this scope of work. *See* Award, Doc. 99-12, at. 3; Contracts, Doc. 84-3. Final Completion of the Prime Contract and entitlement to TCO's depended on countless elements of Project completion, unrelated to whether Glasswall finished manufacturing substantially all the windows.

Under the common law rule of "substantial completion," Glasswall had substantially completed its work at the time of Monadnock's termination. (*See* Westchester's Moving Papers, p. 16-17). In fact, Monadnock concedes that by the time of its Contract termination, "the curtain wall units had been delivered . . . ." Opp. Br., at 11; CSOF, ¶ 84; *845 UN Ltd. P'ship v. Flour City Architectural Metals, Inc.*, 28 A.D.3d 271, 271, 813 N.Y.S.2d 404, 405 (1st Dept. 2006) ("Since undisputed record evidence amply demonstrates that defendant substantially completed its work, plaintiff owner was powerless to terminate the contract for defendant's alleged default."). Monadnock's only objection as to Glasswall's substantial performance was that there were "substantial issues with missing or damaged parts." Opp. Br., at 11; CSOF, ¶ 84. However, such an assertion is belied by the Award, because the items for which damages were awarded represent "completion items" akin to minor punch list items, rather than items that prevented Monadnock

from realizing the benefits of Glasswall's substantially completed work. (*See* Westchester's Moving Papers, p. 16-17). Therefore, the "substantial performance rule precludes contract termination" under these circumstances, and Monadnock's March 16, 2015 notice of termination failed to satisfy the condition precedent for a valid second bond claim. *See, e.g.*, *845 UN Ltd. P'ship*, 28 A.D.3d at 271; *Michael G. Buck & Son Const. Corp. v. Poncell Const. Co.*, 217 A.D.2d 925, 629 N.Y.S.2d 584 (4th Dept. 1995).

## CONCLUSION

For the foregoing reasons, Defendant/Third-Party Plaintiff Westchester Fire Insurance Company respectfully requests that the Court grant this motion for summary judgment, deny Monadnock's cross-motion for summary judgment, and enter an Order dismissing Plaintiff's Amended Complaint as against Westchester in its entirety.

Dated:   New York, New York
         March 30, 2018

**COZEN O'CONNOR**

By:   /s/ John J. Sullivan
      John J. Sullivan
      Alexander Selarnick
      45 Broadway Atrium, Suite 1600
      New York, NY 10006
      P: 212-453-3729
      F: 646-461-2073
      JSullivan@cozen.com
      ASelarnick@cozen.com

      Robert McL. Boote*
      *Admitted Pro Hac Vice*
      Suite 400, 200 Four Falls Corporate Center
      P.O. Box 800
      West Conshohocken, PA 19428
      P: 215-665-4630
      F: 215-701-2424
      RBoote@cozen.com

      *Attorneys for Defendant*
      *Westchester Fire Insurance Company*