# Exhibit B

Page 1

```
 1   IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
         IN AND FOR MIAMI-DADE, COUNTY, FLORIDA
 2
              Complex Business Division
 3
              Judge William L. Thomas
 4
              Consolidated Cases:
 5
              CASE NO. 15-06405-CA 44
 6
              CASE NO. 14-05447 CA 44
 7
              CASE NO. 14-02090 CA 44
 8
 9   SARA JAYNE KENNEDY,
10          Plaintiff,
11   vs.
12   MONADNOCK CONSTRUCTION, INC., et al.
13          Defendants.
14   _____/
15      HEARING BEFORE THE HONORABLE JUDGE WILLIAM THOMAS
16               Monday, April 30, 2018
17              11:10 a.m. - 11:30 a.m.
18              DADE COUNTY COURTHOUSE
                   MIAMI, FLORIDA
19
20
21      This cause came on to be heard at the time and
22   place aforesaid, when and where the following
     proceedings were reported by:
23
         Cicely Moore, Court Reporter and Notary Public
24            Esquire Deposition Solutions
                    Miami, Florida
25                 1-800-292-6952
```

Page 2

```
 1   APPEARANCES:
 2
         Joel S. Magolnick, Esquire
 3       Marko & Magolnick, P.A.
         3001 SW 3rd Ave
 4       Miami, FL 33129
 5          On behalf of the Plaintiff,
            Sara Jayne Kennedy and Ugo Colombo
 6
 7       Jeffrey C. Gilbert, Esquire
         Cozen O'Connor
 8       200 S Biscayne Blvd, Ste 3000
         Miami, FL 33131
 9
            On behalf of the Defendant,
10          Westchester Fire Insurance Company
11
         Alvin D. Lodish, Esquire
12       Duane Morris LLP
         200 S Biscayne Blvd, Ste 3400
13       Miami, FL 33131
14          On behalf of the Defendants,
            Monadnock, HPS 50, HPS Borden,
15          Related Companies, and Bruce Beal
16                      - - -
```

Page 3

```
 1   (Thereupon, the following proceedings were had):
 2      THE COURT: All right. Let's do the motion to
 3   dismiss.
 4      MR. GILBERT: Good morning, Judge. Jeffrey
 5   Gilbert on behalf of Westchester Fire Insurance
 6   Company.
 7      MR. MAGOLNICK: Joel Magolnick on behalf of Sara
 8   Jayne Kennedy and Ugo Colombo.
 9      MR. GILBERT: And we submitted a notebook with
10   our three motions and our response and reply.
11      THE COURT: Let me get it.
12      MR. GILBERT: Thank you.
13      MR. LODISH: And just to note, Alvin Lodish is
14   here representing Monadnock, HPS 50, HPS Borden, and
15   Related Companies, and Bruce Beal.
16      THE COURT: You may proceed.
17      MR. GILBERT: Judge, we are here to dismiss the
18   three consolidated cases based upon a mandatory forum
19   selection clause that is in the indemnity agreement
20   which is the only agreement between the Colombos and
21   Westchester, okay, the only agreement. In the
22   responses of the Colombos, they don't challenge the
23   mandatory nature of the forum selection clause. They
24   don't meet any burden which they're obligated to meet
25   as the party challenging the mandatory forum selection
```

Page 4

```
 1   clause. They are supposed to meet the high burden that
 2   they would have absolutely no forum whatsoever to
 3   litigate their cases if they are not litigated here,
 4   and in fact, all of the parties, as you know, are
 5   litigating these cases in New York.
 6      The mandatory forum selection clause, according
 7   to the Third DCA and the Florida Supreme Court, all of
 8   the cases that we've cited in the three motions to
 9   dismiss in each of the consolidated cases and we've set
10   forth in our reply, state specifically that the
11   mandatory forum selection clauses in Florida are
12   presumptively valid; that the courts enforce them. And
13   again, the only way they would not enforce it is if the
14   party challenging it met the high burden that they
15   would have no forum at all whatsoever to litigate their
16   cases if they could not litigate them in Florida where
17   they are forum shopping.
18      There's absolutely no question that the clause is
19   valid. It is the only agreement between our client
20   Westchester and the Colombos. And just to give you a
21   little history on it, so the Colombos are principals in
22   the -- or they're the guarantors for the agreement that
23   Glasswall entered into with Monadnock and Related
24   people, to supply 9,000 units of glass, or whatever, to
25   two large buildings that were constructed in Long
```



