# <u>EXHIBIT A</u>

# **Westchester's Position**

Please accept this position statement from Westchester Fire Insurance Company ("Westchester") on the discoverability of documents related to the settlement ("Settlement") purportedly entered into among Monadnock Construction, Inc. ("Monadnock"), HPS 50th Avenue Associates, LLC and HPS Borden Avenue Associates, LLC (collectively, "HPS Entities"), Bruce Beal ("Beal"), The Related Companies ("Related"), Glasswall, LLC, ("Glasswall"), and Ugo Colombo ("Ugo") and Sara Jayne Kennedy Colombo (collectively with Glasswall, "Indemnitors").

### Westchester's Focused Request for Documents

Westchester has now had the opportunity to consider the concerns raised by the Settlement and a related purported assignment ("Assignment") of claims by Monadnock to a Delaware entity not previously identified to Westchester ("Delaware Entity").  Westchester asserts that it should receive discovery of the following limited, focused material (i) before the Delaware Entity may be substituted, or move to be substituted, for Monadnock and (ii) to allow Westchester and the Court to determine the impact of the Settlement and Assignment on the already pending dispositive motions:

- All documents that comprise the Settlement and the Assignment;

- As to the Delaware entity, documents identifying and/or related to its (i) organization and governance, (ii) source of funding, (iii) ultimate owners, (iv) attorneys, and (v) agreements with parties in this or the Florida litigation or their affiliates as to the assigned claims, funds it would receive from a settlement or judgment, and funding of this litigation.

These materials are relevant to whether (i) the court may substitute the Delaware Entity for Monadnock, (ii) Monadnock's claims legally survive the Settlement, and (iii) the substitution of the Delaware entity would create violations of duties owed by the Indemnitors to Westchester, legal representation conflicts, and estoppel issues for lawyers taking inconsistent positions.

### The New Delaware Entity Must Satisfy Fed. R. Civ. P. 25 To Be Substituted as a Plaintiff

For the Court to substitute the Delaware Entity for Monadnock, it must do so under Federal Rule of Civil Procedure 25(c):

> In the case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

In applying Fed. R. Civ. P. 25 (c), the court may exercise its discretion "taking into account all the exigencies of the situation." *Fed. Deposit Ins. Corp. v. Tisch*, 89 F.R.D. 446, 448 (E.D.N.Y. 1981).  Here, to properly exercise its discretion under the circumstances now presented to it, the Court (and Westchester) must receive and review the following materials, all of which are necessitated under controlling law.

### Westchester Is Entitled to the Settlement and Assignment

The Settlement and Assignment themselves bear on whether the Delaware entity should be substituted because they are relevant to whether any claim even still exists against Westchester.  For instance, the Settlement will contain releases and consideration given for them.  Yet, "[i]t is the law in New York as elsewhere that the release of a principal releases the surety."

*Dabney v. Chase Nat. Bank of City of New York*, 201 F.2d 635, 641 (2d Cir. 1953) ("[W]e will assume that the cancellation of any of the bonds here in suit would pro tanto have released the bank because its liability, as we have seen, was a partial security for the payment of the bonds."); *see also Keybro Enterprises v. Four Seasons Country Club Caterers, Inc.*, 25 A.D.2d 307, 310, 269 N.Y.S.2d 291, 295 (1st Dept. 1966), *aff'd sub nom.*, 19 N.Y.2d 912, 227 N.E.2d 895 (1967) ("A unilateral reservation of rights by a promisee against the guarantor or surety is of no avail where the obligation is discharged absolutely by such a surrender because the guarantor or surety would be deprived of his rights to subrogation."). Accordingly, under New York law, the Settlement and Assignment themselves are highly relevant to whether the Delaware Entity has claims to assert that would support its substitution as a plaintiff.

After decisions like *Dabney* and *Keybro* were issued, the Restatement (Third) of Suretyship & Guaranty ("Restatement Third") § 39 was published and courts around the country have interpreted and applied it.  Restatement Third § 39 states in full:

> To the extent that the obligee releases the principal obligor from its duties pursuant to the underlying obligation:
>
> (a) the principal obligor is also discharged from any corresponding duties of performance and reimbursement owed to the secondary obligor unless the terms of the release effect a preservation of the secondary obligor's recourse (§ 38);
>
> (b) the secondary obligor is discharged from any unperformed duties pursuant to the secondary obligation unless:
>
>> (i) the terms of the release effect a preservation of the secondary obligor's recourse (§ 38); or
>>
>> (ii) the language or circumstances of the release otherwise show the obligee's intent to retain its claim against the secondary obligor;
>
> (c) if the secondary obligor is not discharged from its unperformed duties pursuant to the secondary obligation by operation of paragraph (b), the secondary obligor is discharged from those duties to the extent:
>
>> (i) of the value of the consideration for the release;
>>
>> (ii) that the release of a duty to pay money pursuant to the underlying obligation would otherwise cause the secondary obligor a loss; and
>>
>> (iii) that the release discharges a duty of the principal obligor other than the payment of money;
>
> (d) the secondary obligor has a claim against the obligee to the extent provided in § 37(4).

