# EXHIBIT B

# Glasswall's Position

| | |
|---|---|
| **From:** | cinque845@aol.com |
| **Sent:** | Wednesday, September 12, 2018 11:33 AM |
| **To:** | Sullivan, John |
| **Cc:** | Selarnick, Alexander |
| **Subject:** | Re: Discovery Necessitated by Proposed Substitution of Plaintiff |
| **Attachments:** | 9-12-18GlasswallAssignment.pdf |

John:

In response to your e-mail I reviewed the cases which you cited.

Under Restatement of Security §122 a surety is discharged "unless (b) the creditor in the release reserves his rights against the surety." I am attaching Monadnock's July 17, 2018 Assignment of Judgment and Claims. As you can see this document clearly reserves Monadnock's rights against Westchester, so that Westchester has not been discharged.

Jim


CINQUE & CINQUE, P. C.
845 Third Avenue, Suite 1400
New York, New York 10022
Telephone: (212) 759-5515
Telefax: (212) 759-7737
E-mail: CINQUE845@aol.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.


-----Original Message-----
From: Sullivan, John <JSullivan@cozen.com>
To: cinque845 <cinque845@aol.com>
Cc: Selarnick, Alexander <ASelarnick@cozen.com>
Sent: Tue, Aug 21, 2018 5:08 pm
Subject: Discovery Necessitated by Proposed Substitution of Plaintiff

Jim,

I called your office earlier today to inform you that our request will be somewhat broader than discussed last week, before we had the time to thoughtfully consider the implications of your purported settlement. I understand that you are out of the office today, which I believe is consistent with our discussion last week. In any event, here is the email that we promised last week.

Please accept this informal email addressing Westchester Fire Insurance Company's ("Westchester's") position on the discoverability of documents related to the settlement ("Settlement") allegedly entered into among Monadnock Construction, Inc. ("Monadnock"), HPS 50th Avenue Associates, LLC and HPS Borden Avenue Associates, LLC (collectively, "HPS Entities"), Bruce Beal ("Beal"), The Related Companies ("Related"), Glasswall, LLC, ("Glasswall"), and Ugo Colombo ("Ugo") and Sara Jayne Kennedy Colombo (collectively with Glasswall, "Indemnitors") and their potential impact on the ongoing liability, if any, of Westchester and the Indemnitors' liability to Westchester. Having had more time to fully consider the concerns raised by the Settlement, as well as the alleged assignment ("Assignment") of

Monadnock's claims to an undescribed Delaware entity, we believe that Westchester is entitled to discovery of the following materials:

- All documents that comprise the Settlement;
- All documents that comprise the Assignment;
- All documents related to the formation of the Delaware entity;
- Documents sufficient to identify (i) the owners of the Delaware entity, (ii) if those owners are not individuals, the owners of those owners, (iii) and so on until it is clear which individuals or real parties in interest have a financial stake in the Delaware entity;
- The source of all funding of the Delaware entity;
- The attorneys for the Delaware entity; and
- Any agreements between the Delaware entity and any of the parties or former parties to the litigation in the EDNY and the litigation in Florida ("Parties"), or any entity affiliated or related to the Parties.

As discussed below, discovery of these materials is relevant, as a pure question of law, to (i) the propriety of substituting the Delaware entity as a plaintiff in this action, (ii) whether Monadnock's claims against Westchester can actually survive the Settlement and/or Assignment, and (iii) whether the substitution of the Delaware entity would create violations of duties owed by Indemnitors to Westchester, create legal representation conflicts for its attorneys or raise estoppel issues for parties and/or lawyers taking inconsistent positions in the litigation.

Under longstanding New York law, the Settlement and the releases it contains are relevant to whether any claim still exists against Westchester at all. "It is the law in New York as elsewhere that the release of a principal releases the surety." *Dabney v. Chase Nat. Bank of City of New York*, 201 F.2d 635, 641 (2d Cir. 1953) ("[W]e will assume that the cancellation of any of the bonds here in suit would pro tanto have released the bank because its liability, as we have seen, was a partial security for the payment of the bonds."); *see also Keybro Enterprises v. Four Seasons Country Club Caterers, Inc.*, 25 A.D.2d 307, 310, 269 N.Y.S.2d 291, 295 (1st Dept. 1966), *aff'd sub nom.*, 19 N.Y.2d 912, 227 N.E.2d 895 (1967) ("A unilateral reservation of rights by a promisee against the guarantor or surety is of no avail where the obligation is discharged absolutely by such a surrender because the guarantor or surety would be deprived of his rights to subrogation."). Accordingly, under New York law, Westchester is entitled to receive the Settlement and Assignment to determine what, if any, claims remain against Westchester.

