UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MONADNOCK CONSTRUCTION, INC.,               Case No.: 16 CIV. 00420 (JBW)
                                            ECF Case
                 Plaintiff,

        -against-

WESTCHESTER FIRE INSURANCE
COMPANY,

                 Defendant.
------------------------------------------------------------X

WESTCHESTER FIRE INSURANCE
COMPANY,

                 Third-Party Plaintiff,

        -against-

GLASSWALL, LLC, UGO COLOMBO, and
SARA JAYNE KENNEDY COLOMBO

                 Third-Party Defendants.
------------------------------------------------------------X

### WESTCHESTER FIRE INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO GLASSWALL'S MOTION TO RELEASE LETTER OF CREDIT

Third-Party Plaintiff Westchester Fire Insurance Company ("**Westchester**") submits this

Memorandum of Law in Opposition to the Motion of Third-Party Defendant Glasswall, LLC

("**Glasswall**") to Release the Letter of Credit.

### PRELIMINARY STATEMENT

Third-Party Defendant Glasswall's motion to release the letter of credit ("**Irrevocable**

**Letter of Credit**") issued to Westchester as beneficiary is invalid and without merit for several

independent reasons.

First, Glasswall has not answered or asserted defenses to Westchester's Third-Party claim for indemnification and has, in fact, not asserted any claims whatsoever in this Action, much less a claim for release of the Irrevocable Letter of Credit. These failures mean that Glasswall has no basis to defend against Westchester's still pending third-party claim for indemnification and no viable claim on which to base its motion for release of the Irrevocable Letter of Credit.

Second, Glasswall and the other Third-Party Defendants (Ugo Colombo ("**Colombo**") and his wife, Sara Jayne Kennedy Colombo ("**Kennedy**") agreed under an indemnity agreement ("**Indemnity Agreement**") to indemnify Westchester for any and all liability, attorneys' fees and costs incurred by reason of Westchester executing the bonds ("**Bonds**"). Over many years and multiple actions in this all-out war among the Third-Party Defendants, Monadnock, Inc. and its related parties, Westchester has been forced to incur, so far, approximately $1 million in fees and costs. Glasswall put up the Irrevocable Letter of Credit as required collateral security under the Indemnity Agreement. Accordingly, not only does Glasswall have no legal basis to make that Irrevocable Letter of Credit now disappear, Westchester has the right to indemnification from the Third-Party Defendants for its fees and costs and, if it so chooses, draw down on, and continue to hold, the Irrevocable Letter of Credit as satisfaction of that indemnification obligation.

Third, Westchester is entitled to continue keep the collateral security in the form of the Irrevocable Letter of Credit because it is still entitled to indemnification from potential future liability under the Bonds and, given the litigious nature of these parties, from future fees and costs. Each of the Third-Party Defendants have asserted affirmative claims against Westchester, not in this Action but in three separate actions in Florida ("**Florida Actions**"). Monadnock and its related parties also asserted multiple claims against Westchester. The Florida court dismissed those claims for improper forum. But Glasswall, the other Third-Party Defendants, and

Monadnock and its related parties have never released Westchester from those claims.  To this day, they refuse to do so.  If they truly believe that those claims do not exist, and that Westchester is not subject to future liability under the Bonds, they would grant a full release immediately and give the Bonds back to Westchester.  They will not.  And Westchester is entitled to maintain the Irrevocable Letter of Credit as security against those potential claims and the fees and costs that Westchester might expend defending against them.

Fourth, Glasswall has no standing to seek the release of the Irrevocable Letter of Credit, and it cannot challenge it without allegations of fraud in its making, which it does not even assert in this motion.  This is a separate, independent reason to deny Glasswall's improper motion.

This motion is yet another improper maneuver by Glasswall.  It is an attempt by an entity that sold-off its assets over three year ago and is non-operational to quietly walk away with over $1.5 million and the only guaranteed form of indemnification available to Westchester after it has been forced to incur years of indemnifiable fees and costs in a litigation war between Glasswall and others.  The Court should reject this invalid motion and re-open this case (closed without any request by the parties) for the sole purpose of hearing a summary judgment motion on the only claim still pending in this Action, Westchester's claim seeking indemnification of its fees and costs.

