

February 4, 2020

**VIA ECF**

**John J. Sullivan**
Direct Phone   212-453-3729
Direct Fax       646-461-2073
jsullivan@cozen.com

Hon. Vera M. Scanlon
United States Magistrate Judge
United States District Court for the Eastern
District of New York
225 Cadman Plaza East, 1214 South
Courtroom 13A—South Wing
Brooklyn, NY 11201

Re: *Monadnock Construction, Inc. v. Westchester Fire Ins. Co./Westchester Fire Ins. Co. v. Glasswall, LLC, et al.,* Case No.: 1-16-cv-00420-JBW-VMS

Dear Judge Scanlon:

  We represent Westchester Fire Insurance Company (Westchester") and hereby respond to the Motion to Produce Documents and Locale of Deposition ("Letter Motion") filed by Glasswall, LLC ("Glasswall"). The Letter Motion requests relief as to three discovery issues: (1) production of attorney time records not redacted for privilege; (2) production of an engagement letter; and (3) scheduling of a deposition of a Westchester representative at the New York offices of Glasswall's counsel.

## Background

  The only claim left in this litigation is Westchester's contract claim for indemnification of its legal fees and costs under the Indemnity Agreement signed by the three Indemnitors: Glasswall, Ugo Colombo and Sara Jayne Kennedy Colombo. The Indemnity Agreement is broad, entitling Westchester to indemnification for any legal fees and costs that it incurred "by reason of its execution of any bond." This includes legal fees incurred during the complex and protracted negotiations that took place while Glasswall and Monadnock battled over the windows and curtain walls that Glasswall supplied for a construction project in Long Island City. This includes Westchester paying upward of $1 million to the indemnitors to simply induce them to complete the project. It includes lawsuits (before this one) filed in New York, and several distinct actions filed by the Indemnitors in Florida, as they waged a turf battle over venue. It includes this action, including an early motion to dismiss filed by Westchester at the insistence of Glasswall itself. It includes monitoring the arbitration between Glasswall and Monadnock, and the continuation of this action even after an arbitration decision was rendered.

  And now it includes litigation over the very clear obligations of the Indemnitors to indemnify Westchester for the legal fees that it has incurred over almost a decade of bickering between Glasswall and Monadnock. In fact, the Indemnitors have never give Westchester a

Hon. Vera M. Scanlon
Page 2

_____

reason or legal basis for why they will not simply honor their obligations under the Indemnity Agreement.

As discussed below, this Letter Motion is just more scorched-earth litigation.  Glasswall has more than enough information to try to mount whatever challenge it thinks it has to indemnifying the fees paid by Westchester.  As discussed below, the Court should deny the Letter Motion.

## Attorney Time Records

In early December, Westchester produced 769 pages of time records/invoices covering the period from 2013 to 2019.  They provided a wealth of information related to attorneys' fees and legal costs paid by Westchester by reason of its execution of the Bonds: all legal work performed and invoiced; the hourly rates for all legal work performed and invoiced; identities of the attorney who performed the work; descriptions of the work performed and the date on which it was performed; challenges by Westchester to attorney time invoiced; the result of those challenges; a summary page for each invoice; and more.

The invoices were redacted for privileged information and client-counsel communications on challenges to fees.  We attempted to target the redactions so as to allow Glasswall to determine the legal work performed, along with the attorney, date, time spent, hourly rate and overall cost.  Glasswall can also determine each fee challenged by Westchester and the outcome of that challenge.  Westchester was also preparing to produce a witness to discuss the invoices.

Glasswall, however, made the blanket claim during the meet and confer process (Exhibits A & B (meet and confer emails)) that Westchester had waived all privilege by seeking indemnification of its legal fees under the Indemnity Agreement.  It provided no legal support.  Glasswall did not point to any time entries that it could not understand due to the redactions of privileged information, even though Westchester stood ready to address any such issues.  Glasswall's Letter Motion, for the first time, seeks support in a decision from another federal circuit.  *Ideal Electronic Security, Co. v. Int'l Fidelity Ins. Co.*, 129 F.3d 143 (D.C. Cir. 1997).  But it is not controlling here.