Page 5

 1  Island City, New York.  There was an alleged default.
 2  But to support the contract -- to support the contract,
 3  Judge, the Glasswall and its principals, the Colombos,
 4  Ugo Colombo and his wife Sara Kennedy Colombo, needed
 5  to submit performance bonds, and the way that they were
 6  able to submit performance bonds was they entered into
 7  an agreement with Westchester and with -- excuse me,
 8  with Westchester where Westchester is the surety and
 9  the Colombos are the indemnitors.  If you need me to
10  point you to the --
11       THE COURT:  Well, I'm looking for the selection
12  clause.
13       MR. GILBERT:  Okay.  If you look in Tab 5, Judge,
14  Exhibit A.  So go to Tab 5, Exhibit A, Paragraph 10.
15       MR. MAGOLNICK:  Your Honor, we'll stipulate that
16  the forum selection clause, when you look at the
17  indemnity agreement, the forum selection clause is a
18  mandatory forum selection clause.  We stipulate to
19  that.  It says what it says.  The language says
20  "shall."  So we don't dispute that.  But that's not our
21  argument.
22       THE COURT:  Okay.
23       MR. GILBERT:  Their response is they don't even
24  address it, and now they've stipulated to it for the
25  first time, Judge.  What they're alleging --

Page 6

 1       THE COURT:  Go ahead, sir.  I'm listening.
 2       MR. GILBERT:  Judge, what they're alleging is
 3  that the bonds that came out from the indemnity
 4  agreement -- and under these bonds there were two bonds
 5  issued, a performance and payment bond.  The --
 6  Westchester was the surety, Glasswall was the
 7  principal, and the obligee of the performance bonds was
 8  the developer/manager of the building, okay, to
 9  guarantee the performance of the contract.  His
10  individual clients are not parties to the bonds,
11  absolutely not parties to the bonds.  The only
12  agreement is the indemnity agreement.
13       They are trying to allege in the case that they
14  filed against us in Florida, that they want a
15  declaration that somehow we are not -- that they are
16  not liable to us for any personal liability.  The only
17  way they have personal liability to Westchester Fire
18  Insurance Company is based upon the two party agreement
19  that is the indemnity agreement.  They're claiming that
20  they want to go under a forum selection provision
21  that's in the bonds, but they are not parties to the
22  bonds.  Their company Glasswall is a party to the
23  bonds, but they are not parties to the bonds.
24       THE COURT:  Meaning individually they are not
25  parties.

Page 7

 1       MR. GILBERT:  Individually, that is correct.
 2       THE COURT:  But they have sued individually here
 3  in Miami-Dade County.
 4       MR. GILBERT:  That's absolutely correct, Judge.
 5  And they're being sued individually by Westchester in
 6  the New York litigation.  We think it's absolutely
 7  clear that they have no right to be forum shopping and
 8  litigating in the Florida courts when the mandatory
 9  forum selection provision, which is presumptively valid
10  and should be upheld, is the only provision in the
11  agreement that exists between these two parties.
12       THE COURT:  I understand.  Sir.
13       MR. MAGOLNICK:  First of all, in terms of the
14  claim -- first of all, Sara Jayne Kennedy is not a
15  principal in Glasswall.  Everyone keeps saying that.
16  She's never been an officer, director, or member.  Ugo
17  Colombo is, or to the extent the company exists.
18       THE COURT:  Mr. Colombo lives here.
19       MR. MAGOLNICK:  Yes.
20       THE COURT:  He's with The Collection.  Is that a
21  different person?
22       MR. LODISH:  No, same person.
23       THE COURT:  I have another case.  That's all.
24       MR. MAGOLNICK:  So the issue here, Your Honor, is
25  there's the indemnity agreement and then there are the

Page 8

 1  bonds.  So while we don't dispute that the language of
 2  the indemnity agreement is what they say it is, it is
 3  what it is, but what we're here about now is that they
 4  want to rely solely on the forum selection in the
 5  indemnity agreement.  But what we attach to all three
 6  complaints, the amended complaint in 2014 for
 7  Ms. Kennedy, the complaint for Mr. Colombo in 2014,
 8  then the complaint in 2015 for Ms. Kennedy, was that we
 9  attached the bonds, because without the bonds there is
10  no agreement for indemnity.  It can't exist on its own.
11  That agreement for indemnity is -- is dependent on the
12  bonds.  And if --
13       THE COURT:  How so?
14       MR. MAGOLNICK:  Well, because without -- the only
15  reason those agreements for indemnity exist is because
16  Westchester issued bonds in favor of Monadnock, and the
17  only reason that my clients would be potentially liable
18  is if Westchester has to perform under the bonds.
19  That's undisputed.  That's the only way my client can
20  be liable under the bonds.  So because the agreement
21  for indemnity is wholly dependent on the bonds, we have
22  an interest in ensuring that the terms of the bonds are
23  complied with.
24       So in -- they ask that the Court focus
25  exclusively on the indemnity agreement and to ignore