Restatement Third § 39.

Under Restatement Third § 39, the terms of a settlement between a principal obligor, like Glasswall, and an obligee, like Monadnock, directly impact whether a secondary obligor/surety, like Westchester, has remaining obligations that could be the basis of a legal claim by an entity such as the Delaware Entity.  In particular, Restatement Third § 39, by its very terms, requires

review of the Settlement and its releases, the consideration for those releases, the value of that consideration, whether the releases address duties other than the payment of money, and whether the terms of the Settlement could cause Westchester loss.  Each of these issues bears directly on whether Monadnock had any claims left to assign to the Delaware Entity.

Not surprisingly, then, courts applying Restatement Third § 39 have uniformly recognized the potential impact that a settlement between a principal obligor and obligee can have on a surety like Westchester.  *E.g.*, *AmTote Int'l, Inc. v. PNGI Charles Town Gaming Liab. Co.*, 66 F. Supp. 2d 782, 793 (N.D.W. Va. 1999); *Will H. Hall & Son, Inc. v. Ace Masonry Const., Inc.*, 260 Mich. App. 222, 239, 677 N.W.2d 51, 60 (2003); *Green Leaves Rest., Inc. v. 617 H St. Assocs.*, 974 A.2d 222, 235 (D.C. 2009); *see also* Daniel Mungall Jr. & Samuel J. Arena Jr., Effect on Surety of  Obligee's Release of Principal: A Critical Look at the Rules in the Restatement (Third) of Suretyship and Guaranty Addresses the Consequences of the Obligee's Release of the Principal, 70 Def. Couns. J. 328, 339 (2003).

The Settlement and Assignment are highly relevant to the survival of Monadnock's claims. That is why Courts have ordered discovery of such documents in analogous circumstances.  *E.g.*, *Sweetwater Apartments, P.A. v. WCS Construction Servs., Inc.*, No. 2:11-CV-00155-WKW-WC, Docket No. 153 (M.D. Ala. 2012) (granting surety's motion to compel production of settlement agreement and release between a contractor and subcontractor because of its potential effect on the rights and obligations of the surety).[1]  In fact, the United States District Court for the Southern District of New York, quoting Judge Weinstein, has recognized that a  party cannot curtail another party's rights by hiding behind a settlement agreement: "The policy of allowing open and free negotiations between parties by excluding conduct or statements made during the course of these discussions is not intended to conflict with the liberal rules of discovery embodied in the Federal Rules of Civil Procedure . . .  Therefore, a party is not allowed to use Rule 408 as a screen for curtailing his adversary's rights of discovery."   *Morse/Diesel, Inc. v. Fid. & Deposit Co. of Maryland*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988) (citing 2 J. Weinstein & M. Berger, Evidence ¶ 408[1] at 408–15 (1986)).

**Westchester Is Entitled to Certain Other Limited Documents**

In addition to the Settlement and Assignment, Westchester is entitled to documents sufficient to show the Delaware Entity's formation history, true owners and source of funding.  In particular, the circumstances and documents underlying the purported Assignment to the Delaware Entity, rather than a conclusory court filing, will help reveal whether those claims were effectively assigned.  The consideration given or received for the purported Assignment is relevant under Restatement Third § 39 to whether Westchester's liability was extinguished. These materials are also relevant to New York's application of the doctrine of champerty, which invalidates attempts to assign legal claims under improper circumstances.  *E.g.*, N.Y. Judiciary Law § 489; *Trust for the Certif. Holders of the Merrill Lynch Mortg. Inves., Inc. v. Love Funding Corp.*, 13 N.Y.3d 201, (N.Y. 2009).

The documents requested bear on the viability of the Delaware Entity as a substituted party.  The Indemnitors have duties to Monadnock and Westchester and, if they have interests in the Delaware Entity, they could be taking positions through that entity that violate those duties or contradict positions that they already took in the New York and Florida litigations and the arbitration.  Similarly, representation of the Delaware entity by a law firm that represented Glasswall, the Indemnitors or related parties would involve that law firm advocating positions

---

[1] The *Sweetwater* decision and its factual background are laid out in the parties' briefing in that case [Dkts. # 92, 105-106, 108, 131, 133, 137] and the Court's Order granting the surety's motion to compel [Dkt. 153]. If the Court would like Westchester to provide copies of these documents, it will gladly do so.

directly contrary to those they advocated in those litigations and the arbitration. Those attorneys also would be privy to past discussions with Westchester's attorneys at a time when the interests of the Indemnitors and Westchester were aligned against the viability of Monadnock's claims, which would be the very claims that those same attorneys would now be advocating. Accordingly, Westchester must understand not only the structure of the Assignment, but the real parties in interest, their financial investment, and the identity of their attorneys.

These questions are raised by the undisclosed nature of the terms of the Settlement and Assignment, and the history, ownership and financial backing of the Delaware entity. The requested material must be produced so that the Court may properly consider a Fed. R. Civ. P. 25(c) motion.