More recent developments in the law create an even greater need for the production of the Settlement and Assignment. In particular, this area of the law has been fleshed out by the Restatement (Third) of Suretyship & Guaranty ("Restatement") and related decisional law around the country. Restatement § 39 states in full:

2

§ 39. Release of Underlying Obligation

To the extent that the obligee releases the principal obligor from its duties pursuant to the underlying obligation:

(a) the principal obligor is also discharged from any corresponding duties of performance and reimbursement owed to the secondary obligor unless the terms of the release effect a preservation of the secondary obligor's recourse (§ 38);

(b) the secondary obligor is discharged from any unperformed duties pursuant to the secondary obligation unless:

(i) the terms of the release effect a preservation of the secondary obligor's recourse (§ 38); or

(ii) the language or circumstances of the release otherwise show the obligee's intent to retain its claim against the secondary obligor;

(c) if the secondary obligor is not discharged from its unperformed duties pursuant to the secondary obligation by operation of paragraph (b), the secondary obligor is discharged from those duties to the extent:

(i) of the value of the consideration for the release;

(ii) that the release of a duty to pay money pursuant to the underlying obligation would otherwise cause the secondary obligor a loss; and

(iii) that the release discharges a duty of the principal obligor other than the payment of money;

(d) the secondary obligor has a claim against the obligee to the extent provided in § 37(4).

Restatement § 39 addresses the unmistakable reality that a settlement between a principal obligor like Glasswall and an obligee like Monadnock has a direct impact on the remaining obligations, if any, of a secondary obligor/surety like Westchester. Restatement § 39's analysis, by its very terms, requires review of the Settlement's releases, the consideration for those releases, the value of that consideration, whether the release addressed duties other than the payment of money, and whether the terms of the Settlement can cause Westchester loss.

Courts applying Section 39 have recognized the potential impact that such a settlement can have on a surety like Westchester. *E.g., AmTote Int'l, Inc. v. PNGI Charles Town Gaming Liab. Co.*, 66 F. Supp. 2d 782, 793 (N.D.W. Va. 1999); *Will H. Hall & Son, Inc. v. Ace Masonry Const., Inc.*, 260 Mich. App. 222, 239, 677 N.W.2d 51, 60 (2003); *Green Leaves Rest., Inc. v. 617 H St. Assocs.*, 974 A.2d 222, 235 (D.C. 2009); *see also* Daniel Mungall Jr. & Samuel J. Arena Jr., Effect on Surety of Obligee's Release of Principal: A Critical Look at the Rules in the Restatement the Restatement (Third) of Suretyship and Guaranty Addresses the Consequences of the Obligee's Release of the Principal, 70 Def. Couns. J. 328, 339 (2003). Accordingly, the Settlement and Assignment papers are highly relevant, material and subject to discovery. Courts have in fact ordered such discovery. *E.g., Sweetwater Apartments, P.A., LLC v. WCS Construction Services, Inc. d/b/a WCS Construction, Inc., et al.*, No. 2:11-CV-00155-WKW-WC, Docket No. 153 (M.D. Ala. Aug. 13, 2012) (granting surety's motion to compel production of settlement agreement and release between a contractor and subcontractor because of its potential effect on the rights and obligations of the surety).

As a judge in the Southern District of New York held, quoting Judge Weinstein, a party cannot further its efforts to curtail another party's rights by hiding behind a settlement agreement: "The policy of allowing open and free negotiations between parties by excluding conduct or statements made during the course of these discussions is not intended to conflict with the liberal rules of discovery embodied in the Federal Rules of Civil Procedure . . . Therefore, a party is not allowed to use Rule 408 as a screen for curtailing his adversary's rights of discovery." *Morse/Diesel, Inc. v. Fid. & Deposit Co. of Maryland*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988) (citing 2 J. Weinstein & M. Berger, Evidence ¶ 408[1] at 408–15 to 408–16 (1986)).

Westchester should also receive discovery on the Assignment, related documents, and documents sufficient to show the formation history, true owners and funding of the Delaware entity that will allegedly receive assignment of Monadnock's claims. The undescribed Delaware entity cannot simply step into Monadnock's shoes. It must first satisfy Fed. R. Civ. P. 25(c). Under that rule, the Court must "tak[e] into account all the exigencies of the situation." *Fed. Deposit Ins. Corp. v. Tisch*, 89 F.R.D. 446, 448 (E.D.N.Y. 1981).

Here, there are a number of undisclosed circumstances that must be addressed before an undescribed entity may be substituted into this litigation under Fed. R. Civ. P. 25 as a party with purportedly viable claims, including: what the Delaware entity is; the basis for its assertion that it owns Monadnock's claims; the legal viability of that assertion; the consideration, if any, that it gave for Monadnock's claims; the source of that consideration, whether it be the entity itself or another individual or entity; and the ownership interest and funding role, if any, of any Parties or affiliates of Parties.