## STATEMENT OF RELEVANT FACTS

### A. Westchester's Third-Party Claim for Indemnification and the Indemnity Agreement's Application to Liability, Fees and Costs Incurred by Reason of the Execution of the Bonds

Westchester has filed a Third-Party Complaint (Doc. 41) asserting three claims against the Third-Party Defendants, including a claim that the Court should declare, under the Indemnity Agreement, that the Third-Party Defendants indemnify Westchester for liability, attorneys' fees and costs incurred by reason of Westchester issuing the bonds.

In the Indemnity Agreement, the Third-Party Defendants indicated that they "desire[d]" Westchester to execute the bonds. John J. Sullivan Declaration ("**Sullivan Decl.**"), Exh. 1, Recital. They agreed to provide "collateral security" in consideration for Westchester doing so. *Id.* ¶ 1. Accordingly, Glasswall, as applicant, secured as collateral a $1,587,500 Irrevocable Letter of Credit, L/C No. TFTS-319325 ("**Irrevocable Letter of Credit**") from JPMorgan Chase Bank, N.A. ("**Chase**") naming Westchester as the beneficiary. *Id.*, Exh. 2.

The Third-Party Defendants also accepted a broad indemnification obligation, one that applies to any and all liability, claim, costs and attorneys' fees incurred by Westchester by reason of its execution of the bonds:

> The INDEMNITOR shall indemnify and save harmless [Westchester] from and **against any and all** liability, claim, demand, loss, damages, expense, **cost, attorney's fees and expenses, including without limitation, fees and disbursement of counsel incurred by [Westchester]** in any action or proceeding between [the Indemnitors] and [Westchester], or between [Westchester] and any third party, **which [Westchester] shall at any time incur by reason of its execution of any Bond** . . .

*Id.*, Exh. 1, at ¶ 2 (emphasis added).

To date, Westchester has incurred legal fees, costs and disbursements of approximately $1 million and counting as a result of being drawn into these extremely litigious, multi-forum, multi-year battles that the Third-Party Defendants waged with Monadnock, the Related Companies, L.P., HPS 50th Avenue Associates, LLC, HPS Borden Avenue Associates, LLC and Bruce Beal (collectively, "**Monadnock Related Parties**"). *Id.* ¶ 5. With this motion, Glasswall—a non-operational entity that sold its assets to another company, Tecnoglass, in 2015—seeks the release of the Irrevocable Letter of Credit that it agreed would serve as collateral to indemnify Westchester for these very costs, fees and disbursements, thereby

dissipating Westchester's only certain source for receiving that indemnification. *Id.* ¶ 6, Exh. 3 (attaching announcement of Tecnoglass purchase of Glasswall's assets).[1]

### B. The Third Party Defendants Never Answered or Asserted Any Defenses against Westchester's Third-Party Claims and Never Filed Any Claim or Counterclaim

Glasswall asks the Court to "release" the Irrevocable Letter of Credit even though it never answered or asserted any defenses against Westchester's Third-Party Complaint, as required by Fed. R. Civ. P. 14, and never filed any claim or counterclaim against Westchester on which to base this motion to release the Irrevocable Letter of Credit.

Only Third-Party Defendants Kennedy and Colombo responded to Westchester's Third-Party Complaint at all, by filing a motion to dismiss on November 29, 2017 (Doc. 80). But on August 15, 2018—after this Court held a hearing to address a settlement between the Third-Party Defendants and the Monadnock Related Parties that intentionally left out Westchester—the Court terminated Third-Party Defendants Kennedy and Colombo's motion to dismiss (Doc. 127). The Court's dismissal was in accordance with the Parties' discussions with the Court at the hearing, and none of the Third-Party Defendants objected to the dismissal—and still have not.

After that dismissal, Third-Party Defendants Kennedy and Colombo never answered or asserted defenses against Westchester's Third-Party Complaint, including its claim for indemnification, and never filed any counterclaims against Westchester. Glasswall has never responded to Westchester's Third-Party Complaint in any manner whatsoever and made no counterclaims against Westchester.

---

[1] To give proper color to this Motion by Glasswall, Westchester notes that Glasswall—now defunct, without assets, and unquestionably having engaged in vast litigation causing Westchester to incur fees and costs that are indemnifiable under the Indemnity Agreement that Glasswall executed—seeks the release of the only assured form of indemnification available to Westchester even though, back in 2014, Westchester paid Glasswall $1.5 million from Westchester's own funds to simply incentive Glasswall to perform the construction-related contracts on which the bonds were based. *Id.* ¶ 7.