Courts in the Second Circuit do not hold that a plaintiff seeking indemnification of its legal fees from a defendant has waived the privilege.  The plaintiff has not put the content of privileged communications "at issue," only the work performed by counsel:

> [Plaintiff] has not placed at issue the content of ***any of its attorney-client communications*** or the work product developed by counsel.  All that is potentially in dispute is the reasonableness of the time spent by counsel on tasks that are reimbursable . . . .

*670 Apartments Corp. v. Agricultural Ins. Co.*, 1997 WL 801458, *2 (S.D.N.Y. 1997) (emphasis added); *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 560 (S.D.N.Y. 1994) (stating that, while "general purpose of the work performed are not generally protected from disclosure by the attorney-client privilege," "time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege"); *Bovis Lend Lease,*

*LMB, Inc. v. Seasons Contracting Corp.*, 2002 WL 31729693, *16 (S.D.N.Y. 2002) (same) (citing *670 Apartments* and other cases).

To this day, Glasswall has not pointed to a single redacted time entry that leaves Glasswall unable to understand the work performed by Westchester's counsel. Nor has it conducted a deposition of a Westchester witness or even agreed to a date for such a deposition. The Court should reject Glasswall's request to invade Westchester's attorney-client privilege.

### Retention Letter

Glasswall insisted during the meet and confer process that Westchester produce a retention letter. During that process, the only reason given by Glasswall was that the retention letter would include rate information for attorneys. But the time records already produced are replete with that information. They list the rate for every single time entry since 2013, along with the attorney, the date, a description of the work performed, the total charged for that work, whether Westchester challenged the time entry and, if so, whether billing for that time entry was ultimately accepted or rejected.

It is pointless make-work and burdensome to produce a retention letter, not because of its size, but because Westchester's counsel has a broad and lengthy relationship with Westchester, stretching across many years and many matters. Identifying the retainer agreement appears to be a difficult process, one for which Glasswall has offered no reason. In fact, in its Letter Motion, it cites two irrelevant cases, one involving parties fighting over interpleaded funds and whether one party was illegally practicing law (*Servidone Construction Corp. v. St. Paul Fire & Marine Ins.*, 911 F. Supp. 560 (N.D.N.Y. 1995)) and the other involving rules peculiar to family court in New York (*Hyman & Gilbert v. Withers*, 151 A.D.3d 945 (N.Y. App. Div. 2017)).

This request is yet further make-work from Glasswall, and the Court should reject it.

### Location of Deposition

Glasswall writes in its Letter Motion that its deposition notice was served on Westchester. It was not served properly. Glasswall sent the deposition notice by email (Exhibit C), and the parties had not agreed to email service. Westchester had no obligation to object to an improperly served notice. Nonetheless, Westchester gave Glasswall, in good faith, a date for a deposition of a Westchester witness (not the date on the improperly served notice). To date, Glasswall has chosen not to accept that date, though Westchester stands ready to work to set a date. Westchester's witness will be traveling to New York from Philadelphia, and it is more convenient for the witness to be deposed at its counsel's office.

Accordingly, Westchester asks the Court to order that the deposition occur at the offices of Westchester's counsel.

We should note that, in response to Glasswall's arguments and proposed deposition of a Westchester witness, Westchester noticed depositions of each of the three Indemnitors. These deposition are necessary to record testimony describing the Indemnitors' involvement in the many litigations and negotiations in multiple states to which Westchester has been subjected by reason of its execution of the Bonds. If the Court Orders that the Westchester witness appear

Hon. Vera M. Scanlon
Page 4

---

at the offices of Glasswall's counsel in New York, we ask the Court to also order that the three Indemnitors appear for their depositions at the offices of Westchester's counsel in New York.

Respectfully,

COZEN O'CONNOR

By:   s/ John J. Sullivan