Page 9

1  the language in the bonds.  The language in the bonds
2  specifically say that the jurisdiction for any claims
3  relating to the bonds can be anywhere where any portion
4  of the work was performed.  What we have alleged in the
5  complaint, and it's undisputed that we've alleged in
6  the complaint and they don't dispute it, is that the
7  part -- at least part of the work was done down here.
8  The windows were manufactured down here and shipped up
9  to New York.  So there's no doubt about that.
10      And what they also don't address in their reply
11  is we've brought this under the declaratory relief act.
12  So under 86.021, it says any person claiming to be
13  interested or who may be in doubt about his or her
14  rights under a contract or other instrument in writing
15  or whose rights, status, or other equitable or legal
16  relationships -- relations are affected by a contract
17  may seek a declaration of rights, status, or other
18  equitable or legal relations thereunder.
19      THE COURT:  But why can't you do that in New
20  York?
21      MR. MAGOLNICK:  Your Honor, we filed here first.
22  The New York action was a subsequent filed action that
23  Westchester filed while this case was stayed.
24      THE COURT:  But no, my question is, is that if
25  you're telling me that there is a mandatory forum

Page 10

1  selection clause as to the main agreement --
2      MR. MAGOLNICK:  No, no, as to the indemnity
3  agreement, not as to the bonds.
4      THE COURT:  Thank you.
5      MR. GILBERT:  It's the only agreement between our
6  parties.  The bonds are not an agreement between the
7  parties.
8      THE COURT:  I'm sorry, I misspoke.  There is a --
9  there is a mandatory forum selection provision as to
10  the indemnity agreement that you are a party of.
11      MR. GILBERT:  Correct.
12      MR. MAGOLNICK:  Yes, Your Honor.
13      THE COURT:  There is no forum selection --
14  mandatory forum selection provision as it relates to
15  the bonds.
16      MR. MAGOLNICK:  There is a -- a specific --
17      THE COURT:  No mandatory.
18      MR. MAGOLNICK:  No mandatory, Your Honor.
19      THE COURT:  Okay.  And so you're saying to me, I
20  agreed that this matter should be litigated in New
21  York, the -- the agreement that I am a party to.  The
22  bonds, which you say are essential to your performance
23  of the agreement that you are a party to --
24      MR. MAGOLNICK:  Yes, Your Honor.
25      THE COURT:  -- is -- it doesn't speak in terms of

Page 11

1  requiring it to be filed at any particular
2  jurisdiction, but you then file it, a dec action here
3  in Miami-Dade County.
4      MR. MAGOLNICK:  Right.
5      THE COURT:  Because you believe that your
6  performance, pursuant to the indemnity agreement that
7  should be litigated in New York, is wholly dependent or
8  the bond doesn't come into play until the indemnity is
9  established.
10      MR. MAGOLNICK:  No, it's actually the opposite.
11      THE COURT:  The opposite way.
12      MR. MAGOLNICK:  The indemnity doesn't come into
13  play until Westchester's obligations under the bonds
14  are established.  Because we don't have an indemnity
15  agreement -- an indemnity obligation if Westchester
16  doesn't have to perform under the bonds.
17      THE COURT:  My question is -- and thank you.
18  Sometimes it's hard keeping it all together.  How do
19  you -- so I don't understand.  If the one agreement
20  that you are a party to agreed that the case is
21  mandatory -- should mandatory be filed in New York, why
22  then should the bond issue that you are not a -- where
23  there's no mandatory clause, where you are not a
24  signatory to, right?
25      MR. MAGOLNICK:  We're not a signatory to.  We

Page 12

1  are -- we are interested under the dec action statute.
2      THE COURT:  You're interested because you want to
3  know that that somehow will trigger something.
4      MR. MAGOLNICK:  Right.
5      THE COURT:  So the question is, but you can't
6  then transfer back to Miami and attempt to litigate
7  that in Miami when the main cause -- because we
8  shouldn't be litigating -- one thing that we all know,
9  and hopefully we all will agree, that you got to be
10  very careful in litigating issues that overlap in more
11  than one jurisdiction because the -- the -- the
12  confusion that could result, or better yet, the
13  inconsistency in rulings that could result could wreak
14  havoc for everybody.  That's why I don't understand why
15  this shouldn't go to New York.
16      MR. MAGOLNICK:  Because it was here first.  They
17  waited until --
18      THE COURT:  Go ahead, sir.
19      MR. MAGOLNICK:  They waited -- while there was a
20  stay in -- stay in place here is when Westchester filed
21  its action in New York against my clients.  This action
22  is down here and it's all interrelated with the claims
23  that are -- with all the other defendants in this case
24  because but for the claim between Monadnock and
25  Glasswall, we wouldn't have this claim -- this case