### Glasswall's Response Cites Old Law and Only Raises More Questions

In its September 12, 2018 email responding to all this law, Glasswall's sole argument was to point to an outdated Restatement section from 1941: Restatement (First) of Security ("Restatement First") § 122 (1941). Quoting a part of this section, Glasswall wrote that "a surety is discharged 'unless (b) the creditor reserves his rights against the surety.'" Glasswall attached a document complete with a court caption under which Monadnock purports to assign its claims against Westchester to an entity—presumably the Delaware Entity—called MD Holding, LLC ("MD Holding"). Monadnock signed the purported assignment. MD Holding did not. Moreover, the purported assignment mentions no consideration given by MD Holding.

There are several problems with this response. First, Restatement First § 122 has long since been superseded: "The present Restatement … should be regarded as completely superseding Division II of the Restatement of Security," which includes Restatement First § 122. *See* Restatement (Third) of Suretyship & Guaranty Foreword (1996). To further confirm that Restatement First § 122 has been superseded by Restatement Third § 39, the Reporter's Note to § 39 also states that its subsection (b) replaces Restatement First § 122, noting, among other things, that § 39 "adopts the more modern policy" that "discharg[es] the secondary obligor only to the extent it would suffer loss as a result of the release." *See* Reporter's Notes to Restatement Third § 39 (1996). Accordingly, courts now apply Restatement Third § 39. *E.g., AmTote*, 66 F.Supp.2d at 793 ("Section 39(b) of the Restatement of Suretyship replaces Section 122 of the Restatement of Security."); *Talbot Bank of Easton Maryland v. Albertson*, No. CV 10L-06-011 RBY, 2013 WL 4093328, at *3 (Del. Super. Ct. June 5, 2013) ("Restatement of Security has been revised. § 122 now appears in modified form as § 39 in the Restatement (Third) of Suretyship and Guaranty."). Federal courts applying New York law have also, more generally, applied and relied upon Restatement Third. *E.g., Cardell Fin. Corp. v. Suchodolksi Assocs.*, 674 F. Supp. 2d 549, 553 (S.D.N.Y. 2009), *aff'd*, 409 F. App'x 458 (2d Cir. 2011) (noting that New York courts apply Restatement (Third) of Suretyship and Guaranty); *Valley Nat. Bank v. Greenwich Ins.*, 254 F. Supp. 2d 448, 453 (S.D.N.Y. 2003) (citing § 1 of Restatement Third); *Philips Lighting Co. v. Schneider*, No. 05-CV-4820 SLT MDG, 2014 WL 4274182, at *1 (E.D.N.Y. 2014) (same); *Travelers Cas. & Sur. Co. of Am. v. Metro. Transp. Auth.*, No. 09 CIV. 4077 PGG, 2014 WL 4593622, at *4 (S.D.N.Y. 2014) (citing § 27(1) of Restatement Third).

Second, it is important to note that, even under old law when § 122 was applicable, Westchester would be entitled to indemnity from Glasswall if it were ever to become liable to the creditor. (Westchester would also be entitled to indemnity from the Indemnitors under their separately executed Indemnity Agreement.) The comment to § 122 states that an obligor, like Glasswall, that is released by its creditor, like Monadnock, remains liable to the surety if that surety then has to pay on claims reserved by the creditor:

> Reservation of rights by creditor. Where the creditor releases the principal but reserves his rights against the surety, this is construed as a covenant not to sue the principal. . . .  The creditor, by a release with reservation of rights against the surety, was in effect notifying the principal that, in spite of the release, the surety might pay ... and that the principal would then be liable to reimburse the surety. . . . The principal had no cause for complaint, since, having accepted his release with the reservation, he necessarily accepted the consequence that the liability might still be enforced against him through action by the surety.

Restatement First § 122 cmt. d.

Third, the purported assignment, the form of which makes clear that it was engineered for a court-filing, does not reveal the terms of the deal that resulted in it. If it was a product of the Settlement (and it clearly was), the Court and Westchester must review the Settlement terms, its releases and the consideration exchanged to determine whether the assignment is valid.

Fourth, the purported assignment only raises more questions.  It is not signed by MD Holding, and it does not indicate that MD Holding paid consideration for it.  It therefore necessitates review of the full Settlement and Assignment contained therein to determine the nature and validity of the assignment before MD Holding may be substituted as a party.  Moreover, the lack of consideration in a document not signed by MD Holding further implicates the doctrine of champerty, and so the circumstances surrounding the purported assignment must be reviewed before MD Holding may be substituted under Fed. R. Civ. P. 25(c).

In short, the sole counter-argument made by Glasswall is inapplicable, and the purported assignment it provides only underscores the need for the limited, focused discovery that Westchester seeks before the Court can determine (i) under Fed. R. Civ. P. 25(c), whether Monadnock has any claims left to be assigned and whether the Delaware entity is a proper assignee and (ii) the impact of the Settlement and Assignment on the already pending dispositive motions.