In particular, the circumstances and documents underlying the purported assignment of Monadnock's claims to this Delaware entity, rather than a conclusory court filing, are relevant to whether those claims were actually assigned. The consideration given or received is relevant to the Restatement § 39 analysis of whether Westchester's liability has been extinguished. The consideration for and purpose of the assignment are also relevant to New York's application of the doctrine of champerty, which invalidates attempts to assign legal claims under improper circumstances. *E.g.*, N.Y. Judiciary Law § 489; *Trust for the Certif. Holders of the Merrill Lynch Mortg. Inves., Inc. v. Love Funding Corp.*, 13 N.Y.3d 201, (N.Y. 2009). The potential for conflicting legal duties and legal representation conflicts are also concerns. The Indemnitors have duties to Monadnock and, if they have interests in the Delaware entity, they may be taking positions through that entity that violate those duties. Their positions may also contradict positions that they took against Monadnock in the New York and Florida litigations and the arbitration. Similarly, representation of the Delaware entity by a law firm that represented Glasswall, the Indemnitors or related parties would involve that law firm advocating positions directly contrary to positions that they advocated in those litigations and the arbitration. Those attorneys would also be privy to past strategy discussions with Westchester's attorneys at a time when the interests of the Indemnitors' attorneys and Westchester's attorneys were aligned against the viability of Monadnock's claims, which would be the very claims that those attorneys would now be advocating. Accordingly, we must understand not only the structure of the Assignment, but the real parties in interest, their financial investment, and the identity of their attorneys.

These questions are raised by the undisclosed nature of the terms of the Settlement, the Assignment, and the history, ownership and financial backing of the Delaware entity. Without disclosure of this information, and its proper review and consideration by the Court, the Delaware entity cannot be substituted as a plaintiff under the Federal Rules.

We do not expect that this will be a burdensome production or overly voluminous. But it is necessary. We hope that we can receive this information without the intervention of the Court. Please let us know whether you will voluntarily produce this material. We are, of course, available to discuss these issues.

Regards,

John



**John J. Sullivan**
**Member | Cozen O'Connor**
45 Broadway 16th Floor | New York, NY 10006
P: 212-453-3729 F: 646-461-2073
Email | Bio | Map | cozen.com

***Notice:*** *This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the*

*sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

MONADNOCK CONSTRUCTION, INC.,      Case No.: 16 CIV. 00420 (JBW)(VMS)
                                                               ECF Case

               Plaintiff,

    -against-

WESTCHESTER FIRE INSURANCE
COMPANY,

               Defendant.

-----------------------------------------------------------X

WESTCHESTER FIRE INSURANCE
COMPANY,

               Third-Party Plaintiff,

    -against-

GLASSWALL, LLC, UGO COLOMBO, and
SARA JAYNE KENNEDY COLOMBO,

               Third-Party Defendants.

-----------------------------------------------------------X

## ASSIGNMENT OF JUDGMENT AND CLAIMS

     It is agreed between Monadnock Construction, Inc., a corporation organized pursuant to the laws of the State of New York, and with its principal office at 155 3rd Street, Brooklyn, New York 11231, hereinafter referred to as the Assignor, and MD Holding, LLC, a limited liability company organized pursuant to the laws of the State of Delaware, hereinafter referred to as the Assignee, that:

1

1. A judgment in this action was entered on February 2, 2018 in favor of Monadnock Construction, Inc. and against Glasswall, LLC in the amount of $1,526,257.87 plus post-judgment interest.

2. The Assignor assigns to the Assignee and its successors and assigns, all of its right, title and interest in the judgment in this action and to all sums of money that may be obtained by the judgment or on any proceedings to be had on it.

3. The Assignor assigns to the Assignee and its successors and assigns, all of its right, title and interest in Payment and Performance Bond Numbers K08840295 and K08840258 issued by Westchester Fire Insurance Company as surety, together with the claims asserted by Assignor against Westchester Fire Insurance Company in the amended complaint filed October 3, 2017.

4. The Assignee shall have powers of substitution, revocation, to demand and to receive, power to obtain executions, and power to take all lawful measures for the recovery of the money due or to become due on the judgment.

5. On payment of the judgment the Assignee shall have power to execute a satisfaction-piece, to acknowledge satisfaction, or discharge the judgment, and to appoint, substitute and revoke attorneys under it for the purposes of enforcing the judgment.

6. The Assignor covenants and represents that it will not collect or receive any monies due on the judgment, nor will it release or discharge the judgment. The Assignor will allow all lawful proceedings to enforce and collect the judgment to be taken by the Assignee.

State of NY, County of Richmond
Signed before me on this 17th day of July, 2018 by Gregory Bauso
Notary Public

MONADNOCK CONSTRUCTION, INC.

By: _____

2

MAGDALENA BULICZ
Notary Public, State of New York
No. 01BU6231576
Qualified in Richmond County
Commission Expires Nov. 29, 2018