**C.  Yet Glasswall and the Other Third-Party Defendants Have Steadfastly Refused to Release or Surrender Any Claims that They Believe They Have against Westchester**

Unlike in this Action, the Third-Party Defendants have filed claims against Westchester elsewhere, in three actions improperly filed against Westchester in Florida.  In one action, Third-Party Defendant Kennedy filed claims against Westchester alleging that it failed to act in good faith and properly investigate the claims under the Bonds.  Sullivan Decl., Exh. 4.  In a separate action, her husband, Third-Party Defendant Colombo, filed claims against Westchester alleging that it failed to act in good faith and properly investigate under the Bonds, failed to perform and complete the contracts, and made an improper demand under the Bonds.  *Id.*, Exh. 5.  In one of those three actions, Third-Party Defendant Glasswall also filed a civil conspiracy cross-claim against Westchester.  *Id.*, Exh. 6.  After consolidation, the Florida court granted Westchester's motion to dismiss all of these claims because the Third-Party Defendants had ignored a mandatory forum-selection clause (New York) in the Indemnity Agreement.  *Id.*, Exh. 7.  There is no indication that this forum-based dismissal was with prejudice, and the Third-Party Defendants have never since agreed to release any of the claims that they think they have, and have previously asserted, against Westchester.

Later, in this Action, on August 14, 2018, Monadnock and the Third-Party Defendants submitted a Stipulation of Discontinuance (Doc. 126), which the Court then "so ordered" (Doc. 129), that dismissed Monadnock's claims only as against the Third-Party Defendants.  It did not dismiss Monadnock's claims against Westchester.  Instead, Monadnock tried to transfer those claims, under a confidential settlement agreement, to a Delaware entity that had not yet been created and was later represented by a Glasswall attorney.  After significant pushback by Westchester, the Delaware entity and Monadnock were forced to stipulate to the dismissal of

Monadnock's original claims against Westchester (Doc. 140), which the Court later "so ordered" (Doc. 145).

Monadnock, however, never granted Westchester a full release as to all possible claims that it believes it has against Westchester. More important, the other Monadnock Related Parties that actively asserted claims against Westchester in multiple other litigations never granted Westchester a release, even though they granted such a release to the Third Party Defendants. Sullivan Decl. ¶ 12.

Similarly, the Third-Party Defendants themselves have never granted—and have affirmatively refused to grant—a release to Westchester, even though they gave such a release to the Monadnock Related Parties. *Id.* ¶ 13. Accordingly, Westchester remains under threat of claims by all of these parties and resulting potential future liability, attorneys' fees and costs related to the Bonds.

For some reason, after "so ordering" the Stipulation of Dismissal submitted by Westchester, the Delaware entity and Monadnock, the Court then ordered the clerk to "close the case," even though the parties made no such request. (Doc.145). Westchester's indemnity claim, however, is still pending and important. The Third-Party Defendants owe Westchester, under the Indemnity Agreement, indemnification for its already-accrued attorneys' fees and costs, as well as indemnification for any future liability, fees and costs, the possibility of which has not been foreclosed.

## ARGUMENT

### A. Glasswall's Motion Should Be Denied Because It Has Filed No Claim on Which to Base Its Improper Motion to Release the Irrevocable Letter of Credit

Glasswall filed no response to Westchester's Third-Party Complaint and no counterclaims at all, much less a counterclaim seeking the release of the Irrevocable Letter of Credit. It therefore has no basis on which to bring a motion for any relief, including this motion.

Glasswall had ample time to file an answer to Westchester's Third-Party Complaint and make any counterclaims that it thought it had. Instead, it chose to lie in the weeds, make no claims (which would then be subject to dismissal), and bring this motion—tethered to no claims—in an attempt to walk away with the Irrevocable Letter of Credit and whatever claims that it believes it still has, yet still owing Westchester indemnification of approximately $1 million and having eliminated Westchester's only certain way of recovering that indemnification.

Westchester, on the other hand, would be sideswiped by a party that never made a claim against it in this Action, but still might make a claim elsewhere in the future, while losing its collateral against a party, Glasswall, that owes it approximately $1 million and is no longer operational. This would be a nonsense and unjust outcome. The Court should deny Glasswall's motion outright and move on to a summary judgment motion on Westchester's claim for indemnification of its fees and costs under its properly pleaded indemnification claim.