Page 13
1  down here either.  But for the claim between Glasswall
2  and Monadnock, we wouldn't have Westchester involved,
3  Westchester Fire Insurance involved.  That's why it was
4  filed down here.  My clients are down here.  The bond
5  allows for any action under that relates to the bonds
6  to be filed anywhere where there -- where any portion
7  of the work was done.  There's no --
8       THE COURT:  But isn't that defeating the whole
9  purpose of the mandatory forum selection clause?
10  Because what you're saying is, is that but the bond
11  doesn't tell me that I'm required to file in New York.
12  The bond leaves it open or at least says any party who
13  has any interest, and it's broad enough that I can file
14  it here.
15       And I understand and I'm asking them a question
16  about how this all transpired in terms of why they
17  filed what they did, where they filed it as compared to
18  when this case was pending, but I still don't
19  understand how I'm supposed to deal with the
20  possibility of these inconsistent rulings.  What if I
21  do one thing and the judge in New York does something
22  totally opposite of what I do?  How are we supposed to
23  resolve that?  I can't tell there's a mandatory forum
24  selection clause that you're not challenging.  I can't
25  tell them that they need to file it here and I can't

Page 14
1  tell the New York judge what to do.  The only thing
2  that is a little more open and fluid is the bond
3  because it can be filed anywhere and you've chosen to
4  file it here.  And I'm not -- I mean, you said you had
5  a right to and your client lives here.
6       MR. MAGOLNICK:  Sure.
7       THE COURT:  And he has an interest, obviously, in
8  the bond, as you have reflected.  So I'm just -- I'm
9  just a little taken aback because I'm not sure how I'm
10  supposed to deal with that, because I think if I agreed
11  with you I would be rendering the mandatory forum
12  selection clause a nullity.
13       MR. MAGOLNICK:  Well, Your Honor, you're not --
14  I'm not -- when you say that we're not challenging the
15  mandatory forum selection clause, we're not denying its
16  existence and we're not denying that we're a party to
17  an agreement that has that mandatory forum selection
18  clause.  What we are challenging is the applicability
19  of that mandatory forum selection clause to this
20  particular proceeding.  Right now, because there's been
21  no determination -- there's been no determination under
22  the bonds, this is where we should be if this is where
23  we chose to file.  There is no -- there's -- there's --
24  it's not as though there's already been a determination
25  of Westchester's liability to Monadnock and then

Page 15
1  Westchester gets to say, well, we're liable so now we
2  go under the indemnity agreement.  That's our position,
3  that right now where we are is because there's no
4  determination as to the -- as to the liability of -- of
5  Westchester to Monadnock under the bonds.  So -- and
6  what we're saying is based upon the finding of the
7  arbitrators in New York, based upon the arbitration
8  award where they found Monadnock to have been in
9  breach, we're saying that because of that, Westchester
10  has no liability under the bond; and if Westchester has
11  no liability under the bonds, then we certainly have no
12  liability, because the only way we would have liability
13  is if Westchester is found to be liable to Monadnock
14  under the bonds.
15       MR. GILBERT:  Judge, you're exactly correct.  The
16  only agreement that is between the two of us is the
17  indemnity agreement.  It has the mandatory forum
18  selection clause.  When they argue to you that, well,
19  they filed here first --
20       THE COURT:  Can you read to me that -- where is
21  the -- where is the --
22       MR. GILBERT:  Yeah, the mandatory forum selection
23  clause, if you look at --
24       THE COURT:  Tab 5.
25       MR. GILBERT:  You can look at Page 2, Tab 5, in

Page 16
1  the middle of the page.
2       THE COURT:  Give me one minute, please.
3       MR. GILBERT:  Yeah.
4       THE COURT:  See, sir, can I ask you a question?
5       MR. MAGOLNICK:  Sure.
6       THE COURT:  "All actions or proceedings arising
7  directly or indirectly from this agreement shall be
8  litigated only in courts having status within the state
9  of New York and consents to the personal jurisdiction
10  venue."
11       MR. MAGOLNICK:  Sure.
12       THE COURT:  So when you say -- when it says
13  "directly and indirectly," because you're basically
14  saying I'm not a party to the bond, right?
15       MR. MAGOLNICK:  Right.
16       THE COURT:  But the bond indirectly -- the bond
17  proceedings indirectly impact me pursuant to the
18  agreement that I have that I am a party to.  So I don't
19  understand why that doesn't put you up in New York.
20       MR. MAGOLNICK:  Because it's --
21       MR. GILBERT:  And it does, Judge.
22       THE COURT:  Well, one minute.
23       MR. MAGOLNICK:  Because we're not -- this is not
24  an action that's indirectly under the indemnity
25  agreement.  It is an action based upon the bonds.