### B. Westchester Is Entitled to the Irrevocable Letter of Credit, and May Draw Down on It, Because It Serves as Collateral for the Approximately $1 Million in Fees and Costs Westchester Has Already Incurred By Reason of Its Execution of the Bonds

Westchester has incurred fees and costs totaling approximately $1 million "by reason of its execution of the Bonds" as a result of multiple years of multiple lawsuits involving multiple claims in multiple forums involving the Third-Party Defendants and the Monadnock Related Parties. These fees continue to grow as the Third-Party Defendants continue to maneuver rather

8

than straight-forwardly address the core of their claims, if any.  This maneuvering, only recently, includes an attempt to transfer claims against Westchester to an as-of-yet-created entity that was later represented by other Glasswall attorneys and this very motion by Glasswall to release an Irrevocable Letter of Credit despite the Third-Party Defendants having a significant indemnification obligation of approximately $1 million (and counting).

The Indemnity Agreement, by its very terms, clearly covers indemnification of Westchester's fees and costs.  In paragraph 2, it grants Westchester the right to indemnification of "any and all liability, claim . . . cost, attorney's fees and expenses" that Westchester should "incur by reason of its execution of any Bond."  Sullivan Dec., Exh. 1, ¶ 2.  Glasswall never addresses this contractual language.  It runs from it.  Instead, Glasswall—an asset-less business no longer operating—hopes that it can simply steal away with the Irrevocable Letter of Credit while still owing Westchester indemnification on these significant agreed-to fees and costs.

In its memo at page 2, Glasswall, while not really arguing, calls these fees "undocumented."  But that is not the point.  Westchester has filed a claim.  And now that all other claims in this Action have finally been dismissed, Westchester is entitled to bring, and will bring, a motion for summary judgment on its indemnification claim and seek indemnification of its attorneys' fees, costs and disbursements as relief.  Westchester will document those fees through evidence.  Glasswall and the other Third-Party Defendants may, of course, challenge that evidence.  This is the normal process for a fee application.  While the Third-Party Defendants have suggested that they will make onerous discovery and deposition requests, and employ other procedural maneuvers, that does not alter the fact that Westchester's indemnification claim is the one remaining properly-pleaded claim to be addressed in this Action.  None of this ordinary process is a basis to allow Glasswall to simply slip away with the

collateral that it (and the other Third-Party Defendants) agreed to put up for this very indemnification.

Accordingly, the Court should quickly dismiss this unfounded motion and get to the business of determining Westchester's indemnification claim and ending this Action.

**C. Westchester, Having Never Been Granted a Release by all Parties, Is Entitled to the Irrevocable Letter of Credit As Collateral for Possible Future Defense Fees, Costs and Liability**

No releases have been executed in favor of Westchester, even while the Third-Party Defendants and the Monadnock Related Parties have settled with each other and given each other releases.  Given the proven litigiousness of these parties, Westchester faces potential future claims related to the Bonds by each of these parties.  In fact, if this were not true, the Third-Party Defendants and the Monadnock Related Parties would simply grant Westchester a release as to any and all claims related to the Bonds and return the Bonds to Westchester.  They have not and refuse to do so.  This reveals Glasswall's arguments on this improper motion as nothing but word-play to support an effort to get its hands on the Irrevocable Letter of Credit.

Whether the claims would ultimately have merit or not, these litigious parties have all the room they need to argue that they can still bring them against Westchester.  The claims against Westchester in the Florida Actions, for instance, were dismissed on the basis of an improper forum, not with prejudice.  Those claims were not just filed by Monadnock, but also by the other Monadnock Related Parties and each of the Third-Party Defendants who chose not to assert them here.  Even the dismissal with prejudice entered by this Court applies only to Monadnock, and potentially only to the claims that it actually asserted here.  It does not apply to the other Monadnock Related Parties, and it does not apply to the Third-Party Defendants.  Moreover, even if those parties assert a claim in the future that a court dismisses as meritless or as precluded by previous litigation, Westchester would still be entitled to indemnification of its fees and costs

under the Indemnity Agreement and to use the collateral represented by the remainder of the Irrevocable Letter of Credit to satisfy that indemnification obligation.