Page 17
1  What -- what -- we have an interest in a determination
2  that Westchester has no liability to Monadnock under
3  the bonds.  And it's not as though we're doing this in
4  a vacuum.  We are basing it on a finding of the
5  arbitrators in New York that said Monadnock breached.
6  And based upon Monadnock's breach, there is no
7  liability that Westchester has.
8      THE COURT:  Let me ask you this way.
9      MR. MAGOLNICK:  Sure.
10     THE COURT:  Show me the one case you have where
11 you are not a party to -- you had an agreement that you
12 were a party to, you were not a party to a -- another
13 action, and you chose, because you had an indirect --
14 the other action had an indirect effect upon your
15 rights --
16     MR. MAGOLNICK:  Yes, Your Honor.
17     THE COURT:  -- that the court said, yes, you can
18 file that action in another jurisdiction other than the
19 mandatory jurisdiction because it was -- it was
20 permissible under the action that you -- under the
21 contracted agreement that you were not a party of but
22 you were indirectly impacted by.
23     MR. MAGOLNICK:  You want a case that specifically
24 says that?
25     THE COURT:  Well, something that's analogous.

Page 18
1  Give me something that's analogous.  Something that
2  would have me rule in your favor, put it that way.
3      MR. MAGOLNICK:  I'm looking at the statute that
4  we're going under, 86.201, that says that any person
5  claiming to be interested or may be in doubt about his
6  or her rights under a contract can seek a declaration
7  of rights, status, or other equitable or legal
8  relations thereto.  We are not seeking --
9      MR. GILBERT:  It's not --
10     MR. MAGOLNICK:  We are not seeking a declaration
11 under the indemnity agreement.  We are seeking it under
12 the bonds which is -- in which we have an interest.
13     THE COURT:  But --
14     MR. MAGOLNICK:  We've alleged we have an
15 interest.
16     THE COURT:  And I accept that.
17     MR. MAGOLNICK:  I don't have a case that
18 answers --
19     THE COURT:  The problem that you have is that I
20 don't know if there's any cases where there was a
21 mandatory forum selection clause in the other
22 agreement.
23     MR. MAGOLNICK:  We haven't found one, Judge.
24     THE COURT:  And that's the problem that I'm
25 having is that there's a mandatory forum selection

Page 19
1  clause, and -- and when I have to resolve potential
2  conflicts that could arise from say the New York court
3  making a judgment and this court making a judgment, I
4  think we need to err on the fact that there's a
5  mandatory forum selection clause.  And who filed first,
6  I'm not even sure that that necessarily controls what
7  I'm doing because of that.  And because of that, I
8  think I need to grant the motion to dismiss.
9      MR. MAGOLNICK:  Okay.
10     MR. GILBERT:  Thank you.
11     MR. MAGOLNICK:  Thank you, Your Honor.
12     MR. GILBERT:  I have a proposed order.  We'll
13 just put "granted."
14     THE COURT:  Well, I think you want to -- I mean
15 this is an appealable order.  I think we need to say
16 something more than "granted."
17     MR. MAGOLNICK:  We can say "for the reasons set
18 forth in the record."
19     MR. GILBERT:  Based upon the mandatory forum
20 selection clause.
21     THE COURT:  Well, maybe you just want to state
22 "for the reasons announced by the Court for the
23 record."
24     MR. MAGOLNICK:  Right.  And then we can order the
25 transcript.

Page 20
1  (This proceeding was concluded at 11:30 a.m.)
2          - - -



```
                              Page 21
 1          C E R T I F I C A T E   O F   R E P O R T E R
 2
     STATE OF FLORIDA      )
 3                         )
     COUNTY OF MIAMI-DADE  )
 4
 5          I, Cicely Moore, Court Reporter, certify that I
 6   was authorized to and did stenographically report the
 7   proceedings at the time and place described herein; that
 8   the transcript is a true and complete record of said
 9   proceedings.
10          Dated this 10th day of May, 2018.
11
12
13          _____
            Cicely Moore
14          Notary Public State of Florida
            Commission #GG124933
15          Expires July 17, 2021
16
17
18
19
20
21
22
23
24
25
```