Accordingly, Westchester's chance of future liability related to the Bonds has not been terminated, and neither has its right to indemnification for defending against even invalid claims. Now, the Third-Party Defendants and the Monadnock Related Parties have the power to remedy this, if they really wanted to do so, just as they did when they granted each other full releases. They could indemnify Westchester voluntarily or through the summary judgment process and then exchange full releases with Westchester and hand back the Bonds.  But, to date, they have steadfastly refused to do any of that, instead choosing to engage in a series of maneuvers to try to preserve their claims against Westchester while taking from Westchester its only certain form of indemnification—the Irrevocable Letter of Credit.

For this separate reason, the Court should deny this unfounded, improper motion, and reopen the case for the sole purpose of determining Westchester's Indemnification Claim and its entitlement to its attorneys' fees, costs and disbursement to date.

### D.  Glasswall Has No Standing to Release the Irrevocable Letter of Credit

Setting aside the impropriety and lack of merit of Glasswall's motion, Glasswall is not in a position to unilaterally demand a "release" of the Irrevocable Letter of Credit.  A commercial letter of credit transaction involves three parties: the "applicant" or "purchaser," here Glasswall; the "issuing bank," here Chase; and the "beneficiary," here Westchester.  *Alaska Textile Co., Inc. v. Chase Manhattan Bank, N.A.*, 982 F.2d 813, 815 (2d Cir. 1992).  A fundamental principle of letter of credit law is that the relationships and agreements underlying a letter of credit are entirely independent of each other.  *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 2003 U.S. Dist. LEXIS 19419, at *10 (S.D.N.Y. Oct. 28, 2003).  "[T]he obligation of the issuing bank to honor a draft on a credit when it is accompanied by documents which appear on their face to be

in accordance with the terms and conditions of the credit is *independent of the performance of the underlying contract for which the credit was issued*." *Id.* at * 11 (emphasis added); *see also* U.C.C. § 5-103(d) (The "[r]ights and obligations of an issuer to a beneficiary or nominated person under a letter of credit are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it, including contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary."); *Stutts v. De Dietrich Group*, 2006 U.S. Dist. LEXIS 47638, at *52 (E.D.N.Y. June 30, 2006) (discussing the independence of the issuing bank in letter of credit transactions). Simply put, the Bonds and Indemnity Agreement as the underlying contracts are entirely independent of the Irrevocable Letter of Credit, and thus have no impact on the Irrevocable Letter of Credit.

The consent of all parties is required to cancel a letter of credit. *See Optopics Lab. Corp. v. Savannah Bank, Ltd.*, 816 F. Supp. 898, 908 (S.D.N.Y. 1993). Westchester does not consent to the cancellation as it is entitled to indemnity from Glasswall for its attorneys' fees in connection with the Bonds, and the Irrevocable Letter of Credit is the only thing guaranteeing that Westchester will receive payment for its fees and costs.

As the applicant, Glasswall is not a party to the Irrevocable Letter of Credit and as such "cannot enjoin the bank from paying, or the beneficiary from demanding, the funds pursuant to the letter of credit." *Chiat/Day Inc., v. Kalimian*, 105 A.D.2d 94, 96 (1st Dep't 1984); *See also Lenox Hill Hosp. v. Am. Int'l Group, Inc.*, 873 N.Y.S.2d 512 (Sup. Ct. N.Y. Cty. 2008) (finding that the purchaser was not a party to the letter of credit, and that the letter of credit was a commitment on the part of the Bank independent of the insurance policy between the purchaser and beneficiary). An applicant can only enjoin the issuing bank or beneficiary from acting on

the letter of credit if it demonstrates fraud in the transaction or presentment of the letter and that it is more likely than not to succeed on such a claim. *Lenox Hill Hosp.*, quoting *410 Sixth Ave. Foods, Inc. v. 410 Sixth Ave., Inc.*, 197 A.D.2d 434, 436-37 (1st Dep't 1993); *410 Sixth Ave. Foods, Inc.*, 197 A.D.2d at 436-37. Glasswall has made no such showing of fraud nor even raised the argument.

## CONCLUSION

For the reasons specified above, we respectfully request that the Court deny Glasswall's motion.

Dated:   New York, New York
         February 12, 2019

COZEN O'CONNOR

By: ___/s/ John J. Sullivan___
John J. Sullivan
Jaimie Fitzgerald
45 Broadway Atrium, Suite 1600
New York, NY 10006
P: 212-453-3729
F: 646-461-2073
JSullivan@cozen.com
JFitzgerald@cozen.com

*Attorneys for Defendant*
*Westchester Fire Insurance Company*